# EXHIBIT 1



BRIER, IRISH, HUBBARD & ERHART, P.L.C.
2400 East Arizona Biltmore Circle, Suite 1300
Phoenix, Arizona 85016
Telephone (602) 522-3940
Facsimile (602) 522-3945
Teresa H. Foster, Of Counsel (010877)
For Court Filings/Pleadings:
ctfilings@thfosterlaw.com
Attorneys for Plaintiff

JAN 0 6 2017

MICHAEL K. JEANES, CLERK
A. VALENZUELA
DEPUTY CLERK

## ARIZONA SUPERIOR COURT
### MARICOPA COUNTY

CV 2017-000025

| COLOCATION AMERICA, INC., | Case No. _____ |
|---|---|
| Plaintiff, | |
| v. | **CIVIL COMPLAINT** |
| MITEL NETWORKS CORPORATION, | |
| Defendant. | |

Plaintiff Colocation America, Inc. ("Colocation") brings this complaint against Defendant Mitel Networks Corporation ("Mitel") and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.  Colocation provides internet services to customers who operate various businesses on the internet, and maintains offices in Las Vegas, Nevada and Los Angeles, California.

2.  Suit is brought against Mitel, which although incorporated in Canada, maintains offices and operates numerous subsidiaries in Maricopa County. At its own Maricopa office, Mitel employs in-house Intellectual Property Counsel, who is a member of the Arizona Bar. She negotiated, initiated, and consummated the written contract that is the subject of this action doing so on behalf of the Mitel office located at 1146 North Alma School Rd., Mesa, AZ 85201.

3. Colocation is informed and believes, and thereon alleges, that in 1997 Mitel acquired certain assets through purchase in bankruptcy proceedings previously held by the then bankrupt company Gandalf Technologies Inc. The rights may or may not have included internet electronic rights of no certain location including a domain name and the associated IPv4 internet protocol addresses (the "Gandalf rights" herein).

## RIGHTS, NEGOTIATION, AND AGREEMENT

4. Commencing in February 2016, an intermediary broker inquired of Mitel whether the company would consider sale of the Gandalf rights by such agreement as may be drawn up by Mitel. In-house counsel responded that she would present the matter to Mitel Management. It was then reported that the Gandalf rights could be purchased.

5. Mitel In-house counsel prepared a draft of an agreement providing for outright assignment of rights. Thereafter, Mitel informed it could not be determined what if any rights were acquired by Mitel in the bankruptcy transaction, but offered to sell the Gandalf rights by a quit claim. The counter offer was accepted by Colocation.

6. Thereafter, another contract was prepared by Mitel in-house counsel, with approval of the company (the "Contract"). The Contract recited the understanding of the parties that the subject of the Contract was, "intangible rights" which Mitel did not know whether it owned as result of a prior bankruptcy proceeding, including domain name and related intellectual property. See Contract, attached as Exhibit 1. The first term of the Contract included a "**Quit Claim**" whereby Mitel agreed to only quitclaim any right, title or interest, if any, of the Domain Name,

> "together with...the associated IPv4 134.22.0.0/16 and any associated trade dress, or other intellectual property intellectual property rights relating thereto, to the extend any such rights exist."

Mitel was then required to reregister the Domain Name for the purchaser and execute a written instrument of transfer for the other intellectual property rights, if any, that it owned. The Contract provided that the parties would not disclose these material terms to the public and that the Contract was the "entire understanding" of the parties.

7. The Contract further provided that payment would be made for the above acquisition through escrow agent "escrow.com," and that Mitel would perform the change of the ownership of the domain name and execute such instrument of transfer as would be required to effectuate purchase of the intellectual property rights, as well as to cooperate with Colocation for the related transactions.

8. In-house counsel in Mesa, Arizona arranged for the Contract to be executed by Mitel's general counsel in Canada, received it back in Mesa, and consummated the transaction by issuing the Contract from Mesa, Arizona to Colocation in Los Angeles, California.

