David E. Rogers (#19274)
David G. Barker (#024657)
Jacob C. Jones (#029971)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: drogers@swlaw.com
         dbarker@swlaw.com
         jcjones@swlaw.com

Attorneys for Defendant
Mitel Networks Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Colocation America, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Mitel Networks Corporation, <br><br> Defendant. | Case No. CV-17-00421-PHX-NVW <br><br> **MITEL NETWORKS CORPORATION'S ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL** |

Defendant Mitel Networks Corporation ("MNC") serves the following Answer and Counterclaim in response to the Complaint of Colocation America, Inc. ("Colocation" or "Plaintiff").  Except as specifically admitted, MNC denies each and every allegation in the Complaint.

**PARTIES, JURISDICTION, AND VENUE**

1. MNC lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 1, and therefore denies them.

2. MNC admits that Colocation brought suit against MNC.  MNC denies that it maintains any office or direct subsidiaries except for Mitel US Holdings, Inc. ("MUSHI") in Arizona.  MNC admits that Ms. Whittington is a member of the Arizona Bar and that she

25768258

has an office located at 1146 North Alma School Rd., Mesa, AZ 85201, but denies that she is an employee of MNC. MNC admits that Ms. Whittington was involved in the negotiation of the contract at issue in this case, but did not "initiate" or "consummate" it. MNC denies any remaining allegations in Paragraph 2.

3. MNC denies the allegations in in Paragraph 3 of the complaint. By way of further answer, in 1997, MNC did not acquire assets of Gandalf Technologies, Inc. In or about 2001 MNC acquired the rights to the domain name "gandalf.ca", and is unaware at if it acquired rights to the IPv4 internet protocol address block referenced in the Complaint.

## **"RIGHTS, NEGOTIATION, AND AGREEMENT"**

4. Denied. MNC never contemplated the sale of what Colocation defines in Paragraph 3 as "Gandalf rights."

5. MNC admits that its counsel prepared a draft agreement by a quit claim of the <Gandalf.ca> domain name and associated goodwill, and that MNC understood Colocation to have accepted that offer. MNC denies the remaining allegations in Paragraph 5.

6. MNC admits that Exhibit 1 of the Complaint (the "Contract") is the final written agreement executed by MNC and Colocation. MNC admits that the parties agreed to confidentiality, and that the Contract contains an integration clause. MNC denies the remaining allegations of Paragraph 6, including Colocation's characterization of the Contract.

7. MNC admits that Colocation was required to submit payment to MNC through <escrow.com> and that Colocation has failed to release any payment to MNC. MNC denies the remaining allegations of Paragraph 7, including Colocation's characterization of the Contract.

8. MNC admits that the Contract was executed in Canada. MNC denies the remaining allegations of Paragraph 8.

## BREACH OF AGREEMENT

9. Denied.

## PRIOR ACTION

10. MNC admits that Colocation's California action was dismissed for lack of personal jurisdiction. MNC denies the remaining allegations of Paragraph 10.

## LITIGATION HOLD

11. Paragraph 11 is not a proper pleading, and no response to Paragraph 11 is required.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

12. MNC incorporates by reference the prior paragraphs of this Answer.

13. Denied.

14. Denied.

15. Denied.

16. To the extent a response is required, denied.

17. Denied.

## SECOND CAUSE OF ACTION
### (Specific Performance against Mitel)

18. MNC incorporates by reference the prior paragraphs of this Answer.

19. Denied.

20. Denied.

21. Denied.

22. Denied.

23. Denied.

MNC denies that Plaintiff is entitled to any of the relief it seeks.

## ADDITIONAL DEFENSES

Defendant MNC reserves the right to rely upon one or more of the following defenses, as well as raise any further defenses as may arise during the course of discovery.

25768258

- 3 -

By alleging the following, MNC does not necessarily admit that the following are affirmative defenses, and does not assume the burden of pleading or proving any matter as to which MNC does not have such burden under applicable law.

