BRIER, IRISH, HUBBARD & ERHART, P.L.C.
2400 East Arizona Biltmore Circle, Suite 1300
Phoenix, Arizona 85016
Telephone (602) 522-3940
Facsimile (602) 522-3945
Teresa H. Foster, Of Counsel (010877)
For Court Filings/Pleadings:
ctfilings@thfosterlaw.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| COLOCATION AMERICA, INC., | Case No. 2:17-cv-00421-NVW |
| Plaintiff, | (Honorable Neil V. Wake) |
| v. | **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO (1) AMEND SCHEDULING ORDER AND (2) FOR LEAVE TO FILE AMENDED PLEADING AND JOIN NEW COUNTER-DEFENDANT** |
| MITEL NETWORKS CORPORATION, | |
| Defendant. | |

Defendant Mitel Networks Corporation's ("MNC") Motion to Amend the Scheduling Order, to Amend its Counterclaim, and to join a *new counter-defendant* at this late stage should be denied. MNC has requested to join a new counter-defendant and in the same paragraph alleges that it "is not requesting an extension of any deadline." Yet, the extended deadline for fact discovery is October 31, 2017.[1] MNC has failed to establish good cause to amend the Scheduling Order pursuant to FRCP Rule 16(b). Furthermore, its Motion to Amend under FRCP Rule 15(a)(2) is not made in good faith, is futile, and would prejudice Plaintiff Colocation America, Inc. ("Colocation").

---

[1] See Order entered August 18, 2017.

**I.     INTRODUCTION.**

This is a simple breach of contract case. MNC acknowledged this in the Joint Report filed on May 30, 2017 where it summarized the case as follows:

> This case primarily concerns a single issue, mainly the interpretation of a four-page Contract between the parties. The dispute is over whether the Contract, entitled "Domain Name Transfer Agreement," requires Defendant to assign 65,000 IPv4 addresses worth about $500,000-$1 million to Plaintiff.

Plaintiff agrees that this is a single issue dispute concerning the interpretation of a 4-page Contract (although Plaintiff disputes the value of the addresses).

The parties agree with the following facts:

Corey Allen Kotler, who is known both as Corey Allen and Corey Kotler, acting as an authorized agent of Colocation, approached MNC about this transaction. MNC negotiated the Agreement through him as the agent of Colocation. See Mitel's Original Counterclaim (DKT No. 5) at ¶¶13 & 15.

Michelle Whittington, intellectual property counsel for MNC, prepared the initial draft of the Agreement and at that time the identity of the principal (Colocation) was unknown.[2] At the request made on behalf of Colocation, the draft contained the purchase of the Domain Name as well as any potential intellectual property. See Corey Allen email to Michelle Whittington dated 2/24/16, attached as <u>Exhibit A</u> and MNC's Original Counterclaim (DKT No. 5) at ¶13. At the time, a question arose as to whether MNC owned anything because the assets being purchased were acquired through bankruptcy and MNC's ownership of the intellectual properties was uncertain. See Michelle Whittington deposition transcript at page 15, line 12 to

---

[2] MNC understood that Allen was acting on behalf of a principal but at that point in time did not know the identity of the principal.

page 16, line 16 ("15:12 to 16:16"), attached as <u>Exhibit B</u>.

MNC and Colocation executed an Agreement that included a quit claim for the following property:

> **A.   Quit Claim**.  For good and valuable consideration, payable as more particularly described herein, Mitel hereby agrees to quit claim to INTELLECTUAL PROPERTY PURCHASER any of Mitel's right, title and interest in and to the Domain Name <gandalf.ca> *and* the registration thereof, together with the goodwill of the business connected with *and* symbolized by such Domain Name ***and the associated IPv4 134.22.0.0/16*** and any associated trade dress, or other intellectual property intellectual property rights related thereto, to the extent any such rights exist. The quit claim transfer and assignment shall take effect as set forth herein upon INTELLECTUAL PROPERTY PURCHASER'S making the payment as provided for herein.

See Exhibit 1 to the Complaint (emphasis added).

