David E. Rogers (#19274)
David G. Barker (#024657)
Jacob C. Jones (#029971)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: drogers@swlaw.com
         dbarker@swlaw.com
         jcjones@swlaw.com

Attorneys for Defendant
Mitel Networks Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Colocation America, Inc., | Case No. CV-17-00421-PHX-NVW |
| Plaintiff, | **MITEL NETWORKS CORPORATION'S REPLY IN SUPPORT OF MOTION TO (1) AMEND SCHEDULING ORDER, AND (2) FOR LEAVE TO FILE AMENDED PLEADING AND JOIN NEW COUNTERDEFENDANT** |
| v. | |
| Mitel Networks Corporation, | |
| Defendant. | |

**I.     Introduction.**

Good cause exists to modify the Scheduling Order under Fed. R. Civ. P. 16(b) to permit Mitel Network Corporation's ("MNC's") proposed amended pleading (Doc. 35-1, Ex. 1) because MNC has acted diligently. *Pac. Sci. Energetic Materials Co. (Arizona) LLC v. Ensign-Bickford Aerospace & Def. Co.*, 281 F.R.D. 358, 360 (D. Ariz. 2012) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).[1]

---

[1] Colocation cites *Johnson* (Doc. 37 at 4), which MNC agrees states the Rule 16(b) "diligence" standard. *Johnson* is distinguishable from this situation, however, because there the plaintiff sought to join a party four months after the joinder cut-off date, ignoring at least three instances where the defendant expressly indicated that the proper defendant had not been named. 975 F.2d at 607–609. Those facts are not present here.

4839-7094-9457

1   The Court should grant MNC's Motion to Amend (Doc. 35) because "justice so requires."
2   Fed. R. Civ. P. 15(b)(2)[2]; *Pac. Sci. Energetic Materials*, 281 F.R.D. at 360.[3]
3         Colocation concedes that MNC: (1) deposed Colocation on August 22, 2017,
4   (2) deposed Kotler[4] on September 7, 2017, (3) requested that Colocation stipulate to the
5   amended pleadings on September 14, 2017, and (4) filed its Motion on September 21,
6   2017.  Colocation claims, however, that there is no "good cause" to amend the scheduling
7   order in part because "MNC was aware of all relevant facts and claims before it filed its
8   Original Counterclaim."  Doc. 37 at 5 ¶ 1.  But, Colocation provides no specifics and does
9   not dispute that between August 22, 2017 (Colocation's deposition) and September 7,
10  2017 (Kotler's deposition), MNC learned (or confirmed) the facts listed as bullet points in
11  Doc. 35 at 6:4–7:14.  Among those facts are: (1) Colocation knew Kotler's real name and
12  that he was using a false name ("Corey Allen") to communicate with MNC;
13  (2) Colocation's attorney, Paul Sigelman, knew that Kotler was using a false name to
14  communicate with MNC; (3) Colocation and its attorneys misrepresented Kotler's true
15  name and address in Colocation's: Initial Disclosures, Amended Initial Disclosures, and
16  Interrogatory Responses; (4) Colocation's sole purpose in having Kotler contact MNC
17  was to acquire IPv4 addresses, which was misrepresented in Kotler's emails to MNC;
18  (5) Colocation testified that it would never conduct business with a person using a false
19  name; (6) Kotler testified (correctly) that MNC would not have engaged in discussions if
20  it knew his true identity; and (7) Colocation's attorney's email on August 10, 2017 stated,

---

[2] Colocation cites *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 881 (9th Cir. 1999) to allegedly support its Opposition, but *Griggs* supports MNC's Motion.  The *Griggs* Court reversed a denial of leave to amend because the amendment was not futile and there was no evidence of bad faith.

[3] MNC objects to Colocation's Opposition (Doc. 37) because it was filed late.  MNC filed its Motion on September 21, 2017, and Colocation's Opposition was due 14 days later, on October 5, 2017.  LRCiv 7.2(c); *see* Fed. R. Civ. P. 6(d) (amendments effective December 1, 2016, removed 3 extra days for electronic service).  Colocation did not file its Opposition until October 10, 2017.

[4] Corey Allen Kotler, who acted as Colocation's agent when communicating with MNC.

