BRIER, IRISH, HUBBARD & ERHART, P.L.C.
2400 East Arizona Biltmore Circle, Suite 1300
Phoenix, Arizona 85016
Telephone (602) 522-3940
Facsimile (602) 522-3945
Teresa H. Foster, Of Counsel (010877)
For Court Filings/Pleadings:
ctfilings@thfosterlaw.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| COLOCATION AMERICA, INC., | Case No. 2:17-cv-00421-NVW |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO (1) EXTEND DISCOVERY BY TWO MONTHS, AND (2) EXTEND THE DISPOSITIVE MOTION DEADLINE** |
| v. | **(Second Request)** |
| MITEL NETWORKS CORPORATION, | |
| Defendant. | |

Defendant MNC Networks Corporation's ("MNC") Motion to Extend Discovery and the Dispositive Motion Deadline at this late stage should be denied. MNC has not been injured by Plaintiff Colocation America Corporation ("Plaintiff" or "Colocation") responses to discovery, which were exchanged by the due date. Plaintiff incorporates its October 10, 2017 Response to Defendant's Motion to Amend the Scheduling Order and its Counterclaim (Docket #37).

## I.    Background

Contrary to what the Defense alleges, it is Mitel ("MNC") that is "at it again." Its motion is another attempt to deflect the court's attention from the controlling facts of the case - MNC's conduct in entering the Contract with Colocation and then breaching the Contract.

The gist of this action is MNC's knowingly undertaking the risk of mistake under the terms of the Contract it drafted, reviewed, entered and then re-affirmed in escrow instructions.

The transaction took place after Plaintiff's email recognized that MNC may not own the subject assets, "you may or may not have rights as a result of the old bankruptcy proceedings." See **Ex. A (**copy of February 28, 2016 email from MNC's own records). Years ago when MNC purchased a bankrupt internet business, MNC specified the purchase of a "domain name", but did not express the IPV4 addresses associated with that name as part of the purchase. See **Ex. B** (copy of the deposition transcript of MNC counsel Michelle Whittington at pg. 64, lines 8-21 ("64/8-21").

Indeed, before entering the Contract, MNC's intellectual property counsel, Michelle Whittington investigated with a colleague the ownership of the domain name on the American Registry of Internet Numbers "WHOIS" database.  See **Ex. B** at 17/2-15. The WHOIS database identifies not only domain name registered ownership but also can provide IPV4 address registered ownership. See **Ex. C** (ARIN records).  Whittington did not use the database for the latter determination. Therefore the Contract went forward on a quit claim basis, both parties taking the risk that they did not know if MNC owned the IPV4 block that was being sold, or what was its value. See **Ex. D (**copy of the quit claim contract)

Whittington reviewed the Contract language for the transaction (which provided that the quit claim was for the domain, its goodwill, and the associated IP addresses) with MNC's VP of Business Strategy, Christian Szpilfogel,.  See **Ex. B**, at 18/1-14. It was only after those internal discussions that the contract was executed by MNC's General Counsel in Ottawa, Canada, on March 18, 2016.  See **Ex. D,** pg 3.

MNC accepted the escrow instructions for "transfer of the domain *and the IPV4 block in this transaction*" sent by the escrow holder to "Michelle.Whittington@mitel.com". See **Ex. E** (records from escrow.com).  On March 25, 2016, escrow.com acknowledged buyer and seller's

acceptance of the express instructions, and as recorded by escrow, "both parties have accepted the offer, awaiting buyer payment." See **Ex. E** (document # MITEL 001677).

It was not until after the execution of the contract that MNC asserted a "mistake." See **Ex. F** (Whittington email dated March 28, 2016). This occurred after MNC determined that it did in fact own the IPV4 block and/or it has a value far higher than it thought at the time of signing the Contract. MNC then refused to honor the deal. It is settled under Arizona law that a party bears the risk of mistake when they are aware at the time the contract is made that they have only limited knowledge to the facts to which the mistake relates, but treats that knowledge sufficient, so that the conscious ignorance does not excuse them from a contract made, *Nelson v. Rice,* 198 Ariz. 563, 566, 12 P. 3d 238, 241 (2000).

