# EXHIBIT 1

David E. Rogers (#19274)
David G. Barker (#024657)
Jacob C. Jones (#029971)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: drogers@swlaw.com
        dbarker@swlaw.com
        jcjones@swlaw.com

Attorneys for Defendant
Mitel Networks Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Colocation America, Inc.,<br><br>        Plaintiff,<br><br>v.<br><br>Mitel Networks Corporation,<br><br>        Defendant. | Case No. CV-17-00421-PHX-NVW<br><br>**MITEL NETWORKS CORPORATION'S SECOND AMENDED COUNTERCLAIM** |
| Mitel Networks Corporation,<br><br>        Counterclaimant,<br><br>v.<br><br>Colocation America, Inc.; ~~and~~<u>Colocation America Corporation;</u> Corey Allen Kotler and Mojgan Tabibnia, husband and wife, <u>and Albert Arash Ahdoot and Dafma Ahdoot, husband and wife</u><br><br>        Counterdefendants. | |

Defendant and Counterclaimant Mitel Networks Corporation ("MNC") submits the following Second Amended Counterclaim, including against newly joined parties, Albert Arash Ahdoot and Dafma Ahdoot, husband and wife.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

**COUNTERCLAIM**

1.     Mitel Networks Corporation ("MNC") alleges the following for its Counterclaim against Colocation America, Inc. ("., Colocation") and America Corporation , Corey Allen Kotler ("Kotler"), and Albert Arash Ahdoot ("Ahdoot") whom MNC joins as a counterdefendant under Fed. R. Civ. P. 13(h) and 20(a)(2)(A).

2.     Colocation America, Inc. is not a legal entity that can bring a lawsuit.

3.     Colocation America, Inc. is not a legal entity that can enter into a contract.

4.     On information and belief, Colocation America Corporation does not exist as a separate entity from Ahdoot.

5.     On information and belief, Colocation America Corporation is not a valid legal entity.

6.     Based on information provided by Plaintiff, MNC understands that Colocation America, Inc. and Colocation America Corporation are the same entity. "Colocation" is to be interpreted herein as including Colocation America, Inc. and Colocation America Corporation.

2.7.    MNC is a Canadian corporation with its corporate headquarters and principal place of business in Ottawa, Ontario.

3.8.    Colocation is a Nevada company with its principal place of business in Woodland Hills, California.

9.    Kotler and his wife, Mojgan Tabibnia, are married and are California residents. At all material times, Kotler was acting on behalf of and in furtherance of the marital community.

10.    Ahdoot and his wife, Dafma Ahdoot, are married and are California residents.

11.    At all material times, Ahdoot was acting on behalf of and in furtherance of the marital community of he and his wife.

**Jurisdiction and Venue**

4.12.    This Court has subject matter jurisdiction over this action pursuant to 28

4848-3162-8631

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

U.S.C. § 1332 because (a) there is complete diversity of citizenship, and (b) the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.  The crux of the dispute is whether the Domain Name Assignment Agreement ("Contract") requires MNC to quit claim rights in about 64,000 IPv4 addresses, worth at least hundreds of thousands of dollars, to Colocation.

5.13.  This Court has personal jurisdiction over Colocation because Colocation has consented to this Court's exercise of personal jurisdiction by filing its Complaint in Arizona.

6.14.  This Court has personal jurisdiction over Kotler because he purposefully availed himself of the privilege of conducting business in Arizona by contacting and negotiating the Contract with MNC's representative in Arizona.  The Counts against Kotler arise out of his intentional torts (e.g., fraud) directed to Arizona, including by intentionally misrepresenting to and concealing facts from MNC's Arizona representative. Kotler's intentional torts harmed MNC in Arizona, and exercise of jurisdiction over him in Arizona is reasonable.

15.    This Court has personal jurisdiction over Ahdoot because he purposefully availed himself of the privilege of conducting business in Arizona by contacting and negotiating the Contract with MNC's representative in Arizona through his agent Kotler. The Counts against Ahdoot arise in part out of his intentional torts (e.g., fraud) directed to Arizona, including by directly or indirectly intentionally misrepresenting to and concealing facts from MNC's Arizona representative. Ahdoot's intentional torts harmed MNC in Arizona, and exercise of jurisdiction over him in Arizona is reasonable. In addition, Ahdoot has consented to jurisdiction in Arizona through the actions of his alter ego Colocation, which filed the Complaint in Arizona.

7.16.  Venue lies in the Phoenix Division of this Court under 28 U.S.C. § 1391. This action was originally brought in the Maricopa County Superior Court in the State of Arizona, and the Complaint alleges that some of the events occurred at least in part in Maricopa County, Arizona. ‑Kotler also contacted and negotiated the Contract with

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

MNC's representative in Mesa, Arizona. Ahdoot also negotiated with MNC's representative in Mesa, Arizona through his agent, Kotler.

### Factual Background

8.17.  Colocation entered into a business arrangement with Kotler in or around January-February 2016.

9.18.  Colocation entered into the business arrangement with Kotler before Kotler contacted MNC.

10.19. Colocation entered into the business arrangement with Kotler before MNC signed the Contract.

11.20. The business arrangement between Colocation and Kotler was memorialized in a written agreement between Colocation and Kotler (the "Kotler Contract").

12.21. A true and correct copy of the Kotler Contract is attached hereto as Exhibit A.

13.22. The Kotler Contract includes the name "Corey Kotler."

14.23. The Kotler Contract does not include the name "Corey Allen."

15.24. The American Registry for Internet Numbers ("ARIN") manages and distributes Internet Protocol version 4 ("IPv4") addresses.

16.25. An IPv4 address is used to identify a server, computer or other device on the internet.

17.26. All of the approximately 4.3 billion IPv4 addresses in existence have been assigned since 2011.

18.27. IPv4 addresses are valuable.

19.28. IPv4 addresses continue to increase in value.

20.29. Under the Kotler Contract, Kotler was to (a) contact companies with IPv4 addresses, and (b) negotiate on behalf of Colocation to acquire the IPv4 addresses.

21.30. The Kotler Contract makes no mention of domain names.

22.31. Kotler negotiated the Contract (attached as Exhibit 1 to the Complaint) on behalf of Colocation.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

23.32. Kotler negotiated the Contract as Colocation's agent.

24.33. During negotiations, Kotler represented to MNC that Kotler was negotiating on behalf of an unnamed company.

25.34. During negotiations, Kotler represented to MNC that an unnamed company wanted to acquire the Canadian domain name <Gandalf.ca> (the "Domain Name").

26.35. Before executing the Contract, Colocation believed that MNC owned the IPv4 addresses referenced in the Contract.

27.36. Albert Ahdoot ("Adhoot") identified the IPv4 addresses referenced in the Contract before Kotler contacted MNC.

28.37. ARIN does not list MNC as the owner of the IPv4 addresses referenced in the Contract.

29.38. Colocation instructed Kotler to contact MNC to attempt to obtain the IPv4 addresses referenced in the Contract.

30.39. Kotler has never been an employee of Colocation.

31.40. Kotler is not a lawyer.

41. Kotler had no experience with IPv4 addresses prior to working with Colocation.

32.42. Kotler is an actor who is self-described as the "tighty whitey guy," and whose "niche as an actor is the fat guy, shirtless, wearing a Speedo or tighty whities."

