BRIER, IRISH, HUBBARD & ERHART, P.L.C.
2400 East Arizona Biltmore Circle, Suite 1300
Phoenix, Arizona 85016
Telephone (602) 522-3940
Facsimile (602) 522-3945
Teresa H. Foster, Of Counsel (010877)
For Court Filings/Pleadings:
ctfilings@thfosterlaw.com
Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| COLOCATION AMERICA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MITEL NETWORKS CORPORATION,<br><br>Defendant.<br>_____<br>MITEL NETWORKS CORPORATION,<br><br>Counterclaimant,<br><br>v.<br><br>COLOCATION AMERICA, INC.; COREY ALLEN KOTLER and MOJGAN TABIBNIA, HUSBAND and WIFE,<br><br>Conterdefendants. | Case No. 2:17-cv-00421-NVW<br><br>(Honorable Neil V. Wake)<br><br><br><br>**PLAINTIFF/COUNTERDEFENDANT'S RESPONSE TO DEFENDANT'S MOTION FOR LEAVE TO FILE AMENDED PLEADING AND JOIN NEW COUNTER-DEFENDANT** |

Defendant Mitel Networks Corporation's ("MNC") Motion to Amend its Counterclaim, and to join another *new counter-defendant Albert Ahdoot* should be denied. MNC's Motion to Amend under FRCP Rule 15(a)(2) is not made in good faith, is futile, and would prejudice Plaintiff Colocation America Corporation ("Colocation"). Colocation incorporates by reference

its Response to Defendant's Motion to Amend Scheduling Order and for Leave to File Amended Pleading and Join New Counter-Defendant ("First Response") (doc #37).

## I. INTRODUCTION.

Again, this is a simple breach of contract case. The Agreement was signed by Albert Ahdoot ("Ahdoot") on behalf of Colocation. The parties agreed to $10,000 to be paid by Colocation for the assets listed in the Agreement by Quit Claim ("Agreement"). The $10,000 is still held in escrow.

The only issue before this Court should be whether or not the Agreement includes the IPv4 addresses.

MNC seeks to bring in Ahdoot personally as an alter-ego of Colocation based "on information and belief." See ¶¶233-244 of the proposed Second Amended Counterclaim. Yet, MNC took Ahdoot's deposition over 2 days and has received hundreds of pages of Colocation's bank statements, tax returns, financial records and business records. There is no further discovery to be performed and MNC still has no proof of grounds for an alter-ego (or piercing the corporate veil). The allegations "on information and belief" are not made in good faith.

## II. THE MOTION TO AMEND WAS NOT MADE IN GOOD FAITH, IS FUTILE, AND WOULD PREJUDICE COLOCATION.

Leave to amend under FRCP Rule 15(a) will be denied if the Motion to Amend is made in bad faith, for purpose of causing undue delay, would cause prejudice to the opposing party, or would be futile. *Griggs v. Pace Am. Group, Inc.,* 170 F.3d 877, 880 (9th Cir. 1999).

MNC seeks to expand the litigation by including another new party and adding three new counts (Fraud: Intentional Misrepresentation and Concealment, Civil Conspiracy, and Aiding & Abetting against another defendant). The proposed Second Amended Complaint

suggests that the purpose of the amendment is to pierce the corporate veil and add tort damages, punitive damages, and to hold its principal Ahdoot personally liable, simply because he signed the Agreement on behalf of Colocation.

MNC has admitted that it never communicated with Ahdoot directly before the Agreement was signed (it only communicated with Corey Allen Kotler prior to signing the Agreement). For the reasons set forth below, all three of these claims are futile.

### A. MNC's Motion to Amend is futile because it fails to state a claim upon which relief can be granted.

MNC's proposed Second Amendment fails to state a claim upon which relief can be granted as required by FRCP Rules 8(a)(2) & 12(b)(6). MNC knows that there is no basis to pierce the corporate veil or to go after Ahdoot on an alter-ego basis. Colocation has already produced all of its corporate records, bank statements, and tax returns to establish that it has followed corporate formalities, has not comingled assets, and it is not undercapitalized. The $10,000 in dispute is still held in the escrow account. Even if MNC were to obtain a judgment against Colocation, it has substantial income and assets to satisfy that judgment.

