# EXHIBIT B

```
 1
 2            IN THE UNITED STATES DISTRICT COURT
 3                FOR THE DISTRICT OF ARIZONA
 4
 5   COLOCATION AMERICA, INC.,       )
                                     )
 6                  Plaintiff,       )
                                     )
 7        vs.                        ) No. CV-17-00421-
                                     )     PHX-NVW
 8   MITEL NETWORKS CORPORATION,     )
                                     )
 9                  Defendant.       )
     _____)
10
11
12        DEPOSITION OF ALBERT ARASH AHDOOT, a witness
13        herein, noticed by Snell & Wilmer L.L.P.,
14        taken at 350 South Grand, Los Angeles,
15        California, at 10:02 a.m., on Tuesday,
16        August 22, 2017, before Diane M. Lytle,
17        CSR 8606.
18
19
20
21
22
23
24
25
```

```
 1        A.   No.
 2        Q.   What is the full legal name of
 3   Colocation?
 4        A.   Colocation America Corporation, Inc.
 5        Q.   What is Colocation's approximate annual
 6   revenue?  And we can keep this -- we can keep this
 7   confidential.
 8        A.   Yeah, we'll keep it confidential.
 9   So do I need to give out the number?
10        Q.   (Nods head in the affirmative.)
11        A.   It's over 10 million.
12        Q.   Is it under 12 million?
13        A.   I honestly don't know the exact numbers.
14   It was over 10- last year, so -- we have grown, so
15   I'm sure it's over 10- still.
16        Q.   Last year was it under 12-?
17        A.   Last year was, I would say, between 10-
18   and 15-.
19        Q.   And is Colocation privately held?
20        A.   It is.
21        Q.   With you being the sole owner; correct?
22        A.   Correct.
23        Q.   Does Colocation have any subsidiary
24   companies?
25        A.   Not that I know of.
```

1    Q.  Whittington?

2    A.  Whittington.  I apologize.

3    Q.  Yeah.

4        Where did she confirm that?

5    A.  In the contract.

6    Q.  So it's your belief that that's confirmed

7 in the contract?

8    A.  Yes.

9    Q.  Okay.

10       After you located this IPv4 block and pinged

11 it, you've already said that you asked Corey Allen

12 Kotler to negotiate a deal to acquire it from

13 Mitel; correct?

14   A.  Correct.

15   Q.  How did you -- how did you -- Let's go

16 back.

17       Who introduced you to Corey Allen Kotler?

18   A.  Mr. Sigelman.

19   Q.  And when was that?

20   A.  I don't know the exact date.

21   Q.  Did you -- did you know him before

22 this -- Did you know him before finding out about

23 the block of IPv4 addresses?

24   A.  I did not, no.

25   Q.  And so this isn't attorney-client

```
 1  He was negotiating contract.
 2         Q.  On behalf of Colocation?
 3         A.  On behalf of himself, on behalf of
 4  Colocation, correct.
 5         Q.  And per your instructions; correct?
 6         A.  When you say per my instructions, again,
 7  we gave him a list, and he was supposed to find
 8  the actual people that own them, and he was
 9  supposed to negotiate a contract to buy the
10  assets, including the IPv4 address.
11         Q.  Well, let's talk specifically, though,
12  about MNC.
13         A.  Sure.
14         Q.  You had already located the IPv4 block,
15  you've stated that; correct?
16         A.  Correct.
17         Q.  And you'd already pinged it; correct?
18         A.  Correct.
19         Q.  And you told Corey Allen Kotler to try
20  and negotiate a deal to get that block; correct?
21         A.  We told him to reach out to find the
22  person who's responsible for selling the assets,
23  being the domain and the IPv4 in this case, and he
24  reached out and he negotiated the contract,
25  correct.
```

1  any longer?
2      A.  No.  His contract was over and that was
3  it.  We told him --
4      Q.  No, I'm just asking, did he not want to
5  work for Colocation any longer?
6      A.  I don't think he has any reason not to.
7  He, I'm sure, wanted to continue, but we only
8  wanted to try him for so many months.
9      Q.  How did you terminate him?  How did you
10 terminate the contract?
11     A.  Told him, I'm sure, via email, saying,
12 "Thank you so much, it's been a pleasure, and
13 we're done."
14     Q.  Did he respond --
15     A.  I don't know.
16     Q.  -- that you recall?
17     Who would have sent him that email?
18     A.  I probably have.
19     Q.  And do you recall him responding, asking
20 for more work?
21     A.  I don't recall.  I'm sure he was happy at
22 the time and said thank you.
23     Q.  But you don't recall?
24     A.  No.  A lot of emails every day.  I don't
25 recall.

```
 1        Q.  You said you met with him about
 2   ten times.
 3        Every time you met with him, did you talk
 4   about acquiring IPv4 blocks?  Was that the basic
 5   discussion that you had?
 6        A.  We talked to him about his projects
 7   that's going on.  The project was to acquire IPv4
 8   addresses, correct.
 9        Not to be rude, if I may take --
10        MR. ROGERS:  Sure.
11        THE WITNESS:  -- that break.  It's been an
12   hour.
13        MR. ROGERS:  Please.  We'll take a break.
14        We're off the record.
15        THE VIDEOGRAPHER:  Off the record at
16   10:58 a.m.
17        (A recess is taken.)
18        THE VIDEOGRAPHER:  Okay.  We are back on
19   record at 11:11 a.m.
20        MR. ROGERS:
21        Q.  When did you first learn of Dividend
22   Advisors, LLC?
23        A.  When we signed a contract with them.
24        Q.  Are you aware if Dividend Advisors, LLC
25   is a real business?
```

1      I, Diane M. Lytle, CSR 8606, do hereby declare:

2

3      That, prior to being examined, the witness named in the foregoing deposition was by me duly sworn pursuant to Section 30(f)(1) of the Federal

4      Rules of Civil Procedure and the deposition is a true record of the testimony given by the witness.

5

6      That said deposition was taken down by me in shorthand at the time and place therein named and thereafter reduced to text under my direction.

7

8      ____ That the witness was requested to review the transcript and make any changes to the transcript as a result of that review

9      pursuant to Section 30(e) of the Federal Rules of Civil Procedure.

10

11     ____ No changes have been provided by the witness during the period allowed.

12     ____ The changes made by the witness are appended to the transcript.

13

14     ____ No request was made that the transcript be reviewed pursuant to Section 30(e) of the Federal Rules of Civil Procedure.

15

16     I further declare that I have no interest in the event of the action.

17     I declare under penalty of perjury under the laws of the United States of America that the

18     foregoing is true and correct.

19     WITNESS my hand this 1st day of

20     September, 2017.

21     

22     _____
       Diane M. Lytle, CSR 8606

23

24

25