David E. Rogers (#019274)
David G. Barker (#024657)
Jacob C. Jones (#029971)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: drogers@swlaw.com
        dbarker@swlaw.com
        jcjones@swlaw.com

Attorneys for Defendant
Mitel Networks Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Colocation America, Inc., | No. CV-17-00421-PHX-NVW |
| Plaintiff, | |
| v. | **MITEL NETWORK CORPORATION'S MOTION FOR RECONSIDERATION OF COURT'S ORDER (DOC. 67)** |
| Mitel Networks Corporation, | |
| Defendant. | |
| [And related Counterclaims] | |

Defendant and Counterclaimant Mitel Networks Corporation ("MNC") moves under LRCiv 7.2(g) for reconsideration of the Court's Order of March 1, 2018 (Doc. 67), in which it denied (1) MNC's Motion for Leave to File a First Amended Counterclaim (Doc. 35), which the Court had granted four months earlier, and (2) MNC's Motion for Leave to File a Second Amended Counterclaim (Doc. 56). Denying these motions effectively dismissed (a) MNC's previously-allowed tort claims against Colocation America, Inc. ("Colocation") and Corey Allen Kotler ("Kotler") and, (b) rejected MNC's proposed claims against Albert Ahdoot ("Ahdoot"). MNC acknowledges that motions for reconsideration are rarely granted, but respectfully submits reconsideration is appropriate here.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1    Here, the tort claims were ultimately based on:  (1) Colocation's agent Kotler using

2  a false identity with Colocation's and its owner's (Ahdoot's) knowledge, to communicate

3  with MNC, and (2) Kotler, Colocation, and Ahdoot falsely representing their true

4  intention to hook MNC into to entertaining the weeks-long conversation that lead to the

5  Contract (the Domain Name and Assignment Agreement).  Kotler, at Ahdoot's and

6  Colocation's direction, expressed a desire to pay $10,000 for a quit claim to rights in a

7  domain name, when their true intent was to surreptitiously obtain rights in IPv4 addresses

8  worth about $1.6-$1.8 million.

9    Any delay in bringing the tort claims was caused by Colocation, its lawyer and

10  Kotler by misrepresentations while negotiating the Contract and during this lawsuit.  In

11  fact, the Court previously found, "there's [no] indication here of culpable delay in seeking

12  [to amend the counterclaim]." Ex. 1 at 27:3-4.  Further, the fraud counts in the first

13  amended answer and counterclaim and the proposed Second Amended Counterclaim

14  (Doc. 56-1) ("SAC") state causes of action.  Alternatively, if there are technical

15  deficiencies, leave should be granted to amend them.

16                        **Memorandum of Points and Authorities**

17                            **I.   Legal Standard.**

18    "The Court will ordinarily deny a motion for reconsideration of an Order absent a

19  showing of manifest error or a showing of new facts or legal authority that could not have

20  been brought to its attention earlier with reasonable diligence.  Any such motion shall

21  point out with specificity the matters that the movant believes were overlooked or

22  misapprehended by the Court."  LRCiv 7.2(g)(1); *see Webber v. Norwalk*, No. CV 05-

23  04219-PHX-NVW, 2007 WL 7698736, at *10 (D. Ariz. Feb. 8, 2007) (granting motion

24  for reconsideration).

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

## II.   Background and Discussion.

The Order (Doc. 67) essentially relieves Colocation, its owner and only employer, Ahdoot, and its agent, Kotler, for:  (1) fraudulent misrepresentations[1] and concealment when contacting and negotiating with MNC, and (2) numerous discovery and disclosure violations of the Federal Rules of Civil Procedure.  *See* Doc. 40 at 1-3; Doc. 29 (the parties jointly described Colocation's discovery misconduct and delays that necessitated an extension of the case schedule).

