UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

Colocation America Corporation, )
                                )
              Plaintiff,        )        CV-17-0421-PHX-NVW
                                )
       vs.                      )        Phoenix, Arizona
                                )        February 28, 2018
Mitel Networks Corporation,     )           2:03 p.m.
                                )
              Defendant.        )
                                )
_____)
                                )
Mitel Networks Corporation,     )
                                )
              Counterclaimant,  )
                                )
       vs.                      )
                                )
Colocation America, Inc.;       )
et al.,                         )
                                )
              Counterdefendants.)
                                )
_____)


BEFORE:  THE HONORABLE NEIL V. WAKE, JUDGE


REPORTER'S TRANSCRIPT OF PROCEEDINGS

MOTION HEARING


Official Court Reporter:
Linda Schroeder, RDR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 32
Phoenix, Arizona  85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1       **A P P E A R A N C E S**

2 For the Plaintiff:

3       Teresa H. Foster PLLC
        By: TERESA HUGHES FOSTER, ESQ.
4       2400 East Arizona Biltmore Circle, Suite 1300
        Phoenix, AZ  85016

5

 For the Defendant:

6

       Snell & Wilmer
7       By: DAVID E. ROGERS, ESQ.
         JACOB CHRISTENSEN JONES, ESQ.
8       1 Arizona Center
        400 East Van Buren
9       Phoenix, AZ  85004

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

      UNITED STATES DISTRICT COURT

1          THE CLERK:  This is civil case 2017-421, Colocation

2   America Corporation versus Mitel Networks Corporation.  This is

3   the time set for oral argument.  Counsel, please announce for

4   the record.

5          MS. FOSTER:  Good afternoon, Your Honor.  Teresa

6   Foster here on behalf of the plaintiff Colocation.

7          MR. ROGERS:  Your Honor, good afternoon.  Dave Rogers

8   and Jacob Jones here on behalf of the defendant Mitel.

9          THE COURT:  All right.  Good afternoon, counsel.

10  Well, I'm here to talk about both matters.  Having studied the

11  new motion to amend, I have second thoughts about having

12  granted the first motion to amend, so I've set it all for us to

13  discuss.

14          Let's, I guess, talk first about the current motion to

15  amend with respect to Mr. and Mrs. Ahdoot.  Let me tell you my

16  concerns, and I'll hear from you in the sequence you want.

17          First, I'm concerned whether, with respect to the new

18  allegations against the Ahdoot defendants, whether it even

19  complies with the standards of pleadings of plain, concise

20  allegation and in light of the semi-random character of the 270

21  allegations, and therefore you committed this tort and that

22  wrong, and it is a challenge to understand that pleading.

23          And also even if one generously squints at it, it

24  doesn't even state a claim.  It appears to be a piercing of the

25  corporate veil because there's, like, one guy owns everything

1    and tells them what to do.  That's true of every one-man

2    corporation.

3            And some of the other claims -- Count 2 does not run

4    against Mr. and Mrs. Ahdoot, but how could it as the claim for

5    rescission or avoiding the contract.

6            And then the other counts for civil conspiracy, you

7    know, there may, unlike in the past, there may be an Arizona

8    tort of conspiracy, but that doesn't mean that one's adequately

9    pleaded here, so we need to talk about that.

10           And the aiding and abetting the other torts, well, the

11   other torts don't state a claim either.  So does aiding and

12   abetting state a claim?  Those are the things I want to talk

13   about on both sides.

14           And the amendment that I granted and now I'm having

15   second thoughts about and this current amendment both come in

16   the middle of the lawsuit.  It's not like a new complaint where

17   you pretty much have to take it if it states a claim.  This is

18   an amendment in the course of litigation that was only right on

19   the eve of close of discovery.  So the Court has considerable

20   discretion to deny an amendment, even if it theoretically

21   states a claim, if it would unfairly delay or expand the

22   proceedings to the detriment of others already in the

23   litigation.  So I have considerable discretion there.

24           So that leads to the discussion of is any of that

25   necessary?  Could we just have this trial that was ready to go?

1    And if it turns out there's some liability, secondary liability

2    could then be sought by a new action.  Or do we have to slow

3    all of this down to bring the new people in to decide on what

4    appears to be highly contingent secondary liability even if it

5    states a claim.

6              So those are my theoretical concerns and my practical

7    concerns, and with that I throw it out to you, and this is

8    Mitel's motion.

9              MR. ROGERS:  If you want us to start, we will.

10             THE COURT:  Indeed.

11             MR. ROGERS:  Thank you.  Okay.  First of all --

12             THE COURT:  Come up to the podium.  The microphone is

13   better there.

14             MR. ROGERS:  I don't know if I'm going to answer these

15   in the same order.

16             THE COURT:  You answer it however you want.

17             MR. ROGERS:  Okay.  First of all --

18             THE COURT:  Just be persuasive.

19             MR. ROGERS:  I'll try.  The aiding and abetting claim

20   and civil conspiracy claims do depend from the fraud claim, so

21   the fraud claim is the entire -- It's the underlying tort here.

22   It's the tort --

23             THE COURT:  How is it even a tort?  This is a contract

24   that's allegedly induced by fraud or concealment, although even

25   that's hard to see what the concealment is or even what the

1   fraud is.  But that voids the contract at the election of the

2   opposing party if the -- and this is a -- if it's -- if that

3   defense is proved.  How is that anything other than a defense

4   repleaded as a counterclaim?

5            MR. ROGERS:  Because we get damages for fraud.

6            THE COURT:  But if you defeat the contract, what's

7   your damage?

8            MR. ROGERS:  We have briefed this.  There's some cases

9   about it.  But it's damages related to uncovering the facts.

10            THE COURT:  I've read your briefs, the old briefs, the

11   new briefs.  They're utterly sparse on both sides.  I don't

12   have to do your research for you, so I'm going by the briefing

13   you've given me already, so take it from there.

14            MR. ROGERS:  We're allowed to recover damages on the

15   affirmative claim of fraud.

16            THE COURT:  How are you -- How are you defrauded if

17   there's no contract?

18            MR. ROGERS:  How are we defrauded?  We've been engaged

19   in this in almost two years, and attorney's fees --

20            THE COURT:  No, no.  If the defense is proved, you got

21   sued and you said -- or -- Well, both sides are counterclaiming

22   for enforcement of their view of the contract, so --

23            MR. ROGERS:  Sure.

24            THE COURT:  And the other side is also seeking

25   rescission and avoidance for what amounts to the same basis of

1    the fraud.  If it is adjudicated, then you're right, that you

2    didn't enter into a contract that binds them; the contract

3    doesn't require you to do what they say.  How are you damaged

4    by fraud?

5              MR. ROGERS:  Well, the way we would be damaged, first

6    of all, I think this is beyond the pleadings, and it's maybe

7    into summary judgment.

8              THE COURT:  Oh, no.  I'm talking about pleadings.

9    These are your proposed pleadings.

10              MR. ROGERS:  Right.

11              THE COURT:  If the pleadings are a mess, they're your

12    mess.

13              MR. ROGERS:  Our damages would be whatever attorney's

14    fees and other fees were related to this action going on for

15    two years.

