EXHIBIT 21

| | |
|---|---|
| **From:** | Michelle Whittington |
| **To:** | Corey Allen |
| **Sent:** | 3/31/2016 1:58:07 PM |
| **Subject:** | RE: Attn: Michelle Whittington Re: Moving forward and closing the transaction |

Corey, there is obviously a misunderstanding that needs to be cleared up. Is it possible for me to speak directly with Coalition America?

Michelle

**From:** Corey Allen [mailto:Corey.Allen@dividendadvisors.com]
**Sent:** Wednesday, March 30, 2016 3:46 PM
**To:** Michelle Whittington <Michelle.Whittington@mitel.com>
**Subject:** Attn: Michelle Whittington Re: Moving forward and closing the transaction

Dear Michelle,

Thank you so much for email.

Per our conversation, I look forward to closing the deal. I have reviewed the signed agreement and it does state that both the domain and IP range were included and thus sold to the buyer. What is our next step to move forward?

As the broker, I am receiving pressure to get this resolved – who should I speak to get the domain and IP range transferred to the buyer as per the executed agreement/escrow?

Sincerely,

Corey Allen
Principal Advisor
Dividend Advisors, LLC.
433 North Camden Drive Suite 970
Beverly Hills, California 90210
Phone: (310) 962-5602
www.DividendAdvisors.com

MITEL000610

EXHIBIT 22

**From:** Michelle Whittington
**Sent:** Monday, April 18, 2016 5:00 PM
**To:** Samantha Walters <Samantha@ColocationAmerica.com>
**Cc:** 'Corey Allen' <Corey.Allen@dividendadvisors.com>; albert@colocationamerica.com
**Subject:** RE: Attn: Michelle Whittington Re: Moving forward and closing the transaction

Thank you Samantha. I will contact Deborah.

Michelle

**From:** Samantha Walters [mailto:Samantha@ColocationAmerica.com]
**Sent:** Monday, April 18, 2016 1:21 PM
**To:** Michelle Whittington <Michelle.Whittington@mitel.com>
**Cc:** 'Corey Allen' <Corey.Allen@dividendadvisors.com>; albert@colocationamerica.com
**Subject:** RE: Attn: Michelle Whittington Re: Moving forward and closing the transaction

Michelle,

I hope you had a great weekend.

I believe that it would be best if you were to talk directly to our attorney, Deborah Perlman. Here is her contact information:

Deborah Perlman
Perlman Law Offices
T: (310) 551-0155
C: (310) 925-1028
Deborah@perlmanlawoffices.com

Please reach out to Deborah directly to schedule a time to discuss the agreement.

Best,

Samantha Walters
VP of Online Strategies



Colocation | Dedicated Server | About Us
Office: 818-914-4128 | Cell: 310-709-0133

MITEL000048

**From:** Michelle Whittington [mailto:Michelle.Whittington@mitel.com]
**Sent:** Friday, April 15, 2016 1:28 PM
**To:** Samantha Walters <Samantha@ColocationAmerica.com>
**Cc:** 'Corey Allen' <Corey.Allen@dividendadvisors.com>
**Subject:** RE: Attn: Michelle Whittington Re: Moving forward and closing the transaction

Samantha,  I requested a meeting with Colocation America, which was acknowledged by Mr. Allen, but no such meeting has been scheduled. I am happy to discuss the apparent mistake with you or your legal department, whichever works best for you.

Mitel is not stalling and is quite prepared to transfer the domain name as was agreed upon with Mr. Allen and in the Domain Name Agreement.

I look forward to scheduling a time to discuss this further with you or your legal department.

Thank you,
Michelle


-------- Original message --------
From: Samantha Walters <Samantha@ColocationAmerica.com>
Date: 04/15/2016 12:48 PM (GMT-07:00)
To: Michelle Whittington <Michelle.Whittington@mitel.com>
Cc: 'Corey Allen' <Corey.Allen@dividendadvisors.com>
Subject: RE: Attn: Michelle Whittington Re: Moving forward and closing the transaction

Michelle,

I hope all is well.

It has been over two weeks since we opened the escrow account – when may I talk to the IT department about transferring the IPv4 block and the domain name?

As you believe, and stated numerous times, there has been a "misunderstanding." Can you please explain what you are referring to? As of right now, it appears that you are stalling the process without acknowledging or stating the reason why. In your email to Corey, dated Tuesday April 12th, you state that this is a "frustrating situation" and that you would like get it resolved swiftly. Interestingly, you never responded to my email nor reached out.

Straight and to the point - what are our next steps? If we cannot get this resolved soon, it may be best to get our legal department involved.

Let me know your thoughts,

Samantha Walters
VP of Online Strategies



Colocation | Dedicated Server | About Us
Office: 818-914-4128 | Cell: 310-709-0133

2

MITEL000049

**From:** Samantha Walters [mailto:Samantha@ColocationAmerica.com]
**Sent:** Tuesday, April 12, 2016 10:33 AM
**To:** 'Michelle Whittington' <Michelle.Whittington@mitel.com>
**Cc:** 'Corey Allen' <Corey.Allen@dividendadvisors.com>
**Subject:** RE: Attn: Michelle Whittington Re: Moving forward and closing the transaction

Michelle,

I'm sorry but I am confused – what misunderstanding are you referring to? As you know, I was not involved until after the agreement was signed but everything looks clear to me on paper. Unless I am mistaken but according to the signed agreement and escrow account, both the IPv4 block (134.22.0.0/16) and the domain name (Gandalf.ca) were sold, were they not?

The first time we spoke we discussed the next steps involved in the transfer process. At that time, we agreed to three main steps: 1) setting up the Escrow.com account, 2) transferring the IPv4 block, and 3) transferring the domain name. On that day, you informed me that you would assist and finalize the escrow account and then connect me to your IT department that handles IPs and domains to assist in the transfer process. Making good on our agreement, we setup the escrow account as per your specifications and timeframe.

With step 1 completed, when may I talk to the IT department and start step 2 of the transfer process?

I look forward to getting this going again.

Thank you,

Samantha Walters
VP of Online Strategies



Colocation | Dedicated Server | About Us
Office: 818-914-4128 | Cell: 310-709-0133

---

**From:** Michelle Whittington [mailto:Michelle.Whittington@mitel.com]
**Sent:** Monday, April 11, 2016 10:32 AM
**To:** Samantha Walters <Samantha@ColocationAmerica.com>
**Cc:** 'Corey Allen' <Corey.Allen@dividendadvisors.com>
**Subject:** RE: Attn: Michelle Whittington Re: Moving forward and closing the transaction

Hi Samantha, there has been a misunderstanding of what Mitel has agreed to sell. Mitel is prepared to transfer the domain name and all goodwill associated thereof. The Mitel IT Dept is standing by to transfer the domain name when Colocation America is ready.

I asked Corey to set a meeting with Colocation a few weeks ago but he hasn't done so.

Michelle

MITEL000050

-------- Original message --------
From: Samantha Walters <Samantha@ColocationAmerica.com>
Date: 04/11/2016 10:23 AM (GMT-07:00)
To: Michelle Whittington <Michelle.Whittington@mitel.com>
Cc: 'Corey Allen' <Corey.Allen@dividendadvisors.com>
Subject: RE: Attn: Michelle Whittington Re: Moving forward and closing the transaction

Michelle,

I hope you had a relaxing weekend.

Just following up to the below email, can we setup a time this week to start the transfer process for the IPv4 block? As you are aware, the agreement is signed, the escrow account is setup with money deposited – can we move forward with this next step? As per our conversation, we are going to start with the transfer of the IPv4 allocation and then transfer the domain Gandalf.ca. Is there another member of the Mitel team I should be talking to in order to get the process started?

