EXHIBIT 36

# Albert Ahdoot

Date: 03/21/2018

Vol III

## COLOCATION AMERICA

vs

## MITEL NETWORKS



2415 East Camelback Road
Suite 700
Phoenix, AZ 85016

602-358-0225

```
 1
 2              IN THE UNITED STATES DISTRICT COURT
 3                  FOR THE DISTRICT OF ARIZONA
 4
 5   COLOCATION AMERICA, INC.,      )
                                    )
 6                     Plaintiff,   )
                                    )
 7       vs.                        )  No. 2:17-cv-00421-NVW
                                    )
 8   MITEL NETWORKS CORPORATION,    )
                                    )
 9                     Defendant.   )
     _____)
10
11
12                         VOLUME III
13       DEPOSITION OF ALBERT ARASH AHDOOT, a witness
14       herein, noticed by Snell & Wilmer L.L.P.,
15       taken at 350 South Grand Avenue, Los Angeles,
16       California, at 9:53 a.m., on Wednesday,
17       March 21, 2018, before Diane M. Lytle,
18       CSR 8606.
19
20       Job Number 2726
21
22
23
24
25
```

Page 34

1  request. We requested "All emails between Kotler
2  and Ahdoot related to MNC communications with MNC,
3  Dividend Advisors, L.L.C., Kotler, the IPv4
4  addresses at issue in this dispute, and including
5  communications on which Paul Sigelman or anyone
6  else was copied."
7      Do you see that?
8      A. I do.
9      Q. And do you see in number 1 response it
10 states, "In preparing this response, Albert Ahdoot
11 searched the following emails," and then there's a
12 list.
13     Do you see that?
14     A. I do.
15     Q. Is number 1 response correct?
16     A. Yes.
17     Q. And then let's go down to number 2 on the
18 same page. It states, "All emails" -- excuse me.
19     It states, "All emails (on which Kotler or
20 anyone else - including Samantha Walters - was
21 copied) between Paul Sigelman and Ahdoot related
22 to: MNC, communications with MNC, this dispute,
23 Kotler, Dividend Advisors, L.L.C., or the IPv4
24 addresses at issue in this case."
25     Do you see that?

Page 35

1      A. I do.
2      Q. And then do you see below that number 2
3  response?
4      A. I do.
5      Q. As part of number 2 response, it states,
6  "In preparing this response, Albert Ahdoot
7  searched the following emails," and then there's
8  two numbered sentences after that.
9      Do you see that?
10     A. I do.
11     Q. Is number 2 response correct?
12     A. Yes.
13     Q. To your knowledge -- and you can take
14 your time and look at this -- actually, I believe
15 you verified that these responses were correct,
16 but, to your knowledge right now, are these
17 responses correct?
18     A. To my knowledge, yes.
19     Q. Okay.
20     Could you go past page 5, then there's a
21 document that states, "Response Number 1."
22     And take a look at the email string which
23 bears -- that's right behind that page and it
24 bears production number 080.
25     And the bottom email in the chain is from

Page 36

1  Corey Allen to Samantha Walters and copies you and
2  Paul Sigelman; correct?
3      A. Sure.
4      Q. And in this Corey Allen says to Samantha,
5  "After weeks of trying to get through, I finally
6  got off the phone with JDA Software Inc. and they
7  are expecting to review the agreement today."
8      Do you see that?
9      A. I do.
10     Q. And he states, "JDA bought out Maspar";
11 correct?
12     A. That's what it says, sure.
13     Q. Do you remember now that Colocation
14 purchased IPv4 addresses from JDA Software?
15     A. I'm sorry, your question one more time.
16     Q. Yes.
17     Do you remember now if Colocation purchased
18 IPv4 addresses from JDA Software?
19     A. We never purchased IPs from JDA.
20     Q. Okay.
21     Well, can you tell me, what kind of
22 transaction did you have with JDA related to IPv4
23 addresses?
24     A. None.
25     Q. Okay.

