David E. Rogers (#019274)
David G. Barker (#024657)
Jacob C. Jones (#029971)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
Telephone:  602.382.6000
Facsimile:  602.382.6070
E-Mail:  drogers@swlaw.com
        dbarker@swlaw.com
        jcjones@swlaw.com

Attorneys for Defendant
Mitel Networks Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Colocation America, Inc., | No. CV-17-00421-PHX-NVW |
| Plaintiff, | **MITEL NETWORK CORPORATION'S MOTION FOR FEES AND COSTS** |
| v. | |
| Mitel Networks Corporation, | **Honorable Neil V. Wake** |
| Defendant. | |
| Mitel Networks Corporation, | |
| Counterclaimant, | |
| v. | |
| Colocation America Corporation; and Corey Allen Kotler and Mojgan Tabibnia, husband and wife, | |
| Counterdefendants. | |

1     Mitel Networks Corporation ("MNC") moves the Court under LR Civ. 54.2,

2   A.R.S. § 12-341.01, Fed. R. Civ. P. 37(c), and the Court's inherent authority, to award

3   MNC its attorneys' fees and non-taxable costs for this contract action brought by

4   Colocation America Corporation ("Colocation").  MNC also moves for the fees/costs of

5   this Motion, any Reply Brief, and any oral argument.  MNC conferred in good faith with

6   Colocation but no agreement was reached.  Ex. 1 (separate statement regarding meet and

7   confer requirement).  This Motion is based on the following Memorandum, the

8   Declaration of David E. Rogers (Ex. 2), the record of this action, and any other evidence

9   presented.

10   **Memorandum in Support**

11   **I.     Introduction.**

12     MNC moves this Court to order Colocation to pay:  (1) MNC's fees of $364,280

13   and non-taxable costs of $30,776.17 for this lawsuit (the "Arizona Action").  That does

14   not include $89,851 for work to add the individual defendants, Ahdoot and Kotler.  Ex. 2

15   ¶¶ 5-7; Ex. 2C.  MNC also seeks fees/non-taxable costs of $75,016.50 from the

16   California Action (*see infra* at 4-5) involving the same Domain Name and Assignment

17   Agreement ("Contract").  Ex. 2 ¶¶ 5-7; Ex. 2D.  The California State Court already

18   awarded sanctions of $40,648 against Colocation (Ex. 2 ¶ 19; Ex. 2M), but MNC has

19   $75,016.50 of additional fees/costs that this Court can award under A.R.S. § 12-341.01 or

20   its inherent authority.  *See* Ex. 2 ¶ 19; Ex. 2D; Ex. 2M; *supra* at 4-5.  There was no

21   statutory basis to move for the additional fees/costs under California state law.  Ex. 2 ¶

22   17.  The California Action was dismissed for lack of personal jurisdiction over MNC, and

23   MNC now knows that Colocation had no legitimate basis to bring that Action.

24     The impetus for this dispute, which resulted in Colocation suing MNC in

25   California and Arizona, and all of MNC's fees/costs, is the meritless position by

26   Colocation that the Contract required the transfer of over 65,000 IPv4 addresses for

27   $10,000.  Neither lawsuit would have been necessary if Colocation had been honest

28   about its intent at the outset (in February 2016, when it first contacted MNC to inquire

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

about the domain name gandalf.ca) about its intent, had leveled with MNC prior to executing the Contract, or not pursued litigation when MNC notified Colocation that there was a "misunderstanding" on March 28, 2016. *See* Doc. 81 at 9, chart rows 3-5; 10 chart rows 1-2, and 9.