## BREACH OF AGREEMENT

9. Colocation deposited funds to the escrow account, and sought to have Mitel register the Domain Name and transfer the IPv4 134.22.0.0/16 rights ("IPv4 Block") as obligated. Colocation is informed, and believes, and thereon alleges, that after entering the Contract, Mitel only then evaluated the deal made, and believed that its own drafted Contract was a self-inflicted wound, that the Domain Name and IPv4 Block for transfer were more valuable than the consideration they agreed to accept, and then struck a course to renege on the agreement made and announced that it would not perform its own contractual obligation.

## PRIOR ACTION

10. Colocation commenced an action in Superior Court in Los Angeles, California,

where Colocation maintained an office. Mitel challenged jurisdiction. On October 18, 2016, that Court ruled that California lacked general jurisdiction (because Mitel had insufficient minimal contact in California) and lacked specific jurisdiction (because Mitel had not purposefully availed itself of conducting business in California, and/or did not contemplate the transaction to take place in California). By contrast the suit herein is on a contract and/or transaction conducted and/or contemplated at Mitel's office in Mesa, Arizona. Meanwhile, Colocation did not have substantial contact with Mitel in Canada, leaving jurisdiction in Arizona as the appropriate form.

## LITIGATION HOLD

11. Demand is hereby made that Mitel preserve all electronically stored information ("ESI"), as well as documents and tangible things, potentially relevant to the facts and issues plead in this complaint, including by the way of example, correspondence, memoranda, journal entries, pertaining to acquisition of intellectual rights identified herein, all investigations and evaluations made in regard to such rights prior to and at the time the subject agreement was entered, all inter-company memoranda, email, and messages since the agreement was entered pertaining to the subject rights, investigation, and evaluation thereof. ESI includes by the way of example information electronically, magnetically or optically stored, such as digital communications, word processed documents, calendar and diary entry data, backup and archival files, all as stored on Mitel's computer systems and employee systems, or other media and devices, such as their personal is digital assistants, voice-messaging systems, on-line repositories and cell phones. It is further demanded that Mitel's management and counsel pursue immediate intervention to prevent loss due to routine operations, to initiate a litigation hold for potentially relevant ESI, and to prevent degradation of the ability to search ESI by electronic means. Such litigation hold is to secure ESI on office work stations and servers, home and portable systems, to

anticipate that employees may seek to delete or destroy information that they regard as confidential or embarrassing, and to secure documents which are required to access, interpret or search relevant ESI, including logs, control sheets, specifications, naming protocols, diagrams, and user ID and password rosters.

FIRST CLAIM FOR RELIEF
[Breach of Contract]

12. Colocation incorporates paragraphs 1-11 above.

13. By the Contract of March 4, 2016 (Exhibit 1), Mitel is under the obligation to transfer and assign the intellectual property identified by the Contract, including Domain Name and IPv4 Block.

14. Colocation performed all conditions and promises under the Contract on its part to be performed, or was discharged from obligation or performance by the breach of the Mitel, or its performance was not called for because of the failure of Mitel to meet conditions precedent, concurrent, or subsequent.

15. Mitel has failed to transfer or assign the Domain Name and IPv4 Block, and has announced anticipatory breach of its obligation under the Contract. Colocation has been damaged in an amount not less than $10,000, all in an amount according to proof which will be offered at trial, together with legal interest thereon. Colocation further demands an accounting of all transactions involving the Domain Name and associated IPv4 Block.

16. Without the intellectual property subject of this suit, Colocation will be jeopardized in the business for which Colocation will be engaged, and it will be extremely difficult to ascertain compensation which will afford Colocation adequate relief. Equitable relief is thereby requested by the way of Temporary Restraining Order, Preliminary, and Permanent

Injunction, enjoining and restraining Mitel, and those acting in concert with them, from themselves exercising, or effecting the exercise or control of the Domain Name and IPv4 Block. Equitable relief is also thereby requested by the way of injunction compelling Mitel to transfer and assign IPv4 Block subject of suit to Colocation and to perform such other acts as to complete the transfer of those rights as may be required within the internet business.