### FIRST AFFIRMATIVE DEFENSE

24. Plaintiff's Complaint fails, in whole or in part, to state a claim against Defendant upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

25. Plaintiff's claims are barred, in whole or in part, by estoppel.

### THIRD AFFIRMATIVE DEFENSE

26. Plaintiff's claims are barred, in whole or in part, by failure of consideration.

### FOURTH AFFIRMATIVE DEFENSE

27. Plaintiff's claims are barred, in whole or in part, by fraud by Plaintiff. Specifically, Plaintiff's broker expressly stated in an email to MNC's representative that only MNC's "goodwill" (if any) associated with the IPv4 addresses would be transferred under the proposed agreement. Plaintiff and its broker – both experienced in domain name transactions – knew that statement was false and that Plaintiff intended to later argue that the agreement required transfer of the IPv4 addresses themselves. Plaintiff intended MNC to rely on that statement to MNC's detriment, and MNC did in fact rely on that statement to its detriment, which has to this point cost MNC at least significant attorney fees that were directly caused by Plaintiff's fraud.

### FIFTH AFFIRMATIVE DEFENSE

28. Plaintiff's claims are barred, in whole or in part, by mistake. Specifically, to the extent that the Court interprets the Contract as requiring a transfer of IPv4 addresses, the parties (or at least MNC), were under the mistaken belief that the Contract did not require transfer of IPv4 addresses, but only any goodwill that MNC may or may not have had in such addresses.

Defendant reserves the right to have additional defenses that it learns through the course of discovery.

25768258

- 4 -

## COUNTERCLAIM

1. MNC is a Canadian corporation with its corporate headquarters and principal place of business in Ottawa, Ontario.

2. Colocation is a Nevada company with its corporate headquarters in Las Vegas, Nevada.

3. On March 7, 2016, MNC signed the Contract (attached as Exhibit 1 to Colocation's Complaint), believing it would receive $10,000 USD from Colocation in exchange for the quit claim of rights to the Canadian domain name <Gandalf.ca> (the "Domain Name"), and the related good will to Colocation.

4. At the time of signing the Contract, MNC did not believe the terms of the Contract related to any right, title, or interest in any IPv4 addresses.

5. After the Contract was signed, Colocation stated that the Contract also assigned to it ownership of a block of IPv4 addresses worth approximately $500,000-$1,000,000, for no further consideration.

6. This Court has personal jurisdiction over Colocation because Colocation have consented to this Court's exercise of personal jurisdiction by filing its Complaint in Arizona.

7. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that (a) there is complete diversity of citizenship, and (b) the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.  The crux of the dispute is whether the Contract requires MNC to assign 64,000 IPv4 addresses, worth hundreds of thousands of dollars, to Plaintiff Colocation.

8. Venue lies in the Phoenix Division of this Court under 28 U.S.C. § 1391. This action was originally brought in the Maricopa County Superior Court in the State of Arizona, and the Complaint alleges that some of the events occurred at least in part in Maricopa County, Arizona.

9. An IPv4 address is a unique address used to identify each server, computer or device connected to the internet and is used to allow servers, computers or devices to

communicate with each other.

10. Because all of the approximately 4.3 billion IPv4 addresses in existence have been assigned since 2011, IPv4 addresses are quite valuable and continue to increase in value.

11. The Contract addresses only on the transfer of the Domain Name and the associated good will.

12. The Contract refers to IPv4 address in only one instance and makes this reference with respect to a quit claim of the good will connected with and symbolized by them to the extent any such rights exist:

> … Mitel hereby agrees to quit claim to INTELLECTUAL PROPERTY PURCHASER any of Mitel's right, title and interest in and to the Domain Name <Gandalf.ca> and the registration therefore, together with the goodwill of the business connected with and symbolized by such Domain Name and the associated IPv4 134.22.0.0/16 and any associated trade dress…

13. On February 24, 2016, Michelle Whittington, Intellectual Property Counsel for MNC, provided a draft Domain Name Assignment Agreement to Corey Allen of Dividend Advisors, a Registered Investment Advisor. At this point, Colocation had not been identified as a contracting party. The draft had no reference to IPv4 addresses.

14. There were no discussions or communications in relation to the transfer of any IPv4 addresses at any time prior to the signing of the Contract.

15. In response to the draft Contract provided by MNC, Colocation, through Mr. Allen as its agent, provided a single draft in return, which included a specific reference to IPv4 addresses.

16. When the reference to IPv4 addresses was introduced, Colocation did not draw any attention to the revision, or claim that IPv4 addresses were to be transferred or quit claimed. At no time did Colocation, through Mr. Allen or otherwise, communicate any willingness to provide further consideration for a purported transfer or quit claim of IPv4 addresses.

17. It was not MNC's intent to transfer IPv4 addresses or to quit claim rights in

them.