Prior to execution of the Agreement, MNC was aware of the identity of the principal (Colocation). See Exhibit 1 to the Complaint. After the draft was revised to include the intellectual property designated as IPv4 134.22.0.0/16, Michelle Whittington, as intellectual property counsel, reviewed the transaction internally with MNC Vice President of business strategy. See Exhibit B, 18: 6-15.  At the time of the internal discussion, MNC chose to go ahead by quit claim, although knowing it may have considerable value (Exhibit B, 73: 7 – 18) (and aware they may be making a mistake).

In connection with the transaction, MNC and Colocation opened up an escrow (No. 84726, (the "Escrow") at escrow.com. See escrow.com transaction details for Escrow 84726 (Mitel 001668), attached as <u>Exhibit C</u>. Earlier escrows were opened but immediately cancelled. Upon opening Escrow, the escrow instructions submitted to escrow.com included the "transfer of the domain and the IPv4 block" (Exhibit C), specifically the Domain Name Gandalf.ca and IPv4 134.27.0.0/16. Thereafter as stated by the escrow.com history, both parties accepted the

instructions, and awaited buyer payment. See Exhibit C. Escrow.com paperwork further confirms that Colocation did deposit the purchase price via wire transfer and payment was approved by escrow.com on March 28, 2016. See escrow.com Transaction History attached as Exhibit D. The Escrow remains open.

The escrow.com instructions state: "When Seller notifies escrow.com that <gandalf.ca> and the IPv4 134.22.0.0/16 netblocks have been transferred, escrow.com will verify that the Buyer is a registrant on both 'WHOIS'". See Exhibit C.

The current issue before this Court is whether or not the Agreement includes the IPv4 addresses.

Now, MNC seeks to expand the litigation by including a new party and adding three new counts (Fraud: Intentional Misrepresentation and Concealment, Civil Conspiracy, and Aiding & Abetting). The proposed Amended Complaint suggests that the purpose of the amendment is to add tort damages, punitive damages, and to hold the agent (Allen aka Kotler) personally liable. Yet, for the reasons set forth below, all three of these claims are futile.

## II.  GOOD CAUSE DOES NOT EXIST TO AMEND THE SCHEDULING ORDER.

MNC must first show "good cause" for the amendment under FRCP Rule 16(b) and then it must demonstrate that the amendment is proper under FRCP Rule 15. *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 608 (9th Cir. 1992). In *Johnson*, District Court's denial of a motion to amend was affirmed with the Court concluding:

> [D]isregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation and its standards may not be short-circuited by an appeal to those of Rule 15.

*Id.* "Rule 16(b)'s "good cause" standard considers the diligence of the parties seeking

the amendment." 975 F.2d at 609.

MNC was aware of all relevant facts and claims before it filed its Original Counterclaim. It is unable to establish good cause to amend the Scheduling Order, as required under FRCP Rule 16(b). The only new "fact" that MNC discovered after filings its Original Counterclaim is that the agent's full name is Corey Allen Kotler, and he uses the shorter name Alllen in business because for many years he also worked as a professional actor and does not mix his business endeavors with his performance work. See Corey Kotler deposition transcript at 70 – 72, and page 90, attached as Exhibit E. He separates the two for good reason for if one were to Google the name "Allen Kotler" his name will appear in regard to many television productions, including having performed in what would appear to be a white diaper like garment, as well as performing in various late night skits, and he wisely separated his business endeavors from his love of theater.*Id.* Indeed, Mr. Kotler maintained a business address for commercial transactions, separate from his home address used for his acting career. See Paul Sigelman declaration, at ¶4, attached as Exhibit F.

Defendant has presented to the court false information as to both Mr. Kotler's address and the service of process. When service was first made at 433 N. Camden Dr., the process server was informed they knew Corey Allen, that he used that office but was not in. See Exhibit F at ¶7. Defendant falsely states that Mr. Sigelman said his name was Rick (Rick being the name of the receptionist who examined the papers for the process server). Yet, Defendants were given a copy of Mr. Sigelman's declaration setting the facts straight on August 22, 2017 (see email transmittal, attached as Exhibit G), a full month before the motion to amend was filed and before the deposition of Corey Allen Kotler was taken (on September 7, 2017).