4839-7094-9457

- 2 -

1  untruthfully, that "we learned yesterday that Allen and Kotler are one in the same" and
2  that Kotler uses "Corey Allen" as a stage name.

3      Colocation and Kotler committed fraud in the inducement against MNC and
4  conspired to mislead MNC.  MNC acted diligently once it learned the facts supporting
5  Colocation's and Kotler's fraud.  Justice requires that Colocation and Kotler be held
6  accountable.

    **II.**    **Colocation Intentionally Misrepresented Kotler's Identity when Negotiating with MNC and Again in this Litigation.**

9      Colocation does not deny that Kotler intentionally used a false name when
10 communicating with MNC or that Colocation and its attorney (Sigelman) knew he was
11 using a false name.  If MNC had known either Kotler's true identity or that Kotler was
12 using a false name, it would not have conducted business with him.  Doc. 35 at 3:26–28;
13 Ex. 1[5] ¶ 156.  Colocation testified that it would not do business with someone using a
14 false name, and Kotler testified that he purposely used the false name "Corey Allen,"
15 because if MNC knew his real name, "Corey Kotler," MNC would not have done business
16 with him.  Doc. 35 at 3:17–24.[6]  MNC did not know the full extent of Colocation's and
17 Kotler's deception until taking Colocation's deposition on August 22, 2017 and Kotler's
18 deposition on September 7, 2017.  *Id.* at 3:12–28.

    **III.**    **Kotler Testified that He Has Never Had an Office at the Beverly Hills Address.**

21     Kotler's address is 2385 Roscomore Road, Unit E11, Los Angeles, California
22 90077.  It is not 433 North Camden Drive, Suite 970, Beverly Hills, California 90210, as
23 Colocation and its attorneys represented.  Doc. 35 at 4:4–5:22.  Colocation and Kotler
24 misrepresented Kotler's name and address when communicating with MNC, and

---

[5] Exhibits 1-10 referenced in this Reply were filed with the Motion to Amend (Doc. 35) and included in Doc. 35-1. Exhibits 11-13 are attached to this Reply.

[6] Colocation's unsupported lawyer arguments (Doc. 37 at 5–6) about Kotler's true identity being irrelevant are not evidence, contradict Colocation's and Kotler's testimony, and should be accorded no weight.

Colocation misrepresented the address in its Initial Disclosures, Amended Initial Disclosures, and Interrogatory Responses. *Id.* Colocation, however, now implies that it provided the correct address for Kotler, and that MNC's statements and evidence to the contrary are "false." Doc. 37 at 5. But, Colocation relies only on the carefully-crafted declaration of attorney Sigelman, which fails to support Colocation's position. Sigelman declares that Kotler "*maintained* a business address for commercial transactions separate from his home address used for his acting career." Doc. 37 at 5 (emphasis added). Kotler testified that neither he nor the now defunct Dividend Advisors, LLC (Ex. 2 at 12:22–23) ever had an office at the Beverly Hills address. Ex. 11 at 91:13–18. Kotler also testified that he used Sigelman's office only to receive mail and stopped doing so *when he stopped dealing with Colocation*, which was in 2016. Ex. 2 at 87:25–88:3; Ex. 11 (Kotler Dep.) at 88:24–89:1 ("It's cheaper than a P.O. Box"). So, Colocation's representation to this Court that, in its 2017 Initial Disclosure, 2017 Amended Initial Disclosure, and 2017 Interrogatory Responses, it provided the "correct" address for the non-existent "Corey Allen" is objectively untrue.

### IV. Colocation Has No Evidence to Argue About what Kotler Might Do.

Colocation alleges that Kotler would have to take discovery if he were named as a party. Doc. 37 at 6. Colocation provides no evidence supporting this allegation, does not identify any required discovery, does not represent Kotler, and has provided no declaration by Kotler. Kotler is aware of the facts in this case, was an active participant in the events, and has already been deposed. *See* Doc. 35 at 6–7.

### V. Kotler Is Personally Liable for Fraud in the Inducement.

Colocation's contention that Kotler lacks personal liability for his own torts (Doc. 37 at 7 ¶ 1) is unsupported and incorrect. A corporate agent *is* personally liable for torts, including fraud, committed on behalf of a corporation.[7] *Warner v. Sw. Desert Images,*

---

[7] In citing Arizona law, Colocation appears to agree that Arizona law applies here, as does MNC.