Hence MNC seeks to divert to extrinsic allegations, such as a flaw in Colocation filed corporate paperwork filed with the Nevada Secretary of State. That does not change the Contract, and it is not a reason to delay trial. This action was filed January 6, 2017 and declared Colocation maintained office in Nevada (the California lawsuit filed on or about May 5, 2016, also alleged Colocation maintained offices in Nevada). Yet Defendant waited until September 2017 to question company offices by request to the Nevada Secretary of State for copies of the Statement of Offices. The records were sent on September 18, 2017 See **Ex. G** (Secretary of State records produced by MNC). Similarly, MNC diverts attention away from the Contract (which was directly entered between the parties) by arguing the parties were introduced by Corey Allen rather than calling out the name Corey Allen Kotler, being the same used in his acting profession, but not in his business. The difference of name was of no risk to MNC and was not a cause of MNC making its mistake.

The untimely discovery is not material to the Contract and escrow instructions MNC entered, nor to its internal discussion and evaluation as a reason for doing so.

## II.   <u>Discovery is Not Necessary</u>

MNC's claim that Plaintiff "let the discovery clock run" by failing to disclose that Plaintiff's officers were using "fictitious" names on its annual reports with the Nevada Secretary of State ("SOS"), is immaterial to this case.   MNC knew when it propounded its Request for Admissions on September 15, 2017, that the names were fictitious.   See **Ex. H** (Request for Admissions and Plaintiff's Responses thereto at ¶¶ 20-31).   Plaintiff has produced a declaration from its Nevada registered agent David Shugarman (see Ex. 2 to MNC's Motion), the person who filed and prepared the reports, that this is standard practice in Nevada.   Plaintiff was not attempting to "hide" any information from MNC and MNC knew, through the deposition of Plaintiff's Rule 16(b) Representative Albert Ahdoot, on August 22, 2017, that Mr. Ahdoot was Plaintiff's representative in this matter.   MNC was responsible for the research which produced the fictitious names.   See **Ex. H** (at ¶¶ 20-31).   Plaintiff did not provide these names to MNC to mislead it in any pleading, disclosure, or discovery response.   Mr. Shugarman's declaration explains his position on the filings with the Nevada SOS.

Mr. Ahdoot, as the only officer and shareholder in Colocation, testified that he was instructed by Mr. Shugarman that fictitious names were common practice in Nevada[1]. Each yearly report listed the same address for the corporation's officers.   This address is a UPS mailbox store who forwards all the mail directly to Colocation in California.   Mr. Ahdoot also testified that he chose Nevada to incorporate his corporation because it is a non-regulatory state,

---

[1] This deposition occurred on October 24, 2017, and has not been transcribed yet.

and he choose not to list his name and address on any reports for cyber-security reasons. Mr. Ahdoot has recently filed amended reports as instructed by his counsel with both the Nevada and California SOS offices, listing him as officer for Colocation.

Plaintiff provided the information that Pedro Cruz was its outside independent accountant and agreed to make him available for a deposition.  However, as Plaintiff's attorneys later disclosed (immediately after Mr. Ahdoot learned the information), Mr. Cruz recently had open heart surgery and is currently unavailable for testimony.  See **Ex. I** (October 19, 2017 emails).  Mr. Cruz is available for a phone call or written interrogatories from MNC.

MNC, an international corporation, has been, and continues to be, on a "fishing expedition" in an attempt to destroy Plaintiff's business and force Plaintiff to spend excess amounts in attorney fees and costs on irrelevant matters.  MNC claims it has discovered fraudulent schemes on Plaintiff's part, first because Corey Allen Kotler used a "different" name, Corey Allen, when negotiating the contract with MNC, and then by listing the fictitious names of officers of the corporation on the Nevada filings with the SOS.  There has been no fraud and certainly the identity of officers and directors is not relevant to the issues of this case.  This matter is about a simple Contract and escrow that was agreed to by the parties, and subsequently, after execution, breached by MNC.

MNC's motion should be denied.  No relevant information will be discovered through further depositions and further delays (by extending the deadlines for discovery and dispositive motions).

DATED: October 30, 2017.

BRIER, IRISH, HUBBARD & ERHART, P.L.C.

_____/s/ Teresa H. Foster_____
Teresa H. Foster, Of Counsel
2400 E. Arizona Biltmore Circle, Ste 1300
Phoenix, AZ 85016
Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October, 2017, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and emailed a copy same date to:

David E. Rogers
David G. Barker
Jacob C. Jones
SNELL & WILMER, LLP
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2202
drogers@swlaw.com
dbarker@swlaw.com
jcjones@swlaw.com

 /s/ Harry Stanford_____