43. Colocation's lawyer, Paul Sigelman ("Sigelman"), introduced Ahdoot to Kotler.

44. Before Kotler contacted MNC, Colocation knew that Kotler was an actor.

45. Ahdoot testified that he did no background check on Kotler.

46. Ahdoot testified that he did not ask Sigelman or Kotler what Kotler's name was before Kotler contacted MNC.

47. Ahdoot testified that before Kotler contacted MNC, Ahdoot knew only that Kotler's name was "Corey."

33.48. Kotler negotiated the Contract on behalf of Colocation.

4848-3162-8631

34.49. Kotler revised the Contract on behalf of Colocation.

50.   In negotiating and revising the Contract, Kotler acted at the direction of Ahdoot.

35.51. During negotiations with MNC, Kotler represented to MNC that Kotler's name was "Corey Allen."

36.52. During negotiations with MNC, Kotler never informed MNC that his last name was Kotler.

37.53. Kotler intentionally concealed his last name, Kotler, from MNC during negotiations.

38.54. Kotler intentionally concealed his full name, Corey Allen Kotler, from MNC during negotiations.

39.55. Kotler intentionally concealed his full name from MNC to induce MNC to negotiate the Contract.

40.56. Kotler intentionally concealed his full name from MNC to induce MNC to enter into the Contract.

41.57. Kotler believed that MNC would not have negotiated the Contract with him if MNC knew his full name.

42.58. Kotler believed that MNC would not have entered into the Contract if MNC knew his full name.

43.59. Colocation was aware that Kotler's last name was Kotler before Kotler contacted MNC.

44.60. Colocation was aware that Kotler communicated with MNC using the name "Corey Allen."

61.   Ahdoot, Sigelman, and Kotler communicated by email prior to Kotler contacting MNC.

62.   On February 19, 2016, Kotler sent an email to Ahdoot and Sigelman, regarding MNC, stating "Is there a way to slip it in nebulously? i.e. '…and should any potential intellectually properties or scenarios that may be associated at a future point in

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4848-3162-8631

- 6 -

time.'"

63.     A true and correct copy of the February 19, 2016 email referenced in the preceding paragraph is attached as Exhibit B.

64.     Kotler's email attached as Exhibit B responded to directions from Colocation.

65.     Ahdoot approved the language proposed by Kotler in the email attached as Exhibit B.

66.     The language in the email attached as Exhibit B was incorporated into an email to MNC.

67.     On or before August 17, 2017, Sigelman requested Kotler to locate a copy of the email attached as Exhibit B.

68.     Sigelman's request to Kotler described in the previous paragraph was made to assist Sigelman in representing Colocation in this lawsuit.

69.     On or about August 17, 2017, Kotler forwarded a copy of the email described above to Sigelman, and stated, "I FOUND A COPY OF THIS ONE THAT U REQUESTED."

70.     In interrogatory responses in this case, Ahdoot swore, under penalty of perjury, that he was not aware of the name Kotler until after the MNC contract was executed.

71.     Ahdoot's sworn statement described in the previous paragraph is false.

72.     Ahdoot knew the sworn statement that he was not aware of the name Kotler until after the Contract was signed was false when he made it.

45.73. Colocation was aware that Kotler was not using the name "Kotler" when communicating with MNC.

46.74. During negotiations with MNC before the Contract was signed, no email that Kotler sent to MNC referenced IPv4 addresses in the body of the email.

47.75. There were no discussions about transferring IPv4 addresses at any time before signing the Contract.

4848-3162-8631

48.76. Kotler first attempted to contact MNC on February 17, 2016, and Kotler said, "The reason I have been trying to contact you is because you have a domain that we would like to buy." This email did not reference IPv4 addresses.

49.77. On February 19, 2017, Michelle Whittington, Intellectual Property Counsel for MNC, emailed Kotler and said, "I have been asked to respond to your email request regarding the <<gandalf.ca>> domain name." This email did not reference IPv4 addresses.

50.78. During negotiations, Kotler referred to the proposed Contract in email communications as a domain name purchase.

51.79. Colocation and Kotler exchanged email communications about contacting MNC.

52.80. Colocation and Kotler exchanged email communications about negotiating the Contract with MNC.

53.81. Kotler emailed drafts of the Contract to Colocation.

54.82. Colocation emailed drafts of the Contract to Kotler.

83. On information and belief, Sigelman reviewed communications between Kotler and MNC.

84. Sigelman reviewed communications between Colocation and Kotler.

85. On information and belief, Sigelman reviewed the communications in the previous two paragraphs on behalf of Colocation in his role as Colocation's lawyer.

86. Sigelman communicated with Ahdoot about the Contract while the Contract was being negotiated.

87. Sigelman communicated with Kotler about the Contract while the Contract was being negotiated.

88. On information and belief, Sigelman reviewed the communications in the previous two paragraphs on behalf of Colocation in his role as Colocation's lawyer.

89. Kotler made no changes to drafts of the Contract without authorization from Ahdoot.

4848-3162-8631

55.90. On February 24, 2016, Kotler wrote to MNC: "our company would like to purchase the domain Gandalf.ca as well as any potential intellectual properties or scenarios that may be associated at a future point in time with the name Gandalf.ca." This email did not reference IPv4 addresses.

56.91. An IPv4 address is not intellectual property.

57.92. An IPv4 address is not a "scenario.".

58.93. On February 24, 2016, Ms. Whittington provided a draft Contract to Kotler.

59.94. By February 24, 2016, Colocation had not been identified as a party to the Contract.

60.95. The email from Ms. Whittington that included the February 24, 2016 draft stated that the draft Contract reflected the parties' agreement.

61.96. The draft Contract provided by Ms. Whittington had no reference to IPv4 addresses.

62.97. In response to the draft Contract provided by MNC, Colocation, through Kotler, provided a revised draft that included a specific reference to the goodwill of business symbolized by: the Domain Name, associated IPv4 addresses, and trade dress.

63.98. When the reference to IPv4 addresses was introduced after an agreement between the parties had been reached, neither Colocation nor Kotler stated that IPv4 addresses themselves were to be transferred or quit claimed under the Contract.

64.99. At no time did Colocation, through Kotler or otherwise, communicate any willingness to provide consideration other than $10,000 under the Contract.

65.100.       On March 7, 2016, MNC signed the Contract with Colocation.

66.101.       The only reference to IPv4 addresses in the Contract is reproduced below:

> … Mitel hereby agrees to quit claim to INTELLECTUAL PROPERTY PURCHASER any of Mitel's right, title and interest in and to the Domain Name <Gandalf.ca> and the registration therefore, together with the goodwill of the business connected with and symbolized by such Domain Name and the associated IPv4 134.22.0.0/16 and any

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4848-3162-8631

associated trade dress, or other intellectual property rights
related thereto, to the extent any such rights exist.

67.102.    The Contract does not state that it assigns IPv4 addresses.

68.103.    The Contract does not state that it quit claims IPv4 addresses.

69.104.    The Contract does not define IPv4 addresses as being intellectual property rights.

70.105.    At the time of signing the Contract, MNC did not believe the Contract required an assignment or quit claim of IPv4 addresses.