There is simply no evidence that "observing the corporate form of Colocation would sanction a fraud or work an injustice." In fact, all of MNC's allegations are "on information and belief." As MNC is aware, Colocation had over $2 million sales in 2015 and 2016, as shown on its income tax returns, disclosed in discovery responses to MNC. These documents were produced as "Confidential" information and are not attached to this pleading. If disputed, these documents will be filed under seal.

**B.     Proposed Count I (breach of contract) Naming Ahdoot personally is futile because his only participation was executing the Agreement on behalf of a Disclosed Principal (Colocation).**

Colocation agreed to pay $10,000 to MNC for the assets quit claimed through the Agreement. Colocation has deposited the $10,000 in an escrow account and the money is still being held by Escrow.com. Even if Colocation was to be held responsible for the breach of the Agreement, the amount owed under the Agreement, is available and being held in escrow awaiting disbursement.

Ahdoot's only participation in the Agreement was to sign on behalf of Colocation. He did not negotiate with MNC as MNC admits that it was aware that Allen/Kotler was acting as Colocation's agent when it negotiated the Agreement between MNC and Colocation. See proposed Second Amended Counterclaim at ¶¶32-34. An agent that signs a contract on behalf of a principal avoids personal liability if he is signing on behalf of the principal. *Myers-Lieber Sign Co. v. Weirich,* 2 Ariz. App. 534, 536, 410 P.2d 491, 493 (1966). See also *Restatement (Second) of Agency,* §§ 320-322 (1958). Nothing in the Agreement suggests otherwise. Ahdoot signed the Agreement on behalf of Colocation and is not liable personally for that action.

As explained above, Colocation has shown through discovery responses that it has its own income, its own bank account, pays its own bills, and owns assets separate from its shareholder Ahdoot.

Colocation, as the principal, is liable for any actions of its agent. MNC knows that Ahdoot has no independent liability which suggests that the only reason for seeking to add Ahdoot as a party is to cause undue prejudice to Colocation and Ahdoot.

**C.     Proposed Count III (fraud: intentional misrepresentation and concealment) is futile because Ahdoot did not make any representations to MNC and MNC did not rely upon any of the alleged allegations of fraud.**

MNC seeks to turn this simple breach of contract case into a claim for punitive damages by asserting tort claims. MNC did not have any communications with Ahdoot prior to execution of the Agreement and therefore Ahdoot could not have made any misrepresentations (or concealments) that MNC relied upon.

MNC admits that it entered into the Agreement, and then alleges breach of contract and tort claims based on the same alleged misrepresentations.

The proposed Second Amendment is grounded in alleged fraudulent conduct, and is required to satisfy the heightened pleading standard of FRCP Rule 9(b) ("A party must state with particularity the circumstances constituting fraud or mistake"). See also *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir. 2003). As set forth below, the proposed Second Amended Counterclaim does not meet this standard. MNC claims against Ahdoot for fraud are based on an email wherein Kotler writes to Ahdoot the following:

> "is there a way to slip it in nebulously? i.e. "…**and should any potential intellectually properties or scenarios that may be associated at a future point in time**"

This language appears nowhere in the final signed Agreement. Instead, the specific IPv4 addresses were stated in the language of the Agreement.

MNC's allegations are not of any particular knowledge, incentive, or pattern of conduct on behalf of Ahdoot that would make these fraudulent claims plausible. MNC admits that Ahdoot did not make any representations (let alone misrepresentations) to MNC prior to execution of the Agreement. Furthermore, MNC alleges Colocation's corporate filings are fraudulent, but MNC never saw these documents before litigation was filed and therefore never

"relied" upon them. The corporate structure and corporate filings of Colocation have no bearing upon the terms in the Agreement. Without that element, MNC cannot establish any of the remaining elements of fraud. One of the particular elements of fraud is the consequent and proximate cause of injury.