MNC did not discover the deception by Colocation, Ahdoot, and Kotler until MNC finally tracked down Kotler and deposed him, and then took further discovery from Colocation.  Based on Colocation's misconduct, the parties *jointly* requested an extension of time, which was granted.  Doc. 29, filed August 10, 2017.  After MNC learned Kotler's true name, deposed Kotler, and obtained from him a partial version of an email that Colocation did not produce about "nebulously" slipping a reference to IPv4 addresses into the Contract, MNC had partial evidence of the fraud.[2]  The deposition of Kotler on September 7, 2017 was followed by a Motion for Leave to File a First Amended Pleading (Doc. 35) on September 21, 2017, a second deposition of Ahdoot on October 20, 2017, a Second Motion to Extend the Discovery Deadlines (Doc. 40) on October 24, 2017, an oral argument on November 1, 2017 (Ex. 1), and a Motion for Leave to File a Second Amended Counterclaim on December 1, 2017.  Doc. 56.

MNC acted diligently and promptly moved to amend the pleadings upon learning of the fraud, but the Court has placed blame for any alleged "delay" on MNC.  Doc. 67 at

---

[1] The Court has noted that "Allen" is his true middle name, and thus there may be some truth to "Corey Allen."  While it may somehow be partially correct that Kotler's name is "Corey Allen," that is still a lie.  *Lerner v. DMB Realty, LLC*, 322 P.3d 909, 921 (Ct. App. 2014) ("Half-truths can be the stuff of fraud claims.") (citing Prosser, Torts, 5th Ed. § 106 ("half of the truth may obviously amount to a lie, if it is understood to be the whole.").

[2] The document MNC showed the Court on February 28, 2018 (attached hereto as Exhibit 3) *was not produced to MNC until February 27, 2018*, even though Colocation had it, and it was subject to discovery requests.  The Court expressed displeasure at MNC on February 28, questioning why this case has been so expensive given this convincing evidence.  *See* Ex. 2.  The Court even stated: "You win your contract lawsuit."  *Id.* at 12:21.  But the Court perhaps did not fully consider that this document had been produced "yesterday," as MNC's counsel stated.  Ex. 2 at 9:18.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

13-15 ("This amended pleading comes *in medias res* and would slow down, delay, and extend the underlying litigation, to the prejudice of the claims and the litigants already in process."). Any prejudice to Colocation, Kotler, and Ahdoot is of their own making. *See, e.g.*, Doc. 29 (jointly describing Plaintiff's and Kotler's discovery misconduct); Doc. 40 (describing further discovery misconduct). It is manifest error for the Court to disregard the prejudice that Colocation has caused MNC through its deception and the prejudice that the Court's Order (Doc. 67) now causes MNC, especially in view of the Court's prior express direction given during the November 1, 2017 oral argument. Accordingly, MNC respectfully requests reconsideration of the Order (Doc. 67).

The following sections point out the matters that MNC believes "were overlooked or misapprehended by the Court," which result in "manifest error." LRCiv 7.2(g)(1).

## A.   MNC Acted Diligently After Discovering Kotler's True Identity.

Rule 16(b)'s "good cause" standard "primarily considers the diligence of the party seeking the amendment." *Pac. Sci. Energetic Materials Co. (Arizona) LLC v. Ensign-Bickford Aerospace & Def. Co.*, 281 F.R.D. 358, 360 (D. Ariz. 2012) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)); *Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 687 (E.D. Cal. 2009) (granting leave to amend, where defendant became aware of facts relating to counterclaim during discovery, nothing indicated defendant should have known of the facts earlier, and defendant acted diligently to amend the pleading after becoming aware of the new facts). Good cause exists here to amend the pleadings. *See* Docs. 29, 35, 40, and 56.