16              THE COURT:  So anytime -- By the way, corporations can

17    only act through agents, right?  A corporation can only do

18    wrong through somebody who's acting because there's no such

19    thing as an -- there's a fictional thing as a corporation.

20              So if the agent of the corporation negotiated away and

21    asserted rights that are not found in the contract and you

22    prevail on that theory, so you're not bound by the contract

23    they say you're bound by, there's no such contract, or the

24    contract is defeated either for lack of meeting of the minds or

25    for fraud, fraud in the inducement or whatever, you're still

Case 2:17-cv-00421-NVW   Document 70   Filed 03/15/18   Page 8 of 47

8

1    not bound by contract.  You won the contract lawsuit.  I'm

2    having a little trouble seeing --

3              MR. ROGERS:  Okay.  But we still, on the -- Okay.  I'm

4    going to kind of mix some things together that you asked, Your

5    Honor.  The same facts all go into this.  There are no

6    additional facts or parties.  I'm thinking the only additional

7    party that's been brought in is Colocation's agent.

8    Colocation, the individual shareholder, owner, et cetera, he's

9    going to be in the case anyway.  He is Colocation.  All right.

10   So what about the fraud counts?

11             THE COURT:  I'm sorry.  Say that again.

12             MR. ROGERS:  Oh, in terms of expanding the litigation,

13   it's not expanding the litigation, I don't think.  All of the

14   facts necessary for fraud and breach of contract are closely

15   intermingled.  There are only three people really involved in

16   this, one person from Mitel, one person from Colocation, and

17   then the agent.  They have all of the information about

18   everything that went on in this transaction.  And the facts

19   that relate to breach of contract also relate to the fraud.

20             THE COURT:  But I'm asking you for whether there's a

21   claim stated here against these additional counterdefendants.

22   Granted, I've asked you about a lot of things, so it may be

23   easy to slip around, but we have to try to focus.

24             I'm having a hard time seeing any counterclaims

25   against any individuals who are agents of a corporation who

1   negotiated and made a contract on behalf of the corporation.

2   The named parties are Colocation and Mitel Networks.  They're

3   the named parties to the contract.

4          So how do you get to sue the agent of the corporation

5   for entering into a contract you don't like or that the

6   contract gets voided?

7          Another way of saying what is functionally a similar

8   thing but is doctrinally distinct, you're just trying to pierce

9   a corporate veil because there's a guy back there who benefits

10  from this corporation.  That's true of every corporation and

11  every closed corporation.

12          MR. ROGERS:  I don't think we're trying to do that.

13  Excuse me.

14          I'm sorry.  I've got a flu bug.

15          THE COURT:  I'm sorry I'm interrupting you more than I

16  should.  Please proceed.

17          MR. ROGERS:  No problem.  Your Honor, first of all,

18  we'd like to show you a document that we just got yesterday,

19  but before I do, this is the gist of the fraud.  And this is

20  why it should be individually against each of the owner of

21  Colocation and the agent.

22          The agent lied about his name.

23          THE COURT:  No, he didn't.  He used his first and his

24  middle name instead of his first, middle, and second name.

25  Does that mean Madonna and Cher can be sued for fraud whenever

1    they sign a contract in their stage names?

2           I know I'm being hostile here, but give me a break.

3    What is the fraud in using your real name but not all of it?

4           MR. ROGERS:  Well, my middle name is Eric.  I don't go

5    around signing contracts and doing business with people as

6    David Eric because that's false.  I'm not using my last name.

7    I'm not giving the person all the information.

8           THE COURT:  But he was an agent.  He was a known agent

9    for a disclosed principal.

10           MR. ROGERS:  No.

11           THE COURT:  If he called himself Abraham Lincoln,

12    what's the difference if he's an agent for a disclosed

13    principal?

14           MR. ROGERS:  There was no disclosed principal.

15           THE COURT:  Am I wrong?  Was the contract not with

16    Colocation?

17           MR. ROGERS:  The contract is, but all of the

18    negotiations up until the execution of the contract were with

19    the agent using a fake name.

20           THE COURT:  But so what?  So what?  You entered into a

21    contract with an entity named Colocation.  I'm just challenged

22    by this.

23           MR. ROGERS:  Because this is why.  We would never do

24    business with somebody who is using a fake name.  We've already

25    stated that in the papers.

1          THE COURT:  But you were not doing business with him.

2     You did business with the disclosed principal.

3          Go ahead.

4          MR. ROGERS:  For six weeks of negotiation or eight

5     weeks, whatever it was, the only entity that we knew was the

6     agent using a fake name.  And, Your Honor, I want to point out

7     too --

8          THE COURT:  You never claim to have contracted with a

9     person using a fake name.

10          MR. ROGERS:  We never would have -- We would never

11     have picked up the phone if we knew the guy was lying about his

12     name.

13          And Colocation has already admitted that.  They said

14     that they would never do business with anyone using a fake

15     name.  Neither would we.  And when you're saying doing business

16     means we would never get into negotiations with someone where,

17     if they were using a fake name, we don't want anything to do

18     with you; go away.  We wouldn't -- They wouldn't have got to

19     the second phone call.  So that is a fraud.

20          THE COURT:  I'm looking for all nine elements, and I'm

21     challenged on a variety of them, but go ahead.

22          MR. ROGERS:  Second thing, which this is the paper I'd

23     like to show you today, because I think it's important to this

24     very question.  Colocation and their agent, who we now know is

25     Kotler and not Corey Allen, misrepresented to us in every

UNITED STATES DISTRICT COURT

1   single communication what the deal was about.  They knew

2   between themselves, which we've seen just a couple of e-mails

3   about and the Court hasn't seen this one yet, that their entire

4   intent was to slip in secretly some kind of language about IPv4

5   addresses.  All of the communications were this is -- we want

6   to buy the domain name; we want to buy the domain name.

7        We never -- Mitel never in its wildest dreams thought

8   that this was about IPv4 addresses, which are today probably

9   worth about $2 million.  So that's the second fraud.  They

10  entered --

11       THE COURT:  I'm sorry.  This is basic contract.  I

12  mean, the Restatement of Contracts states this very

13  conveniently.  When you have a contract and the parties have

14  different understandings of what the terms of the contract are,

15  if one party knows or has reason to believe that the other

16  party has a different understanding from the party's own

17  understanding, they're bound by that party's understanding.

18  That's basic contract law.  That doesn't mean you have a fraud

19  claim.  It means you -- the contract means what you thought it

20  means and what they had reason to think that you thought it

21  means.  You win your contract lawsuit.

22       It seems to me like you're trying to turn every

23  contract lawsuit about different meanings that someone knows or

24  has reason to believe that the other side attaches a different

25  meaning to it into a duplicative tort claim against the agent

1    of the contracting party as opposed to just you just won your

2    contract lawsuit and congratulations.

3         MR. ROGERS:  We're not trying to do that.  And, Your

4    Honor, can I show you this one paper?

5         THE COURT:  Tell me what it is.

6         MR. ROGERS:  Is it okay?

7         THE COURT:  Yeah, you can put it on the projector.

8         MR. ROGERS:  Go down lower, Jacob, so we get the

9    better resolution.  No.  Can we pull away from it?  It's too

10   enlarged.  This is an -- Okay.  This is an e-mail chain.  The

11   very first e-mail that's highlighted, which is the one at the

12   bottom dated February 19th, this is from the owner of

13   Colocation to the outside agent and to Colocation's attorney.

14        He states to it "I would write it up for the domain,

15   in other words, I would write it up, the contract up, for the

16   domain name and somehow slip in the IPv4."  And then if we go

17   to the one, the response from the outside agent who's using a

18   phony name to communicate with us, he states "Is there a way to

19   slip it in nebulously?"