Thank you for your speedy reply,

Samantha Walters
VP of Online Strategies



Colocation | Dedicated Server | About Us
Office: 818-914-4128 | Cell: 310-709-0133

**From:** Corey Allen [mailto:Corey.Allen@dividendadvisors.com]
**Sent:** Wednesday, April 06, 2016 8:58 PM
**To:** Michelle Whittington <Michelle.Whittington@mitel.com>
**Cc:** samantha@colocationamerica.com
**Subject:** Attn: Michelle Whittington Re: Moving forward and closing the transaction

Dear Michelle,

So that we can finalize the agreement of the Gandalf.ca domain sale and the associated IPv4 134.22.0.0/16 that that you have personally approved, authorized, overseen and customized to meet your specifications and as much as  Mitel and ColocationAmerica have mutually signed off on the agreement, please coordinate via email with Samantha so that we can effectuate the transfers of both the domain Gandalf.ca and the associated IPv4 134.22.0.0/16 this week. I will be out of the office however I will be accessible via email.

Sincerely,

NOTE: This e-mail (including any attachments) is for the sole use of the intended recipient(s) and may contain information that is confidential and/or protected by legal privilege. Any unauthorized review, use, copy, disclosure or distribution of this e-mail is strictly prohibited. If you are not the intended recipient, please notify

MITEL000051

Mitel immediately and destroy all copies of this e-mail. Mitel does not accept any liability for breach of security, error or virus that may result from the transmission of this message.

 Virus-free. www.avast.com

MITEL000052

EXHIBIT 23

| | |
|---|---|
| **From:** | Corey Allen |
| **To:** | Michelle Whittington |
| **CC:** | samantha@colocationAmerica.com |
| **Sent:** | 4/12/2016 11:17:36 AM |
| **Subject:** | Attn: Michelle Whittington Re: Clarification |

Dear Michelle,

      I am writing to you in best efforts to respectfully correct and clarify your inaccuracy in yesterdays email to Samantha Walters. You had written, **"I asked Corey to set a meeting with Colocation a few weeks ago but he hasn't done so."** Michelle, I had sent this email to you back on the 6th and yesterday (five days later) you've responded.


**Dear Michelle,**

      **So that we can finalize the agreement of the Gandalf.ca domain sale and the associated IPv4 134.22.0.0/16 that that you have personally approved, authorized, overseen and customized to meet your specifications and as much as Mitel and ColocationAmerica have mutually signed off on the agreement, please coordinate via email with Samantha so that we can effectuate the transfers of both the domain Gandalf.ca and the associated IPv4 134.22.0.0/16 this week. I will be out of the office however I will be accessible via email.**

I do understand that you may have overlooked the details of my email just as you may have overlooked the details of the mutually agreed upon contract. With that, let us please move forward and finalize the opened escrow.


Sincerely,


Corey Allen
Principal Advisor
Dividend Advisors, LLC.
433 North Camden Drive Suite 970
Beverly Hills, California 90210
Phone: (310) 962-5602
www.DividendAdvisors.com

EXHIBIT 24

**Harry Stanford**

| | |
|---|---|
| **From:** | Corey Allen <Corey.Allen@dividendadvisors.com> |
| **Sent:** | Thursday, March 24, 2016 3:43 PM |
| **To:** | samantha@colocationamerica.com |
| **Cc:** | Paul Sigelman; albert@colocationamerica.com |
| **Subject:** | Re: For your review as we need to send this out today |
| **Attachments:** | MASPAR INTERNET PROTOCOL ASSIGNMENT AGREEMENT.docx |

Dear Samantha:

After weeks of trying to get through, I finally got off the phone with JDA Software Inc. and they are expecting to review the agreement today. The details of the deal are:

-JDA bought out Maspar

- /16

- Last updated in 2002

-Maspar.com is a furniture store

-I was forthright with them and explained that we want to purchase the "Internet Protocol /16

-I intentionally did NOT include the full 144.40.0.0

Per Alberts request he would like you to give it the once over before I send it out. They leave in an hour (4:30)

Thank you for your immediate attention.

Sincerely,

Corey Allen
Principal Advisor
Dividend Advisors, LLC.
433 North Camden Drive Suite 970
Beverly Hills, California 90210
Phone: [×] [×] [×] (310) 962-5602
www.DividendAdvisors.com

089

## MASPAR INTERNET PROTOCOL ASSIGNMENT AGREEMENT

THIS AGREEMENT is made this 24th day of March, 2016 ("the Agreement"), by and between JDA SOFWARE COMPANY, INC., on behalf of itself and its subsidiaries, and Colocation America, Inc., a Nevada Corporation with offices at 9360 W Flamingo Rd, Suite 110-178, Las Vegas, NV 89147 ("INTERNET PROTOCOL NUMBERS PURCHASER").

**WHEREAS**, Dividend Advisors LLC has introduced the INTERNET PROTOCOL NUMBERS PURCHASER to JDA SOFWARE COMPANY, INC for the purpose of purchasing intangible rights which may be claimed as a result of a prior acquisition of **MASPAR COMPUTER CORPERATION.**

**WHEREAS**, JDA SOFWARE COMPANY, INC  hereby agrees to quit claim, transfer and assign, and COLOCATION AMERICA, INC. hereby agrees to purchase the property known as a /16 internet protocol block, subject to the terms and conditions of this Agreement.

**NOW, THEREFORE**, in consideration of the promises and agreements set forth herein, the parties, each intending to be legally bound hereby, do promise and agree as follows:

**A.  Quit Claim**. For good and valuable consideration, payable as more particularly described herein, JDA SOFWARE COMPANY, INC hereby agrees to quit claim the /16 and the registration thereof, together with the goodwill of the business connected with and symbolized by such and the associated IP (INTERNET PROTOCOL)  /16 . The quit claim transfer and assignment shall take effect as set forth herein upon COLOCATION AMERICA, INC. making the payment as provided for herein.

**B.  Payment**.    The consideration (the "Consideration") to be paid by COLOCATION AMERICA, INC.,  shall be in the amount of **ten thousand American dollars ($10,000.00)** and through escrow as set forth in the standard Escrow.com instructions, to be entered concurrent with this Agreement by the

090

parties and for the amount therein to be deposited by purchaser upon opening the escrow along with the escrow fees.  Within 1 business day after notification from Escrow.com that the purchase funds have been received, JDA SOFWARE COMPANY, INC   shall change the registered ownership to COLOCATION AMERICA, INC  or agent of its choosing, and agrees to transfer and further execute any instrument of transfer that may be required to effectuate the purchase of any of the /16 internet protocol numbers.   Upon notice to Escrow.com of all related intellectual property transfer, the consideration funds are to be released to JDA SOFWARE COMPANY, INC  by wire transfer as  JDA SOFWARE COMPANY, INC provides in the escrow instruction.

**C. JDA Software Company Inc. Obligations.** JDA SOFWARE COMPANY, INC agrees to cooperate with COLOCATION AMERICA, INC and to follow COLOCATION AMERICA, INC's reasonable instructions in order to effectuate any transfer of the /16 IP (INTERNET PROTOCOL) block in a timely manner. Specifically, upon receipt of the consideration, JDA SOFWARE COMPANY, INC further agrees to prepare and transmit any necessary registration agreement or correspondence to authorize the transfers.

**D. Warranty.**  JDA SOFWARE COMPANY, INC warrants and represents that: (i) it has the full power and lawful authority to enter into this quit claim assignment and transfer the ip block.

**E.   INTERNET   PROTOCOL   ADDRESS   PURCHASER   Obligations.** COLOCATION AMERICA, INC agrees not to: use the internet protocol  numbers or anything related: (i) to disparage JDA SOFWARE COMPANY, INC or their affiliates in any way; (ii) and disclose the material terms of this Agreement, such as the Consideration, however either party may disclose the existence of the Agreement.

**F. Entire Agreement.** This Agreement embodies the entire understanding of the parties with respect to the subject matter hereof, and merges all prior discussions between them, and neither of the parties shall be bound by any conditions, definitions, warranties, understandings, or representations with respect to the

091

subject matter hereof other than as expressly provided herein.   No oral explanation or oral information by either party hereto shall alter the meaning or interpretation of this Agreement.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be made and executed on the date signed by Mitel below ("Effective Date").