Page 37

1      You see in this, the lower email chain
2  Mr. Kotler states, "I was forthright with them and
3  explained that we want to purchase the 'Internet
4  Protocol/16.'"
5      Do you see that?
6      A. Sure, yes.
7      Q. Can you think of any reason why he would
8  not be forthright?
9      A. I'm not him. But it's a question for him
10 to ask. I have no idea.
11     Q. And you see right below that he says, "I
12 intentionally did not," with "not" in capital
13 letters, "include the full 144.40.0.0."
14     Do you see that?
15     A. I do.
16     Q. Do you know why he would not include
17 that?
18     A. I wouldn't know.
19     Q. And below that it says, "Per Alberts
20 request he would like you to give it the once over
21 before I send it out."
22     Do you see that?
23     A. I do.
24     Q. And when he's referring to give "it" the
25 once over, he's referring to an agreement with

Page 38

1    JDA Software, Inc.; correct?
2        A.  I have no idea what he's referring to.
3        Q.  Well, take a look at the entire email.
4        A.  Sure.  Give me a second.
5        Q.  Yeah.
6        If you look up at the first sentence, he
7    says, "They are expecting to review the agreement
8    today."
9        A.  Let me read it.  Give me a second.
10       Q.  Sure.  Take your time.
11       A.  I see the email, sure.
12       Would you like me to read it?
13       Q.  No, you don't have to read it.
14       But he's referring in this email to an
15   agreement with JDA Software; correct?
16       A.  He's referring to this email.  From what
17   I'm seeing, I don't see any agreement attached.
18       Q.  Uh-huh.
19       And he says below, "Per Alberts request he
20   would like you," and "you" means Samantha Walters,
21   "to give it the once over before I send it out."
22   That's at the bottom of the email.
23       Do you see that?
24       A.  Sure.
25       Q.  Do you remember requesting Corey Kotler

Page 39

1    to send the agreement to Samantha to give it the
2    once over?
3        A.  Actually, if you look at the following
4    page, 81, it is from Corey Allen and that's the
5    email that he sent over.
6        And to answer your question, yes, he is
7    pointing out to a slash 16.  Then I guess going
8    back to that page where he says, "I intentionally
9    did not include the full" number, that full number
10   is a slash 16.
11       So he just said, "Hey, you have a /16," and I
12   quote:  This /16 virtual Internet protocol block
13   was never utilized and for the lack of a better
14   words has been abandoned.  My company has been
15   retained to present JDA with an immediate payment
16   of 10,000," in parenthesis, "to acquire these
17   abandoned cyber rights.  Please review the
18   attached agreement.  I have forwarded it to you in
19   a Word file should you want to make any changes,"
20   end quote.
21       And I don't see the attachment, so I don't
22   know.
23       Q.  Thank you.  I don't think it's here, but
24   it's -- I'll show it to you later.
25       A.  Sure.

Page 40

1        Q.  Could you turn on the same document, the
2    page bearing production number 083.
3        A.  Next page?
4        Q.  Next page.
5        A.  Go ahead, please.
6        Q.  Could you look at the last -- Well, let
7    me say what this is first.
8        It's an email from Corey Kotler to you sent
9    on May 9th, 2016; correct?
10       A.  Sure, yes.
11       Q.  Could you read the last paragraph.  And
12   I'd like you -- to ask you if you know what -- No,
13   I'm going to skip that.  Let's move on.
14       A.  Okay.
15       Q.  Could you please turn to the document
16   bearing production numbers 090 through 093.  It's
17   in the same group of documents that have been
18   marked as Exhibit 103.
19       A.  Sure.  Looking at it.
20       Q.  Okay.
21       The title of this is "Maspar Internet
22   Protocol Assignment Agreement"; correct?
23       A.  Sure.
24       Q.  And this agreement is between
25   JDA Software Company, Inc. and Colocation America,

Page 41

1    Inc.; correct?
2        A.  Correct.
3        Q.  And this agreement was eventually
4    executed; correct?
5        A.  It was never executed.
6        Q.  Why not?
7        A.  Don't know.  It was never executed.  It
8    was never agreed on to be executed.
9        Q.  So Colocation never purchased any IPv4
10   addresses from JDA?
11       A.  That is correct.
12       Q.  And never purchased any IPv4 addresses
13   from Maspar?
14       A.  Correct -- well, JDA is, I guess, the
15   company that won -- or bought Maspar out of
16   bankruptcy.
17       So, no, we did not sign this contract and we
18   did not move forward.
19       Q.  And do you remember why that was?
20       A.  No.
21       Q.  But Colocation was willing to pay $10,000
22   for the IPv4 addresses that are listed here;
23   correct?
24       A.  Correct.
25       Q.  We're done with that one.  Thank you.