Colocation intentionally concealed its true intent and used "nebulous" language to "slip in" a reference to IPv4 addresses in the goodwill section of the Contract. Doc. 88 at 2:2-13. Colocation knew that MNC understood the Contract was for the transfer of the domain name gandalf.ca. Doc. 95 at 16:15; 16:27-17:7. Colocation meant for MNC to not understand its intent, which was basically to use the Contract as a vehicle to pursue meritless litigation to try and obtain: (1) specific performance by MNC to *transfer* the IPv4 addresses to Colocation, which was impossible because MNC does not have title to them, and (2) *unspecified compensatory damages* against MNC for not transferring the IPv4 addresses. Doc. 1 (Ex. 1-Colocation Complaint at 7 ¶¶ (b)-(c)). The *compensatory damages* were never defined, but Colocation testified that the damages were due to lost business stemming from not being able to use the IPv4 addresses. Ex. 2 ¶ 18; Ex. 2L. Conceivably, Colocation's alleged lost business due to not having a block of 65,000 IPv4 addresses could be in the millions, or tens of millions, of dollars. *See* Section II (H), *infra* at 7-8. That may have been Colocation's goal, because Colocation knew early on that MNC did not have title to the IPv4 addresses. Doc. 84-2, page 8 of 43.

Colocation has not denied that its intent was to mislead MNC, and has never explained its "nebulous" email chain. Doc. 88 at 1:2-13. The "nebulous" email chain shows that the last two years plus of litigation was unnecessary. Doc. 95 at 16:15 (Kotler intentionally misled MNC); 16:27-17:7 (Colocation created and promoted the "different meaning" by MNC).

## II.   <u>Argument.</u>

**(1)-(2)   <u>Eligibility and Entitlement.</u>**   MNC moves for its fees and non-taxable costs pursuant to the: Court's Order dated June 15, 2018 (Doc. 95), LR Civ. 54.2, A.R.S. § 12-341.01, Fed. R. Civ. P. 37(c), and the Court's inherent authority. The nature of this

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

case is breach of contract.  Colocation brought this action alleging breach of the Contract by MNC and seeking the relief of specific performance and "compensatory damages." Doc. 1 (Ex. 1-Colocation Complaint at 3 ¶9; 5 ¶ 13, 15-16; p. 6 ¶¶ 19-22; p. 7 ¶¶ (b)-(c)). MNC asserted affirmative defenses of (a) failure of consideration, (b) fraud, and (c) mistake.  Doc. 5 at 4.  MNC also counterclaimed for breach of contract.  *Id.* at 7-8.  The case was decided on summary judgment based on contract interpretation.  Doc. 95. Colocation lost on all of its counts.  *Id.* at 17:12-18:2.  MNC prevailed on its Counterclaim II for recission, which was pled in the alternative to its Counterclaim I.  *Id.* at 17:12-14.  None of MNC's affirmative defenses were ruled upon, but discovery was taken related to those defenses.  *See, e.g.*, Exs. 2C-2D.

The Court should also award MNC's fees related to this Motion, any Reply, and oral argument.  The Ninth Circuit has observed that "it would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee."  *In re Nucorp Energy, Inc.,* 764 F.2d 655, 660 (9th Cir.1985).  Fees have been granted in similar cases.  *Signatures Network, Inc. v. Estefan*, No. C 03-4796 SBA(BZ), 2005 WL 151928, at *7-8 (N.D. Cal. Jan. 24, 2005) (awarding fees-on-fees in a case arising out of California contract law); *Smith v. Colvin*, No. CV-11-02524-PHX-DGC, 2013 WL 1092880 at *1 (D. Ariz. Mar. 15, 2013).  MNC will include its fees/costs for this Motion and its Reply Brief in the Reply Brief, and supplement its fees/costs for any oral argument.

**(3)**     **Reasonableness of Requested Award**.  MNC addresses the relevant factors of LR Civ. 54.2, below, using the same capital letter designations as are in LR Civ. 54.2.

**(A)     The Time and Labor Required of Counsel.**

MNC's fees/costs are based on hourly rates, the number of hours charged, and necessary travel and other costs.  Ex. 2 ¶¶ 5-6; Exs. 2C-2D.  The work was necessary, the hours charged were reasonable, and the hourly rates of MNC's professionals are reasonable.  Ex. 2 ¶¶ 3-9; *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1111 (9th Cir. 2014) ("[T]he [district] court should defer to the winning lawyer's professional judgment as to

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

how much time he [or she] was required to spend on the case.").