17. By reason of the Mitel's conduct, Colocation is entitled to have Mitel declared the constructive trustee of any and all benefits and proceeds traceable from the violations by the Mitel alleged herein, and the benefits and proceeds are to be executed for the benefit of Colocation.

## SECOND CAUSE OF ACTION
[Specific Performance against Mitel]

18. Colocation incorporates paragraphs 1-18 above.

19. By the Contract, Mitel is under the obligation to transfer and assign the intellectual property and/or rights identified by the Contract (Exhibit 1), including the Domain Name and IPv4 Block.

20. Colocation's remedy in damages or in an action at law for this breach of Mitel's duties under the Contract will be inadequate to protect Colocation's rights in and to the Domain Name and IPv4 Block, because this intellectual property and/or rights are "unique."

21. Mitel's continued and wrongful retention of said property will produce great or irreparable injury to Colocation and also tends to make any purely monetary judgment in this action ineffectual.

22. By reason of Mitel's conduct, Colocation is entitled to an order of specific performance of the Contract.

23. Colocation's claims arise under the Contract and the prevailing party is entitled to an award of its attorney fees and costs pursuant to A.R.S. § 12-341.01.

WHEREFORE, Plaintiff prays for:

(a) A Temporary Restraining Order, Preliminary and Permanent Injunction issue, enjoining and restraining the named Defendant, and all persons acting in concert and participation with them from exercising, or effecting exercise or control of the intellectual property subject of this suit, including but not limited to the Domain Name and IPv4 Block;

(b) An order of Specific Performance of the Contract ordering Defendant to transfer and assign the intellectual property and/or rights, including the Domain Name and IPv4 Block to Plaintiff;

(c) Compensatory damages in an amount which is not yet ascertained but proof of which shall be offered together with interest at the statutory rate;

(d) An award of attorney fees pursuant to A.R.S. § 12-341.01;

(e) An Award of costs of suit; and

(f) For such other and further relief as the Court deems just and proper.

DATED: January 6, 2017.

BRIER, IRISH, HUBBARD & ERHART, P.L.C.

_____
Teresa H. Foster, Of Counsel
Attorneys for Plaintiff

## DOMAIN NAME ASSIGNMENT AGREEMENT

THIS AGREEMENT is made this 7th day of March, 2016 ("the Agreement"), by and between MITEL NETWORKS CORPORATION, on behalf of itself and its subsidiaries, a Canadian corporation with offices at 350 Legget Drive, Ottawa, Ontario, Canada K2K2W7 ("Mitel") and Colocation America, Inc., a Nevada Corporation with offices at 9360 W Flamingo Rd, Suite 110-178, Las Vegas, NV 89147 ("INTELLECTUAL PROPERTY PURCHASER").

WHEREAS, Dividend Advisors LLC has introduced the INTELLECTUAL PROPERTY PURCHASER to intangible rights which may be claimed as a result of a prior bankruptcy proceeding, including domain name and related intellectual property.

WHEREAS, Mitel hereby agrees to quit claim, transfer and assign, and INTELLECTUAL PROPERTY PURCHASER hereby agrees to purchase the domain name <gandalf.ca> (the "Domain Name") and related rights, subject to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the promises and agreements set forth herein, the parties, each intending to be legally bound hereby, do promise and agree as follows:

**A. Quit Claim.** For good and valuable consideration, payable as more particularly described herein, Mitel hereby agrees to quit claim to INTELLECTUAL PROPERTY PURCHASER any of Mitel's right, title and interest in and to the Domain Name <gandalf.ca> and the registration thereof, together with the goodwill of the business connected with and symbolized by such Domain Name and the associated IPv4 134.22.0.0/16 and any associated trade dress, or other intellectual property intellectual property rights relating thereto, to the extent any such rights exist. The quit claim transfer and assignment shall take effect as set forth herein upon INTELLECTUAL PROPERTY PURCHASER'S making the payment as provided for herein.