18. The value of IPv4 addresses at issue vastly exceeds the $10,000 offered by Colocation for the Domain Name.

19. As the transfer of IPv4 addresses was never contemplated, MNC did not intend to warrant or represent any ownership of IPv4 addresses. A review of the American Registry for Internet Numbers reveals that IPv4 addresses at issue are not in MNC's name.

20. On information and belief, Colocation was aware at all relevant times that the IPv4 addresses at issue were not in MNC's name.

21. Colocation's allegation that it would be assigned the IPv4 addresses was first communicated after the Contract was executed.

22. On March 28, 2016, Samantha Walters, VP of Online Strategies for Colocation, wrote to Ms. Whittington in an email advising that the $10,000 had been placed in escrow, and provided the transaction number.

23. On March 28, 2016, in the same email, Ms. Walters stated that "our next step is to transfer the IP range from Mitel to Colocation…"

24. Ms. Whittington replied to Ms. Walter's email later the same day advising that there appeared to have been a miscommunication between the parties that would need to be resolved.

25. On April 11, 2016, Ms. Whittington wrote another email to Ms. Walters stating that MNC had agreed only to the transfer of "the domain name and all goodwill associated thereof [sic.]"

26. As of October 26, 2016, the Domain Name has not been transferred from MNC to Colocation and no monies have been exchanged between Colocation and MNC.

## COUNT ONE
**Breach of Contract by Colocation and Specific Performance**

29. The Contract is an agreement between MNC and Colocation that required Colocation to pay MNC $10,000 for the Domain Name and associated goodwill, but not IPv4 addresses.

30. MNC substantially performed under the Contract.

31. MNC has not yet transferred the Domain Name to Colocation is because Colocation has taken the incorrect position that the Contract requires MNC to transfer IPv4 addresses, plus MNC has not received $10,000 from Colocation.

32. Colocation's contention that MNC is required to transfer IPv4 addresses to Colocation is an anticipatory breach of the Contract.

33. MNC has been harmed by Colocation's breach in the amount of $10,000, plus costs, attorney fees, and interest accruing since Colocation's breach.

34. MNC is entitled to specific performance by Colocation; i.e., to pay MNC $10,000 for the Domain Name and associated goodwill, but not the IPv4 addresses.

35. MNC is entitled to an award of costs, attorney fees, and interest accruing since Colocation's breach.

## COUNT TWO (In the Alternative)
### Rescission or Avoidance

36. MNC incorporates by reference the prior paragraphs of this Counterclaim as if fully set forth herein.

37. There was no meeting of the minds with respect to the subject matter of the Contract.

38. MNC is entitled to rescind the Contract on the basis that no contract was formed.

39. Alternatively, the Alleged Contract is void due to uncertainty or mistake.

## DEMAND FOR JURY TRIAL

MNC demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, MNC prays for the following relief:

1. The Complaint be dismissed with prejudice, and that judgment be entered in favor of MNC and against Colocation.

2. That MNC be awarded damages for Colocation's breach of contract, and

25768258

- 8 -

1  that Colocation be ordered to pay MNC $10,000 for the Domain Name and associated
2  goodwill, but not the IPv4 addresses.

3       3.      Alternatively, a declaration that the Alleged Contract is void or rescinded.

4       4.      That MNC recover its costs, attorney fees, and pre- and post-judgment
5  interest.

6       5.      That MNC be granted any further relief to which it is entitled, even if it has
7  not been demanded by MNC in its pleadings, in accordance with Rule 54(c) of the Federal
8  Rules of Civil Procedure.

DATED this 16th day of February, 2017.

SNELL & WILMER L.L.P.


By: /s/ Jacob C. Jones
    David E. Rogers (#19274)
    David G. Barker (#024657)
    Jacob C. Jones (#029971)
    One Arizona Center
    400 E. Van Buren, Suite 1900
    Phoenix, Arizona  85004-2202
    Telephone: 602.382.6000
    Facsimile: 602.382.6070

Attorneys for Defendant
Mitel Networks Corporation

25768258

**Certificate of Service**

I hereby certify that on February 16, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record to:

Teresa H. Foster
Brier, Irish, Hubbard & Erhart, P.L.C.
2400 East Arizona Biltmore Circle
Suite 1300
Phoenix, AZ 85016
ctfiling@thfosterlaw.com
Attorney for Plaintiff

*s/* Jacob C. Jones