Corey Kotler was also served at his home, the same address used in his acting work, and

thought that the unknown party accosting him on his way to his front door was attempting to mug him, and was not refusing to take a legal document. See Exhibit F 31:21 – 34:1. In any event, immediately thereafter, Mr. Kotler contacted Mr. Sigelman, whose office is occasionally used by Kotler and many others parties i.e. lawyers and individuals because of its convenient Beverly Hills location. See Exhibit F at ¶5. Mr. Sigelman, who was not yet counsel in this case (having only made appearance in this case on September 5, 2017), immediately contacted Defendant's counsel to inform them that Mr. Kotler would appear and produce documents See Exhibit F at ¶5.

Mr. Kotler's full name is irrelevant. MNC knew during the contract negotiations that Allen was an agent of Colocation and MNC was entering into the contract with Colocation. Allen's true name does not change anything. Furthermore, MNC's argument that the "amended pleading does not require additional discovery or an extension of any case deadlines" is false. MNC seeks to bring in a new party who will not have time to file an answer prior to the discovery deadline of October 31, 2017. Good cause does not exist to modify the Scheduling Order.

## III.   THE MOTION TO AMEND WAS NOT MADE IN GOOD FAITH, IS FUTILE, AND WOULD PREJUDICE COLOCATION.

Leave to amend under FRCP Rule 15(a) will be denied if the Motion to Amend is made in bad faith, for purpose of causing undue delay, would cause prejudice to the opposing party, or would be futile. *Griggs v. Pace Am. Group, Inc.,* 170 F.3d 877, 880 (9th Cir. 1999). As discussed in Section II above, an amendment at this stage to bring in a third party would cause undue delay and would cause prejudice to Colocation. Discovery is virtually complete and the amended discovery deadline is just a few weeks away.

### A. MNC's Motion to Amend is futile because it fails to state a claim upon which relief can be granted.

MNC's proposed Amendment fails to state a claim upon which relief can be granted as required by FRCP Rules 8(a)(2) & 12(b)(6). Furthermore, because the proposed Amendment is grounded in alleged fraudulent conduct, it is required to satisfy the heightened pleading standard of FRCP Rule 9(b) ("A party must state with particularity the circumstances constituting fraud or mistake"). See also *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir. 2003). As set forth below, the proposed Amended Counterclaim does not meet this standard. MNC does not allege any particular knowledge, incentive, or pattern of conduct on behalf of Kotler that would make these fraudulent claims plausible.

### B. Naming Allen (aka Kotler) as a defendant is futile because he was acting on behalf of Disclosed Principal (Colocation) and therefore is not personally liable.

MNC admits that it was aware that Allen was acting as Colocation's agent when it negotiated the Agreement between MNC and Colocation. See Original Counterclaim at ¶¶13 & 15. An agent that negotiates a contract on behalf of a principal avoids personal liability if the agent discloses both his agency and the identity of the principal. *Myers-Lieber Sign Co. v. Weirich,* 2 Ariz. App. 534, 536, 410 P.2d 491, 493 (1966). See also *Restatement (Second) of Agency,* §§ 320-322 (1958).

Colocation, as the principal, is liable for any actions of its agent. MNC knows that Kotler has no independent liability (and knows that any judgment against an unemployed actor would most likely be uncollectable) which suggests that the only reason for seeking to add Kotler as a party at this late stage is to cause undue prejudice to Colocation.

### C. Proposed Count III (fraud: intentional misrepresentation and concealment) alleges tort claims that are barred by the Economic Loss Doctrine.