*LLC*, 218 Ariz. 121, 127 (Ct. App. 2008) (reversing dismissal of agent: "It is well-established law that an agent will not be excused from responsibility for tortious conduct [merely] because he is acting for his principal."; liability is joint and several) (citations omitted).

Colocation's argument was expressly rejected in *Inman v. Wesco Ins. Co.*, No. CV-12-02518-PHX-GMS, 2013 WL 2635603, at *3 (D. Ariz. June 12, 2013), which held that long-standing principles of agency establish that an agent is subject to liability for his tortious conduct, even if it was within the agent's scope of employ. *Id.* (citing *Warner*, 281 Ariz. at 127).

Colocation cites *Myers-Lieber Sign Co. v. Weirich,* 2 Ariz. App. 534, 535 (1966), but *Myers-Lieber* dealt with an agent's personal liability for *contract* claims, and not a tort, such as fraud in the inducement as is asserted here against Kotler. Ex. 1 at 22–25. The Contract[8] at issue in this case provides no remedy for Kotler or Colocation intentionally misrepresenting Kotler's identity or Colocation's true intent to acquire IPv4 addresses.

### VI. The Economic Loss Doctrine Does Not Apply to MNC's Fraud in the Inducement Claim.

Contrary to Colocation's contention (Doc. 37 at 8–9), the Economic Loss Doctrine ("ELD") does not bar a fraud in the inducement claim that seeks *rescission of the contract*, which MNC's proposed fraud count seeks. Ex. 1 at 21–22. *Int'l Franchise Sols. LLC v. BizCard Xpress LLC*, No. CV13-0086 PHX DGC, 2013 WL 2152549, at *3 (D. Ariz. May 16, 2013) ("Because the amended counterclaim requests the remedy of rescission, the economic loss rule may not bar BizCard's [fraud in the inducement] claim.") (citing *Maricopa Inv. Team, LLC v. Johnson Valley Partners LP*, No. 1 CA-CV 12-0047, 2012 WL 5894849, at *2 (Ariz. Ct. App. Nov. 23, 2012) (ELD "may be a bar in a case where the claimant does not seek to rescind or reform the contract induced by

---

[8] The Domain Name Assignment Agreement between MNC and Colocation. Compl. Ex. 1.

fraud")).

Colocation's cases are distinguishable because they all deal with alleged false statements made *in the contract* itself.[9,10] At a minimum, misrepresenting or concealing Kotler's identity is not recited or incorporated in the Contract, so the ELD does not apply. *See Cook v. Orkin Exterminating Co.*, 227 Ariz. 331, 334–35 (Ct. App. 2011) (termite company misled the customer about its ability to kill termites and promised to repair damage, *but those were promises made in the contract*); *Gilbert Unified Sch. Dist. No. 41 v. CrossPointe, LLC*, No. CV 11-00510-PHX-NVW, 2012 WL 1564660, at *4–6 (D. Ariz. May 2, 2012) (alleged false statements "*incorporated into the [contract] as contractual promises for which there are contractual remedies if breached*" (emphasis added)); *Wojtunik v. Kealy*, 394 F. Supp. 2d 1149, 1171 n.6 (D. Ariz. 2005) (plaintiff allegedly misrepresented "the company's financial condition and future prospects," *which were a breach of the contract that contained a warranty that the financial information was correct*); *Sherman v. PremierGarage Sys., LLC*, No. CV 10-0269-PHX-MHM, 2010 WL 3023320, at *4 (D. Ariz. July 30, 2010) (false statements to a franchisee were regarding the profits Plaintiffs' franchises would generate and the quality of floor-coating materials, *which were risks with specified remedies explicitly in the contract*). Further, contrary to Colocation's assertion (Doc. 37 at 9), the plaintiff in *Sherman* never sought to *rescind* the Contract.

### VII.   Colocation Conspired with Kotler.

"For a civil conspiracy to occur two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395*

---

[9] Colocation relies on *Carstens v. City of Phoenix*, 206 Ariz. 123 (Ct. App. 2003), but that was overruled in 2010 by the Arizona Supreme Court in *Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 Ariz. 320, 325 (2010). Colocation also cites *Flagstaff*, but that is distinguishable because it did not address fraud. 223 Ariz. at 329.