71.106.    It was not MNC's intent to assign IPv4 addresses or to quit claim rights in themany IPv4 addresses.

72.107.    MNC did not warrant or represent that it owned the IPv4 addresses referenced in the Contract.

73.108.    A review of theThe ARIN database reveals that the IPv4 addresses referenced in the Contract are not in MNC's name.

74.109.    On information and belief, Colocation was aware at all times that the IPv4 addresses referenced in the Contract were not in MNC's name.

75.110.    On information and belief, Kotler was aware at all times that the IPv4 addresses referenced in the Contract were not in MNC's name.

76.111.    Colocation's allegation that it would be assigned the IPv4 addresses referenced in the Contract was first communicated after the Contract was executed.

112.    The American Registry for Internet Numbers ("ARIN") does not list MNC as the owner of the IPv4 addresses "IPv4 134.22.0.0.0/16."

113.    ARIN does not list MNC as the owner of the IPv4 addresses referenced in the Contract.

114.    MNC is not the owner of the IPv4 addresses "IPv4 134.22.0.0.0/16."

115.    MNC is not the owner of the IPv4 addresses referenced in the Contract.

77.116.    The warranty section of the Contract has no reference to IPv4 addresses.

4848-3162-8631

78.117. Goodwill in a domain name does not include an assignment or quit claim of IPv4 addresses.

79.118. After the Contract was signed, Colocation took the position that the Contract assigned to it ownership of the IPv4 addresses referenced in the Contract.

80.119. The Contract's consideration of $10,000 is a fair price for the Domain Name.

81.120. The IPv4 addresses referenced in the Contract are worth approximately $500,000-$1,000600,000, or more.

82.121. Before the Contract was signed, Colocation and Kotler concealed from MNC that Colocation wanted to obtain the IPv4 addresses referenced in the Contract.

83.122. Before the Contract was signed, Kotler knew that the IPv4 addresses referenced in the Contract were valuable.

84.123. Before the Contract was signed, Kotler knew that the IPv4 addresses referenced in the Contract were worth more than $10,000.

85.124. Before the Contract was signed, Colocation knew that the IPv4 addresses referenced in the Contract were valuable.

86.125. Before the Contract was signed, Colocation knew that the IPv4 addresses referenced in the Contract were worth more than $10,000.

**Kotler's Company – Dividend Advisors L.L.C. ("Dividend")**

87.126. Kotler formed a Delaware entity called Dividend Advisors, L.L.C. before working for Colocation.

88.127. Kotler formed Dividend at the suggestion of AdhootAhdoot.

89.128. AdhootAhdoot provided Kotler with the name of a person in Delaware to help Kotler form Dividend.

90.129. Dividend is no longer a valid legal entity.

91.130. Dividend never filed any tax returns.

92.131. On information and belief, Dividend did not have a bank account

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

separate from Kotler.

93.132.     Kotler was paid directly by Colocation for his work, including for his negotiations with MNC.

94.133.     When it existed, Dividend was the alter ego of Kotler.

95.134.     On information and belief, neither Kotler nor Dividend is or was a registered investment advisor.

**Escrow.com Transactions**

96.135.     Colocation initiated three transactions related to the Contract through Escrow.com after the Contract was executed.

97.136.     MNC initiated three transactions related to the Contract through Escrow.com after the Contract was executed.

98.137.     All of the transactions referenced in the preceding two paragraphs stated in the "Description" field that they were for a domain name transfer or a domain name assignment.

99.138.     None of the transactions referenced in paragraphs 97-98 stated in the "Description" field that they were for a transfer of rights in IPv4 addresses.

100.139.     In March 2016, there was no reference in the Escrow.com General Escrow Instructions related to the Contract that referred to IPv4 transfers.

101.140.     Kotler had no role in dealing with Escrow.com.

**Further Communications on or After March 28, 2016**

102.141.     On March 28, 2016, Samantha Walters, VP of Online Strategies for Colocation, wrote to Ms. Whittington in an email advising that $10,000 had been placed in escrow at Escrow.com, and provided the transaction number.

103.142.     On March 28, 2016, in the same email referenced in the preceding paragraph, Ms. Walters stated that "our next step is to transfer the IP range from Mitel to Colocation…"

104.143.     On March 28, 2016, Ms. Whittington replied to Ms. Walter's email, referenced in the preceding two paragraphs, advising Ms. Walters that there appeared to

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

have been a miscommunication between the parties that would need to be resolved.

~~105.~~144.    On April 11, 2016, Ms. Whittington wrote another email to Ms. Walters stating that MNC had agreed only to the transfer of "the domain name and all goodwill associated thereof [sic.]"

**Additional Factual Allegations**

~~106.~~145.    The Domain Name has not been transferred from MNC to Colocation and no monies have been exchanged between Colocation and MNC.

~~107.~~146.    Colocation served its Initial Disclosure on May 15, 2017, which listed "Corey Allen" of "Dividend Advisors" as a person with knowledge who could be contacted through Colocation's Arizona counsel of record in this action.

~~108.~~147.    Before serving the Initial Disclosure, Colocation knew "Corey Allen" was not the full legal name of the person who negotiated the Contract with MNC.

~~109.~~148.    Before serving the Initial Disclosure, Colocation's lawyers knew "Corey Allen" was not the full legal name of the person who negotiated the Contract with MNC.

~~110.~~149.    Before serving the Initial Disclosure, Colocation knew the person who negotiated the Contract with MNC was Kotler.

~~111.~~150.    Before serving the Initial Disclosure, Colocation's lawyers knew its agent who negotiated the Contract with MNC was Kotler.

~~112.~~151.    Before serving the Initial Disclosure, Colocation knew "Corey Allen" was not Kotler's stage name.

~~113.~~152.    Before serving the Initial Disclosure, Colocation's lawyers knew "Corey Allen" was not Kotler's stage name.

~~114.~~153.    Before serving the Initial Disclosure, Colocation knew that Kotler's address was not 433 North Camden Drive, Suite 970, Beverly Hills, California 90210.

~~115.~~154.    Before serving the Initial Disclosure, Colocation's lawyers knew that Kotler's address was not 433 North Camden Drive, Suite 970, Beverly Hills, California 90210.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4848-3162-8631

116.155.    Before serving the Initial Disclosure, Colocation knew that Dividend was no longer an existing legal entity.

117.156.    Before serving the Initial Disclosure, Colocation's lawyers knew that Dividend was no longer an existing legal entity.

157.    Before serving the Initial Disclosure, Colocation knew that Dividend's address was not 433 North Camden Drive, Suite 970, Beverly Hills, California 90210.

118.158.    Colocation's Amended and Restated Initial Disclosure was served on May 18, 2017, and disclosed the following address for "Corey Allen" and Dividend Advisors": 433 North Camden Drive, Suite 970, Beverly Hills, California 90210.

119.159.    Before serving the Amended and Restated Initial Disclosure, Colocation knew "Corey Allen" was not the full legal name of the person who negotiated the Contract with MNC.

120.160.    Before serving the Amended and Restated Initial Disclosure, Colocation's lawyers knew "Corey Allen" was not the full legal name of the person who negotiated the Contract with MNC.