MNC also claims that since Ahdoot filed "erroneous" filings (it calls "false information") with the Nevada Secretary of State, that he has committed fraud and misrepresentation towards MNC in the contract negotiations. See ¶¶173 & 213-263 of proposed Second Amended Counterclaim. However, MNC has failed to provide a shred of evidence that MNC relied upon any of the actions by Ahdoot or that those actions influenced their ability or desire to enter into the Agreement, a document that MNC's attorney created, reviewed, consulted with a company vice-president about, and then recommended that it be executed.

Furthermore, none of the actions which MNC claims that Ahdoot did to defraud it had anything to do with the Agreement. MNC alleges the following:

1. Filing a false report(s) with the Nevada Secretary of State[1]

2. Agreement signature "Albert Ahdoot/Business"

3. Colocation is undercapitalized

MNC has no basis to include Ahdoot as a counter-defendant. The filings with the Nevada Secretary of State, the signature line on the Agreement, and the disputed claim that Colocation is undercapitalized (it had over $2 million sales in 2015 and 2016), fail to support adding Ahdoot as a counter-defendant. Disclosed documents confirm Colocation has its own bank account separate from Ahdoot, and filings have been made yearly with the Nevada

---

[1] Mr. Ahdoot has stated that he was following the advice of his Nevada registered agent (David Shugarman) who has submitted a declaration explaining the Nevada standard practice regarding annual filings. See **Ex A**.

Secretary of State and California Secretary of State evidencing its separate existence.

### D. Proposed Count V (aiding and abetting) likewise fails to state a claim.

As set forth above, Colocation is already liable for any acts of its authorized agent (Ahdoot) in connection with MNC's existing Counterclaim for breach of contract. The new separate claim of aiding and abetting fails to state a claim because Colocation is already vicariously liable for the actions of its authorized agent.

Like civil conspiracy, "aiding and abetting [is a] derivative tort for which a plaintiff may recover only if it has adequately pled an independent primary tort." *Agas' Holders,* 589 S.Supp.2d at 1192.

To establish its claim for aiding and abetting against Ahdoot, MNC must prove the following by a preponderance of the evidence that Ahdoot engaged in conduct (fraud, intentional misrepresentation, and fraudulent concealment) for which he would be liable to MNC. *Wells Fargo*, 201 Ariz. at 490 n. 16, 38 P.3d at 28 n. 16; *Restatement (Second) of Torts* § 876(b) (1979). Furthermore, to establish aiding and abetting MNC must plead the misrepresentation or omission with particularity. *Allstate Life Ins. Co., v. Robert W. Baird & Co., Inc.,* 756 F.Supp.2d 1113, 1165 (D. Ariz. 2010); ARCP Rule 9(b). Yet, MNC admits that it had no communications with Ahdoot prior to executing the Agreement. If MNC had no contact with Ahdoot, then Ahdoot could not have made any misrepresentation or omission. MNC has failed to plead the fraudulent conduct with particularity. Furthermore, MNC has failed to show any connection between the alleged acts of "aiding and abetting" and the Agreement, and how MNC was damaged by any such alleged action.

### IV. CONCLUSION.

MNC's Second Motion to Amend should be denied. MNC has failed to establish "good

cause" to amend its counterclaim (again) to include Albert Ahdoot as a counter-defendant. Under Rule 15(a) the motion is not made in good faith, will cause undue delay and prejudice, and the proposed amendment is futile.

DATED: December 15, 2017.

BRIER, IRISH, HUBBARD & ERHART, P.L.C.

/s/ Teresa H. Foster
Teresa H. Foster, Of Counsel
2400 E. Arizona Biltmore Circle, Ste 1300
Phoenix, AZ 85016
Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of December, 2017, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and emailed a copy same date to:

David E. Rogers
David G. Barker
Jacob C. Jones
SNELL & WILMER, LLP
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2202
drogers@swlaw.com
dbarker@swlaw.com
jcjones@swlaw.com

/s/ Harry Stanford