Colocation's Initial Disclosure (May 15, 2017), Amended and Restated Initial Disclosure (May 18, 2017) and Interrogatory Responses (June 26, 2017) listed a fictitious "Corey Allen." According to Colocation, the fictitious "Corey Allen" had an address of 433 North Camden Drive, Suite 970, Beverly Hills, California 90210.[3] On June 15, 2017, MNC provided notice to Colocation's counsel that it would be serving a subpoena on

_____

[3] When deposed, Ahdoot blamed these false statements on Colocation's attorneys.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

"Corey Allen" at the Beverly Hills address.  The truth, however, is that there is no "Corey Allen" and the Beverly Hills address is actually the office of Colocation's lawyer, Sigelman.  Colocation and its attorneys made no effort to correct the record and Sigelman accepted service for "Corey Allen," then later denied that service on "Corey Allen" was proper.  Doc. 35 at 7:13-14 and Ex. 5 thereto at ¶¶ 3, 8, 12.  MNC—at a considerable expense that a litigant should not have to incur to identify basic contact information for a key witness listed by Colocation—was forced to investigate further, which eventually led to discovering the correct name of "Corey Kotler" and the address of 2385 Roscomore Road, Unit E11, Los Angeles, California 90077.  Doc. 35 at 5:1-9.  On July 25, 2017, MNC served Kotler at the Roscomore Road address with subpoenas for document production and a deposition.  Kotler falsely told the process server that his name was not Corey Kotler and refused to take the subpoenas.  *Id.* at 5:10-16.  Eventually, Colocation's attorney, Sigelman, arranged for Kotler's deposition to occur on September 7, 2017.  *Id.*

During Kotler's deposition, MNC learned of, or confirmed, facts that give rise to new allegations and counts of:  (1) fraudulent inducement and civil conspiracy against Colocation and its agent Kotler, and (2) aiding and abetting against Colocation based on the actions of its agent, Kotler.  *Id.* at 6-7.  The first motion to amend sets forth these facts in detail, for example, that Sigelman, Colocation's lawyer, introduced Kotler to Colocation.  *Id.* at 6-7; Ex. 2 to Doc. 35 (Kotler deposition) at 55:7-25; Ex. 9 to Doc. 35 (Colocation deposition) at 41:17-18.  Colocation knew Kotler's true identity before Kotler negotiated with MNC.  Doc. 35 at 7; Ex. 2 to Doc. 35 at 69:19-70:1.  Kotler and Colocation intentionally concealed Kotler's true identity from MNC during: (1) the contract negotiations, which would not have taken place but-for the concealment, and (2) this litigation.  *See id.*  Moreover, Colocation knew Kotler was misleading MNC during negotiations both by concealing his identity and also by falsely representing that the intention was to acquire rights in a domain name for $10,000.  *See id.*; Ex. 3 hereto.

MNC filed its first motion to amend (Doc. 35) *two weeks after* Kotler's deposition, on September 21, 2017.  That is not delay; it is diligence.  *Id.* at 8-9.  The Court held a

- 5 -

1  hearing on the First Motion to Amend on November 1, 2017, during which the Court

2  agreed that MNC had been diligent. Ex. 1 at 27:2-5 (Court: "And there's not indication

3  here of culpable delay in seeking this. It surfaced later. So I do think I need to allow that

4  amendment."). MNC promptly filed its Amended Counterclaim on November 3, 2017

5  (Doc. 49), after the Court properly granted MNC's motion to amend to add Kotler and tort

6  counts. Doc. 48.

7  **B.**   **MNC Acted Diligently After Learning Facts Sufficient to**

8          **Pierce Colocation's Corporate Veil and Sue Ahdoot Personally.**

9          MNC timely noticed the depositions of Colocation's four "officers" on September

10  19, 2017 for depositions on October 20, 2017. Colocation acknowledged receipt of the

11  notices on September 21, 2017. Colocation then waited until October 19 (the day before

12  the scheduled depositions), before it informed MNC that all four Colocation "officers" are

13  fictitious. Ex. 1 to Doc. 40. Colocation acknowledged that it had submitted fictitious

14  information about these officers and other Colocation company information to the State of

15  Nevada. Ex. 2 to Doc. 40. Each knowingly false filing is a Class C felony under Nevada

16  Revised Statutes 239.330. *See also*, Ex. 2 at 28:19-24.

17          Because discovery was set to close on October 31, 2017, MNC diligently moved to

18  extend the discovery period on October 24, 2017. Doc. 40. The Court set a hearing on

19  November 1, 2017 on Doc. 40. During that hearing, the Court instead decided to have the

20  parties argue MNC's First Motion to Amend (Doc. 35). Ex. 1 at 6:2-16. The Court

21  agreed with MNC's position and granted Doc. 35. Doc. 48, *see also* Ex. 1 *generally*.