20        THE COURT:  I'm sorry.  Help me out.  Who is the guy

21   using the phony name here?

22        MR. ROGERS:  The guy using the phony name with us is

23   Corey Kotler.

24        THE COURT:  Oh, that's Corey Allen Kotler who used the

25   fake name of Corey Allen, right?

UNITED STATES DISTRICT COURT

1      MR. ROGERS:  Correct.

2      THE COURT:  Go ahead.

3      MR. ROGERS:  But he doesn't use Corey Allen when he's

4   communicating with Colocation.  Only in communications with us.

5      So here this shows that they're both -- they want to

6   cast this agreement --

7      Instead of just saying directly what they want, they

8   want to cast this agreement as being a domain name purchase.

9   Every single communication --

10     THE COURT:  But so what?  Congratulations.  You just

11  won your contract lawsuit, because this shows that they had a

12  thought that you might have a meaning different from what they

13  want it to mean, so you win your lawsuit.  Congratulations.

14  You stop charging legal fees.  You go home.  But that's not

15  what this motion's about.  This motion is about tort claims

16  against corporate agents.

17     MR. ROGERS:  But, Your Honor, I mean, for people to be

18  sneaking around using phony names and nebulously slipping stuff

19  into a contract with -- and trying to mislead, I mean, isn't

20  that the very essence of tort?

21     THE COURT:  No.  There's nine elements to fraud.

22  There's legal requirements to everything.  There isn't just bad

23  karma here and there to sue for anything you want.  So I'm

24  trying to figure out where is the torts?  And you're saying I'm

25  going to win my contract case, but I also want to pierce the

| | |
|---|---|
| 1 | corporate veil and get non-contract damages because the |
| 2 | contract means what I thought, not what they hoped it would |
| 3 | mean.  That's what you're telling me.  That's not a tort. |
| 4 | MR. ROGERS:  Your Honor, I don't think this goes to |
| 5 | that.  It's not -- They're not saying what the contract -- This |
| 6 | isn't about what the contract means.  This shows that they're |
| 7 | nebulously trying to slip something in so we don't know what |
| 8 | they're trying to do.  That's a tort. |
| 9 | THE COURT:  And you're not bound by what they know |
| 10 | you're not trying to do.  That's basic contract law. |
| 11 | MR. ROGERS:  But it's still -- it's still a tort to |
| 12 | misrepresent -- I'm representing to you that I want to buy a |
| 13 | domain name from you.  I represent that for a month.  I |
| 14 | represent that for a month and a half.  And then I come -- And |
| 15 | I know all along I'm not interested in that domain name at all. |
| 16 | What I'm really interested in is a block of IPv4s that are |
| 17 | worth $1.8 million.  Let's call it that.  That is fraud. |
| 18 | You've misrepresented and concealed right at the outset. |
| 19 | THE COURT:  They actually didn't misrepresent and |
| 20 | conceal.  They dealt with language, what, nebulous language, |
| 21 | hoping that it would be read their way, not your way.  And |
| 22 | contract law knows how to deal with that. |
| 23 | MR. ROGERS:  They're saying one thing to us, and |
| 24 | they're saying -- and internally they know that's not at all |
| 25 | what they intend to do.  Domain name.  Domain name.  Domain |

1   name.  Purchase.  What they're really doing over here on the

2   side is we want to trick them into some kind of nebulous

3   language where we can then run into court and say they have to

4   give us a $1.8 million --

5          THE COURT:  And they run into court, and they lose,

6   and you collect your fees for breach of contract or a contract

7   action.

8          So, you know, counsel --

9          MR. ROGERS:  I --

10          THE COURT:  -- what's wrong with victory?  You are

11   refusing to take victory and quit.

12          MR. ROGERS:  Well, okay.  We'll take it.  If I could

13   move orally for summary judgment, I'll do it right now.

14          THE COURT:  No.  You're going to have a trial on what

15   that contract means.  But what you're telling me right now, if

16   I take it at face value, means you're going to win, because

17   they knew this was not the meaning you attached to it, and they

18   knew that you did not attach the meaning to it.  So they lose

19   on basic contract term, so --

20          MR. ROGERS:  Another thing I want to mention:  On

21   the -- Well, okay.  And I'm now the one here to answer

22   questions, but what would -- I mean, if this isn't fraud --

23          THE COURT:  It's not fraud.  It's not fraud.  It's not

24   the four elements of fraud.  The main reason it's not fraud is

25   they didn't trick you into a contract.  You're not bound by

1    what they were trying to do.  It's not there.  So -- But I'm

2    also -- I could say I'm challenged by your pleadings, which

3    are -- one is left to guess about you've got 264 paragraphs in

4    a semi-random, not totally randomized, but details here without

5    explanation of what matters for what.

6            And it's like you're trying to paint there's a bad

7    picture, and I get to sue for these torts.  Well, you need more

8    than a bad picture.  You have to allege the elements of each

9    cause of action.

10           MR. ROGERS:  Which -- well, if there's an element that

11   hasn't been pled, that can be cured by an amended pleading.

12           THE COURT:  I'm having trouble seeing what is the

13   fraud when they led you into dealings hoping you would

14   attribute a meaning different from the meaning they had?  And

15   the consequence of that is there is no contract enforceable

16   against you.  I mean, your client must love paying legal fees

17   for the way you're churning this file after it seems, at least

18   from what you say, obvious you're going to win on the contract

19   action.

20           But that's strategy, so I shouldn't remark on that.

21           Listen, what about these other torts, the torts, to be

22   simple about this, you've referenced the foregoing torts, but

23   the foregoing --

24           MR. ROGERS:  They're based on fraud.

25           THE COURT:  So it's basically four ways to say the

1    same thing or close to it.  And so we're left to -- It does

2    seem to come down to, I think, two things.

3            The corporation Colocation you say engaged in a course

4    of dealing in which they thought and intended for you to have a

5    different meaning.  They had their own meaning.  You have a

6    contract.  You're fighting over which meaning is true.  And we

7    see this every day.

8            And if the contracting party -- By the way, this

9    doesn't look like fraud.  This looks like vagueness as the

10   nebulous language.  He never misrepresented he was somebody

11   other than Corey Allen.  He never -- He is Corey Allen.  He's

12   also Corey Allen Kotler.  I guess I don't have to worry so much

13   about that, but you're manufacturing fraud and concealment out

14   of things not said, things that were apparently true as far as

15   they went.

16           But the real gist of this, listening to you now, is

17   they really had a plan for us to think we're contracting one

18   way and then to assert we're contracting another way.

19           MR. ROGERS:  Exactly.

20           THE COURT:  And you win.  There's no contract.  And if

21   that's what happened -- there is no contract at your

22   election -- you could still enforce the contract according to

23   your meaning, and you alternately do seek that.  You seek to

24   enforce it according to your meaning or to void it.