JDA Software Company, INC

_____

Name: _____

Position: _____

Date: _____

**COLOCATION AMERICA, INC.**

_____

Name: _____

Date: _____

092

<u>**SCHEDULE A TO**</u>
<u>**DOMAIN NAME ASSIGNMENT AGREEMENT**</u>

<u>**INCOMING WIRE TRANSFER**</u>

 Please ensure all funds in are paid in favor of JDA Software Company, INC  as per instructions below:

**RECEIVING BANK / INSTITUTION**
Name:
Branch:
Address:

SWIFT BIC:

ABA Routing #:

**BENEFICIARY**
Name:
Address:

Branch Transit:
Inst. number:
Account number
Currency code:

**Tel:**

**Fax:**

4

# EXHIBIT 25

# RE: #847266-561965 Modified - Gandalf.ca Domain Name Transfer

**email: "Albert@colocationamerica.com Albert (Colocation America)"**     **Sunday, May 14, 2017 at 11:58:51 AM Pacific Daylight Time**
To: email: "support@escrow.com" , email: "Michelle.Whittington@mitel.com"
Cc: email: "paul@sigelmanlaw.com Paul Sigelman" , email: "deborah@perlmanlawoffices.com"

Dear Escrow.com,

Thank you so much for following up.

We are waiting for Mitel to honor the contract terms before we release the funds.

Will keep you posted.

Best,

Albert Ahdoot

Director of Business Development

cid:image001.png@01D12C24.4F8l

Colocation | Dedicated Server | About Us

Office: 800-296-8915 x12 | Cell: 310-717-9137

cid:image004.pn
                    cid:image003.png@0

---

**From:** support@escrow.com [mailto:support@escrow.com]
**Sent:** None
**To:** albert@colocationamerica.com; Michelle.Whittington@mitel.com
**Subject:** #847266-561965 Modified - Gandalf.ca Domain Name Transfer

MITEL001690

Image removed by sender. Escrow logo

Dear Buyer and Seller, Please reply to all in this email with the status of this transaction. If we may be of assistance in any way please let us know. Thank you for using Escrow.com. Sincerely, Escrow.com Customer Support 180 Montgomery St, Suite 650 San Francisco, CA 94104 Toll Free 888.511.8600, U.S. and Canada International 1.415.801.2270

You can reach us for support at support@escrow.com or call 888-511-8600 (residents of U.S. and Canada) or 1-415-801-2270 (international customers). A friendly member of our team will be happy to assist you between 8.00am and 11.00pm US Pacific Standard Time, Monday to Friday.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Attachments:**
**image002.png** 14k
**image003.png** 7.1k
**image004.png** 4.2k
**image005.jpg** 566

# EXHIBIT 26

# RE: #847266-561965 Modified - Gandalf.ca Domain Name Transfer

| | |
|---|---|
| email: "Albert@colocationamerica.com Albert (Colocation America)" | Friday, June 16, 2017 at 1:48:14 PM Pacific Daylight Time |

To: email: "support@escrow.com" , email: "Michelle.Whittington@mitel.com"
Cc: email: "legal@colocationamerica.com"

Dear Escrow.com,

Thank you so much for following up.

We are waiting for Mitel to honor the contract terms before we release the funds.

Will keep you posted.

Best,

Albert Ahdoot

Director of Business Development

cid:image001.png@01D12C24.4F8|

Colocation | Dedicated Server | About Us

Office: 800-296-8915 x12 | Cell: 310-717-9137

cid:image004.pn|

cid:image003.png@0

---

**From:** support@escrow.com [mailto:support@escrow.com]
**Sent:** None
**To:** albert@colocationamerica.com; Michelle.Whittington@mitel.com
**Subject:** #847266-561965 Modified - Gandalf.ca Domain Name Transfer

MITEL001692

Image removed by sender. Escrow
logo

Dear Buyer and Seller, Please reply to all in this email with the status of the transfer of the domain and the IPv4 block in this transaction. If we may be of assistance in any way please let us know. Thank you for using Escrow.com. Escrow.com Customer Support 180 Montgomery St, Suite 650 San Francisco, CA 94104 Toll Free 888.511.8600, U.S. and Canada International 1.415.801.2270 <pre>Domain name: gandalf.ca Domain name status: registered Creation date: 2000/10/06 Expiry date: 2017/12/14 Updated date: 2017/03/19 DNSSEC: Unsigned Registrar name: Internic.ca Inc. Registrar number: 29 Registrant name: Mitel Networks Corp Administrative contact Name: Paulo Ferreira Postal address: 350 legget drive kanata ON K2K2W7 Canada Phone: +1.9057604172 Fax: Email: dns_admin@mitel.com Technical contact Name: Paulo Ferreira Postal address: 350 legget drive kanata ON K2K2W7 Canada Phone: +1.9057604172 Fax: Email: dns_admin@mitel.com Name servers DNS 1 hostname: dns.internic.ca 54.236.82.34 DNS 2 hostname: dns2.internic.ca 54.200.36.149 </pre> ************************************************************ *************************** <pre>Network Net Range 134.22.0.0 - 134.22.255.255 CIDR 134.22.0.0/16 Name GANDALF Handle NET-134-22-0-0-1 Parent NET134 (NET-134-0-0-0-0) Net Type Direct Assignment Origin AS Organization Gandalf Technologies Inc. (GANDAL) Registration Date 1989-04-14 Last Updated 2016-06-07 Comments RESTful Link https://whois.arin.net/rest/net/NET-134-22-0-0-1 See Also Related POC records. See Also Related organization's POC records. See Also Related delegations.</pre>

MITEL001693

of U.S. and Canada) or 1-415-801-2270 (international customers). A friendly member

of our team will be happy to assist you between 8.00am and 11.00pm US Pacific

Standard Time, Monday to Friday.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Attachments:**
**image002.png** 14k
**image003.png** 7.1k
**image004.png** 4.2k
**image005.jpg** 566

MITEL001694

# EXHIBIT 27

# [!BGQ-253-76302]: RE: #847266-561965 Modified - Gandalf.ca Domain Name Transfer

**email: "support@escrow.com Escrow"**                    **Friday, June 16, 2017 at 2:35:05 PM Pacific Daylight Time**
To: email: "jmajaba@escrow.com"

John B updated #BGQ-253-76302

-----------------------------

      Staff (Owner): Jenn M (was: -- Unassigned --)

RE: #847266-561965 Modified - Gandalf.ca Domain Name Transfer

-------------------------------------------------------------

      Ticket ID: BGQ-253-76302

      URL: https://support.escrow.com/staff/index.php?/Tickets/Ticket/View/38713

      Name: Albert (Colocation America)

      Email address: albert@colocationamerica.com

      Creator: User

      Department: General

      Staff (Owner): Jenn M

      Type: Issue

      Status: Open

      Priority: Low

      SLA: Default 24 hour reply and 5 day resolution deadline

      Template group: Default

      Created: 16 June 2017 12:48 PM

      Updated: 16 June 2017 12:48 PM

      Reply due: 19 June 2017 12:48 PM (2d 23h 13m)

      Resolution due: 21 June 2017 12:48 PM (4d 23h 13m)

Dear Escrow.com, Thank you so much for following up. We are waiting

MITEL001695

for Mitel to honor the contract terms before we release the funds.