Page 54

1   A. No.
2   Q. And so whoever put down the name "Corey
3   Allen" and did not include Kotler would have been
4   the person or persons who prepared this document;
5   correct?
6   A. Sure.
7   Q. And those same persons would have listed
8   the Beverly Hills address under Mr. -- well, under
9   Corey Allen's name; correct?
10  A. Sure.
11  Q. Done with that one.
12     I'd like to have marked as Exhibit 109 a
13  document entitled "Plaintiff's Responses to
14  Defendant's First Set of Interrogatories and First
15  Request for Production."
16     (Whereupon the document referred to is marked by
17  the reporter as Exhibit 109 for identification.)
18  MR. ROGERS:
19  Q. And, Mr. Ahdoot, could you please turn to
20  Interrogatory Number 2, which is on page 2 of this
21  document.
22  A. Okay.
23  Q. And Interrogatory Number 2 asks to
24  "Identify each person you anticipate calling at
25  the trial in this lawsuit and the nature of the

Page 55

1   person's testimony."
2      Do you see that?
3   A. I do.
4   Q. And under the answer, could you please
5   take a look at item number 3. And in item number
6   3, it lists one of the witnesses as Corey Allen;
7   correct?
8   A. Sure.
9   Q. And it does not list his last name,
10  Kotler, does it?
11  A. It does not.
12  Q. Did you prepare this?
13  A. No.
14  Q. Were you asked to review this for
15  accuracy?
16  A. I don't recall.
17  Q. You don't recall?
18  A. No.
19  Q. At the time of this document, which you
20  can see on page 7, at the time of this document
21  which is June 26th, 2017, you knew that Corey
22  Allen's -- Corey Allen Kotler's full name was
23  Corey Allen Kotler; correct?
24  A. Sure.
25  Q. Done with that one.

Page 56

1   Did you ever instruct anyone to leave the
2   name Kotler out of any of the documents we just
3   looked at?
4   A. No.
5   MR. ROGERS: I have no more questions.
6   Counselor?
7   MR. SIGELMAN: No.
8   MR. ROGERS: Okay.
9   We can go off the record.
10  THE VIDEOGRAPHER: Do you want to do the
11  stipulation?
12  MR. SIGELMAN: We're in federal court so that
13  is what we do.
14  THE VIDEOGRAPHER: This concludes the
15  deposition of Albert Ahdoot ending media one of
16  Volume III at 11:06 a.m. If anyone would like a
17  copy of this deposition, please contact Depo Tech
18  at (602) 358-0225. We are now off the record.
19  THE REPORTER: Mr. Sigelman, did you want a
20  copy?
21  MR. SIGELMAN: Yes.
22  (The proceedings concluded at 11:06 a.m.)
23
24
25

Page 57

1   I, Diane M. Lytle, CSR 8606, do hereby
    declare:
2
    That, prior to being examined, the witness
3   named in the foregoing deposition was by me duly
    sworn pursuant to Section 30(f)(1) of the Federal
4   Rules of Civil Procedure and the deposition is a
    true record of the testimony given by the witness.
5
    That said deposition was taken down by me in
6   shorthand at the time and place therein named and
    thereafter reduced to text under my direction.
7
    ____ That the witness was requested to
8   review the transcript and make any changes to
    the transcript as a result of that review
9   pursuant to Section 30(e) of the Federal
    Rules of Civil Procedure.
10
    ____ No changes have been provided by the
11       witness during the period allowed.
12  ____ The changes made by the witness are
         appended to the transcript.
13
    _X__ No request was made that the
14  transcript be reviewed pursuant to Section 30(e)
    of the Federal Rules of Civil Procedure.
15
    I further declare that I have no interest in
16  the event of the action.
17  I declare under penalty of perjury under the
    laws of the United States of America that the
18  foregoing is true and correct.
19  WITNESS my hand this 3rd day of April, 2018.
20
21      *Diane M. Lytle* (signature)
22  Diane M. Lytle, CSR 8606
23
24
25