**(i)**     **Summary of Itemized Fees and
Non-Taxable Costs for this Arizona Action.**

As shown in Ex. 2C, MNC's total fees and non-taxable costs for this Arizona
Action are:  $435,005.00 in attorneys' fees, plus $9,426.00 in paraprofessional fees,
minus the fees directly related to adding Albert Ahdoot and Corey Kotler as parties,
which total $89,851.00.  The total fees sought are thus $364,280.  Ex. 2 ¶¶ 5-6, 10; Ex.
2C.  The time entries that relate to adding Ahdoot and Kotler are highlighted in Ex. 2C.
MNC did not highlight tasks, or deduct fees, that may have been partially related to
adding the individual defendants, but that were also related to other issues in this lawsuit.
Ex. 2 ¶ 10.  The total costs are $37,007.36, of which $6,231.19 are taxable and addressed
in Section IV, *infra* at p. 14.  Thus, MNC seeks $30,776.17 in non-taxable costs.

**(ii)**     **Summary of Itemized Fees and
Non-Taxable Costs for the California Action.**

The California Action is *Colocation America, Inc. v. Mitel Networks Corporation*,
Case No. BC619569, Calif. Sup. Ct., filed May 5, 2016.  The California Action involved
the same allegations and claims that Colocation raised here.  Compare Ex. 2P
(Colocation's California Complaint) to Doc. 1 (Ex. 1-Colocation Complaint in this case).
The claims of the California Action are not only closely intertwined with the claims here
– they are identical.

As shown in Ex. 2D, MNC's total fees and non-taxable costs for the California
Action that were not part of its sanctions motion (Ex. 2M) are $75,016.50.  Ex. 2 ¶¶ 5-6,
11; Ex. 2D.  This includes only fees and costs through September 19, 2017.  Ex. 2 ¶ 11;
Ex. 2D.  MNC had a statutory basis for recovering its fees/costs from September 20, 2017
forward, which were related to quashing multiple improper subpoenas issued by
Colocation.  Ex. 2 ¶¶ 17, 19; Ex. 2M.  MNC moved for those fees and was awarded
$40,648.  Ex. 2 ¶ 19; Ex. 2M (Court Order).  In the California lawsuit, there was no
discovery on the merits of the case.  MNC was unaware of the "nebulous" email chain,
and unaware that Colocation plotted to mislead MNC from the outset in order to

- 4 -

manufacture a dispute. *See* Doc. 95 at 16:15 (Kotler intentionally misled MNC); Doc. 2H (nebulous email chain). The California Action was dismissed for lack of personal jurisdiction. Ex. 2 ¶ 19.

This Court can award the $75,016.50 in fees/costs for the California Action under A.R.S. § 12-341.01 or its inherent authority, especially against a bad actor such as Colocation, in order to dissuade it from repeating this behavior. *Intellect Wireless, Inc. v. Sharp Corp.*, 87 F.Supp.3d 817, 844–45 (N.D. Ill. 2015) (inherent power provides trial court with ability to sanction **even pre-suit conduct**) (emphasis added); *see, e.g.*, *First Nat'l Bank of Ariz. v. Cont'l Bank*, 673 P.2d 938, 944 (App. 1983) (even though bankruptcy actions are separate and distinct, they were substantially intertwined with the contract action; awarding fees under § 12–341.01 because "pre-complaint investigation and evaluation of the potential claim is part of the process and expense of litigation"); *Zeagler v. Buckley*, 219 P.3d 247, 249 (Ct. App. 2009).