1



EXHIBIT 1

**B. Payment.** The consideration (the "Consideration") to be paid by INTELLECTUAL PROPERTY PURCHASER shall be in the amount and through escrow as set forth in the standard Escrow.com instructions, to be entered concurrent with this Agreement by the parties and for the amount therein to be deposited by purchaser upon opening the escrow along with the escrow fees. Within 1 business day after notification from Escrow.com that the purchase funds have been received from the INTELLECTUAL PROPERTY PURCHASER, Mitel shall change the registered ownership of the Domain Name with a third-party registrar so that the "WHOIS" information will be registered to the INTELLECTUAL PROPERTY PURCHASER, or agent of its choosing, and transfer the Domain Name to a hosting service designated by the INTELLECTUAL PROPERTY PURCHASER and further execute any instrument of transfer may be required to effectuate the purchase of any of the quit intellectual property rights. Upon notice to Escrow.com of visible "Whois" registration and all related intellectual property transfer, the CONSIDERATION funds are to be released to Mitel by wire transfer as Mitel provides in the escrow instruction.

**C. Mitel's Obligations.** Mitel agrees to cooperate with INTELLECTUAL PROPERTY PURCHASER and to follow INTELLECTUAL PROPERTY PURCHASER'S reasonable instructions in order to effectuate any transfer of the Domain Name or any intellectual property in a timely manner. Specifically, upon receipt of the consideration, Mitel further agrees to prepare and transmit any necessary registration agreement or correspondence to authorize the transfers.

**D. Warranty.** Mitel warrants and represents that: (i) it has the full power and lawful authority to enter into this quit claim assignment and transfer the Domain Name, and (ii) it is the lawful owner of the Domain Name and any associated intellectual property rights.

**E. INTELLECTUAL PROPERY PURCHASER Obligations.** INTELLECTUAL PROPERTY PURCHASER agrees not to: use the Domain Name or any resulting website: (i) to disparage Mitel in any way; (ii) and disclose the material terms of

2



this Agreement, such as the Consideration, however either party may disclose the existence of the Agreement.

**F. Entire Agreement.** This Agreement embodies the entire understanding of the parties with respect to the subject matter hereof, and merges all prior discussions between them, and neither of the parties shall be bound by any conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof other than as expressly provided herein. No oral explanation or oral information by either party hereto shall alter the meaning or interpretation of this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be made and executed on the date signed by Mitel below ("Effective Date").

MITEL NETWORKS CORPORATION

Name: Greg Hiscock
Position: General Counsel, Corporate Secretary
Date: March 15/16

COLOCATION AMERICA, INC.

Name: Albert A Abdoot / Busines
Date: 3/10/16

3

## SCHEDULE A TO
## DOMAIN NAME ASSIGNMENT AGREEMENT

## INCOMING WIRE TRANSFER

Please ensure all funds in are paid in favor of Mitel Networks Corporation as per instructions below:

**RECEIVING BANK / INSTITUTION**
Name: BANK OF NOVA SCOTIA
Branch: Toronto BSC (Servicing Transit)
Address: 20 Queen St W 4th Floor
Toronto, Ontario
M5H 3R3
CANADA

SWIFT BIC: ███████

ABA Routing #: ███████

**BENEFICIARY**
Name: MITEL NETWORKS CORPORATION
Address: 350 Legget Drive
Ottawa, Ontario
K2K 2W7
CANADA

Branch Transit: 
Inst. number:
Account number
Currency code: CAD

Global Treasury & Risk Management Operations
Tel: (613) 592-2122   x: 71823 or 74433