MNC seeks to turn this simple breach of contract case into a claim for punitive damages by asserting tort claims. MNC admits that it entered into the Agreement. And then alleges breach of contract and tort claims based on the same alleged misrepresentations. Such misrepresentation claims that are actually a claim that a party breached its contractual duties are barred by the economic loss rule. *Wojtunik v. Kealy,* 394 F. Supp. 2d 1149 (D. Ariz. 2005). There, the Court dismissed misrepresentation claims, stating:

> Count VII of the amended complaint alleges a negligent misrepresentation claim solely against Joseph Kealy stemming from his alleged misrepresentations concerning IFC's financial condition and future prospects. Notwithstanding that Arizona recognizes a tort claim for negligent misrepresentation as set forth in Restatement (Second) of Torts § 552, Kealy argues, and the Court agrees, that negligent misrepresentation claim is barred as a matter of law by Arizona's economic loss rule because it is in essence based on alleged non-performance under the Merger Agreement and is thus in reality a breach of contract claim masked as a tort claim.

*Id.* at 1171 (footnote omitted).

Here, MNC's misrepresentation and other tort claims are, in reality, a breach of contract claim masked as tort claims. None of the Counter-defendants here owed MNC a separate "duty" independent of the Agreement. No such duty existed in this arms-length business transaction and therefore the economic loss rule therefore bars tort claims. See *Carstens v. City of Phoenix,* 206 Ariz. 123, 75 P.3d 1081 (App. 2003); *Flagstaff Affordable Housing Ltd. P'ship v. Design Alliance Inc.,* 223 Ariz. 320, 223 P.3d 664 (Ariz. 2010) (en banc).

Here, there are no facts alleged to support an independent duty. Tort damages for breach of contract – which is exactly what MNC seeks - are not available unless there is a "special relationship" between the parties. This term was defined in *Burkons v. Ticor Title Ins. Co.,* 168

Ariz. 345, 355, 813 P.2d 710, 720 (1991) (citations omitted).

> Among the special relationships in which such tort damages for breach of contract may be available are those undertaken for something more than or other than commercial advantage, such as the procurement of service, professional help, security, or other intangibles. Also, the assessment of tort damages for breach of contract is a device most often allowed in situations in which the rule restricting recovery to contract damages would promote breach of the contract rather than its performance.
>
> With these principals in mind, we turn to the facts of this case. Burkons makes no argument, and we can conceive of none, why the traditional contract damage rule would not provide adequate compensation under the facts of this case.

There is no special relationship between MNC and Colocation. Furthermore, MNC is unable to establish why the traditional contract damage rule would not provide adequate compensation in this case.

In *Sherman v. Premier Garage Systems, LLC* (CV10-0269-PHX- MHM, D. Ariz July 30, 2010), the Court dismissed intentional misrepresentation/fraud and negligent misrepresentation claims (regarding potential profits and quality of products) based on the economic loss rule where the plaintiff franchisee had also sued the defendant franchisor to rescind the franchise agreement. Likewise, MNC has countersued Colocation for breach of the Agreement and the economic loss doctrine bars the tort claims based on the same conduct. MNC is unable to establish any special relationship creating a duty or any damages that are separate and distinct from the damages resulting from Colocation's alleged breach of the Agreement and therefore these claims are barred.

  **D.** **Counts IV & V are derivative claims that are futile because of the Economic Loss Rule and the laws governing agency.**

  1. <u>Count IV for civil conspiracy fails to state a claim because a principal cannot conspire with its agent</u>.

Count IV seeks to raise a claim for civil conspiracy against Colocation (the principal) and Kotler (the agent). A civil conspiracy cannot occur between a principal and an agent. "For a civil conspiracy to occur, two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 498, 38 P.3d 12, 36 (2002) (citing *Baker v. Stewart Title & Trust of Phx.,* 197 Ariz. 535, 542, 5 P.3d 249, 256 (App. 2000)).

Civil conspiracy is a "derivative tort[] for which a plaintiff may recover only if it has adequately pled an independent primary tort." *AGA S'holders, LLC v. CSK Auto, Inc.,* 589 F.Supp.2d 1175, 1192 (D. Ariz. 2008). "[T]here is no such thing as a civil action for conspiracy; the action is one for damages arising out of acts committed pursuant to the conspiracy, and damage for which recovery may be had in such civil action is not the conspiracy itself but the injury to plaintiff produced by specific overt acts." *Perry v. Apache Junction Elementary Sch. Dist. No. 43 Bd. Of Trs.,* 20 Ariz. App. 561, 564 P.2d 514, 517 (App. 1973).