[10] Colocation also relies on *Burkons v. Ticor Title Ins. Co.*, 168 Ariz. 345, 355 (1991), but *Burkons* does not deal with the ELD and is irrelevant.

4839-7094-9457
- 6 -

*Pension Tr. Fund*, 201 Ariz. 474, 498 (2002), as corrected (Apr. 9, 2002).  Colocation relies on *Wells Fargo* (Doc. 37 at 10), but there the court found there was no separate agreement to commit a tort.  201 Ariz. at 499.  Here, MNC has pled a separate agreement between Colocation and Kotler to commit the underlying tort of fraud.  Ex. 1 ¶¶ 221–222.  MNC's proposed amended pleading alleges, "On information and belief, Colocation agreed with Kotler to accomplish the unlawful purpose of depriving MNC of any rights to the IPv4 addresses referenced in the Contract through fraud and deceit." *Id.* ¶ 222.

Colocation's argument that Kotler and Colocation cannot be co-conspirators misstates the law.  Arizona recognizes conspiracies between principals and their agents.  *Morrow v. Boston Mut. Life Ins. Co.*, No. CIV. 06-2635PHXSMM, 2007 WL 3287585, at *9 (D. Ariz. Nov. 5, 2007) ("no Arizona authority has been found to support Defendants' contention that principals and agents cannot, as a matter of law, be co-conspirators").  Colocation's reliance on *Perry v. Apache Junction Elementary Sch. Dist. No. 43 Bd. of Trustees*, 20 Ariz. App. 561, 563 (1973) is misplaced because the court there *reversed dismissal of the claims* against a principal (the school) and its agents (the school board members) for conspiracy.  *Id.*  The court also noted there were "no facts alleged indicating that appellees were acting for their individual advantage."  *Id.*  In contrast to *Perry*, Kotler was acting for his individual advantage, because he:  (1) was being paid by Colocation to acquire IPv4 addresses, (2) could have made tens of thousands of dollars more if MNC owned the IPv4 addresses (which it does not) and assigned them, and (3) misrepresented his name and the nature of Colocation's interest to mislead MNC.  Doc. 35 at 3:17–28; Ex. 1 ¶¶ 9–15, and Ex. A.

### VIII. The New Counts Relate to the Same Subject Matter as the Existing Counts and Defenses.

Colocation does not dispute that the New Counts of Fraud (Intentional Misrepresentation and Concealment), Civil Conspiracy, and Aiding and Abetting, relate to defenses and counts already in this litigation (*i.e.*, MNC's affirmative defenses of fraud and mistake, and MNC's counts for breach of contract and no meeting of the minds).

Doc. 5; Doc. 35 at 9:7–14.  Regarding aiding and abetting, MNC has plead at least the independent primary tort of fraud. Ex. 1 at 22–25; *see AGA Shareholders, LLC v. CSK Auto, Inc.*, 589 F. Supp. 2d 1175, 1192 (D. Ariz. 2008) (derivative claims dismissed only because underlying claim for tortious interference failed as a matter of law).

### IX. Any Alleged Prejudice Was Caused by Colocation's and Kotler's Misrepresentations.

No trial date has been set, the dispositive motion deadline is not until November 29, 2017, and Colocation provides no reason as to how it would be prejudiced by amending the pleadings.  MNC acknowledges that Kotler's time to answer the Amended Complaint will be after the current discovery cut-off date of October 31, 2017.  Colocation (and its attorneys) and Kotler, however, caused any delay by intentionally misleading MNC as to Kotler's true name and address. Doc. 35 at 4:4–8:4.  Colocation and its attorneys[11] misrepresented Kotler's name and address in Colocation's Initial Disclosures, Amended Initial Disclosures, and Interrogatory Responses.  Colocation and its attorneys received copies of MNC's subpoenas for the nonexistent "Corey Allen" at the false Beverly Hills address yet said nothing. Doc. 35 at 4:5–5:22.  They received copies of MNC's subpoenas to three property managers inquiring about "Corey Allen" and Dividend and still said nothing.  *Id.*  They still said nothing to correct the record when they received copies of the subpoenas to Corey Kotler at the correct Los Angles address.  *Id.* at 5:10–16.  Only after Kotler was served did Colocation's attorneys finally speak up on July 31, 2017, and their August 10, 2017 email still falsely stated that they "learned yesterday" that Kotler and Allen were one in the same, and that Kotler uses "Allen" as a stage name.  *Id.* at 6:16–20.