121.161.    Before serving the Amended and Restated Initial Disclosure, Colocation knew that the person who negotiated the Contract with MNC was Kotler.

122.162.    Before serving the Amended and Restated Initial Disclosure, Colocation's lawyers knew that the person who negotiated the Contract with MNC was Kotler.

123.163.    Before serving the Amended and Restated Initial Disclosure, Colocation knew that "Corey Allen" was not Kotler's stage name.

124.164.    Before serving the Amended and Restated Initial Disclosure, Colocation's lawyers knew that "Corey Allen" was not Kotler's stage name.

125.165.    Before serving the Amended and Restated Initial Disclosure, Colocation knew that Kotler's address was not 433 North Camden Drive, Suite 970, Beverly Hills, California 90210.

126.166.    Before serving the Amended and Restated Initial Disclosure,

4848-3162-8631

Colocation's lawyers knew Kotler's address was not 433 North Camden Drive, Suite 970, Beverly Hills, California 90210.

~~127.~~167.   Before serving the Amended and Restated Initial Disclosure, Colocation knew that Dividend was no longer an existing legal entity.

168.   Before serving the Amended and Restated Initial Disclosure, Colocation knew that Dividend's address was not 433 North Camden Drive, Suite 970, Beverly Hills, California 90210.

~~128.~~169.   Before serving the Amended and Restated Initial Disclosure, Colocation's lawyers knew that Dividend was no longer an existing legal entity.

~~129.~~170.   Colocation's original interrogatory responses identify "Corey Allen" as a person it expects to call at trial.

~~130.~~171.   Colocation's original interrogatory responses do not identify Corey Kotler.

~~131.~~172.   Colocation's original interrogatory responses do not include the name Kotler.

173.   Ahdoot knew that there was no "Corey Allen" who acted as Colocation's agent before Colocation provided its original interrogatory responses.

174.   Colocation knew that Kotler was the person who contacted and negotiated with MNC before Colocation provided its original interrogatory responses.

175.   Sigelman knew that there was no "Corey Allen" who acted as Colocation's agent before Colocation provided its original interrogatory responses.

176.   Sigelman knew that Kotler was the person who contacted and negotiated with MNC before Colocation provided its original interrogatory responses.

~~132.~~177.   Paul Sigelman, an attorney for Colocation, maintains an office at 433 North Camden Drive, Suite 970, Beverly Hills, California 90210.

~~133.~~178.   Sigelman has never represented Kotler as an attorney.

~~134.~~179.   Kotler's emails to MNC included the address of 433 North Camden Drive, Suite 970, Beverly Hills, California 90210.

135.180.    On June 15, 2017, a process server for MNC attempted to serve subpoenas on "Corey Allen" and Dividend at 433 North Camden Drive, Suite 970, Beverly Hills, California 90210.

136.181.    On June 15, 2017, the process server took the subpoenas to 433 North Camden Drive, Suite 970, Beverly Hills California 90210, and a man identifying himself as "Rick" took the subpoenas.

137.182.    The man who identified himself as "Rick" in the preceding paragraph was Sigelman.

138.183.    Sigelman never contacted MNC about the subpoenas to "Corey Allen" and Dividend.

139.184.    On June 15, 2017, the process server noted that "Corey Allen" and Dividend were not listed on the door to Suite 970 as having an office there.

140.185.    "Corey Allen" and Dividend are not listed on the door to Suite 970 at 433 North Camden Drive, Suite 970, Beverly Hills California 90210.

141.186.    MGM Management Company ("MGM") manages the leases for Suite 970 of the building at 433 North Camden Drive, Beverly Hills, California 90210.

142.187.    On July 19, 2017, MNC served a subpoena on MGM.

143.188.    MGM stated that it had never heard of "Corey Allen" or Dividend.

144.189.    MGM confirmed that, according to its leasing records, "Corey Allen" and Dividend have never been tenants in Suite 970 of the building at 433 North Camden Drive.

145.190.    Kotler is listed as the registrant of the <dividendadvisors.com> domain name, with an email address coreykotler18k@aol.com, and a physical address 2385 Roscomore Road, Unit E11, Los Angeles, California 90077.

146.191.    Kotler is listed as the registrant of the <coreyallenkotler.com> domain name, with the same email address coreykotler18k@aol.com and the same physical address at 2385 Roscomore Road.

147.192.    Colocation provided none of the information in the preceding two

4848-3162-8631

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

paragraphs to MNC.

148.193.    On July 25, 2017, MNC had Kotler served with subpoenas at 2385 Roscomore Road, Unit E11.

149.194.    On July 25, 2017, the process server attempted to hand the subpoenas to Kotler, but Kotler refused to take them.

150.195.    Kotler denied to the process server that his name was Corey Kotler.

151.196.    The process server placed the subpoenas under the door of Unit E11, where Kotler lives.

152.197.    Several days later, Sigelman contacted MNC about Kotler's compliance with the subpoenas.

153.198.    Sigelman never informed MNC of "Corey Allen's" full name until after MNC served Kotler.

154.199.    Neither Colocation nor any of its attorneys informed MNC of Kotler's full name until after Kotler was served.

155.200.    Had MNC known it was negotiating a contract with an actor using a false name, it would neither have negotiated with Kotler nor entered into the Contract.

201.    During the Contract negotiation, until the final version was prepared for execution, the identities of Colocation and Ahdoot were not disclosed to MNC.

202.    Ahdoot executed the Contract.

203.    Next to "NAME" in the signature block on the Contract, and under his signature, Ahdoot wrote "Albert A. Ahdoot/Busines".

204.    "Busines" was a misspelling of Business.

205.    Colocation is the business conduit of Ahdoot.

206.    The Contract does not state that Ahdoot executed the Contract in the capacity of an officer or director of Colocation.

207.    The signature block of the Contract does not state Ahdoot's relationship to Colocation.

208.    Until October of 2017, Colocation's corporate filings in California and

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Nevada listed the following officers and/or directors:  Michael Trunkett, Amy Goldstein, Brian Greenspan, and David Stein.

209.   Until October of 2017, Colocation's corporate filings in Nevada and California did not list Ahdoot as either an officer or director.

210.   Michael Trunkett, Amy Goldstein, Brian Greenspan, and David Stein are not real people.

211.   Michael Trunkett, Amy Goldstein, Brian Greenspan, and David Stein are not and never were officers or directors of Colocation.