22          The Court denied Doc. 40, which sought an extension of the schedule based on

23  Colocation's discovery misconduct, but acknowledged Colocation's misconduct:

24          THE COURT: Well, on the motion to extend [Doc. 40], it
           really -- on the one hand, **the defendants are entitled to get**
25         **that discovery unless the plaintiffs get sanctioned [4] for**
           **failure to, in good faith, give discovery that made this**
26         **delay necessary**.
           MR. BARKER: Thank you, Your Honor.

27

28  ---
    [4] The Court has not issued any sanction against Colocation.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

THE COURT: But **I don't have to go into that unpleasantness if I otherwise decide to allow the amended pleading**.

\*\*\*

THE COURT: As I said before, that's going to render moot -- that's going to require redoing the schedules to deal with that and **it's going to render harmless what may or may not have been culpable failure by the plaintiff to give timely accurate discovery** that prevented the defendant from doing the discovery it wants.

Ex. 1 at 4:23-5:5, 27:6-14 (emphasis added).

The relevance of these statements is that the Court's Order (Doc. 67) appears to place the blame for delay on MNC, but any delay was plainly caused by Colocation, Ahdoot, Sigelman, and Kotler – and not MNC – as it seemed the Court had already found.

## C.   MNC Timely Explained Why the Second Amended Complaint Was Proper.

The Court granted MNC leave to file a second motion to amend (Docs. 48, 56) based in part on the issues in Doc. 40. Ex. 1 at 3:6-12, 4:23-5:5, 27:6-14, 28:17-18. Doc. 56-1 sets forth tort counterclaims against Ahdoot in his personal capacity (and was not intended to further plead the existing fraud claims, which the Court had previously ruled were already properly pled, and the sufficiency of which was not at issue). The Court gave clear instructions on this matter, which MNC followed:

THE COURT: I'd like the defendants to draft their proposed additional pleading as against Mr. Ahdoot **to see if the other side will, in light of the general direction I have given, whether they will not oppose it** on the -- **the only way to [op]pose it would be if it fails to state a claim**, so you are welcome to fight **that battle**. But I'd like to have that teed up. So could we set a time by which time you will have it to Ms. Foster and she can make a decision whether to acknowledge it states a claim, or –

MR. BARKER: Your Honor, two weeks.

THE COURT: Two weeks would be fine.

Ex. 1 at 28:24-29:9. MNC reasonably understood, in light of the Court's comments on November 1, 2017 (Ex. 1), that the only "battle" remaining was whether MNC could adequately state a claim for *individual* liability against Ahdoot.

1    MNC timely sent Colocation and Ahdoot's counsel a proposed SAC to Colocation

2    on November 10, 2017 (Doc. 56 at 2), four days *prior* to the Court's deadline.  *See* Ex. 1

3    at 29:10-17.  After meeting and conferring, Colocation acknowledged that the proposed

4    Counts for fraud and civil conspiracy against Ahdoot stated claims.  *See* Fed. R. Civ. P.

5    15(a)(2); Doc. 56-2, Ex. 2.  But Colocation would not stipulate to entering the full SAC as

6    drafted.  Doc. 56-2, Ex. 2.  MNC then acted expeditiously and in accordance with the time

7    frame set by the Court.  Ex. 1 at 29:10-17; Doc. 56 was filed on December 1, 2017.