25           But if you enforce it according to your meaning, you

1   have affirmed the contract as correctly construed.  There is no

2   fraudulent inducement into a contract that you elect to enforce

3   once I determine what it means.  I'm just --

4         MR. ROGERS:  Your Honor, I think, though, that the

5   same facts meet the requirements for pleading fraud.  And

6   that's where we are now.

7         We would not -- I'll say this and --

8         THE COURT:  The bottom line is we were -- the day I

9   improvidently granted your first motion to amend was the day

10   after the close of discovery.  It was four weeks before

11   deadlines for summary judgment motions.  But discovery was

12   closed.  So why don't we -- I mean, I'm open to discussing all

13   of that, but the point is this case is only weeks or a few

14   months away from a trial to determine the contract issues.

15         And once we do that, we may find out that there was no

16   misleading.  There was no -- no fraud.  Their meaning is right,

17   and you're bound by it, in which event you have no claim for

18   fraud against anybody, not against Colocation, not against any

19   of the agents.  That's if they win on the contract issue, which

20   subsumes the issue of fraudulent inducement.

21         Or if you win, if you determine -- you obtain either

22   rescission or voiding or enforcement of the contract with your

23   interpretation of the terms, you have a contract that had no

24   fraud, that was not fraudulently induced, and for which there

25   could be no tort against anyone.  What's the point of this?

```
 1    Why don't we just have that first trial?

 2              It's very hard for me to see how you would ever be

 3    proceeding against any individuals, but if someone -- if it

 4    came up and if you got some, you know -- This is a commercial

 5    contract case.  There aren't very many commercial contract

 6    cases in which I decline to assess attorney's fees under 341.01

 7    against the losing party.  But they say they're good for it,

 8    and they'll pay it.  If they're not good for it, then maybe you

 9    worry about whether you have some secondary liability.  But

10    we'll know in a couple months after that verdict comes in and

11    after whatever rulings I have to make.

12              The premise that suggests it is highly unlikely you

13    will ever need any secondary liability against these

14    individuals, what's wrong with that analysis?

15              MR. ROGERS:  I think it's more you're looking at an

16    efficiency issue, and I'm -- I think I'm more focused on the

17    pleading standards.  And I'll just say this, and then maybe

18    Your Honor will tell me to sit down.

19              THE COURT:  Sure.

20              MR. ROGERS:  That Corey Allen, we still believe,

21    misrepresented who he was.  He did it intentionally.  He

22    testified he did it intentionally.

23              THE COURT:  But I apologize again I'm interrupting far

24    too much.  That misrepresentation has nothing to do with this

25    textual ambiguity that the contract dispute is based.  It has
```

1    nothing -- He could have said any name.  But retracting

2    thereabouts the domains and whatnot, it has nothing to do with

3    that.  That domain interpretation is going to go one way or

4    another, whether he -- whatever name he claimed.

5            MR. ROGERS:  Agreed.  But we would not have picked up

6    the phone or would have hung it up if we knew he was using a

7    false name.  People don't do business like that.  And even

8    Colocation itself has admitted its owner, in his testimony,

9    that he would never do business with a person using a fake

10   name.

11           The second part is this e-mail string, which is a

12   piece showing that they were -- what they really wanted was --

13   were IPv4 addresses.  We never in a million years, if they

14   called us up and said, as we have evidence -- I didn't bring it

15   here today -- to other people we want to buy IPv4 addresses, we

16   would have hung up the phone.  Number one, we don't have clear

17   title to those IPv4 addresses.  Number one, we wouldn't, if we

18   did, we wouldn't have been interested in buying them.

19           So they have to slip it in nebulously.  So I -- I

20   understand that you disagree, Judge, but --

21           THE COURT:  Well, you know, I looked at every case.

22   How are we going to try this case?  What are we going to tell

23   the jury?  What are we going to ask them to answer?  And part

24   of my job is to protect the jury from duplicative,

25   unintelligible claims, theories, instructions.  If I've got a

1    dispositive fact, I'm going to tell them tell us whether the

2    light was red or green when the vehicle entered the

3    intersection, and I will do that.

4         But I'm not disposed to muck up the jury's task with

5    unintelligible duplication, repetition, just stuff that's

6    unintelligible for no purpose.

7         So if you want this jury to say, hey, they knew what

8    we meant, and they knew we didn't mean that, or they not only

9    hoped that we would have a different meaning, they lied to us,

10   you can have the jury answer both those questions.  But what

11   else is there?  Because if you win either of those, there is no

12   contract.

13        MR. ROGERS:  But there are affirmative fraud damages

14   and punitive damages.

15        THE COURT:  I don't see any damages if you defeat

16   their contract.

17        Now, like I said, if you get a fee award, they may

18   promise they're going to pay any fee award promptly, and so it

19   will moot your desire to have everybody and his cousin

20   secondarily liable for the fee award.

21        If you don't collect a fee award, then you can turn

22   around and take your client's fees, money, for a second lawsuit

23   that's then necessary to collect a fee award.

24        But right now you want to churn your client's fees for

25   something that is highly likely to be completely unnecessary.

| | |
|---|---|
| 1 | And because this is a motion to amend, I have discretion to |
| 2 | determine whether it's dilatory -- well, whether it would cause |
| 3 | delay, waste, whatnot, and those are the things that I'm |
| 4 | troubled by.  They don't seem to trouble you at all. |
| 5 | MR. JONES:  May I? |
| 6 | THE COURT:  No.  We'll do one at a time. |
| 7 | MR. ROGERS:  Your Honor, all of the counts, it's the |
| 8 | same people, the same facts for all the counts.  The lawsuit, I |
| 9 | understand that there are 200 -- |
| 10 | THE COURT:  You need different law to get these other |
| 11 | people.  There's different law that the jury would have to be |
| 12 | instructed on, I would make decisions on, I'm at risk of error, |
| 13 | none of which is necessary if you win your underlying lawsuit |
| 14 | and they pay their legal fee award. |
| 15 | In fact, you can take a minute and confer, and if you |
| 16 | have an answer when you come up for reply, you can.  If you win |
| 17 | the contract case and they pay their fee award, I cannot think |
| 18 | of any circumstance in which you would ever take a client's |
| 19 | money to litigate again against these agents. |
| 20 | And if it's very highly likely to turn out that way, |
| 21 | why are you taking your client's money now to multiply this |
| 22 | litigation for no practical benefit?  It doesn't turn into any |
| 23 | green dollars.  It costs green dollars to do this.  So now I |
| 24 | don't have to -- |
| 25 | MR. ROGERS:  You want to know -- want to know the |

1   strategy as to why we're doing it?

2          THE COURT:  Yeah.  The strategy is to harass them with

3   unnecessary litigation and bury them.  I see that in lots of

4   lawsuits.  So that's the obvious strategy.  If there's a

5   different strategy, tell me.

6          MR. ROGERS:  Okay.  They're the ones that have pursued

7   this, Your Honor.  They are the ones that are chasing us.

8   They're the ones that are lying about the most basic things,

9   who the names are, making up phony people, making up phony

10  addresses.  We're not doing any of that.  When we started in

11  this lawsuit, I was here in front of you.  It was -- I forget

12  when it was -- last summer maybe.  And I thought it was just a

13  simple breach of contract case.  That's exactly what I thought.