Will keep you posted. Best, Albert Ahdoot Director of Business

Development Colocation | Dedicated Server | About Us Office:

800-296-8915 x12 | Cell: 310-717-9137 From: support@escrow.com

[mailto:support@escrow.com] Sent: None To:

albert@colocationamerica.com; Michelle.Whittington@mitel.com Subject:

#847266-561965 Modified - Gandalf.ca Domain Name Transfer Dear Buyer

and Seller, Please reply to all in this email with the status of the

transfer of the domain and the IPv4 block in this transaction. If we

may be of assistance in any way please let us know. Thank you for

using Escrow.com. Escrow.com Customer Support 180 Montgomery St, Suite

650 San Francisco, CA 94104 Toll Free 888.511.8600, U.S. and Canada

International 1.415.801.2270


Domain name: gandalf.ca Domain name status: registered

Creation date: 2000/10/06 Expiry date: 2017/12/14 Updated date:

2017/03/19

DNSSEC: Unsigned Registrar name: Internic.ca Inc. Registrar number: 29

Registrant name: Mitel Networks Corp Administrative contact Name:

Paulo

Ferreira Postal address: 350 legget drive kanata ON K2K2W7 Canada

Phone:

+1.9057604172 Fax: Email: dns_admin@mitel.com Technical contact Name:

Paulo

Ferreira Postal address: 350 legget drive kanata ON K2K2W7 Canada

Phone:

+1.9057604172 Fax: Email: dns_admin@mitel.com Name servers DNS 1

hostname:

dns.internic.ca 54.236.82.34 DNS 2 hostname: dns2.internic.ca

54.200.36.149


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

\* \* \* \* \* \* \* \* \* \* \*

MITEL001696

Network Net Range 134.22.0.0 - 134.22.255.255 CIDR

134.22.0.0/16 Name GANDALF Handle NET-134-22-0-0-1 Parent NET134

(NET-134-0-0-0-0) Net Type Direct Assignment Origin AS Organization

Gandalf

Technologies Inc. (GANDAL) Registration Date 1989-04-14 Last Updated

2016-06-07 Comments RESTful Link

https://whois.arin.net/rest/net/NET-134-22-0-0-1 See Also Related POC

records. See Also Related organization's POC records. See Also Related

delegations.

 You can reach us for support at support@escrow.com or call

888-511-8600 (residents of U.S. and Canada) or 1-415-801-2270

(international customers). A friendly member of our team will be happy

to assist you between 8.00am and 11.00pm US Pacific Standard Time,

Monday to Friday. - - - - - - - - - - - - - - - - - - - - - - - - -

- - - - - - -


Staff CP:  https://support.escrow.com/staff

MITEL001697

# EXHIBIT 28



**Snell & Wilmer**
———— L.L.P. ————
LAW OFFICES

One Arizona Center
400 East Van Buren Street
Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000
602.382.6070 (Fax)
www.swlaw.com

DENVER
LAS VEGAS
LOS ANGELES
LOS CABOS
ORANGE COUNTY
PHOENIX
RENO
SALT LAKE CITY
TUCSON

Jacob C. Jones
(602) 382-6562
jcjones@swlaw.com

July 13, 2017

Escrow.com, Inc.
c/o Corporation Service Company d/b/a CSC-Lawyers Incorporating Service
2710 Gateway Oaks Dr., Suite 150N
Sacramento, CA 95833

  Re: ***Colocation America, Inc. v. Mitel Networks Corporation, et al.***

Dear CSC-Lawyers Incorporating Service:

  Enclosed please find a subpoena for production of documents to Escrow.com, Inc.  We kindly request that, together with the responsive documents, you please return the attached Affidavit of Custodian of Records, filled out and executed by an appropriate person.

  On the subpoena, we have designated a Sacramento location for producing the documents because your office is located in Sacramento.  However, if it would be more convenient for Escrow.com to produce documents in Los Angeles, the documents may be produced at:

Snell and Wilmer L.L.P.
Two California Plaza
350 South Grand Avenue, Suite 3100
Los Angeles, CA 90071

  If you have any questions, please contact me at the number above.

Very truly yours,

Snell & Wilmer

Jacob C. Jones

JCJ:ks
Enclosure
cc: Dave Rogers

4832-8126-2155

AO 88B (Rev. 01/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises

# UNITED STATES DISTRICT COURT

for the

District of Arizona

| | | |
|---|---|---|
| Colocation America, Inc. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   CV-17-00421-PHX-NVW |
| Mitel Networks Corporation | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES

To:  Escrow.com, Inc. d/b/a Escrow.com Services
c/o Corporation Service Company, 2710 Gateway Oaks Dr. Ste. 150N, Sacramento, CA 95833

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

SEE ATTACHED EXHIBIT A

| Place: First Legal <br> 1814 I St. <br> Sacramento, CA 95811 | Date and Time: <br><br> July 28, 2017 at 9:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   July 13, 2017

*CLERK OF COURT*

OR _____

_____     _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____

Mitel Networks Corporation _____ , who issues or requests this subpoena, are:

David E. Rogers (drogers@swlaw.com); David G. Barker (dbarker@swlaw.com); Jacob Jones (jcjones@swlaw.com);
Snell & Wilmer L.L.P., One Arizona Center, 400 East Van Buren, Phoenix, Arizona, 85004; (602) 382-6000

AO 88B  (Rev.  01/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises (Page 2)

Civil Action No.  CV-17-00421-PHX-NVW

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the subpoena on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the subpoena at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the subpoena to *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because _____ ; or

☐ other *(specify):*


Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .


I declare under penalty of perjury that this information is true.


Date: _____       _____

*Server's signature*

_____

*Printed name and title*


_____

*Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT A

## DEFINITIONS

1.      "You," "Your," or "Escrow.com" means Escrow.com, Inc., and includes all employees, members, and individuals and entities acting on its behalf.

2.      "Colocation" or "Plaintiff" means "Colocation America, Inc.," Colocation America" and "Colocation America Corporation" and the respective officers, attorneys, employees, and agents of each.

3.      "MNC" means Mitel Networks Corporation, which is the named Defendant in this lawsuit.

4.      "ARIN" means the American Registry for Internet Numbers.

5.      "Any," "each," and "all" shall be read to be all inclusive, and to require the production of each and every document (as hereinafter defined) responsive to the particular request for production in which such term appears.

6.      "And" and "or" shall be construed both conjunctively and disjunctively and each shall include the other wherever such dual construction will serve to bring within the scope of these requests any documents and things which would otherwise not be brought within their scope.

7.      "Related to," "relating," "referring to," "concerning" or "regarding" means related in any manner.

8.      The term "document" includes electronically stored information, and is used in the broadest sense to be equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a).  A draft or non-identical copy is a separate document.

9.      The term "communication" means any exchange or transfer of information between two or more persons, whether written, oral, electronic, or in any other form, and also includes any documents, notes, memoranda or other writings reflecting the substance of the communication.

10.      "Person" means an individual, firm, corporation, association, organization or any other entity.  All references to persons or entities also include all persons and

entities acting on his, her, their or its behalf.

## INSTRUCTIONS

1.      Electronic records and computerized information must be produced in an intelligible format or together with a description of the system from which it was derived sufficient to permit rendering the materials intelligible.

2.      In producing documents, furnish all documents known or available to You, or within Your control.

3.      File folders with tabs or labels identifying documents called for by this Subpoena must be produced intact with such documents.

4.      Documents attached to each other (physically or electronically, e.g., email attachments) must not be separated and must be produced with a means of indicating parent/attachment relationship.

5.      To the extent you claim that any produced information is confidential, you may mark such information in conformance to the attached Protective Order, which has been entered in this case and which applies to documents produced by third-parties.

## DOCUMENTS TO BE PRODUCED

1.      All contact information You have for Dividend Advisors, Corey Allen, or Jack Heller.

2.      All communications between You and Dividend Advisors, LLC, including those in 2016 regarding IPv4 addresses or MNC.

3.      All communications between You and Corey Allen, including those in 2016 regarding IPv4 addresses or MNC.

4.      All communications between You and Colocation, including those in 2016 regarding IPv4 address, MNC, Corey Allen, Dividend Advisors, Jack Heller, or Paul Sigelman.

5.      Documents sufficient to show the relationship (if any) between You and Corey Allen.

6.    Documents sufficient to show the relationship (if any) between You and Dividend Advisors, LLC.

7.    Documents sufficient to show the relationship (if any) between You and Jack Heller.

8.    All communications between You and Paul Sigelman that reference Corey Allen, Jack Heller, or Dividend Advisors.

9.    All communications between You and Deborah Perlman that reference Corey Allen, Jack Heller, or Dividend Advisors.

10.   All communications between You and Colocation from September, 2015 until present related to IPv4 addresses, MNC, Corey Allen, Dividend Advisors, Jack Heller, or Paul Sigelman.