**(B)** <u>**The Novelty and Difficulty of the Questions Presented.**</u>

**(i)** <u>**The "Corey Allen" Fiasco.**</u>

Colocation concealed Corey Kotler's true identity during the Contract negotiations and again in this lawsuit. Doc. 35 at 3:5-4:3. The person who contacted MNC and negotiated the Contract was allegedly "Corey Allen" located at 433 North Camden Drive, Suite 970, Beverly Hills, California 90210. *Id.* Those were also the name and address provided by Colocation in its initial Rule 26(a) disclosure, amended Rule 26(a) disclosure, and interrogatory responses. *Id.* at 4:7-9; Ex. 2O. Colocation listed "Corey Allen" as a person Colocation planned to call at trial. *Id.* As it turns out, that information was objectively untrue, and Colocation knew it. *See* Doc. 35 at 4:11-5:22. Through independent discovery and research, MNC learned that "Corey Allen" did not exist, and that the true identity of Colocation's "broker" who contacted MNC and negotiated the Contract is Kotler. *Id.* Kotler was really located at 2385 Roscomore Road, Unit E11, Los Angeles, California 90077. *Id.* The Beverly Hills address Colocation referenced is actually the office of Colocation's lawyer, Paul Sigelman. *Id.*

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

During the entire time MNC was searching for Kotler, Colocation and Sigelman knew that their representations about a "Corey Allen" located at 433 North Camden Drive, Suite 970, Beverly Hills, California 90210 were untrue. *Id.* Yet, they took no corrective action. *Id.* Colocation and Sigelman did nothing when they received notice that MNC issued three subpoenas to property managers trying to locate "Corey Allen." *Id.* Mr. Sigelman even accepted subpoenas for the non-existent "Corey Allen" at his office, and told the process server that his name was "Rick." Doc. 35 at 5:17-22.

### (ii) Colocation and Sigelman Did Not Produce the "Nebulous" Email Chain.

Kotler was finally located and served with subpoenas for a deposition and to produce documents. *Id.* at 5:10-16. When he arrived for his deposition, Kotler had a stack of documents that MNC's attorney marked as a collective exhibit. Kotler had accidentally included in the stack a redacted portion of the "nebulous" email chain. Ex. 2 ¶ 14; Ex. 2G. Neither Colocation nor Sigelman had produced the "nebulous" email chain, despite relevant discovery requests. *See* Ex. 2 ¶ 21; Ex. 2O. After MNC saw the redacted portion Kotler brought to his deposition, MNC requested the remainder of the email chain in October and November of 2017. Exs. 2 ¶¶ 15-16; Ex. 2H; Ex. 2I. After further follow up by MNC in February 2018, the "nebulous" email chain was produced on February 27, 2018. Ex. 2 ¶¶ 15-16; Ex. 2H; Ex. 2I. Neither Colocation nor Sigelman (both are on the "nebulous" email chain (Ex. 2H)) produced the chain during discovery, even though (1) MNC's discovery requests required its production, (2) Colocation and Sigelman were aware of the "nebulous" email chain, and (3) Colocation (Albert Ahdoot) responded to discovery requests stating that all responsive documents had been produced. Ex. 2H; Ex. 2I; Ex. 2 ¶ 21; Ex. 2O.

### (iii) Colocation's Requested Relief of "Transfer" of IPv4 Addresses and "Compensatory Damages."

As explained in Section (H), below, this is a unique case in which a party was trying to use a "goodwill" provision to claim ownership of tangible assets.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

**(C)**     **The Skill Requisite to Perform the Legal Service Properly.**

Litigation and technical skill were required to unravel Colocation's ball of string regarding "Corey Allen," "Corey Kotler," and the "nebulous" email chain.  Despite Colocation's attempts to conceal Kotler, MNC located him, served him, obtained documents from him, and deposed him.  This led to the discovery of the "nebulous" email chain.  Ex. 2 ¶¶ 14-15; Ex. 2G; Ex. 2H; Ex. 2I; Doc. 88 at 1:2-13.