Fax: (613) 592-4784
@   treasury@mitel.com

4

BRIER, IRISH, HUBBARD & ERHART, P.L.C.
2400 East Arizona Biltmore Circle, Suite 1300
Phoenix, Arizona 85016
Telephone (602) 522-3940
Facsimile (602) 522-3945
Teresa H. Foster, Of Counsel (010877)
For Court Filings/Pleadings:
ctfilings@thfosterlaw.com
Attorneys for Plaintiff

## ARIZONA SUPERIOR COURT
## MARICOPA COUNTY

| | |
|---|---|
| COLOCATION AMERICA, INC., | Case No. CV 2017-000025 |
| Plaintiff, | |
| v. | **SUMMONS** |
| MITEL NETWORKS CORPORATION, | If you would like legal advice from a lawyer, contact the Lawyer Referral Service at 602-257-4434 or www.maricopalawyers.org Sponsored by the Maricopa County Bar Association |
| Defendant. | |

THE STATE OF ARIZONA TO THE DEFENDANT:

**MITEL NETWORKS CORPORATION**

YOU ARE HEREBY SUMMONED and required to appear and defend, within the time applicable, in this action in this Court. If served within Arizona, you shall appear and defend within 20 days after the service of the Summons and Complaint upon you, exclusive of the day of service. If served out of the State of Arizona -- whether by direct service, by registered or certified mail, or by publication -- you shall appear and defend within 30 days after service of the Summons and Complaint upon you is complete, exclusive of the day of service. Where process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it in this state, the insurer shall not be required to appear, answer or plead until expiration of 40 days after date of such service upon the Director. Service by registered or certified mail without the State of Arizona is complete 30 days after the date of filing the receipt and affidavit of service with the Court. Service by publication is complete 30 days after the date of first publication. Direct service is complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and return receipt or Officers Return. ARCP 4; ARS §§ 20-222, 28-502, 28-503.

YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.

YOU ARE CAUTIONED that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or response upon the Plaintiff's attorney. ARCP 10(1); ARS § 12-311; ARCP 5.

YOU ARE FURTHER NOTIFIED that requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

The name and address of Plaintiff's attorney is:

Teresa H. Foster
**BRIER IRISH HUBBARD & ERHART, PLC**
2400 E. Arizona Biltmore Circle, Suite 1300
Phoenix, Arizona 85016

SIGNED AND SEALED this date: _____ COPY

CLERK OF THE SUPERIOR COURT
JAN 0 6 2017

MICHAEL K. JEANES, CLERK
A. VALENZUELA
DEPUTY CLERK

By_____
Deputy Clerk

BRIER, IRISH, HUBBARD & ERHART, P.L.C.
2400 East Arizona Biltmore Circle, Suite 1300
Phoenix, Arizona 85016
Telephone (602) 522-3940
Facsimile (602) 522-3945
Teresa H. Foster, Of Counsel (010877)
For Court Filings/Pleadings:
ctfilings@thfosterlaw.com
Attorneys for Plaintiff



JAN 0 6 2017



MICHAEL K. JEANES, CLERK
A. VALENZUELA
DEPUTY CLERK

## ARIZONA SUPERIOR COURT
## MARICOPA COUNTY

CV2017-000025

| COLOCATION AMERICA, INC., | Case No. _____ |
|---|---|
| Plaintiff, | |
| v. | **CERTIFICATE OF ARBITRATION** |
| MITEL NETWORKS CORPORATION, | |
| Defendant. | |

The undersigned certifies that she knows the dollar limits and any other limitations set forth by the local rules of practice for the applicable superior court, and further certifies that this case is not subject to compulsory arbitration, as provided by local rules of Maricopa County.

DATED: January 6, 2017.

BRIER, IRISH, HUBBARD & ERHART, P.L.C.

_____
Teresa H. Foster, Of Counsel
Attorneys for Plaintiff