"[A] claim for civil conspiracy must include an actual agreement proven by clear and convincing evidence." *Wells Fargo*, 201 Ariz. at 499, 38 P.3d at 37. MNC is unable to establish any agreement between "two or more people."

The "two or more people" requirement of a conspiracy is not satisfied by proof that a principal (Colocation) conspired with its agent (Kotler) that acted within the scope of his agency.

As a general rule, "agents and employees of a corporation cannot conspire with their corporate principal or employer when acting in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Perry,* 20 Ariz. App. At 564

514 P.2d at 517. See also *Morrow v. Bos. Mut. Life Ins. Co.,* 2007 WL 3287585, *9 (D. Ariz. Nov. 2, 2007) ("agent is not liable for conspiring with the principal when the agent is acting in an official capacity on behalf of the principal"). Colocation and MNC have admitted that Kotler was acting within the scope of his agency in his negotiations with MNC. See proposed Amended Counterclaim at ¶¶9-13, 30, 34, 183-185. Furthermore, MNC has actually alleged in ¶228 of the proposed Amended Counterclaim that "Colocation, as the principal, is jointly liable for the harm and damages caused by its agent, Kotler."

For the forgoing reasons, Count IV fails to state a claim of civil conspiracy between Colocation and its authorized agent, Kotler.

2. Count V (aiding and abetting) likewise fails to state a claim.

As set forth above, Colocation is already liable for any acts of its authorized agent (Kotler) in connection with MNC's existing Counterclaim for breach of contract. The new separate claim of aiding and abetting fails to state a claim because it is barred by the Economic Loss Doctrine and because Colocation is already vicariously liable for the actions of its authorized agent.

Both civil conspiracy and aiding and abetting are derivative actions and they are legally exclusive. If there is an actual agreement to participate in a tort (civil conspiracy) then there is more than just a knowing action by Colocation that substantially aids in Kotler committing a tort (aiding and abetting).

Like civil conspiracy, "aiding and abetting [is a] derivative tort for which a plaintiff may recover only if it has adequately pled an independent primary tort." *Agas' Holders,* 589 S.Supp.2d at 1192.

To establish its claim for aiding and abetting against Colocation[3], MNC must prove the following three elements by a preponderance of the evidence:

1. Kotler engaged in conduct (fraud, intentional misrepresentation, and fraudulent concealment) for which he would be liable to MNC;

2. Colocation was aware that Kotler was going to engage in such conduct; and

3. Colocation provided substantial assistance or encouragement to Kotler with the intent of promoting the conduct.

*Wells Fargo*, 201 Ariz. at 490 n. 16, 38 P.3d at 28 n. 16; *Restatement (Second) of Torts* § 876(b) (1979). Furthermore, to establish aiding and abetting fraud MNC must plead the misrepresentation or omission with particularity. *Allstate Life Ins. Co., v. Robert W. Baird & Co., Inc.,* 756 F.Supp.2d 1113, 1165 (D. Ariz. 2010); ARCP Rule 9(b). MNC has failed to plead the fraudulent conduct with particularity.

## IV.   CONCLUSION.

MNC's Motion to Amend should be denied. MNC has failed to establish "good cause" to amend the Scheduling Order pursuant to Rule 16(b). Likewise, its Motion to Amend under Rule 15(a) is not made in good faith, will cause undue delay and prejudice, and the proposed amendments are futile.

---

[3] Count V (aiding and abetting) is only against Colocation (Kotler is not a party to this Count).

DATED: October 10, 2017.

                                            BRIER, IRISH, HUBBARD & ERHART, P.L.C.

                                            /s/ Teresa H. Foster
                                        Teresa H. Foster, Of Counsel
                                        2400 E. Arizona Biltmore Circle, Ste 1300
                                        Phoenix, AZ 85016
                                        Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of October, 2017, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and emailed a copy same date to:

David E. Rogers
David G. Barker
Jacob C. Jones
SNELL & WILMER, LLP
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2202
drogers@swlaw.com
dbarker@swlaw.com
jcjones@swlaw.com


/s/ Harry Stanford