---

[11] Colocation's owner and 30(b)(6) witness testified that he did not include the false name "Corey Allen" in the documents. Ex. 12 (Colocation 30(b)(6) Dep.) at 131:23–132:2 ("First thing first, I never produced this document. My legal has done so. And, again, that's what they put down."); *see also* Ex. 12 at 129:19–133:11.  So, according to Colocation, its attorneys were responsible.

4839-7094-9457

- 8 -

### X. Colocation's Other Arguments Are Irrelevant and/or Unsupported.

**(1)** As to whether Mr. Sigelman or the independent process server is telling the truth (Doc. 37 at 5 ¶ 2), the process server is an independent, third party with no stake in this litigation and no reason to misrepresent. On his own volition, he identified Mr. Sigelman from a photo on the internet. Ex. 5 ¶ 12. Mr. Sigelman, on the other hand, has been fully aware of and assisted in Colocation's fraud. He knew that Kotler was using a false name to communicate with MNC, knew that Colocation's disclosures and interrogatory responses were false, knew there was no "Corey Allen" to be deposed, and his own declaration (Doc. 37-1, Ex. F ¶ 5) states he was aware of the subpoenas served on "Corey Allen" and Dividend at his office. Yet, he did nothing to inform MNC of "Corey Allen's" real name or address. Further, Colocation, represented by Mr. Sigelman, engaged in discovery misconduct in a related California lawsuit involving the Contract at issue here. That led to Colocation being sanctioned for nearly $40,000 (which Colocation has not paid). *See* Ex. 13 (Order in *Colocation America, Inc. v. Mitel Networks Corporation*, Case No. BC619569 (California Superior Court, County of Los Angeles) (awarding fees "incurred in challenging the various subpoenas issued and served in bad faith and without substantial justification").

**(2)** Colocation provides no evidence proving that Kotler is unemployed or any monetary judgement is "uncollectable." *See* Doc. 37 at 7 ¶ 3. Moreover, that is irrelevant to amending the pleadings, which is the issue before this Court.

**(3)** The Escrow.com statement (Doc. 37-1 at Ex. C) was written solely by Colocation's owner and 30(b)(6) witness, Albert Adhoot. It was apparently an after-the-fact attempt to modify the Contract, had no consideration, and the statement was not accepted by MNC.

### XI. Conclusion.

MNC now knows this dispute is about dishonest people committing fraud using false names and addresses. Colocation and Kotler also misrepresented to MNC from the start about their true intention, which was to acquire IPv4 addresses. Colocation and its

lawyers have misrepresented information in disclosure statements and interrogatory responses, and Kotler attempted to evade service.  Colocation and its lawyers stood by and did nothing to correct the record as MNC subpoenaed numerous parties (seven total, including the non-existent company, Dividend) trying to locate "Corey Allen."  Colocation was already sanctioned for discovery misconduct in a related case (and has not paid the sanction).  MNC's Motion (Doc. 35) should be granted to add counts of fraud and common-law conspiracy against Colocation and Kotler, and aiding and abetting against Colocation.

DATED this 17th day of October, 2017.

SNELL & WILMER L.L.P.

By: s/ *Jacob C. Jones*
David E. Rogers (#19274)
David G. Barker (#024657)
Jacob C. Jones (#029971)
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070

Attorneys for Defendant
Mitel Networks Corporation

**<u>Certificate of Service</u>**

I hereby certify that on October 17, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record to:

Teresa H. Foster
Brier, Irish, Hubbard & Erhart, P.L.C.
2400 East Arizona Biltmore Circle
Suite 1300
Phoenix, AZ 85016
ctfiling@thfosterlaw.com

Paul Stephen Sigelman
Sigelman Law Corporation
433 N Camden Dr., Suite 970
Beverly Hills, CA  90210
paul@sigelmanlaw.com

Attorney for Plaintiff


 s/ *Jacob C. Jones*