212.   Attached as Exhibit C is a true and correct copy of one of the signature blocks on one of Colocation's corporate filings identifying Michael Trunkett, Amy Goldstein, Brian Greenspan, and David Stein as officers or directors of Colocation:

213.   The signature shown in Exhibit C is Ahdoot's signature.

214.   The signature block in Exhibit C states in part:

> None of the officers or directors identified in the list of officers has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of an officer or director in furtherance of any unlawful conduct

215.   The signature block in Exhibit C states in part:

> I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

216.   Ahdoot is the sole owner of Colocation.

217.   Ahdoot has always been Colocation's sole owner.

218.   Ahdoot is the only officer of Colocation.

219.   Ahdoot is the only officer that Colocation has ever had.

220.   Ahdoot is the only CEO of Colocation.

221.   Ahdoot is the only CEO that Colocation has ever had.

222.   Ahdoot is the only director of Colocation.

223.   Ahdoot is the only director that Colocation has ever had.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4848-3162-8631

224.    Ahdoot is the only president of Colocation.

225.    Ahdoot is the only president that Colocation has ever had.

226.    Ahdoot is the only secretary of Colocation.

227.    Ahdoot is the only secretary that Colocation has ever had.

228.    Ahdoot is the only treasurer of Colocation.

229.    Ahdoot is the only treasurer that Colocation has ever had.

230.    Ahdoot controlled every aspect of Colocation's interactions with MNC.

231.    Ahdoot controlled every aspect of Colocation at all times during the negotiations with MNC.

232.    Colocation's corporate filings were falsified for the purpose of obscuring Ahdoot's identity.

233.    On information and belief, Ahdoot created a fake LinkedIn profile for "Michael Trunkett."

234.    On information and belief, Ahdoot has commingled funds with Colocation.

235.    On information and belief, Colocation is undercapitalized.

236.    On information and belief, Colocation has not observed corporate formalities.

237.    On information and belief, Colocation's assets have been diverted for Ahdoot's personal use.

238.    On information and belief, Ahdoot, at all material times, had sole signatory authority over Colocation's bank accounts.

239.    On information and belief, Ahdoot, at all material times, had sole signatory authority over Colocation's charge accounts.

240.    On information and belief, Colocation has failed to maintain books and records of account in reasonable order.

241.    On information and belief, Colocation was incorporated for fraudulent and improper purposes.

242.    On information and belief, the corporate form of Colocation has been

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

employed by Ahdoot for fraudulent and improper purposes.

243.   Observing the corporate form of Colocation would sanction a fraud or work an injustice.

244.   On information and belief, the financial setup of Colocation is a sham.

245.   Ahdoot and Colocation have not distinguished between Colocation America Corporation, an alleged Nevada corporation, and Colocation America, Inc., a fictitious entity.

246.   Ahdoot caused a Certificate of Business: Fictitious Firm Name to be filed with the County Clerk for Clark County, Nevada, on or about December 18, 2014, for the name "Colocation America, Inc," a true and correct copy of which is attached as Exhibit D.

247.   "Michael Trunkett" referenced in Exhibit D does not exist and did not exist on December 16, 2014.

248.   The signature of "Michael Trunkett" shown in Exhibit D is a forgery.

249.   Ahdoot has been named on the Register of Known Spam Operations.

250.   On information and belief, Ahdoot was named on the Register of Known Spam Operations because he has engaged in electronic spamming offenses.

251.   Ahdoot also owns Mushoo, Inc.

252.   On information and belief, Mushoo, Inc. is also a sham entity formed by Ahdoot.

253.   Ahdoot also owns Net Global Marketing, Inc.

254.   On information and belief, Net Global Marketing, Inc. is also a sham entity formed by Ahdoot.

255.   Ahdoot also owns an interest in Total-Apps Inc.

256.   On information and belief, Total-Apps Inc. is also a sham entity formed by Ahdoot.

257.   Ahdoot brought this lawsuit in the name of Colocation America, Inc., which is not a legal entity that can bring a lawsuit.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

258.   Colocation and Ahdoot named Colocation America, Inc. as a party to the Contract, even though Colocation America, Inc. is not a legal entity that can enter into contracts.

259.   Colocation and Ahdoot knew that if MNC had known that Colocation was a sham, MNC would not have entered into the Contract.

260.   Colocation and Ahdoot are not separate persons.

261.   Colocation and Ahdoot have a unity of ownership and interest.

262.   Treating Colocation as an entity separate from Ahdoot causes an injustice.

263.   Treating Colocation as an entity separate from Ahdoot will prevent MNC from being able to collect the amounts owed or to be owed to MNC by Colocation in connection with this action.

## COUNT ONE
### Breach of Contract by Colocation and **Ahdoot and** Specific Performance

~~156.~~264.   The Contract is an agreement for Colocation to pay MNC $10,000 for (a) the Domain Name, and (b) the goodwill of the business connected with and symbolized by the Domain Name and the associated IPv4 addresses and any associated trade dress, or other intellectual property rights relating thereto, to the extent any such rights exist.

~~157.~~265.   The Contract does not require an assignment or quit claim of IPv4 addresses.

~~158.~~266.   MNC substantially performed under the Contract.

~~159.~~267.   MNC has not yet transferred the Domain Name to Colocation because Colocation has not yet requested transfer of the Domain Name.

~~160.~~268.   Colocation has taken the position that MNC must transfer IPv4 addresses before transferring the Domain Name.

~~161.~~269.   MNC has not received $10,000 from Colocation.

~~162.~~270.   Colocation's contention that MNC is required to transfer IPv4 addresses to Colocation is an anticipatory breach of the Contract.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

163.271.    Colocation's failure to pay MNC $10,000 for the Domain Name and associated goodwill (if any) is a breach of the Contract.

164.272.    MNC has been harmed by Colocation's breach in the amount of $10,000, plus costs, attorney fees, and interest accruing since Colocation's breach.

165.273.    MNC is entitled to a payment from Colocation of $10,000 for the Domain Name and associated goodwill (if any).

166.274.    MNC is entitled to an award of costs and attorney fees, including under A.R.S. §§ 12-341 and 12-341.01(A), and interest accruing since Colocation's breach.

275.   Ahdoot is jointly and severally liable with Colocation for the breach of contract against MNC.

276.   Ahdoot personally directed Colocation's actions with respect to the conduct giving rise to MNC's breach of contract claim.

277.   Ahdoot and Colocation are the same entity with respect to the conduct giving rise to MNC's breach of contract claim.

278.   Ahdoot is independently personally liable for breach of contract based on his own involvement in the acts alleged herein.

279.   Ahdoot is vicariously liable for Colocation's breach of contract.

**COUNT TWO (In the Alternative)**
**Rescission or Avoidance of the Contract**

167.280.    MNC incorporates by reference the prior paragraphs of this Counterclaim as if fully set forth herein.

168.281.    There was no meeting of the minds with respect to the subject matter of the Contract.

282.   The American Registry for Internet Numbers ("ARIN") does not list MNC as the owner of the IPv4 addresses referenced in the Contract.

283.   MNC is not the owner of the IPv4 addresses referenced in the Contract.

169.284.    MNC had no reason to know that Colocation believed the Contract

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

required a transfer or quit claim of the IPv4 addresses.

170.285.    Colocation took the position immediately after the Contract was signed that the Contract does require a transfer or quit claim of the IPv4 addresses.

171.286.    That the Contract did not require a transfer or quit claim of the IPv4 addresses is an essential term of the Contract.

172.287.    Accordingly, the Contract is void, and MNC is entitled to rescind the Contract, because there was no meeting of the minds and therefore no contract was formed.

173.288.    Alternatively, the Contract is void due to uncertainty, mistake, or fraud, as alleged herein, and MNC is entitled to rescind the Contract.

174.289.    To the extent that the Court interprets the Contract as requiring a transfer or quit claim of IPv4 addresses themselves, at least MNC was under the mistaken belief that the Contract did not require transfer of IPv4 addresses, but only a quit claim of any goodwill that MNC may or may not have had in such addresses associated with the domain name <Gandalf.ca>.