8    **D.  The Court Asserted that MNC's Amendment Would**
     **Cause Delay, but MNC Acted Diligently and the Court**
9    **Overlooked the Fact That Colocation Caused Any Delay.**

10       The Order (Doc. 67) states:  "This amended pleading comes *in medias res* and

11   would slow down, delay, and extend the underlying litigation, to the prejudice of the

12   claims and the litigants already in process."  Doc. 67 at 13-15.  Further, "the addition of

13   Counter-defendants Corey Allen Kotler and Mojgan Tabibnia, husband and wife, and the

14   counterclaims against them would also slow down, delay, and extend the underlying

15   litigation, to the prejudice of the claims and the litigants already in process."  Doc. 67 at

16   5:13-16.  But the Court overlooked that it was Colocation, Ahdoot, their attorney, and

17   Kotler that caused any delay, as discussed above.

18       MNC acted with diligence as soon as it learned the underlying facts of intentional

19   misrepresentation and concealment during negotiations with MNC and this litigation.  *See*

20   Doc. 29, 35, 40, and 56.  And the Court granted the motion to add Kotler as a

21   counterdefendant on November 1, 2017, more than four months ago.  The Court's Order

22   then (Doc. 48) did not allege any delay by MNC, and expressly found that "there's not

23   indication here of culpable delay in seeking this."  Ex. 1 at 27:3-4.  The Court even

24   expressly stated that a new scheduling order must be entered.  Ex. 1 at 3:21-22.  But now,

25   the Court states that the amended pleadings would "slow down, delay, and extend the

26   underlying litigation, to the prejudice of the claims and the litigants already in progress."

27   Doc. 67 at 5:13-16.  MNC has only adhered to the Court's orders and timelines, while

28

Colocation, Ahdoot, and their attorney, have concealed even the most basic information, such as the true names and addresses of witnesses.

Furthermore, considering the content of Docs. 29, 35, and 40, the Court's statement on February 28 that "discovery was closed" (Ex. 2 at 19:8-12) was not accurate.  When MNC was seeking a discovery extension (based on Plaintiff's misconduct) the Court determined that a new scheduling order would be entered.  *See, e.g.,* Ex. 1 at 4:23-5:1, 6:3-8 ("Well, on the motion to extend, it really -- on the one hand, the **defendants are entitled to get that discovery** unless the plaintiffs get sanctioned for failure to, in good faith, give discovery that made this delay necessary. . . [I]f [leave to amend is] granted we're going to have to redo the schedule anyway, and you are going to get to do the discovery you want and it just moots the question of whether to extend the schedule **for that second reason** if we have to extend it more broadly.") (emphasis added); *see also* Doc. 40.

### E. The Court Summarily Rescinded its Prior Order Regarding the First Amended Counterclaim, Which Results in Manifest Error.

The Order (Doc. 67) concluded:  "Mitel Networks' Amended Counterclaim (Doc. 49) adding Counter-defendants Corey Allen Kotler and Mojgan Tabibnia, husband and wife, suffers from the same deficiencies discussed above concerning the now-rejected further counterclaim against Counter-defendants Albert Arash Ahdoot and Dafma Ahdoot."  Doc. 67 at 5:9-12.  Yet, when the parties argued this issue on November 1, 2017, the Court granted MNC's motion to amend without expressing any such concern. The Court stated at the hearing, regarding the fraud claim, "Well, that comes back to whether the, quote, fraud, is material.  Anyway, I'm not resolving that, because for purposes of amendment, I don't have to resolve that if it's, you know, if it states a claim," (Ex. 1 at 13:3-7), and, "Anyway. So, I can't say that the proposed amended complaint fails to state a claim.  It will depend on facts and evidence as to whether this concealment or whatever it is was material.  You can't say that in the abstract that it was not. And there's no indication here of culpable delay in seeking this. It surfaced later.  So I do think

1   I need to allow that amendment." *Id.* at 26:24-27:5. Regarding the proposal to add

2   Ahdoot: "I'm not going to be disposed to deny it on the basis of—well, they will never be

3   able to prove this." *Id.* at 27:19-20.