14         Then we found out Corey Allen is non-existent, and

15  they listed Corey Allen.  Your Honor, they created this big

16  mess.  We're not trying to multiply this out.  This is a big

17  mess of their own making.  If they told us right out of the

18  blocks that it was Corey Kotler, this is his real address,

19  everything would have been great.  They listed him as one of

20  their key witnesses.

21         THE COURT:  I'm going to ask you a different question.

22         MR. ROGERS:  Sure.

23         THE COURT:  Why are you doing this?  You will win your

24  lawsuit easy with what you told me.  Instead, you want to

25  multiply the lawsuit, add tort theories, bring in a bunch of

UNITED STATES DISTRICT COURT

1    defendants, open discovery, do a new schedule that will achieve

2    nothing for your client if you win on the interpretation issue

3    or -- or if you win because you were in fact fraudulently

4    deceived, which I'm not -- I'm having a hard time seeing how it

5    would be, but right now I'll take it as given.  But I'm asking

6    a practical question.  Why are you wasting their legal fees, my

7    jury's time and my time, to do -- to -- What would you achieve

8    by expanding this lawsuit?  Because I see nothing you achieve.

9            MR. ROGERS:  Okay.  I'll tell you what we would

10   achieve, Your Honor.  Colocation, as you probably know,

11   Colocation America, Inc., which is the entity in the contract,

12   does not exist, yet another nonexistent entity.

13           THE COURT:  That's not in this motion.

14           MR. ROGERS:  I know.  But I'm just -- You're asking me

15   practically where are we going to go?

16           Colocation America, Inc., was on the papers in this

17   court.  It doesn't exist.  Why?  Do they not know their real

18   name?  Of course they know their real name, because if there's

19   ever a judgment back against Colocation America, Inc., there's

20   nobody to collect from.

21           Okay.  Now --

22           THE COURT:  They say they're in business and have got

23   a lot of money.

24           MR. ROGERS:  They don't have a lot of money.

25   Colocation America Corporation, the real one, they do not have

1  enough money to satisfy any judgment.  And the owner of the

2  company has, when he was deposed, I don't remember how many he

3  said, but he said he has many different companies.

4      The practical point of this is that if he is not in

5  this case and we prevail -- we hope that we will -- we're not

6  going to see anything.

7      THE COURT:  You then get to file a lawsuit for -- you

8  might call it not piercing the veil, but if you have a

9  defectively formed corporation, you get to sue the principals

10  directly.  You don't need to pierce any veil.  But if you're

11  piercing the veil, there's different legal requirements of --

12  for that.  But why do you have to do that now?  I'll have a

13  trial for you in three weeks -- three months.  And if you have

14  to, you -- All this stuff that you want to do up front on the

15  very remote chance it might matter, you can do it later when it

16  does matter as opposed to what looks to me like completely

17  unnecessary legal expense for both sides at this time.

18      Go ahead.  Obviously I'm skeptical.

19      MR. ROGERS:  I under -- I understand where you're

20  coming from.

21      We think that the information we've put forth states a

22  claim of action for fraud against Mr. Ahdoot, the owner of

23  Colocation, and also a cause of action for fraud against the

24  agent.

25      THE COURT:  All right.  Fine.

 1          MR. ROGERS:  And we'd be willing, I think, to drop the

 2    other two counts.

 3          THE COURT:  You might not need to.  We'll hear from

 4    Ms. Foster, and you can confer with Mr. Jones to get his

 5    thoughts to share with me too.

 6          MR. ROGERS:  Thanks, Your Honor.

 7          MS. FOSTER:  Good afternoon, Your Honor.  In light of

 8    your comments, do you want me to address the issues?  I don't

 9    want to waste your time.

10          THE COURT:  I'm disposed to deny the motion to amend,

11    to undo my improvidently granted earlier motion to amend, and

12    set this for summary judgment deadline.

13          The discovery deadline was the day before I

14    improvidently granted the amendment, which would have

15    occasioned a new schedule, and now I'm undoing that.

16          MS. FOSTER:  I mean, Your Honor, there was one

17    deposition we agreed they could take.  The gentleman was sick.

18          THE COURT:  That's fine.  Actually that's a mechanical

19    issue there.  Is there a need for anymore discovery?

20          MS. FOSTER:  That one deposition is all that I'm aware

21    of, and we agree it can be taken.

22          THE COURT:  Is there anything else?

23          MR. ROGERS:  Discovery?  Yes.  There's one more -- or

24    down here.  Hold on.  One more deposition of Mr. Ahdoot on new

25    documents that were produced, new interrogatory responses,

1    and --

2              THE COURT:  Is that the depo you're talking about?

3              MS. FOSTER:  No.  But they did agree to that also,

4    Your Honor.  He did two days, but we agreed he could continue

5    that.

6              THE COURT:  Who is the depo you're talking about?

7              MR. JONES:  Sugarman or Cruz.

8              MS. FOSTER:  Sugarman is the one you wanted, I think.

9    I don't remember who it was.  There was one more, Your Honor,

10   and it was either Sugarman or Cruz, and we have e-mails

11   confirming it.

12             THE COURT:  That's fine.  And who are they again?

13             MS. FOSTER:  Sugarman was a Nevada agent that assisted

14   my client in those filings there, the filing of the

15   corporation, the fictitious name, and Cruz is the accountant.

16             THE COURT:  What's Cruz going to add to this?

17             MS. FOSTER:  We didn't notice his deposition.  They

18   want it.

19             THE COURT:  Was he the guy who said in Nevada we use

20   phony names all the time?

21             MS. FOSTER:  That was Sugarman, Your Honor.

22             THE COURT:  Well, I doubt that's in the Nevada

23   statutes but --

24             MS. FOSTER:  It's not in the statute, Your Honor.

25             THE COURT:  All right.  So you need to do that.  How

| | |
|---|---|
| 1 | much time do you all need to do that?  I want to get this done |
| 2 | and set it for trial.  I can give you a trial date today.  But |
| 3 | how much time to do?  You've got one more day of deposition for |
| 4 | Mr. Ahdoot, and there's one or two others. |
| 5 | Are -- Do you have control of those people, Sugarman |
| 6 | and Cruz, or will they need to be subpoenaed? |
| 7 | MS. FOSTER:  No.  They were both very cooperative. |
| 8 | One had just had surgery was the only reason why he could not |
| 9 | appear. |
| 10 | THE COURT:  Okay.  Well, if you need to take a minute |
| 11 | to confer, do that, because I'd like to set a time by which to |
| 12 | get it done so I don't have to come back and reschedule. |
| 13 | MS. FOSTER:  Your Honor, I would think three to four |
| 14 | weeks we'd have the depositions completed and the motion for |
| 15 | summary judgment filed.  I don't see an issue with that.  Are |
| 16 | you setting aside your order granting the first amended |
| 17 | complaint? |
| 18 | THE COURT:  Well, yes, I will.  That's why I noticed |
| 19 | it up for this hearing at the same time, to give everybody fair |
| 20 | notice of that possibility. |
| 21 | How much time for the defendants of completing that |
| 22 | discovery you all have agreed to? |
| 23 | MR. ROGERS:  One thing we're going to do, Your Honor, |
| 24 | is have a non-retained expert -- |
| 25 | THE COURT:  Okay. |

UNITED STATES DISTRICT COURT

1    MR. ROGERS:  -- talk about --

2    THE COURT:  How is that?  The deadline for experts

3    came and went long ago.