11.   All communications between You and Albert Ahdoot, Albert Arash Ahdoot, Albert A. Adoot, Arman Khalili, Peter Preuss, and/or Otto Grajeda from September, 2015 until present.

12.   All communications between You and Sigelman Law or Paul Sigelman Law Firm from September, 2015 until present, including communications related to IPv4 addresses or MNC.

13.   Documents sufficient to show the relationship (if any) between You and Paul Sigelman.

14.   Documents sufficient to show the relationship (if any) between You and Deborah Perlman.

15.   Documents sufficient to show the relationship (if any) between You and Colocation.

16.   Documents sufficient to show the relationship (if any) between You and Albert Ahdoot, Albert Arash Ahdoot, Albert A. Adoot, Arman Khalili, Peter Preuss, and/or Otto Grajeda.

4812-1574-2283.1

Exhibit A to Subpoena Duces Tecum to Escrow.com, Inc.
Colocation America, Inc. v Mitel Networks Corporation, Case No. CV-17-00421-PHX-NVW

# EXHIBIT 29

# DECLARATION OF CUSTODIAN OF RECORDS

Regarding: **Dividend Advisors, LLC, et al.**

SS# **UNKNOWN**

DOB or other ID# *10th FEB 1988*          Our File # **71723-01**

I am duly authorized as Custodian of Records (or other qualified witness) with the authority to certify records for:

**Escrow.com, Inc. c/o Corporation Services Company dba CSC Lawyers 2710 Gateway Oaks Drive, Ste. 150N Sacramento, CA**

**CERTIFICATION OF RECORDS COPIED** (Custodian's initials _____ *JE* _____ )

Including this declaration, all documents, records, and other things called for in the Subpoena Duces Tecum or Authorization which are in my custody have been photocopied at my office, in my presence, under my direction and control: and the copy submitted with declaration is a true copy thereof.

To the best of my knowledge all records referred to above were prepared or compiled by the personnel of the above named business, in the ordinary course of business, at or near the time of the acts, conditions, or events recorded.

No documents, records, or other things have been withheld in order to avoid their being photocopied.

Certain records were omitted because _____

_____

_____

**CERTIFICATION OF NO RECORDS** (Custodian's initials _____ )

A thorough search of the business revealed no records described in the attached subpoena or authorization for the following reason(s):

___ Patient was never treated at this facility
___ Records were destroyed
___ Records were lost/misplaced
___ Records purged/nothing found
___ Storage facilities were searched and no records found
___ Radiological Film/Images were: __ lost __ destroyed __ not taken at this facility __ patient has them
___ Billing records were: __ purged __ not kept because this is a prepaid health plan
___ This person was never employed at this facility
___ Other comments: _____

_____

_____

This certification is limited to the information supplied to me in the attached document: records may exist under another name, another spelling, or other identifying data.

**CUSTODIAN SIGNATURE**

I DECLARE under penalty of perjury the foregoing is true and correct.

Executed on *3RD AUGUST 2017*          at *SYDNEY*          *NSW*
                                                                                        State to be filled
                                                                                        in by Custodian

Print Name *JACKSON ELSEGOOD*          Signed _____

Phone # *0414 787 007*

MITEL002205

# EXHIBIT 30

**Transaction 1065206 (Escrow 577160)**

| | |
|---|---|
| **Description** | Sale of /20, /22 & 2 x ASNs |
| **Status** | Transaction Closed. Buyer Accepts |
| **Created** | 2016-08-12 12:21:24 |
| **Total Value** | 25000.00 USD |
| **Buyer** | 984834 (albert@colocationamerica.com) |
| **Seller** | 1036631 (vincent@dp5.com) |

**Transaction History**

| Date | Status | Message | Cust ID | IP |
|---|---|---|---|---|
| 2016-08-12 12:21:25 | Buyer Initiate | Buyer initiates the transaction | 984834 | 24.24.222.72 |
| 2016-08-13 07:23:55 | SellerInitiate | Seller has agreed to the terms of this transaction. | 1036631 | 52.52.8.121 |
| 2016-08-13 07:23:55 | BothAccept | Both parties have accepted the offer, awaiting buyer payment. | 1036631 | 52.52.8.121 |
| 2016-08-15 08:18:58 | sellersettlemen | seller selected ACH as a settlement method to TD Bank, Account Number *******7773 | 1036631 | 108.53.167.215 |
| 2016-08-16 16:09:53 | PaymentApproved | Escrow.com approves payment. | | |
| 2017-01-27 12:42:42 | delivery | Seller acknowledges the delivery for milestone(s) #1. | 1036631 | 108.53.167.215 |
| 2017-01-27 12:52:07 | BuyerReceMiles | Buyer confirms receipt of milestone #1 | 984834 | 24.24.222.72 |
| 2017-01-27 12:53:21 | BuyerAcceMiles | Buyer accepts milestone(s) #1 | 984834 | 24.24.222.72 |
| 2017-01-27 12:53:34 | STclosedAllAcc | Milestone transaction closed,Buyer accepted all milestones | 984834 | 24.24.222.72 |
| 2017-01-30 12:16:43 | BothAccept | 24h sent | | |
| 2017-02-01 14:34:54 | ClosingStmt | Funds disbursed. Final closing statements sent to both parties. | | |
| 2017-02-01 14:35:03 | BothAccept | WFACH | | |
| 2017-02-01 22:32:11 | BothAccept | reviewed | | |

CONFIDENTIAL

MITEL001671

## Transaction Details

**Transaction 3215674**

| Description | Transfer of 97.64.72.0/22 and 69.194.0.0/22 |
|---|---|
| Status | Transaction Cancelled |
| Created | 2017-06-22 13:36:55 |
| Total Value | 21504.00 USD |
| Buyer | 1230018 (arman4711@yahoo.com) |
| Seller | 1121381 (jbillow@peakhosting.com) |
| Broker | 1064426 (None) |

### Transaction History

| Date | Status | Message | Cust ID | IP |
|---|---|---|---|---|
| 2017-06-22 13:36:55 | Broker Initiate | Broker initiates the transaction | 1064426 | 52.52.8.121 |
| 2017-06-22 13:39:39 | BrokerSettlemen | broker selected ACH as a settlement method to Bank of America, Account Number *******3791. | 1064426 | 89.84.131.80 |
| 2017-06-22 14:20:15 | BrokerInitiate | Seller has agreed to the terms of this transaction. | 1121381 | 52.52.8.121 |
| 2017-06-22 14:20:23 | sellersettlemen | seller selected ACH as a settlement method to Wells Fargo Bank, Account Number *******8127. | 1121381 | 208.184.154.66 |
| 2017-06-22 14:20:23 | sellersettlemen | seller selected ACH as a settlement method to Wells Fargo Bank, Account Number *******8127. | 1121381 | 208.184.154.66 |
| 2017-06-29 14:02:54 | Cancelled | This transaction has been cancelled by the Broker with the following reason: Customer wants to swap for a different /22 | 1064426 | 89.84.131.80 |

CONFIDENTIAL

MITEL001685

## Transaction 3229061 (Escrow 784916)

| | |
|---|---|
| **Description** | Transfer of 97.64.96.0/22 and 69.194.0.0/22 |
| **Status** | Milestone transaction open |
| **Created** | 2017-06-29 14:07:00 |
| **Total Value** | 21504.00 USD |
| **Buyer** | 1230018 (arman4711@yahoo.com) |
| **Seller** | 1121381 (jbillow@peakhosting.com) |
| **Broker** | 1064426 (None) |