**(H)**     **The Amount of Money, or the Value of the Rights, Involved, and the Results Obtained.**

**(i)**     **Value of the Rights Involved.**

MNC believes that the market value of the IPv4 addresses is about $1.6-$1.8 million.  Based on similar transactions involving Colocation, their value is at least $320,000.  Doc. 81 at 6:22-25.  But, MNC doubts that Colocation pursued litigation for over two years to obtain a "quit claim" in IPv4 addresses worth $320,000.  Colocation's pleadings and litigation statements reveal that Colocation's goal was to seek a *transfer* of the IPv4 addresses, and perhaps millions of dollars of alleged "compensatory damages."  Doc. 1 (Ex. 1-Colocation Complaint at 7 ¶¶ (b)-(c)).

In its Complaint, Colocation requests "specific performance" and "compensatory damages in an amount which is not yet ascertained."  Doc. 1 (Ex. 1-Colocation Complaint at 7 ¶¶ (b)-(c)).  In its briefing, Colocation stated that the language it added to the Contract meant that MNC was "selling everything it had within all of its internet rights it owned . . . associated with the domain name and number block."  Doc. 84 at 15 ¶ 4.  This unsupported attorney argument shows how unreasonable Colocation's position really was.  Using Colocation's contorted logic, apparently any domain name ever associated with any of the 65,000 IPv4 addresses at issue, and apparently any trade dress, copyright, trademark, or business right, would have been owned by Colocation for $10,000.  And, because Colocation wanted "all internet rights" (yet another nebulous term), Colocation may have claimed it owned rights to servers, routers, and switching systems, to the extent any had ever been "associated with" the domain name or any of the IPv4 addresses.

1    There is no law supporting such an absurd proposition.  This is a unique case in which a

2    party improperly sought to acquire tangible assets through a "goodwill" provision.

3                              **(ii)**    **Results Obtained.**

4         The result was a finding that MNC did not breach the Contract, and a finding that

5    Colocation breached it for two reasons:  (1) Colocation misled MNC into believing that

6    the Contract was only for rights in gandalf.ca (Restatement (Second) of Contracts §

7    201(a)), and (2) an analysis of the Contract language in view of all relevant

8    circumstances.  *See* Doc. 95.

9                       **(I)**    **The Experience, Reputation and Ability of Counsel.**

10        This is addressed in Ex. 2 ¶ 8.  MNC's counsel are all intellectual property

11   lawyers, licensed patent attorneys, and are experienced in litigating contract disputes.

12   Each is in good standing with the Arizona Bar.  The lead counsel of record (David

13   Rogers) has 26 years of experience, the other partner (David Barker) has 14 years of

14   experience, and the associate (Jacob Jones) has six years of experience.

15                       **(M)**    **Any Other Matters Deemed**
                                    **Appropriate Under the Circumstances.**

16        When deciding whether to award fees under A.R.S. § 12-341.01, a court should

17   consider (1) "[t]he merits of the claim or defense presented by the unsuccessful party";

18   (2) whether "[t]he litigation could have been avoided or settled and the successful party's

19   efforts were completely superfluous in achieving the result"; (3) whether "[a]ssessing fees

20   against the unsuccessful party would cause an extreme hardship"; (4) whether "[t]he

21   successful party ... prevail[ed] with respect to all of the relief sought"; (5) "the novelty of

22   the legal question presented, and whether such a claim or defense had previously been

23   adjudicated in this jurisdiction"; and (6) "whether the award in any particular case would

24   discourage other parties with tenable claims or defenses from litigating or defending

25   legitimate contract issues for fear of incurring liability for substantial amounts of

26   attorney's fees."  *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181,

27   1184 (1985).  Each of these factors is addressed briefly below.

28

**(1)** Colocation's lawsuit was meritless and Colocation knew that, but tried to conceal it. *See supra* at 2:5-19. **(2)** Litigation could not have been avoided by MNC. Colocation pursued MNC from California to Arizona, despite having been sanctioned in California. *See supra* at 4:13-5:2. Colocation also did not accept offers to settle. *See* Ex. 2N, and below. **(3)** There is no hardship for Colocation, as this Court has already found. Ex. 2Q (2/28/18 Tr. at 20:7). **(4)** MNC prevailed on all of the relief it sought. *Supra* at 8:4-9. **(5)** The novelty of the issues presented included Colocation's concealment of evidence, and its attempt to transform a "goodwill" provision into a transfer of tangible assets. *Supra* at 5:13-6:23; 7:9-8:2. **(6)** An award of fees/costs in this case is particularly warranted to discourage businesses such as Colocation from misrepresenting, pursuing meritless litigation, concealing evidence, and attempting to argue that a goodwill provision transfers tangible assets.