175.290.    MNC's belief was reasonable, Colocation knew of MNC's mistake and intended for MNC to be mistaken, and Colocation has relied on MNC's mistake to MNC's detriment.

176.291.    Enforcement of the Contract would be unconscionable because MNC would be required to transfer rights in IPv4 address that it currently is not capable of transferring through ARIN and Colocation would receive a windfall by receiving IPv4 addresses that are worth hundreds of thousands of dollars when it is required to pay only $10,000 under the Contract.

177.292.    Colocation's fraudulent misrepresentation and concealment caused the mistake.

## COUNT THREE
### Fraud: Intentional Misrepresentation and Concealment
### (against Colocation and, Kotler, and Ahdoot)

4848-3162-8631

- 23 -

178.293.    MNC incorporates by reference the prior paragraphs of this Counterclaim as if fully set forth herein.

179.294.    Kotler intentionally concealed information from MNC during negotiation of the Contract.

180.295.    Kotler intentionally misrepresented information to MNC during negotiation of the Contract.

181.296.    Colocation instructed Kotler to contact MNC.

182.297.    Kotler was Colocation's agent during the Contract negotiation.

183.298.    Kotler was Colocation's agent when the Contract was executed.

184.299.    Kotler had authority from Colocation to negotiate the Contract with MNC.

185.300.    Kotler is liable for misrepresentations he made to MNC.

186.301.    Kotler is liable for concealing information from MNC.

187.302.    Before the Contract was signed, Kotler knew MNC expected to only transfer the <Gandalf.ca> domain name and not any IPv4 addresses.

188.303.    Colocation intended to take the position, after the Contract was executed, that the Contract assigned rights to IPv4 addresses to Colocation.

189.304.    Kotler and Colocation intentionally concealed and/or misrepresented the information in the preceding paragraph from MNC.

190.305.    On information and belief, Colocation instructed Kotler to mislead MNC about Colocation's intent when negotiating the Contract.

191.306.    During the Contract negotiation, Kotler never used his last name "Kotler."

192.307.    During the Contract negotiation, MNC did not know that "Corey Allen" was not the name of the person with whom it was dealing.

193.308.    During the Contract negotiation, MNC did not know that Kotler was misrepresenting his identity.

194.309.    During the Contract negotiation, MNC did not know that Kotler was

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

concealing his identity.

195.310.   During the Contract negotiation, MNC did not know that Kotler was an actor.

196.311.   Kotler misrepresented to MNC that Kotler was a registered investment advisor.

197.312.   Kotler knew that he was not a registered investment advisor.

198.313.   Through his misrepresentations and concealment, Kotler intended to deceive MNC and induce it to negotiate with him.

199.314.   Through his misrepresentations and concealment, Kotler intended to deceive MNC and induce it to enter into the Contract.

200.315.   Kotler's misrepresentations and concealment were material, in that MNC would not have negotiated the Contract had it known the truth of Kotler's misrepresentations or of the information he concealed.

201.316.   Kotler's misrepresentations and concealment were material, in that MNC would not have entered into the Contract had it known the truth of Kotler's misrepresentations or of the information he concealed.

202.317.   Kotler's concealment of his true identity was material because Kotler was negotiating on behalf of a yet-unnamed company.

203.318.   Kotler's concealment of his true identity was material because had MNC known that it was negotiating with a person whose full name was being concealed, MNC would not have negotiated with him.

204.319.   Kotler's concealment of his true identity was material because had MNC known that it was negotiating with a person whose full name was being concealed, MNC would not have entered into the Contract.

205.320.   Kotler's concealment of his true identity was material because MNC would not negotiate with an actor with no experience in the Contract's subject matter, on behalf of a company whose identity MNC did not know.  Nor would MNC have executed such a contract.

4848-3162-8631

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

206.321.    Kotler and Colocation intended that MNC act on Kotler's misrepresentations and concealment.

207.322.    MNC acted on Kotler's misrepresentations and concealment and negotiated and executed the Contract.

208.323.    MNC reasonably relied on Kotler's misrepresentations.

209.324.    MNC's reasonable reliance is supported by the Contract purchase price, which was a fair price for the domain name <Gandalf.ca>, but is not a fair price for rights to the IPv4 addresses referenced in the Contract.

210.325.    MNC's reasonable reliance is supported by the fact that ARIN does not list MNC as the owner of the IPv4 addresses referenced in the Contract (although MNC may have unperfected rights) and cannot currently transfer them.

211.326.    MNC has been injured by Kotler's misrepresentations and concealment in the amount of the Contract purchase price of $10,000.

212.327.    MNC may suffer further injury if MNC is required to assign or quit claim rights to the block of IPv4 addresses referenced in the Contract to Colocation, to the extent MNC has any rights, in which case MNC's damages could potentially be in the hundreds of thousands of dollars.

213.328.    Through his misrepresentations and concealment, Kotler fraudulently induced MNC to enter into the Contract.

214.329.    Because Kotler was Colocation's agent, Kotler and Colocation are jointly and severally liable for Kotler's misrepresentations and concealment.

215.330.    Because Kotler was Colocation's agent, MNC is entitled to rescind the Contract, and MNC seeks that relief from the Court.

216.331.    Because no money has been paid and the Domain Name has not been transferred, the Court need do nothing to restore the parties to the positions they held before the Contract was signed other than declaring the Contract void and awarding MNC its attorneys' fees.  To the extent MNC is required to tender anything, MNC is willing and prepared to tender.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4848-3162-8631

217.332.    Kotler committed his aggravated and outrageous actions fraudulently and maliciously and in conscious disregard of MNC's rights, with evil mind, and with intent to injure MNC, and Kotler is liable for punitive damages.

218.333.    Colocation, as Kotler's principal, is jointly liable for punitive damages based on Kotler's conduct.

334.    Ahdoot is jointly and severally liable for the fraud perpetrated against MNC by himself, Colocation, and Kotler.

335.    Ahdoot personally directed Kotler for the purpose of defrauding MNC.

336.    Colocation and Ahdoot are the same entity with respect to the fraudulent acts alleged herein.

337.    Ahdoot is independently personally liable for fraud based on his own involvement in the fraudulent acts alleged herein.

338.    Ahdoot is vicariously liable for the fraud committed by Colocation and Kotler.

## COUNT FOUR
### Civil Conspiracy
### (against Colocation, Ahdoot, and Kotler)

219.339.    MNC incorporates by reference the prior paragraphs of this Counterclaim as if fully set forth herein.

220.340.    On information and belief, Colocation agreed with Kotler to fraudulently induce MNC to enter into the Contract by intentionally concealing and misrepresenting information, as discussed above.

221.341.    On information and belief, Colocation agreed with Kotler to accomplish the unlawful purpose of depriving MNC of any rights to the IPv4 addresses referenced in the Contract through fraud and deceit.

222.342.    The Kotler Contract evidences Colocation's and Kotler's pre-Contract intent to attempt to acquire IPv4 addresses from MNC.

223.343.    Kotler never told MNC before the Contract was executed that

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Colocation wanted to acquire IPv4 addresses.

224.344.    Kotler attempted to acquire rights to IPv4 addresses from MNC through fraud and deceit, which were unlawful means.