4          Further, the allegations in the First Amended Answer and Counterclaim (Doc. 35)

5   supporting the tort claims against Kotler are not identical to the allegations supporting the

6   tort claims against Ahdoot. For example, Kotler, as an independent agent of Colocation,

7   is personally liable for his own torts. Ex. 1 at 20:1-3 (the Court correctly stating the law

8   that "[I]f the agent is involved in tort or fraud, the agent's personally liable, too."); *accord*

9   Doc. 39 at 4-5 (citing *Warner v. Sw. Desert Images, LLC*, 218 Ariz. 121, 127 (Ct. App.

10  2008)). Kotler testified that he intentionally concealed his true identity from MNC during

11  negotiations because if MNC knew his real name, "Corey Kotler," MNC would not have

12  continued speaking with him. Ex. 2 to Doc. 35 at 70:7-73:22. Kotler is correct. MNC

13  would not have negotiated with Kotler to contract with an unknown third party if MNC

14  had known *either* that (1) Kotler was using a false name "Corey Allen," or (2) Kotler's

15  true identity. Doc. 35 at 6:14-15. Even Colocation admits that it would not do business

16  with someone using a fake name. Ex. 9 to Doc. 35 at 144:4-6. Furthermore, Kotler

17  withheld from MNC the fact that he and Ahdoot planned to mislead MNC and

18  surreptitiously try to obtain rights in IPv4 addresses by claiming they only wanted rights

19  in a domain name. Doc. 35 at 7:1-4.

20         The proposed first amended pleading sets forth these allegations against Colocation

21  and Kotler, and they are sufficient to state a claim for fraud, independent of any contract

22  defenses based on fraud. *See, e.g,* Doc. 49 (FAC starting at p. 6) at ¶¶ 23-65, 83-87, 88-

23  92, 179-219. Kotler's fraud directly caused MNC damages, for example, MNC has been

24  damaged in incurring fees to identify Kotler's true name and address. *See, e.g.,* Doc. 49 at

25  p. 5 (affirmative defenses) ¶ 27 ("Plaintiff and Kotler intended MNC to rely on their

26  misrepresentations to MNC's detriment, MNC did rely on those misrepresentations to its

27  detriment, and MNC has been damaged at least by incurring attorney fees directly caused

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

by Plaintiff's fraud.")[5].  Not having any specific reasoning as to why the prior order (Doc. 48) approving MNC's first amended counterclaim has been rescinded, MNC has been deprived of an opportunity to respond and address any perceived deficiencies.  This is manifest error.  *See Webber*, 2007 WL 7698736, at *10 (granting a request for reconsideration because the court issued an order "without the benefit of adequate briefing").

**F.  The Court Overlooked Ahdoot's Actions that Merit Piercing the Corporate Veil, Because Making Intentional Fraudulent Statements Are Not <u>Something a Typical One-Shareholder Corporation Would Do</u>.**

The Order (Doc. 67) stated:  "The conclusory allegations are made but not backed up with anything, much less anything plausible, including allegations of fraudulent purpose and 'sham' entities.  For the most part, all those allegations could pertain to any one-shareholder corporation being directed by its one shareholder."  Doc. 67 at 2:27-3:3. The Court may have overlooked the following specific allegations in the proposed second amended counterclaim:  Doc. 56, Ex. 1 ¶¶ 208-229; 230-241; 243-263

Intentional misrepresentations to a state government, such as listing phony officers and a phony director, while concealing the name of the company's true owner and officer, employing an agent known to be using a phony name, intentionally misrepresenting the nature of a proposed contract, and contracting and bringing suit in the name of a non-existent entity, are not actions that a typical "one-shareholder corporation being directed by its one shareholder" would carry out.  Those are sufficient to state claims against Ahdoot personally.  He will already be at the trial, and he already agreed claims were sufficiently stated against him "[w]ith regards to Counts III & IV (fraud and conspiracy)." Doc. 56-2, Ex. 2; *see* Fed. R. Civ. P. 15(a)(2) (permitting pleading amendment without leave of court where "the opposing party's written consent" is obtained)

---

[5] Under Rule 8(c)(2)("Mistaken Designation") and 8(e)("Construing Pleadings"), MNC respectfully requests that this quoted section under MNC's "Fourth Affirmative Defense" be construed as part of the counterclaims, "to do justice."

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

### G.  The Court Overlooked the Specific Misrepresentations Made by Colocation, Ahdoot, and Kotler, and That Those Specific Misrepresentations Are Material.