4    MR. ROGERS:  But we knew that you were going to reset

5    the schedule.

6    THE COURT:  Oh, no.  I said that on the day after the

7    fact discovery -- Now, frankly, I'm not remembering the expert

8    deadline.  Do you all remember that?

9    MR. JONES:  If I can, just on this little point, Your

10   Honor, David Barker and I were at the November 1st hearing.

11   One thing was document number 40, which has a reply, I think,

12   on number 65, was our second motion to extend the discovery

13   deadlines.  And in that motion we had marched through a lot of

14   what we call discovery misconduct from Colocation, and that was

15   something that Your Honor didn't want to think about, and so --

16   THE COURT:  And I did not review that for today, so --

17   MR. JONES:  So that was denied as moot because we were

18   getting the extension anyway --

19   THE COURT:  Correct.

20   MR. JONES:  -- was my understanding.

21   THE COURT:  I recall that now.

22   MR. ROGERS:  Your Honor, our non-retained expert is

23   the person that -- it's only the same person who's already --

24   Michelle Worthington -- who's already been deposed.  So it

25   doesn't bring any new people into the case.

1          THE COURT:  All right.  So there's no surprise there.

2   What is her area of testimony?

3          MR. ROGERS:  Intellectual property.

4          MS. FOSTER:  Your Honor, I have no objection to that.

5   I mean, if she's going to actually give a formal opinion that's

6   different from her deposition, I would like a chance to

7   continue the deposition of that.

8          THE COURT:  Hold on a minute.  Did she do that?

9          MS. FOSTER:  I haven't seen her opinion.

10         MR. ROGERS:  Oh, no, no, no.  She's non -- well, a

11  non-retained expert.

12         THE COURT:  She's an in-house expert?

13         MR. ROGERS:  Yes.

14         MS. FOSTER:  Or is she a fact witness giving an expert

15  testimony, opinion testimony?

16         MR. ROGERS:  Yes.  We can qualify her as an expert.

17         THE COURT:  Well --

18         MR. ROGERS:  She's a patent attorney.  She's practiced

19  IP law for, I'm guessing, 18 to 20 years.

20         THE COURT:  Are you just being lawyerly paranoid about

21  her reversing her depo or what?  Do you have reason to think

22  she's going to do that?

23         MS. FOSTER:  I haven't seen an opinion she's given, an

24  expert opinion.  I did not ask her anything about patent law.

25  I took her deposition as a fact witness.

1          THE COURT:  Okay.  Well, you all know the rules on

2     reversing your testimony.  It's an uphill battle.  So if

3     something happens, we'll have to deal with it.

4          Can you tell me what she's going to say?  Or if you

5     don't want to, you don't have to.

6          MR. ROGERS:  Well, she's going to talk about the IPv4

7     addresses and what is and what is not --

8          THE COURT:  Factual background of it?

9          MR. ROGERS:  And also -- Yeah, the factual background.

10    And there's, in the contract, which is here someplace, it talks

11    about other intellectual property, so she can speak to that.

12         And because she's non-retained, Terry, we don't have

13    to provide an expert report.  It's just a summary of what she's

14    going to say.

15         THE COURT:  Have you done that?

16         MR. ROGERS:  We have not yet, no, because we didn't --

17    The case has been stayed, Your Honor, so, no, we haven't done

18    that.

19         THE COURT:  Well, there's an art to unwinding a

20    ruling.  I want to do it in a way that's fair to everybody.

21    So --

22         MR. JONES:  Can I, really quickly?

23         THE COURT:  Yes.  And also I'd like to give your --

24    have you give me your 25-word description of what the discovery

25    misconduct was that I need to weigh.

UNITED STATES DISTRICT COURT

1          MR. JONES:  Okay.

2          THE COURT:  Go ahead.

3          MR. JONES:  We, because Mr. -- I personally spent

4   a lot of time trying to figure out who Mr. Kotler was because

5   we knew that he was critical to understanding what the parties

6   meant.  And I spent a lot of time and the paralegal with me to

7   be efficient trying to figure out who he was.

8          Their disclosure and their supplemental disclosure did

9   not correctly say who he was even though they knew who he was.

10  And we had to subpoena an entity, several property managers who

11  owned the property of the address that he was disclosed for to

12  try to learn who he was.  There was a lot of that.

13         We tried to serve a subpoena at that address.  There's

14  a divergence in the account of what happened there.  But our

15  process server's account is that the person who he later

16  learned was Paul Sigelman, one of their lawyers who's appeared

17  in this case in California -- he's a California lawyer --

18  actually received the document for Mr. Allen but disclosed his

19  name as something different.

20         THE COURT:  Disclosed whose name as someone different?

21         MR. ROGERS:  The lawyer receiving the document.

22         THE COURT:  He disclosed his own name different?

23         MR. ROGERS:  Yes.  So that's -- And he has submitted

24  declarations saying that that's not correct, and that's against

25  our process server's -- Anyway, so there's things like that

1    that made it very difficult for us to figure out actually where

2    is Mr. Kotler to serve him and depose him, which we eventually

3    did.

4              THE COURT:  So he has been deposed?

5              MR. JONES:  He has been now.

6              THE COURT:  What I'm trying to get at is is there a

7    fair basis to do discovery that it had not been done before?

8    That's what I'm trying to get at.

9              MR. JONES:  With the comments Your Honor just made

10   about redeposing Mr. Ahdoot and possibly Cruz, I'm not sure if

11   Cruz is going to be necessary.

12             MS. FOSTER:  And we have no objection to that, Your

13   Honor.

14             MR. JONES:  That will be addressed.  The context was

15   just that we understood we were getting the extension, but no

16   date had been given because we wanted to set the pleadings

17   first.  The other small comment on that --

18             THE COURT:  Right, but I'm unwinding that, so I've got

19   to figure out what am I unwinding back to and be sure that I do

20   it in a way that is fair.

21             MR. JONES:  On the fairness point -- and I did the --

22   a lot of the briefing on this, and I did it under the

23   understanding of a comment that your court -- I don't have the

24   transcript here, but it's in the record, and I can file the

25   page -- said that Your Honor wasn't going to consider futility,

1    delay, prejudice or any other factor in our proposed amended

2    pleading, only whether it stated a claim.

3           THE COURT:  And I've changed my mind.

4           MR. JONES:  So I didn't address those points in the

5    briefing, is the point of why none of that was addressed.

6           THE COURT:  Again, the -- I may just have to go back

7    and read all this.  I was hoping we could get some direction

8    today.

9           MS. FOSTER:  Your Honor, I'll make it easy.  I don't

10   have a problem with her being listed as an expert or

11   non-retained expert.  I took her deposition.  I think I have an

12   understanding what she's going to say.

13          THE COURT:  I appreciate what you said, but I'm trying

14   to get at what Mr. Jones referred to when he said there is --

15   It is coming back to me.  There's a prior accusation that you

16   had engaged in discovery misconduct that occasioned their need

17   for an extension of time.