**Transaction History**

| Date | Status | Message | Cust ID | IP |
|---|---|---|---|---|
| 2017-06-29 14:07:00 | Broker Initiate | Broker initiates the transaction | 1064426 | 52.52.8.121 |
| 2017-06-29 14:07:11 | BrokerSettlemen | broker selected ACH as a settlement method to Bank of America, Account Number *******3791. | 1064426 | 89.84.131.80 |
| 2017-06-29 15:45:19 | BrokerInitiate | Buyer has agreed to the terms of this transaction. | 1230018 | 52.52.8.121 |
| 2017-06-30 08:23:02 | BrokerInitiate | Seller has agreed to the terms of this transaction. | 1121381 | 52.52.8.121 |
| 2017-06-30 08:23:02 | BothAccept | Both parties have accepted the offer, awaiting buyer payment. | 1121381 | 52.52.8.121 |
| 2017-06-30 08:23:08 | sellersettlemen | seller selected ACH as a settlement method to Wells Fargo Bank, Account Number *******8127. | 1121381 | 208.184.154.66 |
| 2017-06-30 08:23:08 | sellersettlemen | seller selected ACH as a settlement method to Wells Fargo Bank, Account Number *******8127. | 1121381 | 208.184.154.66 |
| 2017-06-30 17:21:02 | Approved | Escrow.com approved payment via Wire Transfer ($21,606.71) | 1230018 | 172.22.5.185 |
| 2017-06-30 17:21:02 | PaymentApproved | Escrow.com approves payment | 1230018 | 172.23.20.161 |
| 2017-07-20 12:29:43 | delivery | Seller acknowledges the delivery for milestone(s) #1,2. | 1121381 | 66.224.17.93 |

**CONFIDENTIAL**

**MITEL001686**

# EXHIBIT 31

**ESCROW.COM**   My Transactions   Start Transaction   Buttons   Help   Contact Us   A ⌄

## Status
Select any status for help.

1  BUYER AND SELLER AGREE TO TERMS
2  BUYER SENDS PAYMENT TO ESCROW.COM
3  SELLER SHIPS MERCHANDISE TO BUYER
4  BUYER RECEIVES MERCHANDISE
5  ESCROW.COM PAYS SELLER

## The Milestone Transaction is opened

· Actions will be available based on milestone statuses.
· If available please select Action for every milestone.

### Payment details

If you have not sent your payment yet, here are our wire transfer details:

| | |
|---|---|
| Bank Name: | Wells Fargo Bank, N.A. 420 Montgomery St San Francisco, CA 94104 |
| ABA Routing #: | 121000248 |
| Swift Code: | WFBIUS6S |
| Credit Account Name: | Internet Escrow Services Inc |
| Credit Account #: | 7101167844 |
| Wire Beneficiary Address: | 160 Montgomery St Suite 650 San Francisco, CA 94104 USA |
| Additional Instructions: | Reference Escrow Transaction # 847266 |

### History

Mar 25 2016 3:44PM PDT
Escrow.com approves payment.

Mar 25 2016 2:04PM PDT
Both parties have accepted the offer, awaiting buyer payment.

Mar 25 2016 12:26PM PDT
Buyer initiates the transaction.

### Merchandise

| Actions | Milestone No. | Status | Item Description | Inspection Period (calendar days) | Delivery Type | Unit Price/Installment |
|---|---|---|---|---|---|---|
| N/A | 1 | Buyer funds secured by Escrow.com | Gandalf.ca When Seller notifies Escrow.com that gandalf.ca and the IPv4 134.22.0.0/16 netblocks have been transferred, Escrow.com will verify that the Buyer is the registrant on both "WHOIS". No content, software, adsense or income generating accounts incl | 30 | No Shipping Needed | $10,000.00 |

| | |
|---|---|
| Subtotal | $10,000.00 |
| Escrow Fee | $175.50 |
| Total Transaction ID: 847266 Escrow ID: 561965 | $10,175.50 |

### Terms

| | |
|---|---|
| Transaction #: | 847266 |
| Escrow #: | 561965 |
| Transaction Title: | Modified - Gandalf.ca Domain Name Transfer |

| | |
|---|---|
| Swift Code: | WFBIUS6S |
| Credit Account Name: | Internet Escrow Services Inc |
| Credit Account #: | 7101167844 |
| Wire Beneficiary Address: | 180 Montgomery St<br>Suite 650<br>San Francisco, CA 94104<br>USA |
| Additional Instructions: | Reference Escrow Transaction #<br>847266 |

Mar 05 2016 12:26PM PDT
Buyer initiates the transaction

## Merchandise

| Actions | Milestone No. | Status | Item Description | Inspection Period (calendar days) | Delivery Type | Unit Price/Installment |
|---|---|---|---|---|---|---|
| N/A | 1 | Buyer funds secured by Escrow.com | **Gandalf.ca**<br>When Seller notifies Escrow.com that gandalf.ca and the IPv4 134.22.0.0/16 netblocks have been transferred, Escrow.com will verify that the Buyer is the registrant on both "WHOIS". No content, software, adsense or income generating accounts incl | 30 | No Shipping Needed | $10,000.00 |
| | | | Subtotal | | | $10,000.00 |
| | | | Escrow Fee | | | $175.50 |
| | | | **Total**<br>Transaction ID:<br>847266<br>Escrow ID: 561965 | | | **$10,175.50** |

## Terms

| | |
|---|---|
| Transaction #: | 847266 |
| Escrow #: | 561965 |
| Transaction Title: | Modified - Gandalf.ca Domain Name Transfer |
| Buyer: | Albert Ahdoot (albert@colocationamerica.com) |
| Seller: | MICHELLE WHITTINGTON<br>(Michelle.Whittington@mitel.com) |
| Inspection Period: | Milestone Transaction |
| Escrow Fee to be paid by: | Buyer<br>The buyer is responsible for 100% of the escrow fee in the event<br>the transaction is cancelled or the merchandise is returned. |
| Transaction fulfilled using: | Milestone Transaction |

# EXHIBIT 32



# THE OXFORD
## DESK DICTIONARY
### AND THESAURUS

## American Edition

Most Berkley Books are available at special quantity discounts for bulk purchases for sales promotions, premiums, fund-raising, or educational use. Special books or book excerpts can also be created to fit specific needs.

For details, write to Special Markets, The Berkley Publishing Group, 375 Hudson Street, New York, New York 10014.

BERKLEY BOOKS, NEW YORK

MITEL002178

If you purchased this book without a cover, you should be aware that this book is stolen property. It was reported as "unsold and destroyed" to the publisher, and neither the author nor the publisher has received any payment for this "stripped book."

| | |
|---|---|
| *Editor in Chief:* | Frank R. Abate |
| *Managing Editor:* | Elizabeth J. Jewell |
| *Editors:* | Jacquelyn S. Goodwin, Ruth Handlin Manley, Julie Marsh, Christine L. Stevens |
| *Editorial Assistant:* | Deborah Argosy |
| *Proofreaders:* | Joan Carlson, Doris Eder, Robin Fleisig, Christine Kelley |
| *Data Entry:* | Elaine Chasse, Linda Costa, Kimberly Roberts, Tina Wholean |

THE OXFORD DESK DICTIONARY AND THESAURUS:
American Edition
is a concise edition of *The Oxford Dictionary and Thesaurus: American Edition.*

A Berkley Book / published in mass-market paperback
by arrangement with Oxford University Press, Inc.

PRINTING HISTORY
Oxford University Press edition / July 1997
Berkley edition / August 1997

Copyright © 1997 by Oxford University Press, Inc.
Published by Oxford University Press, Inc.,
198 Madison Avenue, New York, New York 10016.
Oxford is a registered trademark of Oxford University Press.
All rights reserved. No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior permission of Oxford University Press.

The Penguin Putnam Inc. World Wide Web site address is
http://www.penguinputnam.com

ISBN: 0-425-16008-4

BERKLEY®
Berkley Books are published by The Berkley Publishing Group,
a division of Penguin Putnam Inc.,
375 Hudson Street, New York, New York 10014.
BERKLEY and the "B" design
are trademarks belonging to Penguin Putnam Inc.