### Mitel Even Offered to Settle By Paying Colocation

Another factor that weighs heavily in favor of an attorneys' fees and costs award is that Mitel first offered to settle this dispute on November 9, 2017 with an offer that Colocation pay MNC $185,000. Ex. 2N. Mitel even offered to settle *by paying Colocation $50,000* on March 19, 2018. *Id.*; Ex. 2 ¶ 20. Colocation thus continued litigating a meritless case even after it could have received an unfair windfall.

### III.   Colocation's Owner, Albert Ahdoot, and Lawyer, Sigelman Should Be Found Personally Liable.

**A.    Ahdoot's Actions that Warrant Personal Sanctions.**

There are two bases for the Court to sanction Colocation's owner, Ahdoot: Fed. R. Civ. P. 37, and the Court's inherent authority, the legal standards of which are set forth in Section C, below. Ahdoot is the sole shareholder, officer, director, and employee of Colocation. Ex. 2R. Ahdoot was Colocation's 30(b)(6) witness in this case, was deposed twice in his personal capacity, and was responsible for producing documents responsive to MNC's discovery requests. *See* Ex. 2O.

1  Ahdoot controlled every aspect of Colocation at all times during the negotiations
2  with MNC.  Ex. 2R.  Ahdoot personally executed the Contract with MNC.  Ahdoot is the
3  sole decision maker of Colocation, and encouraged and assisted his broker, Kotler, to
4  mislead MNC with the "nebulous" email chain.  Ex. 2H; Doc. 88 at 1:2-13 ("I would
5  write it for the domain and slip in the IPV4").  Ahdoot is responsible for Colocation
6  pursuing meritless litigation against MNC, and for concealing the "nebulous" email chain
7  during discovery.  Ex. 2O.

8  **B.**    **Sigelman's Actions that Warrant Personal Sanctions.**

9  There are three bases to sanction Colocation's attorney, Sigelman:  Fed. R. Civ. P.
10  37, 28 U.S.C. § 1927, and the Court's inherent authority, the legal standards of which are
11  set forth in Section C, below.  Sigelman, who is of record in this lawsuit was involved in
12  the California Action (Ex. 2M, service page), should be individually sanctioned for his
13  role in concealing the identity and whereabouts of Kotler.  He falsely stated in
14  Colocation's Rule 26(a) disclosure, Rule 26(a) amended disclosure, and Interrogatory
15  responses that a "Corey Allen" (with an address that was actually Sigelman's office
16  address) was a person with knowledge in this lawsuit, and a person Colocation planned to
17  call at trial.  *See* Doc. 35 at 3:5-5:22; Ex. 2O.  Colocation's owner expressly disclaimed
18  knowledge of these disclosures and blamed his attorneys.  Ex. 2L.

19  Sigelman received notice of the subpoena to the non-existent "Corey Allen" at his
20  office address and did nothing to correct the record.  He did nothing to correct the record
21  when he received notice of MNC's subpoenas to property managers searching for "Corey
22  Allen."  Doc. 35 at 3:5-5:22.  He even accepted service at his office for the non-existent
23  "Corey Allen."  *Id.* at 5:17-22.