225.345.    Kotler's and Colocation's conspiracy has directly and proximately caused harm and economic damages to MNC.

226.346.    Kotler and Colocation are liable to MNC for the harm and damages referenced in the preceding paragraph.

227.347.    Colocation, as the principal, is jointly liable for the harm and damages caused by its agent Kotler.

228.348.    Kotler and Colocation committed the aggravated and outrageous actions fraudulently and maliciously and in conscious disregard of MNC's rights, with evil mind, and with intent to injure MNC.

229.349.    Kotler and Colocation are liable to MNC for punitive damages.

230.350.    Colocation, as the principal, is liable for punitive damages based on Kotler's conduct.

351.    Ahdoot personally directed Colocation with respect to Colocation's conspiracy with Kotler.

352.    Colocation and Ahdoot are the same entity with respect to the conspiracy alleged herein.

353.    Alternatively, Ahdoot independently agreed with Colocation and Kotler to commit the tortious acts described herein.

354.    Ahdoot is vicariously liable for Colocation's conspiracy.

## COUNT FIVE
### Aiding and Abetting
### (against Colocation and Ahdoot)

231.355.    MNC incorporates by reference the prior paragraphs of this Counterclaim as if fully set forth herein.

232.356.    Kotler committed the torts alleged above.

4848-3162-8631

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

233.357.   On information and belief, Colocation knew that Kotler was committing the alleged torts against MNC, including fraud, intentional misrepresentation, and fraudulent concealment.

234.358.   Colocation was aware of Kotler's duty to provide true and accurate information to MNC during negotiation of the Contract.

235.359.   On information and belief, Colocation substantially assisted or encouraged Kotler in committing the alleged torts and breaching his duty to MNC.

236.360.   Colocation's aiding and abetting has directly and proximately caused harm and economic damages to MNC.

237.361.   Colocation committed these aggravated and outrageous actions fraudulently and maliciously and in conscious disregard of MNC's rights, with evil mind, and with intent to injure MNC, and Colocation is thus liable for punitive damages.

362.   Ahdoot personally directed Colocation with respect to the aiding and abetting committed by Colocation.

363.   Colocation and Ahdoot are the same entity with respect to the aiding and abetting alleged herein.

364.   Alternatively, Ahdoot independently assisted and encouraged Colocation and Kotler to commit the tortious acts described herein.

365.   Ahdoot is vicariously liable for Colocation's aiding and abetting.


## DEMAND FOR JURY TRIAL

MNC demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, MNC prays for the following relief:

1.     That Colocation's Complaint be dismissed with prejudice, and that judgment be entered in favor of MNC and against Colocation, Ahdoot, and Kotler.

2.     That the Court enter judgment on MNC's Counterclaim in favor of MNC and against Colocation, Ahdoot, and Kotler.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

3.      That MNC be awarded damages for Colocation's and Ahdoot's breach of contract, and that Colocation and Ahdoot be ordered to pay MNC $10,000 for the Domain Name and associated goodwill, but not the IPv4 addresses.

4.      Alternatively, a declaration that the Contract is void or rescinded.

5.      That MNC be awarded damages for Colocation's, Ahdoot's, and Kotler's tortious actions.

6.      That MNC be awarded punitive damages for Colocation's, Ahdoot's, and Kotler's tortious actions.

7.      That Colocation and Ahdoot be judged to be jointly liable for damages and punitive damages caused by Kotler.

8.      That MNC recover its costs and attorney fees, including under A.R.S. §§ 12-341 and 12-341.01(A), and pre- and post-judgment interest.

9.      That the judgments against Ahdoot and Kotler also encompass their respective marital communities.

9.10.    That MNC be granted any further relief to which it is entitled, even if it has not been demanded by MNC in its pleadings, in accordance with Rule 54(c) of the Federal Rules of Civil Procedure.

DATED this 2nd1st day of NovemberDecember, 2017.

SNELL & WILMER L.L.P.


By:  s/ Jacob C. Jones
     David E. Rogers (#19274)
     David G. Barker (#024657)
     Jacob C. Jones (#029971)
     One Arizona Center
     400 E. Van Buren, Suite 1900
     Phoenix, Arizona  85004-2202
     Telephone: 602.382.6000
     Facsimile: 602.382.6070

     Attorneys for Defendant
     Mitel Networks Corporation

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

EXHIBIT A

**WORKING AGREEMENT BETWEEN Dividend Advisors AND CoLocation America**

The following agreement is being entered into between Colocation America (9360 W. Flamingo Rd. Suite 110-178 Las Vegas, NV 89147 and Dividend Advisors LLC (433 N. Camden Dr. Suite #970 Beverly Hills CA 90210) on this the 21st day of April, 2016 in Los Angeles, California.

Article 1 The Agreement:

This agreement states that Corey Kotler promises to make best faith efforts to facilitate the sale and transfers of IPV4 blocks to CoLocation America.

Article 1 A. Length of Contractual Terms:

The length of this agreement commences on May 1st 2016 and will span over a trial period of three months. Upon the conclusion of the three month trial period the agreement shall continue on a month to month basis.

Article 2. Compensation Terms

Colocation America agrees to compensate Dividend Advisors as follows:

2A. Corey Kotler is to receive a monthly retainer of $5,000 to be paid in full on the 1st of every month and no later than the 5th of every month. The payment schedule is as follows:

-May 1st 2016

-June 1st 2016

-July 1st 2016

2B. Upon the close of escrow of the transfer of any IPV4 block, Dividend Advisors LLC is to receive a ten thousand dollar ($10,000) commission from Colocation America. This commission is to be paid by Colocation America to Dividend Advisors LLC within 72 hours of the closing of escrow.

2C. Upon Colocation America selling an IPV4 block that Corey Kotler assisted in the facilitation of acquiring, Corey Kotler is to receive an additional $10,000 commission. This additional $10,000 commission is to be payable within 72 hours after Albert Ahdoot or Colocation America or any of Albert Ahdoot' or CoLocationAmerica's associates or employees facilitate a sale of the said IPV block.

2D. Termination

The terms of this trial agreement are binding for a period of three (3) months, commencing on May 1, 2016.  Should a pending transaction close after the termination of the 'month to month agreement', a transaction that Corey Kotler initiated, Corey Kotler is still owed his full commission for initiating the initial transaction. Initiating the transaction will be defined as Corey Kotler furnishing initial email

correspondence with a representative, representing the sellers company. A written notice of termination notice of the month agreement is required upon Corey Kotler receiving payment for the coming month. Example: the terms of this contact terminate July Friday July 1th 2016. Should Albert Ahdoot decide to terminate the ongoing month to month agreement in August, Albert Ahdoot agrees to inform Corey Kotler in writing of the of the month to month termination no later than July 3th 2016.Or it is to be mutually agreed and understood by both parties that the month to month agreement shall continue under all of the same terms for the following month.

Exclusivity

Mutually agreed upon on this the 18th day of April, 2016.