Regarding Count Three for fraud, intentional misrepresentation, and concealment, the Order (Doc. 67) stated:  "Its conclusory assertions and global incorporation of everything else in the counterclaim do not show what misrepresentations or concealments are alleged or how they are material."  Doc. 67 at 3:10-12.  MNC followed the Court's direction and sought consent from Colocation and Ahdoot to add Counts III (fraud) and IV (civil conspiracy) against Ahdoot personally.  Colocation and Ahdoot agreed that those counts stated claims against them.  Doc. 56-2, Ex. 2.  Accordingly, MNC did not brief those counts in detail.  Ex. 1 at 28:24-29:9 (suggesting, at least in MNC's view, that the brief should be limited to whatever limited "battle" remained after conferring); *see Webber*, 2007 WL 7698736, at *10 (granting a request for reconsideration because the court issued an order "without the benefit of adequate briefing").

To allege fraudulent concealment, MNC must plead:

> (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*Coleman v. Watts*, 87 F. Supp. 2d 944, 951–52 (D. Ariz. 1998) (citation omitted).  The elements of fraudulent misrepresentation are as follows:

> (1) a representation: (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the listener's reliance on its truth; (8) the right to rely on it; and (9) his consequent and proximate injury.

*Wells Fargo Credit Corp. v. Smith*, 803 P.2d 900, 905 (Ct. App. 1990).  At least the following allegations plead examples of the specific misrepresentations and concealments against Colocation, Ahdoot, and Kotler.  Doc. 49 (FAC starting at p. 6) at ¶¶ 23-65, 83-87, 88-92, 179-219 (these allegations are also included in the SAC, although the numbering

- 12 -

changed due to the added paragraphs shown by the underlines).

The following allegations plead examples of materiality against Colocation, Ahdoot and Kotler: Doc. 56-1 at ¶¶57-58, 315-320). While materiality is generally a fact issue for the jury to decide, as the Court previously observed (Ex. 1 at 27:2-3), here there are admissions under oath from Colocation and Kotler that the fraudulent misrepresentations and concealment were material; *i.e.* MNC would not have wasted weeks of time and money negotiating with Kotler had it known the truth about Kotler's identity.  Ex. 2 to Doc. 35 at 70:7-73:22; Ex. 9 to Doc. 35 at 144:4-6.  A declaration from MNC should not be necessary given this is not summary judgment, but if it would alter the analysis, MNC can produce a declaration.

## H. **Kotler's Fraud Is Separate from Colocation's Fraudulent Inducement**.

The Order (Doc. 67) states:  "As to all counterdefendants, it is not at all clear that it is an actionable tort for money damages to fraudulently induce a party to make a contract that is null and void at the party's election.  The parties have not provided any briefing on this issue.

It is possible a jury could decide that *Colocation* did not fraudulently induce MNC to enter the Contract and at the same time decide that *Kotler* committed actionable fraud when he lied to MNC about his identity.  Those claims are *not* identical, because *there would not even have been negotiations* had MNC known the truth about Kotler's.  Even *if* the cost incurred by MNC was a nominal amount, MNC still has the right to pursue punitive damages, which are designed to punish and deter bad conduct.  *Echols v. Beauty Built Homes, Inc.*, 647 P.2d 629, 633 (1982) (abuse of discretion to deny punitive damages in fraud claim where the record showed "reckless indifference to the interest of" the other party); *Pickthall v. Steinfeld*, 100 P. 779, 779 (1909) (even nominal damages can sustain a fraud claim).

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

**I.    MNC Has Stated a Claim for Civil Conspiracy.**

"For a civil conspiracy to occur two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 498 (2002), as corrected (Apr. 9, 2002).  Arizona recognizes conspiracies between principals and their agents.  *Morrow v. Boston Mut. Life Ins. Co.*, No. CIV. 06-2635PHXSMM, 2007 WL 3287585, at *9 (D. Ariz. Nov. 5, 2007) ("no Arizona authority has been found to support Defendants' contention that principals and agents cannot, as a matter of law, be co-conspirators").