18          So now I'm at what was that, and what additional

19   discovery would I need to accommodate for that?  I'm asking the

20   question whether it was misconduct or not, so tell me what it

21   was.

22          MR. JONES:  I told you the first piece of it.  I won't

23   rehash that.  The second piece of it, which was also -- was

24   just coming to us in the weeks before that November 1st

25   hearing, was that we were learning that Colocation, who we

1   believed had several directors and officers, they were all

2   fictitious people.  This is where we learned about all the

3   fictitious filings.  There's an actual signature that has

4   someone -- we presume it was Mr. Ahdoot -- signed it with the

5   name Plunkett, who is not a real person, signed the documents.

6   It goes to -- which I understand Your Honor's initial

7   comments -- these fact would go to the --

8               THE COURT:  It really goes to the piercing.

9               MR. JONES:  Correct.  And to us at that time those

10   were relevant based on what we thought we had.  So those facts

11   are all coming to light.  And so we originally thought we were

12   going to depose the officers and -- the officers of the

13   company, but it turned out they didn't exist.  And that's what

14   we were finding out all of that time, and then we filed the

15   motion that's document 40 for your reference.

16               THE COURT:  Okay.  Well, let's go back.  In terms of

17   the trial on the contract meaning issue, contract meaning and

18   basis for voiding the contract or fraud, rescission, all that,

19   that's the trial I see.

20               And it doesn't sound like any of that is needed for

21   this.  Later on -- I don't think I've ever encountered a

22   situation in a lawsuit against a corporation that was

23   defectively formed, but we all remember from law school that

24   means all the people involved are personally liable.  We'll

25   figure that out down the road.

1        So there's no corporation, no corporate veil to

2   pierce.  It's the easiest piercing there is because you don't

3   have to pierce.  They're all liable.  But I don't see having a

4   trial right now about who those people are.  Anyway, go ahead.

5        MR. JONES:  Just one -- I was just --

6        MR. ROGERS:  Your Honor, we just want to know if

7   you're going to remove the fraud count that's related to the

8   tort -- the main tort count.  We would want to toll the statute

9   of limitations related to that count.

10        THE COURT:  Oh, actually my recollection of the state

11   statute that applies here is that if I dismiss a count, I can

12   toll it for, I think, up to six months.  It's been awhile.

13        MR. ROGERS:  I don't have it.

14        THE COURT:  But I don't know off the top of my head

15   whether --

16        MS. FOSTER:  Your Honor, we'll stipulate to a longer

17   tolling to make it easier.

18        THE COURT:  That's fine.  You all take care of that.

19   I don't recall whether a motion to amend to file a complaint

20   tolls.  I don't know the answer to that.  But I'm hearing a

21   very practical response so that you all can work that out and

22   probably not have to bother me with it.

23        MR. JONES:  I think I agree, Your Honor.  One minor

24   detail in this is that Mr. Kotler actually has answered the

25   first amended complaint, and he's not represented.  He actually

1    was given notice of this hearing, and I could be mistaken, but

2    I don't actually think he's represented at this hearing.

3            THE COURT:  He was sent the notice of this hearing,

4    and what I set is the second issue whether to undo that earlier

5    ruling and deny the earlier motion, so he has notice of this.

6    I didn't expect him to show up.  He doesn't have a lawyer.  He

7    is going to be the beneficiary.  So my order will in effect

8    ex post facto expunge him from the pending lawsuit.

9            MR. JONES:  Understood.  I just meant if we're going

10   to reach a tolling agreement, it would have to include with

11   him.

12           THE COURT:  You all have to deal with him.

13           So, okay, now, Mr. Jones, I think what I'm coming to

14   is the motion, and what you're saying now is sort of refreshing

15   my memory to some extent.  And what I'm saying, again, is I

16   don't think the issues that you raised there need to be

17   resolved because they relate to matters that are not germane to

18   discovery on the underlying first case that we're going to try

19   shortly.

20           And so I think I can then -- I can set a tentative

21   schedule now.  First of all, the additional discovery you all

22   agreed to, it will be allowed.  Is a month enough time for

23   that, Mr. Rogers?

24           MR. ROGERS:  I think we should make it six weeks, Your

25   Honor, just because things happen.  You said one month, four

```
 1    weeks, six weeks.

 2              THE COURT:  Things especially happen if lawyers don't

 3    start on them early, so --

 4              MR. ROGERS:  We'll start early.

 5              THE COURT:  All right.  I'll set until April 6 to

 6    complete the discovery that has been agreed with respect to the

 7    three deponents that have been mentioned.  That should be no

 8    difficulty at all unless you wait until the last minute.

 9              And now let's talk about summary judgment.  You know,

10    Judge Campbell's been doing something that I have decided to

11    learn from him that he picked up from some other judges that he

12    doesn't let people file a motion for summary judgment unless

13    first they've exchanged a brief statement letter as to what

14    it's about.  And he'll confer with them about it, not to tell

15    them you can't file the motion but to sort of confer about the

16    odds.

17              Now, we get lots of motions for summary judgment that

18    are just trying to find out if the other lawyer is not very

19    smart or the judge is not very smart.  They're a burden on us.

20              So it would be good if people exercised some

21    discretion.  So I'm not going to put you all on the spot, but

22    just looking at this case from the way it was before, this

23    looked like a classic trial about what was communicated and

24    understood and get into custom and usage.  Your expert witness

25    may have exactly that kind of background information that would
```

UNITED STATES DISTRICT COURT

1    shed light on the meaning of the words used, and that's a

2    trial.  There's no -- There's no short-circuiting that.  On the

3    issue of whether there's fraud or deception, I mean, I'm not

4    asking anybody to fall on their sword right now, but it sure

5    doesn't look like a summary judgment case on either side.

6             MR. ROGERS:  Your Honor --

7             THE COURT:  Yes.

8             MR. ROGERS:  -- I think both sides would want the

9    Court to interpret the contract before a trial.

10            THE COURT:  Well, the issue is what can I interpret?

11   And -- Because oftentimes we have to have a trial about the

12   meaning that draws on the things I referred to.

13            So, I mean, you know, Arizona follows the Corbin test

14   on interpreting contracts, which can be pretty wide open as to

15   background and meaning.  You can't contradict meaning, but --

16            MR. ROGERS:  There's really one, essentially one

17   sentence that -- on which the case hinges, maybe two, in one

18   paragraph.

19            THE COURT:  On the other hand, this backdoors into

20   whether one party or the other knew or had reason to know that

21   the other side attached a different meaning.  That's a trial

22   issue, whether they knew or had reason to know.

23            So the fact that I might interpret words one way does

24   not answer the question of whether -- Well, you all know it can

25   get complicated.

1          But it's seeming to me the sensible way to proceed is

2     I'll instruct the jury on the principles that apply here,

3     including one party's being charged with the meaning that they

4     have reason to think the other side attaches, unless there's

5     clear and unambiguous language, which is very hard to come by

6     when you're dealing with issues of custom and usage in the

7     industry.  So, look, I'm not telling you --

8          You know, what I might do is I might forgo that

9     process that Judge Campbell's been doing that looks good to me

10    in general, and just say if you want to file a motion, you're

11    going to have to overcome the concerns I have just expressed.