PRINTED IN THE UNITED STATES OF AMERICA

15   14   13   12   11   10

# Contents

| | |
|---|---|
| Preface | vii |
| How to use the *Oxford Desk Dictionary and Thesaurus* | ix |
| Abbreviations | xi |
| Key to the pronunciations | xiv |
| *Oxford Desk Dictionary and Thesaurus* | 1–938 |
| Special Reference Sections | 939 |
| Signs and Symbols | 941 |
| Mathematical Notation | 942 |
| Heat Index/Wind Chill | 943 |
| Standard Weights and Measures with Metric Equivalents | 944 |
| Metric Weights and Measures with Standard Equivalents | 945 |
| Arabic and Roman Numerals/Multiplication Tables | 946 |
| Chemical Elements | 948 |
| Temperature | 949 |
| Time Periods | 950 |
| Wedding Anniversary Gifts | 951 |
| Books of the Bible | 952 |
| Presidents of the United States of America | 953 |
| States of the United States | 954 |
| Area Codes | 956 |
| Countries of the World | 958 |
| Easily Confused Words | 964 |
| Terms for Groups of Animals | 971 |

MITEL002179

■ **1** maneuver, guide, steer. **2**, **4** cruise, journey; cross. □□ **navigator** helmsman, skipper, pilot.

**nav·i·ga·tion** /návigáyshən/ *n.* **1** act or process of navigating. **2** method of determining a ship's or aircraft's position and course by geometry, astronomy, radio signals, etc. ■ **1** pilotage, seamanship, steering, sailing.

**na·vy** /náyvee/ *n.* (*pl.* **–vies**) **1** (often the **Navy**) **a** a nation's ships of war, including crews, maintenance systems, etc. **b** officers and enlisted personnel of a navy. **2** (in full **na'vy blue'**) dark-blue color. □ **navy bean** small white kidney bean. ■ **1a** a naval force(s); see also FLEET[1] **1**.

**nay** /nay/• *adv.* or rather; and even; and more than that (*impressive, nay, magnificent*). • *n.* **1** the word 'nay.' **2** negative vote (*counted 16 nays*). □□ **nay'say·er** *n.* ■ □□ **naysayer** dissenter, dissident.

**Na·zi** /náatsee, nát–/ • *n.* (*pl.* **Na·zis**) **1** *hist.* member of the German National Socialist party. **2** adherent of this party's tenets. • *adj.* of Nazis, Nazism, etc. □□ **Na'zism** /naatsizəm, nát– /*n.*

**NB** *abbr.* **1** New Brunswick. **2** nota bene.

**Nb** *symb. Chem.* niobium.

**NBC** *abbr.* National Broadcasting Company.

**NC** *abbr.* North Carolina (in official postal use).

**NCO** *abbr.* noncommissioned officer.

**ND** *abbr.* North Dakota (in official postal use).

**Nd** *symb. Chem.* neodymium.

**n.d.** *abbr.* no date.

**N.Dak.** *abbr.* North Dakota.

**NE** *abbr.* **1** Nebraska (in official postal use). **2** northeast. **3** northeastern.

**Ne** *symb. Chem.* neon.

**Ne·an·der·thal** /neeándərthawl, –tawl, –taal/ *adj.* (also **Ne·an'der·tal**) of the type of early human widely distributed in Paleolithic Europe.

**neap** /neep/ *n.* (in full **neap tide**) tide just after the first and third quarters of the moon when there is least difference between high and low water.

**Ne·a·pol·i·tan** /neeəpólitən/• *n.* native or citizen of Naples in Italy. • *adj.* of Naples. □ **Neapolitan ice cream** ice cream made in layers of different colors and flavors.

**near** /neer/• *adv.* **1** to or at a short distance in space or time (*the time drew near; dropped near to them*). **2** closely (*as near as one can guess*). • *prep.* (compar. & superl. also used) **1** to or at a short distance (in space, time, condition, or resemblance) from. **2** (in comb.) *a* that is almost (*near-hysterical*). **b** intended as a substitute for; resembling (*near beer*). • *adj.* **1** (usu. *predic.*) close to, in place or time (*the man nearest you*). **2** a closely related. **b** intimate. **3** close; narrow (*near escape*). • *v.* **1** *tr.* approach; draw near to. **2** *intr.* draw near. □ **the Near East** region comprising the countries of the eastern Mediterranean. **near miss 1** narrowly avoided collision. **2** attempt that is almost but not quite successful. □□ **near'ish** *adj.* **near'ness** *n.* ■ *adv.* **1** close by, not far (off or away), nearby, in the vicinity. • *prep.* **1** close to,

next to, adjacent to; within reach of. • *adj.* **1** imminent, immediate, impending; nearby, adjacent, next-door. **2** a intimate, connected, attached. **b** see INTIMATE[1] *adj.* **1**, **3** hairbreadth; lucky. • *v.* come close or closer to; verge on, lean toward. □ **near miss 1** narrow escape, *colloq.* close shave.

**near·by** /néerbí/• *adj.* near, in position. • *adv.* close; not far away. ■ *adj.* close, within reach, handy. • *adv.* about, around.

**near·ly** /néerlee/ *adv.* **1** almost. **2** closely. ■ **1** not quite, about, just about, practically; barely, hardly.

**near·sight·ed** /néersítid/ *adj.* unable to see distant objects clearly. □□ **near'sight·ed·ness** *n.* ■ shortsighted, myopic, dim-sighted.

**neat** /neet/ *adj.* **1** tidy and methodical. **2** elegantly simple. **3** brief, clear, and pointed. **4** a cleverly executed. **b** deft; dexterous. **5** (of esp. alcoholic liquor) undiluted. **6** *sl.* (as a general term of approval) good, pleasing, excellent. □□ **neat'ly** *adv.* **neat'ness** *n.* ■ **1** orderly, clean, uncluttered, fastidious. **2** unadorned, well-proportioned; regular, precise. **3** distinct, witty, lucid, crisp; see also *epigrammatic* (EPIGRAM). **4** adroit, efficient, expert. **5** straight, unmixed. **6** fine, wonderful, marvelous, first-class.

**neat·en** /néet'n/ *v.tr.* make neat. ■ tidy (up), straighten (up *or* out), clean (up), spruce up.

**Nebr.** *abbr.* Nebraska.

**neb·u·la** /nébyələ/ *n.* (*pl.* **neb·u·lae** /–lee/ *or* **neb·u·las**) *Astron.* **1** cloud of gas and dust, glowing or appearing as a dark silhouette against other glowing matter. **2** bright area caused by a galaxy, or a large cloud of distant stars. □□ **neb'u·lar** *adj.*

**neb·u·lous** /nébyələs/ *adj.* **1** cloudlike. **2** a formless, clouded. **b** hazy, indistinct, vague (*put forward a few nebulous ideas*). **3** *Astron.* of or like a nebula(e). ■ **2** unclear, obscure, fuzzy, ill-defined, shapeless, blurred.

**nec·es·sar·y** /nésəseree/ • *adj.* **1** requiring to be done, achieved, etc.; requisite; essential. **2** determined, existing, or happening by natural laws, predestination, etc.; not by free will; inevitable. • *n.* (*pl.* **–ies**) (usu. in *pl.*) basic requirements. □□ **nec·es·sar'i·ly** *adv.* ■ *adj.* **1** indispensable, compulsory, vital. **2** certain, inexorable; unavoidable, inescapable. • *n.* see NECESSITY 1a. □□ **necessarily** inevitably, naturally, certainly.

**ne·ces·si·tate** /nisésitayt/ *v.tr.* make necessary (esp. as a result) (*will necessitate some sacrifice*). ■ see ENTAIL *v.*

**ne·ces·si·ty** /nisésitee/ *n.* (*pl.* **–ties**) **1** a indispensable thing. **b** indispensability. **2** imperative need. **3** want; poverty; hardship. □ **of necessity** unavoidably. ■ **1** a requirement, essential, prerequisite. **b** unavoidability, inevitability. **2** urgency, emergency, crisis. **3** indigence, need, destitution, difficulty. □ **of necessity** see *necessarily* (NECESSARY).