24  Sigelman should also be sanctioned for his role in concealing the "nebulous" email
25  chain.  Because Sigelman was copied on the chain (Ex. 2H), he knew that Colocation's
26  pursuit of MNC in litigation was meritless and based on intentionally misleading contract
27  negotiations.  Doc. 95 at 16:15 (Kotler intentionally misled MNC).  One aspect of the
28  "nebulous" email chain fragment, attached as Ex. 2H, which Kotler brought to his

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

deposition, is that Sigelman *specifically asked Kotler to find that email* prior to the deposition.  Ex. 2H.  So, Sigelman knew that the "nebulous" chain existed and asked Kotler to email it to him.  Yet, neither Sigelman or Colocation produced it during discovery.  *See* Ex. 2O.

### C.   <u>Legal Authority.</u>

### (1)   <u>The Court Has Inherent Authority to Sanction Bad Faith Conduct.</u>

The Court has the inherent power to sanction conduct.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).  Sanctions under the inherent power require a finding of bad faith.  *Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 294 (5th Cir. 1997).  The inherent power allows the Court to address "a full range of litigation abuses" including conduct beyond the confines of this case, ***including pre-litigation conduct, and non-parties entwined in the litigation***.  *Id.* at 46 (emphasis added).  The inherent power allows the Court to ***sanction non-parties*** that may be beyond the purview of the Federal Rules or Section 1927, but who are closely tied to the litigation.  *See Intellect Wireless, Inc. v. Sharp Corp.*, 87 F.Supp.3d 817, 844–45 (N.D. Ill. 2015) (inherent power provides trial court with ability to sanction ***even pre-suit conduct***) (emphasis added); *Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 682 (W.D. Wash. 2014) ("It is well-established that a district court may award sanctions in the form of attorneys' fees against a party who acts in bad faith."); Atkins v. Calypso Systems, Inc., No. CV-14-02706-PHX-NVW, 2017 WL 1019661 at *2 (March 16, 2017) (underpinning the whole action were plaintiff's allegations that defendant would pay him, then signed loan documents not withstanding – plaintiff knew the allegation ***was false at the outset***) (emphasis added).

For example, "[a] court may sanction a ***non-party corporate officer*** who acts improperly on behalf of a corporate defendant and who attempts to avoid sanctions by hiding behind the corporate veil."  *Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 2011 WL 4549279, at *4 (D.N.M. Sept. 29, 2011) (emphasis added), *aff'd sub nom.*, 511 Fed.Appx. 736 (10th Cir. 2013) (a signatory on ACA bank accounts; accounts show him

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

to be a manager of ACA; located his law office at ACA's offices until ACA went out of business."); *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 858 (E.D. Tex. 2017); *Warehouse Restaurant, Inc. v. Customs House Restaurant, Inc.*, No. 80–3054, 1982 WL 63800, at * 3 (N.D. Cal. Oct. 4, 1982) ("*a corporation can only act through its agents and employees*;" court held that the corporate defendant was acting through its principal who therefore committed "the acts on which this court bases its award of attorneys' fees" and held them jointly and severally liable for payment of same) (emphasis added); *Exportaciones Textiles, S.A. De C.V. v. Orange Clothing Co.*, No. 09–22967, 2011 WL 3293388, at * 1–2 (S.D. Fl. Aug. 1, 2011) (court awarded plaintiff sanctions in the form of attorneys' fees for defendant's discovery abuses, jointly and severally against the defendant, *its non-party corporate principal and its attorney*); *Helmac Prod. Corp. v. Roth (Plastics) Corp.*, 150 F.R.D. 563, 568 (E.D. Mich. 1993) ("To be subject to the Court's inherent power to sanction, *a non-party not subject to court order must* (1) have a substantial interest in the outcome of the litigation, and (2) substantially participate in the proceedings in which he interfered.") (emphasis added); *Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 585 (7th Cir. 2008) ("No matter who allegedly commits a fraud on the court—*a party, an attorney, or a nonparty witness*—the court has the inherent power to conduct proceedings to investigate that allegation and, if it is proven, to punish that conduct.") (emphasis added); *Bartos v. Pennsylvania*, 2010 WL 1816674, at *5 (M.D. Pa. May 5, 2010) ("It is also beyond serious dispute that this power extends, not only to parties in civil litigation, *but also to other persons, such as witnesses, who may be embroiled in that litigation*.") (emphasis added); *Ingenuity13 LLC v. Doe*, 651 Fed.Appx. 716, 718 (9th Cir. 2016) (court relied upon its inherent power to sanction after it found *that certain principals* were the leaders and decision makers behind a "national trolling scheme.") (emphasis added).