Corey Allen Kotler
Dividend Advisors LLC.
5/03/16

Albert Ahdoot
Colocation America
5/3/16

079

EXHIBIT B

**To:** albert@colocationamerica.com; Paul Sigelman
**Subject:** Fwd: Domain

[Quoted text hidden]

---

**Corey Allen Kotler** <coreyallenkotler@gmail.com>                    Fri, Feb 19, 2016 at 2:44 PM
To: "Albert (Colocation America)" <Albert@colocationamerica.com>, "paul@sigelmanlaw.com" <paul@sigelmanlaw.com>

Is there a way to slip it in nebulously? i.e **"...and  should any potential intellectually properties or scenarios that may be associated at a future point in time"**

[Quoted text hidden]

---

**Corey Allen Kotler** <coreyallenkotler@gmail.com>                    Thu, Aug 17, 2017 at 12:14 AM
To: "paul@sigelmanlaw.com" <paul@sigelmanlaw.com>

# I FOUND A COPY OF THIS ONE THAT U REQUESTED

[Quoted text hidden]

EXHIBIT C

(PROFIT) INITIAL/ANNUAL LIST OF OFFICERS, DIRECTORS AND STATE BUSINESS LICENSE APPLICATION OF:

| **COLOCATION AMERICA CORPORATION** | E0163232005-2 |
| NAME OF CORPORATION | ENTITY NUMBER |

**FOR THE FILING PERIOD OF 2015 TO 2016. DUE BY 3/31/2015**

*100101*

**USE BLACK INK ONLY - DO NOT HIGHLIGHT**

**YOU MAY FILE THIS FORM ONLINE AT www.nvsilverflume.gov**

☑ Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

***IMPORTANT: Read instructions before completing and returning this form***

1. Print or type names and addresses, either residence or business, for all officers and directors. A President, Secretary, Treasurer, or equivalent of and all Directors must be named. There must be at least one director. An Officer or other person authorized by the corporation must sign the form. FORM WILL BE RETURNED IF UNSIGNED.
2. If there are additional officers, attach a list of them to this form.
3. Return the complete form with the filing fee. Annual list fee is based upon the current total authorized stock as explained in the Annual List Fee Schedule For Profit Corporations. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.
4. State Business License fee is $200.00. Effective 2/1/2010, $100.00 must be added for failure for file form by deadline.
5. Make your check payable to the Secretary of State.
6. Ordering Copies: If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. A copy fee of $2.00 per page is required for each additional copy generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.
7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.
8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include annual list and business license fees will result in rejection of filing.

| Filed in the office of | Document Number |
| *Barbara K. Cegavske* | 20150097250-81 |
| Barbara K. Cegavske | Filing Date and Time |
| Secretary of State | 03/02/2015 6:05 AM |
| State of Nevada | Entity Number |
| | E0163232005-2 |

**ABOVE SPACE IS FOR OFFICE USE ONLY**

ANNUAL LIST FILING FEE: $125.00   LATE PENALTY: $75.00       BUSINESS LICENSE FEE: $200.00   LATE PENALTY: $100.00

**CHECK ONLY IF APPLICABLE AND ENTER EXEMPTION CODE IN BOX BELOW**

☐ Pursuant to NRS, this entity is exempt from the business license fee. Exemption Code: [____]

**NOTE: If claiming an exemption, a notarized Declaration of Eligibility form must be attached. Failure to attach the Declaration of Eligibility form will result in rejection, which could result in late fees.**

**NRS 76.020 Exemption Codes**

001 - Governmental Entity
005 - Motion Picture Company
006 - NRS 680B.020 Insurance Co.

☐ This corporation is a publicly traded corporation. The Central Index Key number is: _____

☐ This publicly traded corporation is not required to have a Central Index Key number.

| MICHAEL TRUNKETT | | TITLE(S) | | |
| NAME: | | **PRESIDENT (OR EQUIVALENT OF)** | | |
| 9360 W FLAMINGO RD #110-178 | | **LAS VEGAS** | **NV** | **89147** |
| ADDRESS: | | CITY: | ST: | ZIP: |
| BRIAN GREENSPAN | | TITLE(S) | | |
| NAME: | | **SECRETARY (OR EQUIVALENT OF)** | | |
| 9360 WEST FLAMINGO RD SUITE 110-178 | | **LAS VEGAS** | **NV** | **89147** |
| ADDRESS: | | CITY: | ST: | ZIP: |
| AMY GOLDSTEIN | | TITLE(S) | | |
| NAME: | | **TREASURER (OR EQUIVALENT OF)** | | |
| 9360 WEST FLAMINGO RD SUITE 110-178 | | **LAS VEGAS** | **NV** | **89147** |
| ADDRESS: | | CITY: | ST: | ZIP: |
| DAVID STEIN | | TITLE(S) | | |
| NAME: | | **DIRECTOR** | | |
| 9360 W FLAMINGO RD #110-178 | | **LAS VEGAS** | **NV** | **89147** |
| ADDRESS: | | CITY: | ST: | ZIP: |

None of the officers or directors identified in the list of officers has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of an officer or director in furtherance of any unlawful conduct.

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the office of the Secretary of State.

X _____

**Signature of Officer or Other Authorized Signature**

| Title: *Busion Dev* | Date: *02/23/15* |

Nevada Secretary of State List Profit
Revised: 7-31-13

EXHIBIT D

# Certificate of Business: Fictitious Firm Name

**FILED**

Please Select One:
☐ New Application
☐ Renewal of existing fictitious firm name

DEC 18 2014

*Diana Alba*

**Please Print or Type**

The expiration date for such certificates shall be the last day of the sixtieth month from the date of **CLERK**

The undersigned do/does hereby certify that  **Colocation America Corporation**
(Name of individual, corporation, partnership or trust)

with mailing address of  **9360 W Flamingo Rd #110-178** , **Las Vegas** , **NV** , **89147**
( Mailing Address for notification of renewal) (Street)    (City)    (State)    (Zip)

is/are conducting business in Clark County, Nevada, under the fictitious name of

**Colocation America Inc**
(Fictitious Firm Name) or (Doing Business As)

and that said firm is composed of the following person(s) whose name(s) and address(es) are as follows:

By signing below I do solemnly swear (or affirm), under penalty of perjury, that all statements made in this document are true.

(1) **Michael Trunkett, President**                          *Michael Trunkett*          **12/16/14**
Full Name and title (Type or Print)                    Signature                          Date
**9360 W Flamingo Rd #110-178**       **Las Vegas, NV**
Street Address of Business or Residence          City, State, Zip

Mailing Address, if different from above          City, State, Zip


(2) _____
Full Name and title (Type or Print)                    Signature                          Date

Street Address of Business or Residence          City, State, Zip

Mailing Address, if different from above          City, State, Zip


(3) _____
Full Name and title (Type or Print)                    Signature                          Date

Street Address of Business or Residence          City, State, Zip

Mailing Address, if different from above          City, State, Zip


(4) _____
Full Name and title (Type or Print)                    Signature                          Date

Street Address of Business or Residence          City, State, Zip

Mailing Address, if different from above          City, State, Zip


**03 RECEIVED**
**DEC 18 2014**
**COUNTY CLERK**

Mail to: Diana Alba, County Clerk, Attn. FFN, P.O. Box 551604, Las Vegas NV 89155-1604
Include: Filing Fee of $20.00 with the certificate plus 2 copies and a self-addressed stamped envelope

Diana Alba, County Clerk
12/18/2014 01:50:24 PM

1169407

201412181001853-0