The Court stated:  "It is murky whether a civil tort cause of action for conspiracy is adequately alleged in this case."  Doc. 67 at 3:25-26.  MNC has adequately pleaded conspiracy.  If it is "murky" as to whether civil conspiracy was adequately alleged, MNC should have been granted leave to amend, because such an amendment would not be futile.

**J.    The Court Overlooked that MNC Alleged Independent Torts Committed by Kotler; an Agent Is Personally Liable for His Own Torts.**

Regarding the claim for aiding and abetting, the Order states, "Colocation could not have 'substantially assisted or encouraged Kotler in committing the alleged torts' that a corporation can only commit through an agent."  Doc. 67 at 5-7.  The Court overlooked that an agent is liable for his own torts, including the fraud alleged against Kotler personally, which the Court previously found MNC had adequately pleaded.  Ex. 1 at 20:1-3 (the Court correctly stating the law that "[I]f the agent is involved in tort or fraud, the agent's personally liable, too") and Doc. 49 (granting MNC's motion); *Warner v. Sw. Desert Images*, LLC, 218 Ariz. 121, 127 (Ct. App. 2008) (reversing dismissal of agent: "It is well established law that an agent will not be excused from responsibility for tortious conduct [merely] because he is acting for his principal."; liability is joint and several) (citations omitted).  If Kotler committed a tort, which MNC alleges he did, he is liable for that tort, even if Colocation is not liable under *respondent superior*.  And because Kotler

committed an independent tort, Colocation is liable for aiding and abetting that tort.

The Court appears to be concerned with the efficiency of adding Kotler to this case. *See* Ex. 2 *generally*. MNC respectfully submits that the main reason for having to track down Kotler (to depose him and learn many of the facts supporting the torts) was precisely because Kotler used a false identity, and Colocation, Ahdoot and their attorney knew that and kept up the charade during this lawsuit. Kotler is not an innocent bystander.

### K. **It Is More Efficient to Pursue Tort Counts Here.**

It is not efficient, as the Court suggests (Ex. 2 at 22:21-23), for MNC to pursue Kotler or Ahdoot later in a separate proceeding. Respectfully, MNC could find no cases supporting the Court's suggestion that simply because "[Colocation] say[s] they're good for it, and they'll pay [a judgment]" that MNC cannot sue others who may be liable. MNC, respectfully, has the right to name Kotler and Ahdoot in *this* lawsuit (*see* Fed. R. Civ. P. 8(d)(3) "[A] party may state as many separate claims or defenses as it has, regardless of consistency]"; 19 (joinder of indispensable parties)),[6] and any delay was caused by deception from Kotler, Sigelman, Ahdoot, and Colocation. Ahdoot and Kotler caused any delay and it is they who should suffer any consequences of their actions.

### III.    **Conclusion.**

For the foregoing reasons, the Court should reconsider its Order (Doc. 56) and grant MNC's proposed first and second amended pleadings. MNC respectfully submits that the trial may proceed as scheduled *with* those claims, and no delay would be necessary.

DATED this 15th day of March, 2018.

---

[6] MNC is still attempting to finalize a tolling agreement with Colocation, Adhoot, and Kotler. In the absence of such an agreement, there is obvious prejudice to MNC in the Court's requiring MNC to not file claims that it has against these parties.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

SNELL & WILMER L.L.P.

By: *s/ Jacob C. Jones*
    David E. Rogers
    David G. Barker
    Jacob C. Jones
    One Arizona Center
    400 E. Van Buren, Suite 1900
    Phoenix, Arizona  85004-2202

Attorneys for Mitel Networks Corporation

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Teresa H. Foster, Esq.
Brier, Irish, Hubbard & Erhart, P.L.C.
2400 East Arizona Biltmore Circle
Suite 1300
Phoenix, AZ 85016
ctfilings@thfosterlaw.com

Paul Stephen Sigelman
Sigelman Law Corporation
433 N Camden Dr., Suite 970
Beverly Hills, CA 90210
paul@sigelmanlaw.com

Attorneys for Colocation

*s/ Jacob C. Jones*

4834-3392-2655

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000