12         And I might just deny the motion without waiting for a

13    response just to save everybody's legal fees if it's clear to

14    me that we have to have a trial on what the language used

15    means, A, what it means in the industry and whatnot, which

16    always -- often requires a trial, and whether one side had

17    reason to believe what the other side -- that the other side

18    had a different understanding.

19         So, look, I think --

20         Are you all available for trial in August?

21         MS. FOSTER:  I'm sorry.  What, Your Honor?

22         THE COURT:  In August.

23         MS. FOSTER:  Oh, August.

24         THE COURT:  I'm eyeballing this as a one-week trial.

25    One week is four days.  But it might be longer.

1          MS. FOSTER:  I was going to say I'd pick three days

2     max.

3          MR. ROGERS:  Three days max, because there are only

4     going to be --

5          MS. FOSTER:  Three witnesses.

6          MR. ROGERS:  -- three witnesses.  That's right.

7          THE COURT:  So if I could set this in August --

8          MR. ROGERS:  August is good for Mitel too, Your Honor.

9     The earlier the better because of a vacation.

10         THE COURT:  Well, actually tell me what's your other

11    trial?

12         MR. JONES:  I'm not critical, I guess, to this piece,

13    but I do have a trial beginning the beginning of September in

14    state court.

15         THE COURT:  I would want to be done before then.

16         MR. JONES:  Yeah, correct.  I'd like some time to

17    recover and think about the new one, but that's my preference

18    for early August is all.

19         THE COURT:  Right.  I would not -- Late August becomes

20    problematic for me.  So let me think.  I'll tell you what.

21    There's something else that Judge Campbell has been doing that

22    I've been impressed by.  I have started to do it but actually

23    haven't had it yet, and that is he's picked this up from some

24    other judges in other courts that have done it, and that is he

25    wants a very short preliminary conference with counsel about

1    motions for summary judgment.  And basically both sides

2    exchange a brief written statement, a couple pages, share it

3    with the judge, get on the phone, talk about it.

4            I don't contemplate forbidding you from filing such a

5    motion.  But we would have a dialog about it.  And he can and I

6    can and could in good faith discourage it, but I don't think I

7    can forbid it.

8            He has picked that up from other judges in other

9    districts who swear by it, that it reduces lots of just what I

10   call "find out if the judge is stupid" motions.

11           And it saves a lot of legal fees to a lot of people,

12   a lot of needless work for the judge.

13           And he's picked it up from other judges who say it's

14   great.

15           So I'm thinking that I should require some -- that, so

16   that I wouldn't be telling you you cannot file a motion.  But

17   we could dialog in a way that you might decide it's not worth

18   billing your clients; just have the trial.

19           MR. ROGERS:  Can I just say something on that?  We

20   were talking about just a second ago I do foresee that we would

21   file our affirmative defenses because they're fact -- fact

22   intensive inquiries, which would probably be better for a jury.

23           But, again, contract interpretation, right now I'm

24   thinking that, yeah, we would file for summary judgment, and I

25   I'm assuming that Ms. Foster would too, the other side would

| | |
|---|---|
| 1 | too, for interpretation of the contract.  And you've just |
| 2 | talked about that, Your Honor.  And is that something that you |
| 3 | really -- |
| 4 | THE COURT:  Well, I wouldn't preclude that, but this |
| 5 | sure looks like an arrangement in which the meaning of the |
| 6 | words and language is general and vague, and -- well, I'm not |
| 7 | being precise on my words there -- but open to different |
| 8 | interpretations. |
| 9 | Again, my view of this, although I haven't actually |
| 10 | done this yet, my view of this practice that I really got from |
| 11 | Judge Campbell is that I can't preclude someone from filing a |
| 12 | motion, but I can dialog with you that -- I guess it could be |
| 13 | abused by a judge, but I don't intend to.  I would dialog with |
| 14 | you about how I'm seeing it. |
| 15 | And it's all subject to revision.  But if the odds are |
| 16 | poor, why don't we just go have the trial.  That's what I'm |
| 17 | having in mind. |
| 18 | And so I think what I'd -- this -- I also picked this |
| 19 | up from Judge Campbell about the preliminary statement of the |
| 20 | motion for summary judgment.  I know he's not the only one who |
| 21 | does it, but he has described it eloquently as to how well it |
| 22 | works for him. |
| 23 | So I think I would want to do that.  I'm not telling |
| 24 | you that I would forbid anyone from filing a motion.  But just |
| 25 | the lay of the land is the commercial context and understanding |

1    of the parties are general -- The practical consequences of one

2    view or another can be really severe.  And it seems likely the

3    jury is going to have to sort this out.

4           So, anyway, I think what I will do, without -- just

5    require that brief statement for us to confer before motions

6    for summary judgment are filed.  But I'm promising you I won't

7    grant summary judgment unless it's filed and meritorious in my

8    view.

9           Now, this comes back to timing.  Additional discovery

10    by April 6.  And then I'll set two weeks after that, April 20,

11    for counsel to determine whether anyone wants to file a motion

12    for summary judgment and lay it out briefly so that I can

13    schedule a conference so we can discuss it.

14           And I'll tell you what.  When we do that, depending on

15    how that turns out, I can talk with you further about setting a

16    trial date that might be earlier than August.  But we'll

17    absolutely do it no later than early August.

18           So, all right, what else?  I'll get a written order

19    out on the motions.

20           MS. FOSTER:  Your Honor, I really like that idea.  I

21    just want to make sure we're all on the same page.  By brief,

22    you mean, like, what three pages?

23           THE COURT:  Yeah.  I was thinking two.

24           MS. FOSTER:  Well, the caption takes up half.

25           THE COURT:  I don't count the caption.  I don't count

1    the service certificate either.

2              MS. FOSTER:  Okay.  Two pages.

3              THE COURT:  Well, make it three, but don't press your

4    luck.  Look, the purpose of that is to facilitate the

5    discussion you can have with each other and with me.  And I

6    need to talk with Judge Campbell because my assumption is he

7    doesn't ever forbid someone from filing a motion.  If he does,

8    perhaps I will -- I'm not abusing my authority.  But I don't

9    think I can do that.

10             So he -- my assumption is that he can't forbid it, but

11   he can be very candidly discouraging.

12             So my purpose is not to manipulate anybody but just to

13   tell -- tell whether I think this is just going to have to have

14   a trial.

15             MS. FOSTER:  I think that would be very helpful.

16             THE COURT:  All right.  Now, with that, the motion is

17   taken under advisement, and I'll get something out quickly.

18   All right.

19       (Proceedings recessed at 3:15 p.m.)

20

21

22

23

24

25

1

## C E R T I F I C A T E

2

3          I, LINDA SCHROEDER, do hereby certify that I am duly

4   appointed and qualified to act as Official Court Reporter for

5   the United States District Court for the District of Arizona.

6          I FURTHER CERTIFY that the foregoing pages constitute

7   a full, true, and accurate transcript of all of that portion of

8   the proceedings contained herein, had in the above-entitled

9   cause on the date specified therein, and that said transcript

10  was prepared under my direction and control.

11         DATED at Phoenix, Arizona, this 15th day of March,

12  2018.

13

14

15                                   s/Linda Schroeder
                                  Linda Schroeder, RDR, CRR
16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**