**neck** /nek/ • *n.* **1** a part of the body con-

Google

nebulous definition

Sign In

All    Books    Images    Shopping    News    More            Settings    Tools            SafeSearch on

About 921,000 results (0.22 seconds)

Dictionary

nebulous

## neb·u·lous
/ˈnebyələs/ 🔊

*adjective*
adjective: nebulous

in the form of a cloud or haze; hazy.
"a giant nebulous glow"
*synonyms:* indistinct, indefinite, unclear, vague, hazy, cloudy, fuzzy, misty, blurred, blurry, foggy;
More
*antonyms:* clear

- (of a concept or idea) ==unclear, vague, or ill-defined.==
"nebulous concepts like quality of life"
*synonyms:* vague, ill-defined, unclear, hazy, uncertain, indefinite, indeterminate, imprecise,
unformed, muddled, confused, ambiguous
"nebulous ideas"
*antonyms:* well defined

- another term for nebular.

Origin

FRENCH
nébuleux

LATIN          LATIN          nebulous
nebula         nebulosus

late Middle English (in the sense 'cloudy'): from French *nébuleux* or Latin *nebulosus*, from *nebula*
'mist.' The sense 'cloudlike, vague' dates from the early 19th century.

Translate nebulous to  Choose language    ▽

Use over time for: nebulous

Show less

Feedback

**Nebulous | Definition of Nebulous by Merriam-Webster**
https://www.merriam-webster.com/dictionary/nebulous ▾
Definition of nebulous. 1 : of, relating to, or resembling a nebula : nebular. 2 : indistinct, vague.

**Nebulous | Define Nebulous at Dictionary.com**
www.dictionary.com/browse/nebulous ▾
a nebulous recollection of the meeting; a nebulous distinction between pride and conceit. 2. cloudy
or cloudlike. 3. of or resembling a nebula or nebulae in deep space; nebular.

**nebulous Definition in the Cambridge English Dictionary**
https://dictionary.cambridge.org/us/dictionary/english/nebulous ▾
nebulous definition, meaning, what is nebulous: (especially of ideas) not clear and having no form: .
Learn more.

**nebulous | Definition of nebulous in English by Oxford Dictionaries**
https://en.oxforddictionaries.com/definition/nebulous ▾

MITEL002181

nebulous Definition in the Cambridge English Dictionary

Search English

**Definition of "nebulous" - English Dictionary**

**American**

**"nebulous" in American English**

See all translations

# nebulous

*adjective*   US   /ˈneb·jə·ləs/

**(esp. of ideas)** <mark>**unclear and lacking form; vague:**</mark>

*a nebulous concept*

(Definition of "nebulous" from the **Cambridge Academic Content Dictionary** © Cambridge University Press)

Translations of "nebulous"

in Portuguese

nebuloso, vago...

Need a translator?

Translator tool

This website uses cookies. For more information, please visit the **Privacy and Cookies Policy**.
Get a quick, free translation!

Accept and hide this message

**MITEL002182**

Nebulous Synonyms, Nebulous Antonyms | Thesaurus.com



≡   Dictionary.com      Thesaurus.com                          Try Our Apps   Log In

synonyms   ∨   nebulous

c    ambivalence    bad job    forward-looking    lead to    nebulous                My Synonyms (0)

# nebulous

*see definition of nebulous*    show  all ∨

*adj* confused, obscure

Relevance    A-Z    Complexity              Length

### Synonyms for nebulous                Common    Informal

*adj* confused, obscure

| | | | |
|---|---|---|---|
| ambiguous | murky | dark | indistinct |
| amorphous | shadowy | dim | misty |
| hazy | vague | indefinite | shapeless |
| imprecise | cloudy | indeterminate | uncertain |
| unclear | | | |
| unformed | | | |

### Word Origin & History

nebulous late 14c., "cloudy, misty," from L. nebulosus "cloudy, misty, foggy," from nebula (see nebula). The fig. sense of "formless" is first attested

Explore
Dictionary.com



Insults We Should Bring Back



20 Words That Will Show Your Age



Avoid these words. Seriously.



The Oldest Words in English

### Antonyms for nebulous

| | | | |
|---|---|---|---|
| bright | clear | distinct | apparent |
| certain | definite | sure | obvious |
| plain | | | |



Roget's 21st Century Thesaurus, Third Edition Copyright © 2013 by the Philip Lief Group.
Cite This Source

### More words related to nebulous

**amorphous**
*adj.* without definite shape, character

formless        irregular        shapeless

### Example Sentences for nebulous

It describes the **nebulous** attitude of mind of many a one to-day.

MITEL002183

nebulous (adjective) American English definition and synonyms | Macmillan Dictionary

# MACMILLAN DICTIONARY



**Domains Websites**
Start Now

SQUARESPACE

---

**nebulous** - definition and synonyms

---

ADJECTIVE  /ˈnebjələs/                                                *Using the thesaurus*

Contribute to our Open Dictionary

not developed or clear enough to describe
*I thought his plans were pretty nebulous.*
*a nebulous shape*

Synonyms and related words

**Impossible to describe or explain:**
*inexplicable  indefinable  indescribable*

Explore Thesaurus

From the Blog

What is binge-watching?

Is it 'suffragette' or 'suffragist'?

'Black and white' is a surprisingly colourful expres...

Common grammatical errors and how to avoid making them

Trending words quiz

*learn English*          *live English*          *love English*

**BuzzWord**

**take a knee**

to kneel on one knee as a public act of protest, especially in a situation where most other people are standing

BuzzWord Article

**More BuzzWords**

birther      legacy      optics
clicktivism  occupy      mic drop

**Open Dictionary**

**ambient literature**

a form of literature which uses digital technology to enhance the reading experience by responding to information about the reader's location, time of day, etc.

add a word

**More submissions**

scooch   collimate   unified comms

MITEL002184

Nebulous | Definition of Nebulous by Merriam-Webster


SINCE 1828    MENU



Thesaurus

# nebulous

*adjective*

## Synonyms and Antonyms of NEBULOUS

1   having an often intentionally veiled or uncertain meaning
   • made *nebulous* references to some major changes the future may hold

**Synonyms of NEBULOUS**

ambiguous, arcane, cryptic, dark, deep, elliptical (*or* elliptic), enigmatic
(*also* enigmatical), equivocal, inscrutable, murky, mysterious, mystic,
obscure, occult, opaque

**Words Related to NEBULOUS**

abstruse, esoteric, recondite

cloaked, concealed, disguised, masked, shrouded

cloudy, dim, faint, foggy, fuzzy, hazy, indistinct, obfuscated, misty,
muddy, shaded, shadowlike, shadowy, s

indefinite, inexact, inexplicit, noncommi
uncertain, undefined, undetermined, vag

impenetrable, incomprehensible, indecipherable, inexplicable

eerie (*also* eery), uncanny, weird

MITEL002185

Merriam-Webster   SINCE 1828   MENU

baffling, bewildering, confounding, confusing, mystifying, perplexing, puzzling, unfathomable

circuitous, indirect, roundabout

**Near Antonyms of NEBULOUS**

comprehensible, fathomable, intelligible, knowable, legible, pellucid, understandable

bright, distinct, evident, self-evident, self-explanatory

certain, firm, strong, sure

defined, determined

direct, straightforward

definite, exact, explicit

**Antonyms of NEBULOUS**

accessible, clear, nonambiguous, obvious, plain, unambiguous, unequivocal

2   ==not seen or understood clearly==
• We could just make out the *nebulous* outline of a fishing shack in the dense fog.

**Synonyms of NEBULOUS**

blear, bleary, blurry, dim, faint, foggy, fuzzy, gauzy, hazy, indefinite, indistinct, indistinguishable, misty, murky, obscure, opaque, pale, shadowy, unclear, undefined, undetermined, vague

**Words Related to NEBULOUS**

dark, dusky, gloomy

impalpable, inappreciable, intangible, invisible

incomprehensible, indecipherable, indis[  ]cable, mysterious, puzzling



LEARN MORE FROM M-W

**Confusing Words—A Quiz**

**Near Antonyms of NEBULOUS**

bright, distinct, evident, obvious, plain

certain, firm, strong, sure

MITEL002186