Snell & Wilmer

L.L.P.

LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

**(2)** **Attorney Sanctions under 28 U.S.C. § 1927.**

*Mont-Bell Co. v. Mountain Hardwear, Inc.*, No. C-96-1644-FMS, 1998 WL 101741, at *1 (N.D. Cal. Feb. 23, 1998) (awarding Section 1927 sanctions where attorney's "course of conduct" in the litigation included "filing and unreasonably pursuing certain defenses and counterclaims. *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir.1989). We have held that "[b]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent.").

**(3)** **Discovery Sanctions Under Fed. R. Civ. P. 37(c).**

*Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766-67 (1980) (the *Court's* inherent power also encompasses ***the power to extend sanctions to attorneys*** "who willfully abuse judicial processes); *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015) Rule 37 sanctions must be applied diligently both "to penalize those whose conduct may be deemed to warrant such a sanction, [and] ***to deter those who might be tempted to such conduct in the absence of such a deterrent***.") (emphasis added); *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976). *Dahl v. City of Huntington Beach*, 84 F.3d 363, 367 (9th Cir.1996) (A "district court has great latitude in imposing sanctions for discovery abuse."); *Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 390 (N.D. Cal. 2012); *Houston v. C.G. Sec. Servs., Inc.*, 302 F.R.D. 268, 282 (S.D. Ind. 2014), aff'd, 820 F.3d 855 (7th Cir. 2016) (affirming sanction where sanctioned party "interfered with a party's basic rights to obtain timely and truthful information," requiring payment for "all of the efforts throughout discovery."); *Smith v. Banner Health Sys.*, 621 F. App'x 876, 883 (9th Cir. 2015) (affirming joint and several liability for sanction against party ***and her counsel***, for "failing to properly comply with Rule 26 disclosure requirements.") (Emphasis added); *Rapaport v. Soffer*, No. 2:10-CV-935-JAD-GWF, 2013 WL 6451768, at *5 (D. Nev. Dec. 9, 2013) (assessing sanction for discovery misconduct jointly and severally on party ***and his counsel*** "was reasonable.") (Emphasis added).

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### IV.    Taxable Costs.

MNC requests an award of its taxable costs for this lawsuit (not the California Action) of $6,231.19.  $406.70 of that amount was for the Removal (Doc. 1) filing fee, and is shown on page 36, row 8, of Ex. 2C.  $6,231.19 of that amount is for Court Reporter/Transcription costs for depositions, and is shown on page 36, row 22 to page 37, row four of Ex. 2C.

### V.    Conclusion.

MNC requests:  (1) $364,280 in fees, and $30,776.17 in non-taxable costs associated with this lawsuit, (2) $75,016.50 in fees/ non-taxable costs for the California Action, (3) $6,231.19 in taxable costs, and (4) the reasonable fees related to this Motion, including any Reply and oral argument.  Colocation's owner and California attorney should each be found liable for pursuing meritless litigation, and obstructionist discovery conduct.

DATED this 29th day of June, 2018.

SNELL & WILMER L.L.P.

By: *s/ David E. Rogers*
David E. Rogers
David G. Barker
Jacob C. Jones
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202

Attorneys for Mitel Networks Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Teresa H. Foster, Esq.
Brier, Irish, Hubbard & Erhart, P.L.C.
2400 East Arizona Biltmore Circle
Suite 1300
Phoenix, AZ 85016
ctfilings@thfosterlaw.com

Paul Stephen Sigelman
Sigelman Law Corporation
433 N Camden Dr., Suite 970
Beverly Hills, CA 90210
paul@sigelmanlaw.com

Attorneys for Colocation

s/Denise H. Dolan

4843-7276-3242