# EXHIBIT 2A

## Snell & Wilmer
— L.L.P. —
LAW OFFICES

One Arizona Center
Phoenix, AZ 85004-2202
602.382.6000
602.382.6070 (Fax)
www.swlaw.com

DENVER
LAS VEGAS
ORANGE COUNTY
PHOENIX
SALT LAKE CITY
TUCSON

Howard Sobelman
602.382.6228
hsobelman@swlaw.com

October 10, 2008

Michelle Whittington, Esq.
Intellectual Property Counsel
Mitel Networks Corporation
7300 W. Boston Street
Chandler, AZ 85226

Re:    Legal Representation

Dear Michelle:

Thank you for selecting this firm to represent Mitel Networks Corporation as general IP counsel. The scope of our engagement will be providing intellectual property advice.

Since this will be our first engagement by Mitel Networks Corporation, I want to encourage you to bring to my attention at any time any questions or concerns you may have concerning either our services or our fees. In order to assist you in understanding our billing practices, I enclose a copy of our current Policy on Professional Fees. While hourly rates for attorneys and paraprofessional staff are adjusted from time to time, my current hourly rate is $500. In addition to myself, certain patent attorneys, patent agents, paralegals and paraprofessionals, whose current hourly rates range from $125 to $350, will most likely work with me in representing your interests in the most cost effective and efficient manner. Billings for professional services, however, will be based on all of the considerations discussed in the enclosed Policy on Professional Fees and not simply hours expended and hourly rates. We will send statements for professional fees and expenses to your attention on a monthly basis.

Our firm normally requests a retainer before we begin working for new clients to secure the payment of our fees, costs and expenses which are either billed and unpaid or incurred but as yet unbilled. The retainer is being waived in this case.

You may terminate our representation at any time by notifying us. Your termination of our services will not affect your responsibility for payment of outstanding statements and accrued fees and expenses incurred before termination or in connection with an orderly transition of the matter. We may withdraw from representation if you fail to fulfill your obligations under this agreement, including your obligation to pay our fees and expenses, or as permitted or

# Snell & Wilmer
L.L.P.

Michelle Whittington, Esq.
October 10, 2008
Page 2

required under any applicable standards of professional conduct or rules of court, or upon our reasonable notice to you.

Unless previously terminated, our representation will terminate upon our sending you our final statement for services in this matter. Following such termination, any otherwise nonpublic information you have supplied to us which is retained by us will be kept confidential in accordance with applicable rules of professional conduct. Any original papers or other property which you have furnished to us and which remain in our possession will be returned to you,



matter will be retained by the firm. You may obtain a copy of any such materials which have not been previously furnished to you at no expense upon request. Documents and other materials retained by the firm will be stored by the firm for a reasonable period of time in accordance with the firm's records retention policy. The period for which particular client files will be retained may vary depending on the nature of the engagement involved. Following the prescribed retention period, those files may be destroyed or otherwise disposed of to minimize unnecessary storage expenses. A copy of the firm's records retention policy will be furnished to you upon

# Snell & Wilmer
### L.L.P.

Michelle Whittington, Esq.
October 10, 2008
Page 3

Please review this letter carefully and, if the terms and conditions of our representation and the billing arrangements meet with your approval, please sign the enclosed copy of this letter and return it to me so that we may begin work. Please call if you have any questions.

We very much appreciate this opportunity to work with you.

Sincerely,

Snell & Wilmer

Howard Sobelman

9162921

# Snell & Wilmer
### L.L.P.

Michelle Whittington, Esq.
October 10, 2008
Page 4

I have reviewed this letter and Snell & Wilmer's Policy on Professional Fees and I agree
to the terms and conditions of representation and the billing arrangements.

Michelle Whittington, Esq.
Intellectual Property Counsel
Mitel Networks Corporation

HIS/dm
Enclosure

9162921

# EXHIBIT 2B

| Attorney and Paraprofessional Hourly Rates | Rate | |
|---|---|---|
| Rogers, David E. (Partner) | $ | 630.00 |
| Barker, David G. (Partner) | $ | 450.00 |
| Blaylock, Brian (Associate) | $ | 330.00 |
| Croley, Danielle  (Paralegal Assistant) | $ | 110.00 |
| Hawkins, Lori A.  (Paralegal) | $ | 290.00 |
| Helwig, Zhanna (Research Librarian) | $ | 160.00 |
| Hua, Jing (Jenny) (Associate) | $ | 290.00 |
| Jones, Dana (Research Librarian) | $ | 175.00 |
| Jones, Jacob (Associate) | $ | 350.00 |
| Kowing, Karen R. (Research Librarian) | $ | 170.00 |
| Layton, Alexi (Associate) | $ | 205.00 |
| Montecuollo, Peter  (Associate) | $ | 210.00 |
| Nance, Sharon A (Paralegal) | $ | 265.00 |
| Palmer, Stacy Velasquez (Paralegal) | $ | 225.00 |
| Rathwell, Peter (Of Counsel) | $ | 540.00 |
| Reynolds, Michael (Partner) | $ | 675.00 |
| Ricks, Ryan Dale (Partner) | $ | 495.00 |
| Smith, Marissa J. (Paralegal) | $ | 240.00 |
| Torp, Lyndsey Ann  (Associate) | $ | 460.00 |
| Weber, Jason M. (Paralegal) | $ | 170.00 |
| Yagade, Stephanie (Attorney Recruiting Coordinator) | $ | 115.00 |

# EXHIBIT 2C

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| **Attorney** | **Description of Legal Services** | **Date** | **Hrs** | **Rate** | **Total** |
| Rogers, David E. | Review Arizona filing documents and rules regarding removal to federal court. | 1/22/2017 | 1.0 | $615 | $615.00 |
| Torp, Lyndsey Ann | Research regarding Colocation's allegations regarding amount in controversy for removal. | 1/23/2017 | 0.4 | $475 | $190.00 |
| Torp, Lyndsey Ann | Research regarding proving amount in controversy for removal and email D. Rogers regarding same. | 1/23/2017 | 0.4 | $475 | $190.00 |
| Rogers, David E. | Review documents filed in Canada by Mitel and Colocation. | 1/25/2017 | 0.7 | $615 | $430.50 |
| Rogers, David E. | Review Colocation filings; prepare Notice of Removal to federal court, Declaration of M. Whittington, and Motion to Stay. | 1/26/2017 | 3.9 | $615 | $2,398.50 |
| Rogers, David E. | Continue preparation of Notice of Removal, declaration of M. Whittington and Motion to Stay. | 1/27/2017 | 3.8 | $615 | $2,337.00 |
| Rogers, David E. | Begin preparatin of Motion to Stay and Notice of Removal. | 2/1/2017 | 1.1 | $615 | $676.50 |
| Jones, Jacob | Begin preparing notice of removal of Colocation's lawsuit from state court, as well as related documents for removal, as required by federal removal statute and local rules. | 2/2/2017 | 1.2 | $345 | $414.00 |
| Jones, Jacob | Review and revise notice of removal, review and analyze proposed exhibits in support thereof, and conferences with D. Rogers concerning same. | 2/3/2017 | 2.9 | $345 | $1,000.50 |
| Rogers, David E. | Finalize declaration of Michelle Whittington, prepare exhibits, and finalize Motion to Stay and Removal Notice. | 2/3/2017 | 2.4 | $615 | $1,476.00 |
| Jones, Jacob | Review and analyze Colocation's opposition brief concerning Mitel's motion for fees, and correspondence with D. Rogers and L. Torp concerning same. | 2/8/2017 | 0.3 | $345 | $103.50 |
| Jones, Jacob | Legal research concerning the impact of notice of removal on personal jurisdiction, to ensure steps are taken if possible to preserve potential argument that Arizona lacks personal jurisdiction, pursuant to instructions from D. Rogers, and draft summary of findings for D. Rogers. | 2/8/2017 | 1.5 | $345 | $517.50 |
| Rogers, David E. | Communications with J. Jones regarding removal and review law regarding same and jurisdictional issues. | 2/9/2017 | 0.5 | $615 | $307.50 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Jones, Jacob | Finalize notice of removal of state court case to Arizona federal court, and review, revise, and finalize all exhibits and attachments to same, including civil cover sheet, supplemental civil cover sheet, and corporate disclosure statement, state court record, notice to be filed in state court, and supporting declaration, in preparation to have same filed in federal and state court, and served upon opposing counsel. | 2/9/2017 | 1.8 | $345 | $621.00 |
| Torp, Lyndsey Ann | Draft reply in support of motion for attorney's fees. | 2/10/2017 | 1.6 | $475 | $760.00 |
| Torp, Lyndsey Ann | Telephone conference with J. Jones regarding reply in support of motion for attorney's fees. | 2/10/2017 | 0.2 | $475 | $95.00 |
| Jones, Jacob | Prepare, revise, and finalize motion to stay proceedings in favor of Canadian case, and proposed order for same, and legal research in support of same. | 2/10/2017 | 3.5 | $345 | $1,207.50 |
| Torp, Lyndsey Ann | Continue drafting reply in support of motion for attorney's fees. | 2/11/2017 | 0.9 | $475 | $427.50 |
| Torp, Lyndsey Ann | Continue drafting reply in support of motion for attorney's fees. | 2/12/2017 | 1.6 | $475 | $760.00 |
| Torp, Lyndsey Ann | Draft declaration of D. Rogers in support of reply regarding motion for attorney's fees. | 2/13/2017 | 0.2 | $475 | $95.00 |
| Torp, Lyndsey Ann | Continue drafting reply in support of motion for attorney's fees. | 2/13/2017 | 1.8 | $475 | $855.00 |
| Jones, Jacob | Legal research in support of reply brief for legal fee motion, pursuant to instructions from D. Rogers. | 2/14/2017 | 1.5 | $345 | $517.50 |
| Jones, Jacob | Continue work on reply brief in support of legal fee motion, legal research in support of same, and revise declarations in support of same. | 2/15/2017 | 1.8 | $345 | $621.00 |
| Rogers, David E. | Review and revise Reply Brief in Support of Motion for Fees in California case (3.6); prepare supplemental declaration (0.5). | 2/15/2017 | 4.1 | $615 | $2,521.50 |
| Torp, Lyndsey Ann | Finalize reply in support of motion for attorney's fees for filing | 2/15/2017 | 0.6 | $475 | $285.00 |
| Rogers, David E. | Review Arizona Complaint, Canadian papers, and prepare Answer for Arizona (2.5); communications with Mitel personnel regarding same (0.3). | 2/16/2017 | 2.9 | $615 | $1,783.50 |
| Jones, Jacob | Review and analyze complaint, and prepare answer, defenses, and counterclaims for D. Ariz. case, pursuant to instructions from D. Rogers. | 2/16/2017 | 3.2 | $345 | $1,104.00 |
| Rogers, David E. | Review tentative ruling on fees motion and communications with M. Whittington regarding same. | 2/22/2017 | 0.4 | $615 | $246.00 |
| Torp, Lyndsey Ann | Review tentative ruling on motion to tax costs and motion for attorneys' fees and email team regarding same. | 2/22/2017 | 0.2 | $475 | $95.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Torp, Lyndsey Ann | Prepare for hearing on motion to tax costs and motion for attorneys fees. | 2/22/2017 | 1.0 | $475 | $475.00 |
| Torp, Lyndsey Ann | Emails with D. Rogers regarding enforcement of attorney's fee award. | 2/23/2017 | 0.1 | $475 | $47.50 |
| Torp, Lyndsey Ann | Revise notice of ruling on motion to tax costs and motion for attorney's fees. | 2/23/2017 | 0.2 | $475 | $95.00 |
| Torp, Lyndsey Ann | Attend hearing via court call on motion to tax costs and motion for attorneys' fees. | 2/23/2017 | 0.8 | $475 | $380.00 |
| Torp, Lyndsey Ann | Continue preparations for motion to tax costs and motion for attorney's fees. | 2/23/2017 | 1.0 | $475 | $475.00 |
| Torp, Lyndsey Ann | Draft proposed order on motion for attorneys fees and motion to tax costs. | 2/23/2017 | 0.5 | $475 | $237.50 |
| Torp, Lyndsey Ann | Research regarding enforcement of attorneys' fee award. | 2/23/2017 | 0.4 | $475 | $190.00 |
| Rogers, David E. | Review Motion to Quash Subpoenas and Opposition thereto, and Motion for Fees, exhibits thereto, Colocation's Opposition, and MNC's Reply Brief; participate in oral argument. | 2/23/2017 | 1.8 | $615 | $1,107.00 |
| Jones, Jacob | Additional legal research in support of reply brief for motion to stay Arizona federal case. | 2/23/2017 | 2.1 | $345 | $724.50 |
| Torp, Lyndsey Ann | Draft email to counsel for plaintiff regarding service of order on motion to tax costs and motion for attorney's fees. | 2/23/2017 | 0.2 | $475 | $95.00 |
| Jones, Jacob | Review and analyze opposition brief, legal research in support of reply, and develop strategy for same with D. Rogers. | 2/27/2017 | 1.5 | $345 | $517.50 |
| Rogers, David E. | Begin review opposition and exhibits filed by Colocation in Arizona case (0.3), and send email to M. Whittington about communications related to Colocation's reasons for delaying the Canadian lawsuit (0.2). | 2/27/2017 | 0.5 | $615 | $307.50 |
| Torp, Lyndsey Ann | Telephone conference with D. Rogers regarding procedures for enforcement of attorney's fee award. | 2/27/2017 | 0.2 | $475 | $95.00 |
| Jones, Jacob | Continue legal research in support of reply brief for motion to stay Arizona federal case, and correspondence with D. Rogers concerning same. | 2/28/2017 | 1.5 | $345 | $517.50 |
| Jones, Jacob | Review factual record concerning Colocation's delay of the Canadian case, in connection with developing arguments in support of motion to stay Arizona case, legal research in support of same, and continue drafting reply in support of motion to stay. | 3/1/2017 | 4.2 | $345 | $1,449.00 |
| Rogers, David E. | Communications with Canadian counsel regarding Colocation counsel's request for extensions in the Canadian lawsuit. | 3/1/2017 | 0.5 | $615 | $307.50 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Jones, Jacob | Continue work on reply brief in support of motion to stay, and legal research in support of same, including issues regarding international abstention and comity doctrines. | 3/2/2017 | 7.5 | $345 | $2,587.50 |
| Jones, Jacob | Additional legal research for reply brief in support of motion to stay Arizona case, relating to abstention and comity. | 3/3/2017 | 2.2 | $345 | $759.00 |
| Jones, Jacob | Revise and finalize reply brief regarding motion for stay, and prepare declaration in support of same, prior to filing. | 3/6/2017 | 3.8 | $345 | $1,311.00 |
| Rogers, David E. | Prepare Reply Brief in support of Motion to Stay. | 3/6/2017 | 3.0 | $615 | $1,845.00 |
| Torp, Lyndsey Ann | Review minute order from judge regarding hearings on motion for attorney's fees, motion to tax costs. | 3/7/2017 | 0.1 | $475 | $47.50 |
| Torp, Lyndsey Ann | Conference with court clerk regarding proposed order on motion for attorney's fees. | 3/22/2017 | 0.1 | $475 | $47.50 |
| Torp, Lyndsey Ann | Conference with court clerk regarding status of order on motion for attorneys' fees. | 3/31/2017 | 0.1 | $475 | $47.50 |
| Torp, Lyndsey Ann | Review minute order entered by court regarding proposed order on motion for attorneys' fees and review court docket regarding same. | 4/7/2017 | 0.2 | $475 | $95.00 |
| Rogers, David E. | Research regarding collections companies. | 4/10/2017 | 0.4 | $615 | $246.00 |
| Torp, Lyndsey Ann | Emails with D. Rogers regarding judgment enforcement against Colocation. | 4/11/2017 | 0.2 | $475 | $95.00 |
| Torp, Lyndsey Ann | Review investigative report against Colocation regarding liens or judgments. | 4/13/2017 | 0.3 | $475 | $142.50 |
| Torp, Lyndsey Ann | Telephone conference with B. Ramsaur regarding collection on attorneys' fee award and email D. Rogers regarding same. | 4/17/2017 | 0.7 | $475 | $332.50 |
| Jones, Jacob | Draft notice of withdrawal, telephone conference with Court regarding same, and correspondence with D. Rogers concerning case strategy. | 4/25/2017 | 0.8 | $345 | $276.00 |
| Jones, Jacob | Review court order regarding motions to dismiss and order setting case management conference and related pre-trial deadlines, and conference. | 4/27/2017 | 0.5 | $345 | $172.50 |
| Torp, Lyndsey Ann | Emails with B. Ramsaur, D. Rogers regarding substitution of attorney form, enforcement of attorney's fee award. | 5/9/2017 | 0.2 | $475 | $95.00 |
| Jones, Jacob | Correspondence with D. Rogers concerning initial disclosures and upcoming mandatory Rule 26(f) conference, and begin preparing initial disclosures. | 5/10/2017 | 0.4 | $345 | $138.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Rogers, David E. | Review documents filed in California case (1.4) and draft Requests for Production of Documents and Interrogatories (2.0). | 5/10/2017 | 3.4 | $615 | $2,091.00 |
| Rogers, David E. | Communications with N. Grandos regarding documents and expanding litigation hold (0.4) and review documents related to the Contract formatting dispute and ownership of the IPv4 addresses (2.6). | 5/11/2017 | 3.0 | $615 | $1,845.00 |
| Rogers, David E. | Prepare Rule 26.1 initial disclosures. | 5/12/2017 | 1.0 | $615 | $615.00 |
| Rogers, David E. | Prepare Initial Disclosures under Rule 26.1 (0.5); discussion with N. Granades regarding continuance of litigation hold (0.2); communications with opposing counsel regarding Joint Case Management Statement (0.3). | 5/15/2017 | 1.0 | $615 | $615.00 |
| Jones, Jacob | Review and analyze Colocation's initial disclosures, and correspondence with D. Rogers concerning same. | 5/15/2017 | 0.3 | $345 | $103.50 |
| Jones, Jacob | Prepare mandatory initial disclosures and review case documents for information and witnesses to be disclosed, prepare notice of service of same pursuant to local rules (1.5), and telephone conference with D. Rogers concerning same (0.3). | 5/15/2017 | 1.8 | $345 | $621.00 |
| Rogers, David E. | Review amended 26.1 disclosure of Colocation (0.3); review Colocation's draft Case Management Statement (0.4); begin draft of Mitel's Case Management Statement (0.8). | 5/17/2017 | 1.5 | $615 | $922.50 |
| Jones, Jacob | Telephone conference with D. Rogers concerning joint case management plan, and correspondence with Colocation's counsel T. Foster concerning same. | 5/18/2017 | 0.3 | $345 | $103.50 |
| Rogers, David E. | Prepare Joint Case Management Statement (1.0); interrogatories and production of document requests (1.2); and Rule 26(f) conference with opposing counsel (0.9). | 5/22/2017 | 3.1 | $615 | $1,906.50 |
| Rogers, David E. | Review pleadings and Domain Name Assignment Agreement (1.3); continue preparation of interrogatories and document production requests to Colocation (1.0). | 5/23/2017 | 2.3 | $615 | $1,414.50 |
| Jones, Jacob | Revise first set of interrogatories and first set of requests for production of documents to Colocation, and finalize same for serving on Colocation. | 5/24/2017 | 1.9 | $345 | $655.50 |
| Rogers, David E. | Finalize First Set of Interrogatories and Production of Document Requests to Colocation. | 5/24/2017 | 1.3 | $615 | $799.50 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Rogers, David E. | Conference call with opposing counsel and prepare Proposed Joint Discovery Plan (1.6); review discovery requests forwarded by Mitel (0.4); review Complaint and Domain Name Assignment Agreement (0.7). | 5/25/2017 | 2.7 | $615 | $1,660.50 |
| Jones, Jacob | Revise mandatory joint proposed discovery plan pursuant to instructions from D. Rogers (0.4), and supplemental legal research in support of "amount in controversy" requirement for diversity jurisdiction, to support Mitel's position that the removal to federal court was proper, in view of Colocation's new contention that jurisdiction is improper (1.0), and locate transcript excerpt from California proceeding where Colocation's counsel admitted the amount in controversy is up to a couple hundred thousand, in support of the same proposition (0.4). | 5/25/2017 | 1.8 | $345 | $621.00 |
| Rogers, David E. | Begin preparation of Answers to Colocation's Interrogatories and Requests for Production of Documents (0.8); revise Joint Proposed Discovery Plan (0.4). | 5/30/2017 | 1.2 | $615 | $738.00 |
| Rogers, David E. | Continue preparation of Responses to Colocations first set of interrogatories and production of documents. | 6/1/2017 | 0.7 | $615 | $430.50 |
| Rogers, David E. | Review Joint Scheduling Plan and Notice of Removal (0.5); attend Rule 16 Scheduling Conference (1.1); prepare 30(b)(6) deposition notice of Colocation, subpoena under 30(b)(6) to Dividend Advisors, subpoena to Corey Allen (2.5); and review communications from MNC (0.4). | 6/3/2017 | 4.6 | $615 | $2,829.00 |
| Jones, Jacob | Prepare for and attend mandatory Rule 16(f) conference with the court, opposing counsel, and | 6/5/2017 | 1.5 | $345 | $517.50 |
|  | D. Rogers, and assist the Court with understanding the technology at issue in this case and the relevant issues, answering several important technical questions posed by the Court. | | | | |
| Rogers, David E. | Review Joint Proposed Case Management Conference and attend Scheduling Conference (1.3); communications regarding document production (0.4); prepare subpoenas to Dividend Advisors and Corey Allen, prepare 39(b)(6) deposition notice to Colocation (3.0). | 6/5/2017 | 4.7 | $615 | $2,890.50 |
| Rogers, David E. | Review and prepare deposition notices and topics. | 6/8/2017 | 0.4 | $615 | $246.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Jones, Jacob | Investigate likely identities and addresses for Corey Allen and Dividend Advisors, LLC, given that they appear to be a potentially fictitious name and company, in preparation for serving subpoenas on same, and revise four subpoenas in connection with same (two production subpoenas and two deposition subpoenas, one each for Corey Allen and Dividend Advisors). | 6/8/2017 | 4.6 | $345 | $1,587.00 |
| Rogers, David E. | Review discovery responses by Colocation (1.0); review Contract and documents produced by Mitel (0.8); communications with M. Whittington about deposition schedule (0.3). | 6/12/2017 | 2.1 | $615 | $1,291.50 |
| Rogers, David E. | Prepare 30(b)(6) topics for Colocation and Dividend Advisors, and subpoena duces tecum. | 6/13/2017 | 1.6 | $615 | $984.00 |
| Rogers, David E. | Conference with private investigator regarding service on Dividend Advisors and Corey Allen. | 6/14/2017 | 0.5 | $615 | $307.50 |
| Jones, Jacob | Work on subpoenas to Corey Allen and Dividend Advisors, and telephone conference with investigator and D. Rogers concerning same. | 6/14/2017 | 1.4 | $345 | $483.00 |
| Jones, Jacob | Coordinate service of subpoenas and prepare notice to Colocation concerning same to satisfy relevant federal rules. | 6/15/2017 | 0.6 | $345 | $207.00 |
| Rogers, David E. | Review Mitel documents for production (1.0) and prepare subpoenas to third parties (0.4); prepare 30(b)(6) Notice to Colocation (0.3). | 6/16/2017 | 1.7 | $615 | $1,045.50 |
| Ricks, Ryan Dale | Telephone conference with D. Rogers regarding IP v4 address valuation concepts and the use of IP v4 addresses. | 6/19/2017 | 0.2 | $490 | $98.00 |
| Rogers, David E. | Review information about Colocation and its owners (0.4) and prepare subpoena duces tecum to property owner DaVinci Virtual LLC (1.0). | 6/19/2017 | 1.4 | $615 | $861.00 |
| Rogers, David E. | Review numerous documents and information provided by N. Granados for production. | 6/20/2017 | 1.9 | $615 | $1,168.50 |
| Jones, Jacob | Review and analyze documents for production. | 6/21/2017 | 1.1 | $345 | $379.50 |
| Jones, Jacob | Work on subpoena to DaVinci Virtual LLC in connection with obtaining information about Corey Allen and Paul Sigelman. | 6/21/2017 | 0.8 | $345 | $276.00 |
| Jones, Jacob | Telephone conference with N. Granados regarding documents to be reviewed (to make review more efficient) and regarding strategy in relation to serving subpoenas on Corey Allen, Dividend Advisors (and possible false identities of same) and also Davinci Virtual, L.L.C. to discovery more information with which we can show the contract was induced by fraud from a person and company who do not exist. | 6/21/2017 | 0.5 | $345 | $172.50 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Rogers, David E. | Communications with J. Jones regarding subpoena to DaVinci concerning C. Allen and Dividend Advisors and revise subpoena topics to DaVinci (1.8); review private investigator information about office for Corey Allen and Dividend Advisors (0.4); communications with N. Granados regarding various issues, and review documents provided by Mitel (1.0). | 6/21/2017 | 3.2 | $615 | $1,968.00 |
| Jones, Jacob | Finalize subpoena to DaVinci Property Management and related correspondence. | 6/22/2017 | 0.8 | $345 | $276.00 |
| Rogers, David E. | Review Mitel documents and communications with J. Jones regarding subpoena to DaVinci concerning C. Allen and Dividend Advisors (1.0); review domain name information and other information regarding the identiy of Corey Allen and Dividend Advisors (1.0); communications with N. Granados regarding various issues and review documents provided by Mitel (1.0). | 6/22/2017 | 3.0 | $615 | $1,845.00 |
| Rogers, David E. | Review Mitel documents for production (1.0), and prepare draft responses to Colocation's interrogatories (0.7); communications with N. Granados regarding same (0.3). | 6/23/2017 | 2.0 | $615 | $1,230.00 |
| Jones, Jacob | Complete draft protective order and forward to D. Rogers. | 6/25/2017 | 1.2 | $345 | $414.00 |
| Jones, Jacob | Review and analyze documents for production and issue tagging. | 6/25/2017 | 3.8 | $345 | $1,311.00 |
| Jones, Jacob | Continue reviewing documents for production and issue tagging. | 6/26/2017 | 2.3 | $345 | $793.50 |
| Rogers, David E. | Finalize second document production and review of same (0.7); finalize and serve objections to Colocation's discovery requests (0.6); prepare communications to Colocation counsel and prepare protective order (1.4). | 6/26/2017 | 2.7 | $615 | $1,660.50 |
| Rogers, David E. | Communications with opposing counsel about the proposed protection order language and joint motion to enter same. | 6/27/2017 | 0.5 | $615 | $307.50 |
| Rogers, David E. | Prepare subpoenas to escrow.com and Barrister Executive Suites regarding Corey Allen and Dividend Advisors. | 7/5/2017 | 1.7 | $615 | $1,045.50 |
| Rogers, David E. | Communications with opposing counsel regarding deposition scheduling. | 7/7/2017 | 0.3 | $615 | $184.50 |
| Rogers, David E. | Continue preparation of subpoenas to escrow.com and Barrister Executive Suites; review information regarding Corey Allen. | 7/13/2017 | 1.8 | $615 | $1,107.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Jones, Jacob | Revise, finalize, and proof document subpoenas to Barrister Executive Suites, Inc. (who appears to manage the Beverly Hills office space at issue) and Escrow.com (the company through which the transaction was to be escrowed), prepare cover letters for same, and perform diligence investigations on both entities prior to signing subpoenas and authorizing service by process server. | 7/13/2017 | 1.3 | $345 | $448.50 |
| Rogers, David E. | Prepare Subpoena Duces Tecum and Subpoena for Deposition to Corey (Allen) Kotler. | 7/14/2017 | 1.5 | $615 | $922.50 |
| Jones, Jacob | Additional investigation regarding management of Ninth floor of Beverly Hills office building, given that Barrister Executive Suites denies knowledge, including email inquiry to public records department of Los Angeles County, determining that Camden Land owns the property and MGM Investments or MGM Management likely manages the Ninth floor. | 7/14/2017 | 1.2 | $345 | $414.00 |
| Jones, Jacob | Continue reviewing, analyzing, and tagging Mitel documents (from set of over 9,000 documents; 97,000+ pages-provided pursuant to document collection) for responsiveness, privilege, and related matters, with the assistance of search technology where appropriate to increase efficiency and reduce costs, in connection with complying with disclosure and discovery obligations, pursuant to instructions from D. Rogers. | 7/14/2017 | 7.3 | $345 | $2,518.50 |
| Jones, Jacob | Telephone and email correspondence with representative of Barrister Executive Suites, P. Harding, who confirms that they possess no responsive documents and only manage floors other than the Ninth floor of the Beverly Hills office building. | 7/14/2017 | 0.5 | $345 | $172.50 |
| Rogers, David E. | Revise subpoena duces tecum for Corey Kotler (aka "Corey Allen"). | 7/17/2017 | 0.4 | $615 | $246.00 |
| Jones, Jacob | Further investigation to confirm tie between comedian/actor Corey Allen Kotler and "Corey Allen" of "Dividend Advisors, LLC," prepare summary of same for process server/investigator E. Beyer, prepare subpoenas for documents and deposition to be served on same, and telephone conference with E. Beyers to discuss strategy for personal service on Corey Kotler, who may be evasive. | 7/17/2017 | 2.3 | $345 | $793.50 |
| Jones, Jacob | Investigate MGM Management Company, and prepare subpoena for production of documents to be served statutory agent for same. | 7/17/2017 | 0.4 | $345 | $138.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Jones, Jacob | Telephone conference with representative of MGM Management Company LP, G. Fernandez, confirming he has no knowledge of issues in this case, obtain affidavit from same, confirm correct entity is MGM Management Company, and investigate second MGM Management Company, and prepare subpoena for production of documents to be served statutory agent for same. | 7/18/2017 | 0.6 | $345 | $207.00 |
| Jones, Jacob | Telephone conference with M.G. Miller of MGM Management company, in reference to document subpoena, discussing potential responsive documents in his possession and the fact that he has no knowledge of any person called Corey Allen or any entity call Dividend Advisors LLC. | 7/21/2017 | 0.7 | $345 | $241.50 |
| Jones, Jacob | Review additional documents for possible production. | 7/21/2017 | 0.5 | $345 | $172.50 |
| Rogers, David E. | Communications with private detective and process servers regarding service on escrow.com, MGM Property Management, and Corey Kotler (0.8); communications with M. Whittington regarding deposition schedule and ownership of IPv4 addresses (0.4). | 7/25/2017 | 1.2 | $615 | $738.00 |
| Jones, Jacob | Review and analyze documents provided pursuant to subpoena from Escrow.com, including potentially interesting documents regarding IPv4 transactions with other parties, and provide summary of same for D. Rogers. | 7/31/2017 | 0.8 | $345 | $276.00 |
| Rogers, David E. | Communications with P. Sigelman regarding C. Kotler deposition; review subpoenas to Kotler and conference with J. Jones about renoticing them and about fraud in the inducement in Arizona based on fraudulent communications to induce execution of the Contract. | 7/31/2017 | 1.2 | $615 | $738.00 |
| Jones, Jacob | Continue developing case strategy pursuant to instructions from D. Rogers, and revise 30(b)(6) notice deposition topics for Colocation deposition. | 8/1/2017 | 0.8 | $345 | $276.00 |
| Rogers, David E. | Review subpoenas to Corey Allen and Corey Kotler and communications concerning motion to compel and timing (0.8); review first Set of Interrogatories and Requests for Production of documents to Colocation, and Colocation's Responses (1.1); prepare amended notice of 30(b)(6) deposition to Colocation (0.7); communications with opposing counsel regarding inadequate discovery responses (0.5). | 8/1/2017 | 3.1 | $615 | $1,906.50 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Jones, Jacob | Work on follow-up to MGM subpoena, including drafting proposed affidavit and request for specific documents (showing that Corey Allen is not a tenant at the Beverly Hills property), in coordination with efforts by D. Barker. | 8/2/2017 | 0.8 | $345 | $276.00 |
| Barker, David G. | Assess issues regarding contract remedies and defenses relating to use of fraudulent identity and company in negotiating contract. | 8/2/2017 | 0.7 | $450 | $315.00 |
| Rogers, David E. | Numerous communications with opposing counsel regarding deposition scheduling including Colocation, Corey Allen, Dividend Advisors, and Corey Kotler depositions, legal research regarding fraud and computer/mail fraud. | 8/2/2017 | 2.7 | $615 | $1,660.50 |
| Rogers, David E. | Further communications with opposing counsel and Mitel concerning deposition dates and documentary discovery. | 8/3/2017 | 1.5 | $615 | $922.50 |
| Barker, David G. | Telephone conference with G. Miller discussing declaration (.2); prepare declaration and send same to G. Miller (.8). | 8/4/2017 | 1.0 | $450 | $450.00 |
| Barker, David G. | Assess issues and conduct research regarding fraudulent inducement to void a contract. | 8/4/2017 | 1.7 | $450 | $765.00 |
| Barker, David G. | Continue research regarding voiding contract for fraudulent inducement. | 8/6/2017 | 2.1 | $450 | $945.00 |
| Barker, David G. | Continue research regarding agent's liability for fraud and concealment and prepare memo regarding the same (2.8); assess issues re ipv4 addresses and their value and transferability (2.2); review and assess Sigelman lease agreement from G. Miller (.2). | 8/7/2017 | 5.2 | $450 | $2,340.00 |
| Rogers, David E. | Mitel's ownership of IPv4 addresses and the value of the IPv4 addresses (1.0); review case law related to IPv4 address value and ownership (1.5); prepare declaration of private investigator for service on Corey Allen and Dividend Advisors, LLC and exhibits thereto (1.0). | 8/7/2017 | 3.5 | $615 | $2,152.50 |
| Rogers, David E. | Prepare declarations for service of subpoenas on Corey Allen, Dividend Advisors, and Corey Kotler (2.5); prepare Stipulated Motion to Extend Discovery Schedule (1.1); communications with opposing counsel regarding motion and setting dates for depositions (0.5); finalize and send objections to 30(b)(6) topics for Mitel (0.3). | 8/8/2017 | 4.4 | $615 | $2,706.00 |
| Barker, David G. | Continue assessing issues regarding ownership of IPv4 addresses (1.1); revise objections to Mitel Networks Corp. 30(b)(6) deposition topics (.7); assess case schedule and prepare stipulation to extend discovery (.9). | 8/8/2017 | 2.7 | $450 | $1,215.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Jones, Jacob | Assist with strategy development concerning adding potential fraud claim and potentially naming C. Allen as a third-party defendant, including | 8/9/2017 | 0.5 | $345 | $172.50 |
| Barker, David G. | Continue preparing motion to extend case deadlines and proposed order and correspond with Colocation's counsel regarding the motion. | 8/9/2017 | 4.4 | $450 | $1,980.00 |
| Rogers, David E. | Prepare draft stipulated motion to extend discovery deadline and factual research regarding same (1.7); review Mitel documents for production to opponent (1.8); revise and send objections to 30(b)(6) topics (0.5); communications with opposing counsel regarding discovery, extending the discovery deadline, and prepare email with declarations concerning the behavior of Colocation and its California counsel and the identities and involvement in tis dispute of Corey Allen, Dividend Advisors, and Corey Kotler (1.0). | 8/9/2017 | 5.0 | $615 | $3,075.00 |
| Barker, David G. | Review background case documents (1.2); telephone conference with Colocation's counsel regarding motion to extend and deposition topics (.5); follow up regarding depositions and discovery (.5); revise joint motion for extension of time and attend to filing the same (.6). | 8/10/2017 | 2.8 | $450 | $1,260.00 |
| Barker, David G. | Begin preparing amended answer and counterclaims including against Kotler and Dividend Advisors. | 8/11/2017 | 4.3 | $450 | $1,935.00 |
| Rogers, David E. | Various communications with opposing counsel regarding deposition scheduling (0.5); communications with Mitel regarding same and IPv4 address valuation (0.5); review Mitel documents and emails and Colocation documents to prepare for Mitel and Colocation depositions (3.0). | 8/14/2017 | 4.0 | $615 | $2,460.00 |
| Barker, David G. | Prepare for meet and confer telephone conference with Colocation's counsel regarding deposition topics (.5); telephone conference with Colocation's counsel discussing Mitel deposition topics (.3); follow up regarding deposition topics and correspondence with Colocation's counsel regarding the topics (.8). | 8/14/2017 | 1.6 | $450 | $720.00 |
| Barker, David G. | Continue preparing amended answer and counterclaim. | 8/14/2017 | 1.6 | $450 | $720.00 |
| Barker, David G. | Assess issues and strategy regarding precluding P. Sigelman from attending depositions, conduct legal research and prepare summary regarding the same. | 8/15/2017 | 3.5 | $450 | $1,575.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Rogers, David E. | Prepare outline for deposition of Colocation (2.0) and for preparation of M. Whittington for the 30(b)(6) deposition of Colocation (2.0). | 8/15/2017 | 4.0 | $615 | $2,460.00 |
| Rogers, David E. | Review document production of MNC and of Colocation, review complaint, answer and counterclaim, interrogatory responses, and various declaration of M. Whittington and prepare outline for deposition preparation of M. Whittington. | 8/16/2017 | 6.5 | $615 | $3,997.50 |
| Jones, Jacob | Assist D. Barker with further research regarding potential fraud claim or defense. | 8/16/2017 | 0.5 | $345 | $172.50 |
| Jones, Jacob | Correspondence with Colocation's counsel concerning their demand for a privilege log, in connection with trying to find an efficient resolution to the issue. | 8/16/2017 | 0.2 | $345 | $69.00 |
| Barker, David G. | Continue preparing amended answer and counterclaim. | 8/16/2017 | 2.4 | $450 | $1,080.00 |
| Jones, Jacob | Review rules concerning P. Sigelman attendance at depositions, and telephone conference with PHV clerk at the district court concerning same. | 8/17/2017 | 0.4 | $345 | $138.00 |
| Barker, David G. | Meet with M. Whittington to prepare for deposition. | 8/17/2017 | 2.9 | $450 | $1,305.00 |
| Barker, David G. | Continue reviewing background documents in preparation for motion to amend counterclaim (.5); assess status regarding document production and correspond with Colocation's regarding documents and MNC's deposition (.6). | 8/17/2017 | 1.1 | $450 | $495.00 |
| Rogers, David E. | Review documents and conference with M. Whittington to prepare for deposition. | 8/17/2017 | 7.5 | $615 | $4,612.50 |
| Jones, Jacob | Locate and analyze previous agreements concerning Galdalf intellectual property, and prepare same for production. | 8/17/2017 | 0.4 | $345 | $138.00 |
| Barker, David G. | Revise outline for Colocation 30(b)(6) deposition. | 8/18/2017 | 2.3 | $450 | $1,035.00 |
| Rogers, David E. | Review documents in preparation for deposition and defend deposition of M. Whittington. | 8/18/2017 | 3.8 | $615 | $2,337.00 |
| Rogers, David E. | Review documents and prepare deposition outline and exhibits for 30(b)(6) deposition of Colocation (8.0). Numerous communications with opposing counsel regarding PHV admission and appearance at deposition (0.3). | 8/21/2017 | 8.3 | $615 | $5,104.50 |
| Barker, David G. | Work on motion to amend counterclaim (0.9); further research and assess issues regarding Sigelman's attendance at Colocation deposition (1.0). | 8/21/2017 | 1.9 | $450 | $855.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Rogers, David E. | Continue preparation of deposition outline and exhibits (1.5); take 30(b)(6) deposition of Colocation. | 8/22/2017 | 6.5 | $615 | $3,997.50 |
| Barker, David G. | Continue working on motion to amend counterclaim. | 8/23/2017 | 1.4 | $450 | $630.00 |
| Rogers, David E. | Review rough transcript of M. Whittington and begin preparation of materials to prepare G. Hiscook. | 8/23/2017 | 0.5 | $615 | $307.50 |
| Barker, David G. | Assess issues regarding Escrow.com and review documents regarding the same (1.0); assess issues regarding amended counterclaim (.6). | 8/24/2017 | 1.6 | $450 | $720.00 |
| Rogers, David E. | Review documents and notes to prepare G. Hiscook for deposition (0.8); conference with G. Hiscook and M. Whittington to prepare for deposition (2.5); review new disclosure of alleged Escrow.com screen shot and communications with M. Whittington regarding same (0.5); | 8/24/2017 | 4.2 | $615 | $2,583.00 |
| Rogers, David E. | Review exhibits 1-5 for deposition of G. Hiscook (0.5); defend deposition of G. Hiscook (0.7); communications with G. Hiscook and M. Whittington | 8/25/2017 | 3.0 | $615 | $1,845.00 |
| Barker, David G. | Review and respond to letter from Colocation's counsel re depositions and Escrow.com materials (.6); review and assess Escrow.com materials (2.3). | 8/28/2017 | 2.9 | $450 | $1,305.00 |
| Barker, David G. | Meeting with Colocation's counsel regarding Escrow.com documents and assess documents (1.6); assess strategy for C. Kotler deposition (.4); revise deposition subpoena to C. Kotler (.2). | 8/29/2017 | 2.2 | $450 | $990.00 |
| Rogers, David E. | Review various documents from Escrow.com and communications with D. Barker regarding accessing A. Adhoot's account. | 8/29/2017 | 0.9 | $615 | $553.50 |
| Barker, David G. | Revise subpoena to C. Kotler and deposition notice to Colocation and correspondence with Colocation's counsel regarding same. | 8/30/2017 | 0.6 | $450 | $270.00 |
| Rogers, David E. | Arrange for deposition of Corey Allen/Corey Kotler (0.5). | 8/30/2017 | 0.5 | $615 | $307.50 |
| Rogers, David E. | Review transcript of A. Adhoot and deposition outline of Colocation to prepare outline for Allen/Kotler (2.6). | 9/1/2017 | 2.6 | $615 | $1,694.50 |
| Jones, Jacob | Research and correspondence with T. Foster relating to insufficient Colocation document production. | 9/5/2017 | 0.3 | $345 | $103.50 |
| Jones, Jacob | Review and analyze case documents and other sources for potential additional exhibits for C. Allen/Kotler deposition. | 9/5/2017 | 0.8 | $345 | $276.00 |
| Rogers, David E. | Review escrow.com documents and communications with consultant about their meaning (.6); communications with California Snell attorney about collection $41,000 judgment from Colocation (.3); review 30(b)(6) transcript of Colocation and prepare deposition outline of Corey Allen/Kotler (2.0). | 9/5/2017 | 3.3 | $615 | $2,029.50 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Reynolds, Michael | Conference with Attorney Dave Rogers regarding litigation and collection strategy. | 9/5/2017 | 0.3 | $675 | $202.50 |
| Barker, David G. | Telephone conference with B. Abbey, expert witness (.2); assess strategy regarding escrow.com documents (.7); prepare for C. Kotler deposition and revise outline for the deposition (.9); further telephone conference with B. Abbey (.5). | 9/5/2017 | 2.3 | $450 | $1,035.00 |
| Rogers, David E. | Review documents and prepare for deposition of Corey Kotler. | 9/6/2017 | 2.0 | $615 | $1,230.00 |
| Barker, David G. | Review A. Adhoot deposition transcript in preparation for C. Kotler deposition (1.5); continue revising outline for C. Kotler deposition (1.2). | 9/6/2017 | 2.7 | $450 | $1,215.00 |
| Rogers, David E. | Review Colocation documents to prepare exhibits for Kotler deposition and finalize outline for Kotler deposition (3.0).  Take Kotler deposition (3.0). | 9/7/2017 | 6.0 | $615 | $3,690.00 |
| Barker, David G. | Assess issues regarding C. Kotler deposition and filing counterclaims against C. Kotler. | 9/7/2017 | 0.6 | $450 | $270.00 |
| Barker, David G. | Review and assess C. Kotler deposition in preparation for adding him as a party to the lawsuit (1.5); revise complaint against C. Kotler (1.1). | 9/8/2017 | 2.6 | $450 | $1,170.00 |
| Rogers, David E. | Review rough draft of Kotler transcript (2.0) and prepare First Amended Complaint (1.4). | 9/8/2017 | 3.4 | $615 | $2,091.00 |
| Jones, Jacob | Review C. Allen/Kotler deposition transcript, and analyze issues raised therein in connection with strategy development for amending claims to name Allen/Kotler as a defendant and adding additional fraud claims, and telephone conferences with D. Rogers and D. Barker concerning same. | 9/8/2017 | 2.5 | $345 | $862.50 |
| Barker, David G. | Continue preparing motion to amend pleading and to add Kotler and Dividend as counterdefendants. | 9/11/2017 | 4.4 | $450 | $1,980.00 |
| Rogers, David E. | Review rough draft of Kotler transcript (2.0) and continue preparation of First Amended Complaint (1.5). | 9/11/2017 | 3.5 | $615 | $2,152.50 |
| Rogers, David E. | Continue review of communications between Mitel and Colocation, Domain Name Assignment Agreement, agreement between Kotler and Colocation (1.0); continue preparation of First Amended Answer, Counterclaim and Cross Claim (2.6). | 9/12/2017 | 3.6 | $615 | $2,214.00 |
| Barker, David G. | Assess further discovery to send to Colocation and prepare requests for admission and interrogatories (2.8); assess status of Mitel's initial disclosures in light of amended pleading (.2). | 9/12/2017 | 3.0 | $450 | $1,350.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Ricks, Ryan Dale | Review materials regarding prior sale of IP addresses; telephone conference and follow up regarding same regarding value of IP address in plaintiff's prior transaction. | 9/12/2017 | 0.7 | $490 | $343.00 |
| Barker, David G. | Assess settlement strategy and court's requirements for settlement discussions, and revise settlement offer to Colocation (.6); assess issues regarding Escrow.com and IPv4 transfers (.3). | 9/13/2017 | 0.9 | $450 | $405.00 |
| Barker, David G. | Revise amended counterclaim. | 9/13/2017 | 1.9 | $450 | $855.00 |
| Rogers, David E. | Continue preparation of Amended Answer and Counterclaim, and Complaint against Kotler. | 9/13/2017 | 3.5 | $615 | $2,152.50 |
| Rogers, David E. | Review Colocation document production, escrow.com document production, and Kotler deposition transcript (1.2); prepare proposed settlement offer and send to opposing counsel (.5). | 9/13/2017 | 1.7 | $615 | $1,046.50 |
| Jones, Jacob | Assist with preparing amended pleading, including analysis of case law regarding mistake or lack of meeting of the minds in formation of a contract. | 9/14/2017 | 0.4 | $345 | $138.00 |
| Barker, David G. | Continue revising amended counterclaim (2.9); correspondence with Colocation's counsel regarding amended counterclaim and whether Colocation will consent to filing (.2); correspondence with Colocation's counsel regarding settlement meeting (.2); review and assess G. Hiscock deposition (.2); continue preparing interrogatories and requests for admission to Colocation (.8). | 9/14/2017 | 4.3 | $450 | $1,935.00 |
| Rogers, David E. | Further preparation of amended Answer, Counterclaim, and Third-Party Complaint and send to opposing counsel (2.4); factual research regarding corporate structure of Colocation and its officers and director and communications with M. Whittington and N. Granados regarding same (.6). | 9/14/2017 | 3.0 | $615 | $1,845.00 |
| Barker, David G. | Travel to and meet with Colocation's counsel regarding settlement per court order (.7); investigate entity information regarding Colocation and investigate its alleged CEO and other officers (1.5); revise requests for admission and interrogatories to Colocation (1.4); prepare requests for production of documents to Colocation (1.1). | 9/15/2017 | 4.7 | $450 | $2,115.00 |
| Rogers, David E. | Prepare second set of Interrogatories, second set of Document Production Requests, and Requests for Admission (2.5); review documents for production to Colocation concerning Colocation's formation and registration to do business in California (.3). | 9/15/2017 | 2.8 | $615 | $1,722.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Barker, David G. | Assess settlement offer from Colocation and assess settlement strategy (.5); revise notices of deposition for Colocation officers and employees (.4). | 9/18/2017 | 0.9 | $450 | $405.00 |
| Barker, David G. | Investigate issues regarding fraudulently formed corporation and implications for litigation (.6); review and assess corporate documents from Nevada regarding Colocation's formation (.5). | 9/18/2017 | 1.1 | $450 | $595.00 |
| Rogers, David E. | Review transcript of C. Kotler (.7); prepare and send revised settlement offer (.5); continue reviewing information regarding the corporate filings of Colocation and the deposition notices for Colocation's alleged officers and Director. | 9/18/2017 | 3.0 | $615 | $1,845.00 |
| Rogers, David E. | Review information regarding the corporate filings of Colocation and the deposition notices for Colocation's alleged officers and Director. | 9/19/2017 | 1.1 | $615 | $676.50 |
| Blaylock, Brian | Strategize with D. Barker regarding corporate dissolution under Nevada law. | 9/20/2017 | 0.5 | $330 | $165.00 |
| Barker, David G. | Prepare joint report regarding settlement discussions. | 9/20/2017 | 0.4 | $450 | $180.00 |
| Barker, David G. | Revise amended counterclaim (2.5); research issue regarding fraudulently formed corporation and implications for litigation (1.4). | 9/20/2017 | 3.9 | $450 | $1,755.00 |
| Rogers, David E. | Revise First Amended Answer, and Counterclaim (1.4); prepare and revise Motion to File Amended Pleadings and add Corey Kotler as a counterdefendant (2.4). | 9/20/2017 | 3.8 | $615 | $2,337.00 |
| Layton, Alexi | Research regarding involuntary dissolution of a corporation. | 9/21/2017 | 0.9 | $205 | $184.50 |
| Barker, David G. | Revise motion to amend counterclaim, revise exhibits for the motion, finalize all documents, and attend to filing motion. | 9/21/2017 | 4.8 | $450 | $2,160.00 |
| Jones, Jacob | Review, analyze, and proof draft motion to amend pleadings, and supplemental legal research to support same, and analyze exhibits for accuracy and to determine whether anything needs to be filed under seal. | 9/21/2017 | 0.9 | $345 | $310.50 |
| Blaylock, Brian | Prepare for and attend office conference with A. Layton regarding involuntary corporate dissolution under Nevada law. | 9/21/2017 | 0.5 | $330 | $165.00 |
| Jones, Jacob | Prepare proposed order granting motion to amend the pleadings, with necessary findings and subsequent filing deadlines included. | 9/21/2017 | 0.3 | $345 | $103.50 |
| Layton, Alexi | Research regarding Nevada remedies for fraudulently filing public documents. | 9/22/2017 | 0.4 | $205 | $82.00 |
| Barker, David G. | Correspondence with Colocation's counsel regarding joint report on settlement talks and attend to filing the same with the Court. | 9/22/2017 | 0.4 | $450 | $180.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Rogers, David E. | Continue preparation of Motion for Leave to File Amended Answer and Counterclaim, and to add Corey Kotler as a party, and review exhibits related to same (3.3); communications with M. Whittington and N. Granados regarding same (.4). | 9/22/2017 | 3.7 | $615 | $2,275.50 |
| Blaylock, Brian | Correspondence with A. Layton regarding corporate dissolution under Nevada law. | 9/24/2017 | 0.2 | $330 | $66.00 |
| Layton, Alexi | Research regarding corporate formation and quo warranto actions. | 9/24/2017 | 1.4 | $205 | $287.00 |
| Blaylock, Brian | Attend conference call with D. Barker and A. Layton regarding corporate dissolution under Nevada law. | 9/25/2017 | 0.2 | $330 | $66.00 |
| Barker, David G. | Continue assessing remedies for Colocation's fraudulent statements in forming corporation. | 9/25/2017 | 0.3 | $450 | $135.00 |
| Layton, Alexi | Draft memorandum to D. Barker regarding involuntary dissolution in Nevada and other remedies. | 9/25/2017 | 0.7 | $205 | $143.50 |
| Rogers, David E. | Review of deposition transcript of M. Whittington and communication with M. Whittington regarding same. | 9/28/2017 | 1.5 | $615 | $922.50 |
| Jones, Jacob | Follow-up with court reporter concerning misrepresentations by P. Sigelman, in order to ensure a clear record concerning transcripts of recent depositions, pursuant to request from D. Rogers. | 10/5/2017 | 0.4 | $345 | $138.00 |
| Rogers, David E. | Prepare settlement letter to Colocation's lawyers (0.6); review Opposition filing by Colocation in Opposition of Motion to Amend (1.0). | 10/9/2017 | 1.6 | $615 | $984.00 |
| Barker, David G. | Assess issues regarding potential depositions of P. Sigelman and T. Foster; review and assess Colocation's opposition to motion to amend. | 10/10/2017 | 1.1 | $450 | $495.00 |
| Rogers, David E. | Preparation of Reply Brief in support of Motion to Amend Pleadings and review cases cited by Colocation. | 10/11/2017 | 3.3 | $615 | $2,029.50 |
| Jones, Jacob | Continue analyzing Colocation's opposition brief regarding Motion to Amend, and begin legal research to distinguish their cases, and establish agent liability, argue around economic loss doctrine, and overcome Colocation's arguments about dismissing conspiracy claims. | 10/12/2017 | 2.9 | $345 | $1,000.50 |
| Jones, Jacob | Additional legal research to distinguish the cases cited by Colocation in its opposition brief regarding the amendment to add fraud claims and adding Kotler as a defendant. | 10/13/2017 | 4.8 | $345 | $1,656.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Rogers, David E. | Review Colocation opposition brief and cited cases, and Mitel's opening motion to amend, and prepare Reply Brief in support of Motion to Amend Pleadings. | 10/13/2017 | 3.5 | $615 | $2,152.50 |
| Rogers, David E. | Continue review of Motion to Amend Pleadings and attached Exhibits, and Opposition and Exhibits, and prepare Reply Brief in support of Motion to Amend Pleadings. | 10/16/2017 | 6.0 | $615 | $3,690.00 |
| Barker, David G. | Revise reply in support of motion to amend. | 10/16/2017 | 2.9 | $450 | $1,305.00 |
| Jones, Jacob | Continue legal research and analyzing potential additional factual citations to support reply brief regarding pleading amendment. | 10/16/2017 | 3.0 | $345 | $1,035.00 |
| Jones, Jacob | Continue revising and finalizing reply brief in support of pleading amendment, and supplemental legal research in connection with same. | 10/17/2017 | 4.9 | $345 | $1,690.50 |
| Barker, David G. | Revise and finalize reply in support of motion to amend the pleadings and attend to filing the reply. | 10/17/2017 | 4.1 | $450 | $1,845.00 |
| Rogers, David E. | Continue review of Motion to Amend Pleadings and attached Exhibits, and Opposition and Exhibits, and prepare Reply Brief in support of Motion to Amend Pleadings. | 10/17/2017 | 3.2 | $615 | $1,968.00 |
| Barker, David G. | Begin preparing for five Colocation employee depositions. | 10/17/2017 | 0.9 | $450 | $405.00 |
| Jones, Jacob | Assist with developing strategies and complying with court rules regarding discovery disputes precipitated by Colocation's new discovery responses received, and new information concerning Colocation's officers and directors. | 10/19/2017 | 2.4 | $345 | $828.00 |
| Rogers, David E. | Review discovery responses from Colocation and requests sent by Mitel (3.0); communications with opposing counsel and D. Barker regarding depositions scheduled for the following day and scheduling the deposition of Ahdoot, Perez, and Shugarman (0.5); communications with M. Whittington and N. Granados regarding same (0.3); review of case law of agency and a principal's liability (0.5). | 10/19/2017 | 4.3 | $615 | $2,644.50 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Barker, David G. | Preliminary review of discovery responses identifying "fictitious" people and people who "do not exist," assess strategy for response, and prepare correspondence to Colocation's counsel (1.6); investigate fictitious company name certificates (.5); work on objections to Colocation's discovery responses in preparation for meet and confer (.8); prepare summary of discovery dispute to be filed with the Court (1.2); prepare notice of deposition for A. Ahdoot (.3); telephone conference with counsel for Colocation and follow up correspondence regarding the telephone conference (.7). | 10/19/2017 | 5.1 | $450 | $2,295.00 |
| Jones, Jacob | Assist with strategy and proposed questions for deposition of A. Ahdoot. | 10/20/2017 | 1.2 | $345 | $414.00 |
| Jones, Jacob | Additional legal research concerning [allegedly] innocent principal (Colocation) nevertheless being legally responsible for agent's (Kotler's) misconduct to a third party (MNC), and correspondence with D. Barker concerning same. | 10/20/2017 | 1.7 | $345 | $586.50 |
| Rogers, David E. | Further review of discovery responses from Colocation and requests sent by Mitel (not repeated in the responses) (1.3); communications with opposing counsel and D. Barker regarding depositions the deposition of Ahdoot, Perez, and Shugarman (0.4); communications with M. Whittington and N. Granados regarding same and case status (0.5); further review of case law of agency and a principal's liability (0.5); prepare deposition outline for Ahdoot (2.0); and review prior transcripts of Ahdoot and Kotler (1.0). | 10/20/2017 | 5.7 | $615 | $3,505.50 |
| Barker, David G. | Correspondence with Colocation's counsel regarding P. Cruz and D. Shugarman depositions (0.3); work on exhibits for A. Ahdoot deposition (1.4); begin preparing outline for A. Ahdoot deposition (1.2); assess discovery responses in preparation for deficiency letter and meet and confer (0.9). | 10/20/2017 | 3.8 | $450 | $1,710.00 |
| Jones, Jacob | Prepare draft discovery dispute summary and request to amend the scheduling order to extend deposition deadlines, based on new information from Colocation. | 10/23/2017 | 1.9 | $345 | $655.50 |
| Barker, David G. | Continue preparing for A. Adhoot deposition (4.1); assess strategy for motion to extend discovery deadline (1.2); review and assess documents produced by C. Kotler (1.5). | 10/23/2017 | 6.8 | $450 | $3,060.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Rogers, David E. | Review documents and discovery responses of Colocation (0.9); prepare deposition questions (0.8); motion to extend discovery period (2.3). | 10/23/2017 | 4.0 | $615 | $2,460.00 |
| Jones, Jacob | Support in resolving discovery disputes precipitated during deposition of A. Ahdoot, including contacting the court and providing case documents supporting MNC's arguments. | 10/24/2017 | 1.8 | $345 | $621.00 |
| Rogers, David E. | Communications with D. Barker regarding discovery dispute during deposition; further preparation of motion to extend the discovery and dispositive motion deadline. | 10/24/2017 | 1.4 | $615 | $861.00 |
| Barker, David G. | Continue preparing for A. Ahdoot deposition (2.9); conduct A. Ahdoot deposition, including telephone conference with the Court compelling A. Ahdoot to answer questions (3.8); assess strategy regarding results of deposition and further discovery (.9). | 10/24/2017 | 7.6 | $450 | $3,420.00 |
| Barker, David G. | Assess documents to request following A. Ahdoot's deposition testimony for further discovery requests. | 10/26/2017 | 0.9 | $450 | $405.00 |
| Rogers, David E. | Review deposition transcript of Albert Ahdoot (1.6); review discovery responses and prepare communication about outstanding categories of documents that have yet to be produced (2.0); communications with M. Whittington and N. Granados. | 10/26/2017 | 3.6 | $615 | $2,214.00 |
| Rogers, David E. | Prepare response to Colocation Motion for substitution of real party in interest and motion for discovery sanctions. Legal research regarding same and review various disclosures and exhibits to prepare factual citations for same. | 10/27/2017 | 4.0 | $615 | $2,460.00 |
| Barker, David G. | Begin preparing for oral argument on motion to extend discovery (1.0); meet and confer telephone conference with Colocation's counsel regarding document production (.5). | 10/30/2017 | 1.5 | $450 | $675.00 |
| Rogers, David E. | Communications with opposing counsel regarding discovery matters and meet and confer conference (0.5); review Colocation's Response to Motion to Extend Discovery and attached exhibits (0.7); prepare discovery dispute brief (0.5). | 10/30/2017 | 1.7 | $615 | $1,045.50 |
| Jones, Jacob | Prepare and finalize reply brief in support of motion to extend deadlines, showing the Court the Kotler email with Sigelman and Ahdoot, and raising other matters relevant to tomorrow's hearing. | 10/31/2017 | 5.5 | $345 | $1,897.50 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Jones, Jacob | Prepare summary of discovery dispute concerning documents Colocation refuses to produce (bank statements, payment records, and tax returns), and meet and confer with T. Foster, follow-up by email, and finalize same for filing. | 10/31/2017 | 2.7 | $345 | $931.50 |
| Rogers, David E. | Prepare summary of issues for oral argument (2.0) and Reply to Motion for Extension of Time and supporting exhibits (0.8). | 10/31/2017 | 2.8 | $615 | $1,722.00 |
| Barker, David G. | Revise reply in support of motion to extend scheduling order (.7); prepare for hearing on motion to extend scheduling order (2.6). | 10/31/2017 | 3.3 | $450 | $1,485.00 |
| Jones, Jacob | Finalize first amended counterclaim for filing pursuant to court order, prepare summonses in connection with same, and communicate with process server to coordinate swift and effective service in order to prevent Kotler from evading service. | 11/1/2017 | 2.1 | $345 | $724.50 |
| Jones, Jacob | Continue developing case strategy and analyzing issues in light of the Court's rulings today, and begin preparing second amended counterclaim pursuant to same. | 11/1/2017 | 1.5 | $345 | $517.50 |
| Barker, David G. | Continue preparing for oral argument on motion to extend discovery deadline. | 11/1/2017 | 2.9 | $450 | $1,305.00 |
| Barker, David G. | Argument with the Court regarding motion to amend answer and counterclaim, alter ego issues regarding A. Ahdoot, motion to compel discovery, and motion to extend discovery (1.0); follow up and strategize following Court hearing and orders granting Mitel's motions (1.3). | 11/1/2017 | 2.3 | $450 | $1,045.00 |
| Jones, Jacob | Travel to, attend, and assist D. Barker at hearing regarding four motions, including motion to amend to add Corey Kotler, Colocation's motion to substitute parties, MNC's discovery motion filed last night, and MNC's new motion to amend to add A. Ahdoot as a counterdefendant. | 11/1/2017 | 2.1 | $345 | $724.50 |
| Jones, Jacob | Begin preparing second amended counterclaim (to add claims personally against Albert Ahdoot), and legal research in connection with same, to ensure appropriate factual allegations supporting alter ego/piercing the corporate veil are pled as to each of the counts against A. Ahdoot. | 11/2/2017 | 5.7 | $345 | $1,966.50 |
| Barker, David G. | Review and assess court's order granting motion to amend and revise settlement offer to Colocation in light of the same (.5); assess strategy for amending complaint and for service on Kotler (.4). | 11/2/2017 | 0.9 | $450 | $405.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Rogers, David E. | Prepare settlement proposal (0.4); review court orders and communications with M. Whittington and N. Granados regarding same (0.6). | 11/3/2017 | 1.0 | $615 | $615.00 |
| Jones, Jacob | Continue preparing draft second amended counterclaim adding Ahdoot, and legal research in connection with alter ego, piercing the veil, and related issues in order to minimize risk of Colocation moving to dismiss for failure to state a claim. | 11/3/2017 | 2.4 | $345 | $828.00 |
| Rogers, David E. | Review and revise Second Amended Complaint and counterclaim (1.8); prepare Response to Colocation's Motion to Substitute Party (1.0). | 11/6/2017 | 2.8 | $615 | $1,722.00 |
| Jones, Jacob | Continue revising second amended complaint allegations regarding A. Ahdoot. | 11/7/2017 | 3.0 | $345 | $1,035.00 |
| Rogers, David E. | Review discovery provided by Colocation and payment by D. Perlman (0.7); prepare amended counterclaim (0.8). | 11/7/2017 | 1.5 | $615 | $922.50 |
| Rogers, David E. | Prepare draft settlement proposal and toward to M. Whittington. | 11/8/2017 | 0.5 | $615 | $307.50 |
| Rogers, David E. | Prepare Second Amended Counterclaim (2.7); review Colocation's Motion to Substitute and supporting exhibits and prepare response to same (1.0); revise and send settlement proposal to opposing counsel (0.3). | 11/9/2017 | 4.0 | $615 | $2,460.00 |
| Jones, Jacob | Revise response to Colocation's motion to substitute parties, and legal research in connection with same, specifically regarding Nevada laws relating to unregistered fictitious or non-existent corporations' lack of standing to bring a complaint, and correspondence with D. Rogers and D. Barker concerning same. | 11/9/2017 | 2.5 | $345 | $862.50 |
| Barker, David G. | Prepare correspondence to Colocation's counsel regarding documents to be produced and documents court ordered Colocation to produce. | 11/10/2017 | 0.6 | $450 | $270.00 |
| Rogers, David E. | Communications with M. Whittington about potential expert on escrow. | 11/13/2017 | 0.2 | $615 | $37.50 |
| Rogers, David E. | Review letter from opposing counsel regarding adding Ahdoot, review Federal Civil Procedure Rules, modify responsive letter, and communications with M. Whittington regarding same. | 11/21/2017 | 1.0 | $615 | $615.00 |
| Barker, David G. | Prepare response to Colocation's counsel regarding their objection to the second amended counterclaim. | 11/21/2017 | 0.8 | $450 | $360.00 |
| Rogers, David E. | Review new discovery responses from Colocation and prepare communication regarding same to M. Whittington. | 11/22/2017 | 2.0 | $615 | $1,230.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Jones, Jacob | Additional legal research in support of motion for leave to file second amended counterclaim against A. Ahdoot, in connection with piercing the corporate veil, alter ego, and requisite choice of law analysis. | 11/27/2017 | 1.8 | $345 | $621.00 |
| Rogers, David E. | Prepare Motion to add Ahdoot as a party defendant (2.0) and review discovery and communicate with e-discovery forensic companies (0.4). | 11/27/2017 | 2.4 | $615 | $1,476.00 |
| Barker, David G. | Continue preparing motion for second amended counterclaim. | 11/27/2017 | 3.1 | $450 | $1,395.00 |
| Rogers, David E. | Prepare and revise Motion to Enter Amended Counterclaim to add Ahdoot as a party including review of proposed amended counterclaim, exhibits and case law. | 11/28/2017 | 6.8 | $615 | $4,182.00 |
| Jones, Jacob | Begin finalizing motion for leave to file second amended counterclaim, including verifying factual and legal citations. | 11/30/2017 | 1.8 | $345 | $621.00 |
| Barker, David G. | Assess strategy for motion to amend counterclaim; discussions with D. Rogers and revise motion. | 11/30/2017 | 2.2 | $450 | $990.00 |
| Rogers, David E. | Revise Second Amended Counterclaim (0.5) and continue preparation of Motion to File Second Amended Counterclaim and Exhibits (1.5). | 11/30/2017 | 2.0 | $615 | $1,230.00 |
| Jones, Jacob | Finalize motion for leave to file second amended counterclaim and proposed second amended counterclaim, and exhibits, in preparation for filing same. | 12/1/2017 | 1.2 | $345 | $414.00 |
| Jones, Jacob | Prepare application for entry of default against C. Kotler and his wife, for failure to file an answer to the Amended Answer and Counterclaim. | 12/11/2017 | 0.8 | $345 | $276.00 |
| Rogers, David E. | Review Colocation's Response to Mitel's Motion to Amend Counterclaim and add Ahdoot as a party, original Motion and Exhibits, and documents produced by Colocation; prepare Reply Brief. | 12/18/2017 | 6.1 | $615 | $3,751.50 |
| Jones, Jacob | Analyze issue concerning protective order in relation to Adhoot deposition transcript and new Colocation exhibits, in connection with reply brief in support of motion to amend; discussion with D. Rogers regarding same. | 12/19/2017 | 1.1 | $345 | $379.50 |
| Barker, David G. | Revise reply in support of motion for leave to file second amended counterclaim. | 12/19/2017 | 1.8 | $450 | $810.00 |
| Rogers, David E. | Review Colocation Response and Exhibit, and MNC Opening Motion to Enter Second Amended Counterclaim and exhibits; continue preparation | 12/19/2017 | 1.7 | $615 | $1,045.50 |
| Barker, David G. | Prepare further revisions to reply in support of second motion to amend and finalize the reply for filing; communications with D. Rogers regarding same. | 12/21/2017 | 2.4 | $450 | $1,080.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Jones, Jacob | Proof and file Reply with exhibits in support of motion to amend pleadings. | 12/22/2017 | 0.2 | $345 | $69.00 |
| Jones, Jacob | Review and analyze court order stating that the previous motion for leave to amend (which was granted) is going to be revisited at next week's oral argument, and begin making preparations in connection with same. | 2/23/2018 | 0.8 | $405 | $324.00 |
| Jones, Jacob | Continue preparing for Wednesday oral argument, including attempting to anticipate matters that may be discussed, given that the Court provided little guidance for re-addressing the motion previously granted in November. | 2/26/2018 | 1.1 | $405 | $445.50 |
| Rogers, David E. | Review briefing on Motion to Add Ahdoot as a party and related exhibits (1.2); review Court Order of January 23, 2018 concerning revisiting the | 2/26/2018 | 3.2 | $630 | $2,016.00 |
| Barker, David G. | Assess issues regarding hearing on motion to amend and Colocation's failure to produce documents that were due prior to the end of 2017. | 2/26/2018 | 0.9 | $470 | $423.00 |
| Jones, Jacob | Correspondence with T. Foster requesting production of a document (showing that Colocation's intent was to obtain IPv4 addresses and not a domain name) that Colocation agreed to produce in November but had still failed to produce, and review Colocation's produced documents in connection with same. | 2/26/2018 | 0.4 | $405 | $162.00 |
| Jones, Jacob | Continue preparing for Wednesday oral argument, including trying to anticipate matters that may be discussed, and review November 1, 2017 oral argument transcript and prior briefings that may be under re-consideration. | 2/27/2018 | 2.3 | $405 | $931.50 |
| Rogers, David E. | Further review of Motion, Opposition, and Reply briefs (and all exhibits) for Motion for Leave to Amend Complaint and Counterclaim and Motion for Leave to File Second Amended Counterclaim to add Ahdoot as a party in preparation for oral argument. | 2/27/2018 | 3.5 | $630 | $2,205.00 |
| Barker, David G. | Assess issues regarding Colocation's document production and develop strategy regarding the same in preparation for oral argument with the Court. | 2/27/2018 | 0.6 | $470 | $282.00 |
| Rogers, David E. | Further preparation for and attend oral argument on entering Second Amended Counterclaim with fraud counts. | 2/28/2018 | 4.5 | $630 | $2,835.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Jones, Jacob | Continue preparing for oral argument (made difficult by unknown concerns in connection with reconsidering prior motion that was granted), including reviewing deposition transcripts, other evidence, and the existing and proposed amended pleadings, and attempt to anticipate the questions the Court will have. | 2/28/2018 | 2.5 | $405 | $1,012.50 |
| Jones, Jacob | Travel to and attend oral argument on motion for leave to file second amended counterclaim, and reconsideration of motion for leave to file first amended counterclaim, and review minute entry in connection with same. | 2/28/2018 | 2.0 | $405 | $810.00 |
| Rogers, David E. | Review Court order and email to M. Whittington regarding same and dismissal of affirmative fraud counts. | 3/1/2018 | 1.2 | $630 | $756.00 |
| Jones, Jacob | Legal research regarding promissory fraud, punitive damages, and related issues in connection with today's court order dismissing several counterclaims and denying Mitel's motion for leave to amend. | 3/1/2018 | 2.0 | $405 | $810.00 |
| Barker, David G. | Prepare tolling agreement in response to order on motion to dismiss. | 3/2/2018 | 1.8 | $470 | $846.00 |
| Rogers, David E. | Review case file and two most recent court orders and prepare estimated, remaining tasks and costs through trial per M. Whittington. | 3/6/2018 | 2.8 | $630 | $1,764.00 |
| Barker, David G. | Assess strategy and appeal issues for remainder of case in light of Court's order denying amendment to pleading and setting trial. | 3/6/2018 | 0.9 | $470 | $423.00 |
| Barker, David G. | Revise and finalize draft tolling agreement. | 3/9/2018 | 1.4 | $470 | $658.00 |
| Jones, Jacob | Legal research in support of Motion for Reconsideration per request from D. Rogers. | 3/12/2018 | 0.9 | $405 | $364.50 |
| Barker, David G. | Prepare draft motion for reconsideration. | 3/13/2018 | 3.9 | $470 | $1,833.00 |
| Jones, Jacob | Revise Motion to Reconsider the Court's order reversing its prior decision granting pleading amendment and denying addition of A. Ahdoot as individual defendant. | 3/14/2018 | 4.4 | $405 | $1,782.00 |
| Barker, David G. | Revise tolling agreement (0.4); edit and revise motion for reconsideration (1.6). | 3/14/2018 | 2.0 | $470 | $940.00 |
| Rogers, David E. | Prepare and revise draft Motion for Reconsideration and review prior briefing for factual citations. | 3/14/2018 | 5.8 | $630 | $3,654.00 |
| Jones, Jacob | Revise and finalize motion for reconsideration, and legal research in connection with same. | 3/15/2018 | 8.2 | $405 | $3,321.00 |
| Rogers, David E. | Further preparation of Motion for Reconsideration and exhibits in support. | 3/15/2018 | 1.5 | $630 | $945.00 |
| Jones, Jacob | Assist D. Rogers in preparing for deposition of A. Ahdoot. | 3/19/2018 | 1.2 | $405 | $486.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Rogers, David E. | Review two prior deposition transcripts of A. Ahdoot and exhibits; review discovery responses and documents produced by Colocation since October 20, 2017 and prepare for deposition of A. Ahdoot (4.7); communications regarding settlement proposal (0.3). | 3/19/2018 | 5.0 | $630 | $3,150.00 |
| Rogers, David E. | Finalize and send expert disclosure of M. Whittington (0.2); continue to prepare for deposition of A. Ahdoot and review discovery responses and documents produced by Colocation since October 20, 2017 (4.8). | 3/20/2018 | 5.0 | $630 | $3,150.00 |
| Rogers, David E. | Prepare for and take deposition of Albert Ahdoot | 3/21/2018 | 3.5 | $630 | $2,205.00 |
| Barker, David G. | Assess results of A. Ahdoot deposition (0.4); review correspondence from Colocation's counsel regarding their proposed motion for summary judgment and assess response to the same (2.0). | 3/21/2018 | 2.4 | $470 | $1,128.00 |
| Rogers, David E. | Communications with opposition counsel to set hearing date for letters requesting summary judgment motions (0.5); review Colocation's letter regarding summary judgment and exhibits and prepare letter with response and request to file cross motion (3.0). | 3/22/2018 | 3.5 | $630 | $2,205.00 |
| Rogers, David E. | Prepare supplemental production to Colocation (0.3); review MNC document production and prepare email about documents showing additional leases for IPv4 addresses (0.5); continue review of Colocation and MNC documents and prepare letter for summary judgment (2.7). | 3/23/2018 | 3.5 | $630 | $2,205.00 |
| Rogers, David E. | Continue review of documents and preparation of summary judgment letter (3.1); communications with M. Whittington regarding Contract language (0.3). | 3/26/2018 | 3.4 | $630 | $1,512.00 |
| Barker, David G. | Revise opposition letter to Colocation's counsel regarding proposed summary judgment motion and communications with D. Rogers regarding same. | 3/26/2018 | 1.0 | $470 | $470.00 |
| Jones, Jacob | Investigate issues concerning Colocation's summary judgment letter, and strategy concerning same with D. Rogers, in connection with preparing for oral argument (1.0). | 3/27/2018 | 1.0 | $405 | $405.00 |
| Jones, Jacob | Revise and finalize summary judgment letter pursuant to instructions from D. Rogers (0.5). | 3/27/2018 | 0.5 | $405 | $202.50 |
| Jones, Jacob | Correspondence with T. Foster concerning document production and review additional documents (dictionary definitions) for production (0.8). | 3/27/2018 | 0.8 | $405 | $324.00 |
| Barker, David G. | Review Colocation's revisions to tolling agreement and assess further revisions to the same. | 3/27/2018 | 1.2 | $470 | $564.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Rogers, David E. | Prepare final revisions to summary judgment letter and file same (0.7); communications with M. Whittington (0.3). | 3/27/2018 | 1.0 | $630 | $630.00 |
| Barker, David G. | Finalize tolling agreement and correspond with Colocation's counsel regarding the agreement (0.6). | 3/29/2018 | 0.6 | $470 | $282.00 |
| Barker, David G. | Review and assess Reply letter from Colocation's counsel regarding summary judgment (0.4). | 3/29/2018 | 0.4 | $470 | $188.00 |
| Jones, Jacob | Legal research in support of grammatical construction of key contract provision, pursuant to request from D. Rogers. | 3/30/2018 | 1.9 | $405 | $769.50 |
| Barker, David G. | Assess issues regarding admissibility and evidence rules use of grammar evidence. | 3/31/2018 | 0.3 | $470 | $141.00 |
| Jones, Jacob | Develop positions for ensuring the admissibility of certain extrinsic evidence to support MNC's contract interpretation positions at summary judgment or at trial, and legal research in connection with same, per request from D. Rogers. | 4/2/2018 | 3.7 | $405 | $1,498.50 |
| Rogers, David E. | Review reply letter from Colocation concerning settlement and communication to M. Whittington regarding same (0.4); research "Standard English" grammar rules and evidentiary rules to admit same (0.6). | 4/2/2018 | 1.0 | $630 | $630.00 |
| Jones, Jacob | Assist D. Rogers in preparing for hearing on possible summary judgment motions and outstanding issues on April 4, 2018. | 4/3/2018 | 3.0 | $405 | $1,215.00 |
| Rogers, David E. | Review documents produced by escrow.com and review sources of Standard English grammar (1.6); communications with M. Whittington about Colocation's Reply and possible settlement (0.4); prepare settlement communication to Colocation (0.6). | 4/3/2018 | 2.6 | $630 | $1,638.00 |
| Barker, David G. | Assess issues regarding escrow.com documents (i.e., hearsay objections) and assess correspondence from Colocation's counsel regarding same (alleged hearsay exceptions). | 4/3/2018 | 0.6 | $470 | $282.00 |
| Jones, Jacob | Locate, review, and analyze additional extrinsic evidence concerning English grammar rules and the definition of "nebulous" prior to producing same to Colocation, per request from D. Rogers; additional legal research to ensure admissibility of certain extrinsic evidence to support MNC's contract interpretation positions at summary judgment or trial. | 4/4/2018 | 4.3 | $405 | $1,741.50 |
| Barker, David G. | Assess strategy regarding Colocation's potential use of escrow.com documents (0.2); assess hearing statements regarding summary judgment motions and work on positions regarding motion (0.3). | 4/4/2018 | 0.5 | $470 | $235.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Rogers, David E. | Review Complaint, Answer, Motion for Reconsideration, and letters and exhibits regarding motions for summary judgment, and attend hearing regarding filing summary judgment motions (4.1); communications with M. Whittington regarding hearing and next steps (0.7); review escrow.com documents and documents about Standard English use of commas and sentence structure (1.4). | 4/4/2018 | 6.2 | $630 | $3,780.00 |
| Rogers, David E. | Review escrow.com documents produced by escrow.com and by Colocation (1.0); communications with opposing counsel regarding tolling agreement (0.2). | 4/6/2018 | 1.2 | $630 | $756.00 |
| Jones, Jacob | Continue reviewing and analyzing documents as potential exhibits to contemplated summary judgment motion on contract interpretation (2.1). | 4/9/2018 | 1.6 | $405 | $648.00 |
| Jones, Jacob | Analyze escrow.com documents, regarding transaction number 847266 produced by Colocation, in connection with defeating Colocation's contract interpretation positions that rely on escrow.com documents produced by Colocation (1.0). | 4/9/2018 | 1.5 | $405 | $607.50 |
| Rogers, David E. | Review Mitel, Colocation and escrow.com documents to create a time line of events pre-contract and post-contract (3.5) and prepare summary judgment motion (1.8). | 4/9/2018 | 5.3 | $630 | $3,339.00 |
| Rogers, David E. | Research domain name and internet protocol terminology usage and the standard meanings of terms. | 4/11/2018 | 0.7 | $630 | $441.00 |
| Rogers, David E. | Communications with opposing counsel and M. Whittington regarding tolling agreement (0.4); review Mitel production documents and prepare summary judgment motion (2.7) | 4/13/2018 | 3.1 | $630 | $1,953.00 |
| Barker, David G. | Analyze escrow.com documents and positions and arguments pertaining to IPv4 information (3.8); assess in connection with summary judgment and communications with D. Rogers regarding same (0.5). | 4/16/2018 | 4.3 | $470 | $2,021.00 |
| Jones, Jacob | Continued legal research in support of contemplated summary judgment motion to obtain case law requested by D. Rogers. | 4/18/2018 | 3.2 | $405 | $1,296.00 |
| Rogers, David E. | Review discovery materials produced by Mitel, Colocation, and escrow.com (1.7); legal research regarding evidentiary rules to exclude escrow.com documents, and cases related to goodwill assignment provisions related to domain names (1.5). | 4/18/2018 | 3.2 | $630 | $2,016.00 |
| Barker, David G. | Research issues regarding Court's statement about reforming the contract based on Colocation's misrepresentations and prepare | 4/19/2018 | 1.3 | $470 | $611.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Barker, David G. | Research the type of goodwill clauses used in connection with domain name assignments and prepare summary regarding same (3.2). | 4/19/2018 | 4.6 | $470 | $2,162.00 |
| Barker, David G. | Assess issues and legal research regarding the comparative standard of care for reviewing contracts with little money involved (0.7). | 4/19/2018 | 0.6 | $470 | $282.00 |
| Rogers, David E. | Legal and factual research concerning communications prior to executing the Contract, drafts of the Contract, and the Contract provisions, and prepare summary judgment motion. | 4/19/2018 | 5.0 | $630 | $3,150.00 |
| Jones, Jacob | Respond to inquiries from T. Foster (opposing counsel) concerning MNC document production. | 4/20/2018 | 0.2 | $405 | $81.00 |
| Rogers, David E. | Continue preparation of summary judgment motion (including review, summary and analysis of e-mail chain, Contract provisions, and JDA Software IPv4 agreement) and fact exhibits. | 4/20/2018 | 5.0 | $630 | $3,150.00 |
| Jones, Jacob | Legal research in support of summary judgment motion, regarding contract interpretation (3.8) and continue revising draft brief per instructions from D. Rogers (4.1). | 4/23/2018 | 7.9 | $405 | $3,199.50 |
| Rogers, David E. | Legal research concerning the use of standard grammar rules, interpretation of contracts, and the legal meaning of goodwill; review deposition transcripts and documents for factual citations and prepare summary judgment motion (5.0); prepare declaration of M. Whittington (1.0). | 4/23/2018 | 6.0 | $630 | $3,780.00 |
| Barker, David G. | Revise motion for summary judgment per D. Rogers to check case citations and accuracy, timeline of events, and Contract analysis. | 4/24/2018 | 4.2 | $470 | $1,974.00 |
| Jones, Jacob | Further legal research in support of summary judgment motion, including the Restatement (Contracts) (1.3) and continue revising draft brief per instructions from D. Rogers (7.5). | 4/24/2018 | 8.8 | $405 | $3,564.00 |
| Rogers, David E. | Continue preparation of Motion for Summary Judgment and fact exhibits (4.3); further preparation of M. Whittington declaration (0.5). | 4/24/2018 | 4.8 | $630 | $3,024.00 |
| Rogers, David E. | Continue preparation of Motion for Summary Judgment, and prepare legal citations and fact citations. | 4/25/2018 | 6.5 | $630 | $4,095.00 |
| Jones, Jacob | Revise and finalize summary judgment brief (7.6), review and analyze 60+ exhibits for accuracy and add highlights to same for the court's convenience (1.8), verify case citations are accurate for cited legal propositions (0.8), and prepare declaration in support of same (0.6), per instructions from D. Rogers. | 4/25/2018 | 10.8 | $405 | $4,374.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Jones, Jacob | Ensure binder to court (for summary judgment motion) complies with local rules and judge's specific rules, per request from the court's judicial assistant. | 4/26/2018 | 0.2 | $405 | $81.00 |
| Barker, David G. | Review and assess Colocation's opposition and cross motion for summary judgment. | 5/16/2018 | 0.8 | $470 | $376.00 |
| Jones, Jacob | Review Colocation's MSJ response/cross motion exhibits and analyze evidentiary objections, and provide summary of same to D. Rogers. | 5/16/2018 | 1.2 | $405 | $486.00 |
| Jones, Jacob | Continue analyzing potential reply strategies on Colocation's response to MSJ and cross-motion; and draft potential argument regarding contract interpretation errors made by Colocation, regarding the quit claim portion. | 5/17/2018 | 0.9 | $405 | $364.50 |
| Rogers, David E. | Review Colocation Response Cross Motion for Summary Judgment, and exhibits; conference with J. Jones regarding evidentiary objections. | 5/17/2018 | 3.7 | $630 | $2,331.00 |
| Rogers, David E. | Continue preparation of Response and Reply Brief, and review Colocation's Cross Motion for Summary Judgment on Contract Interpretation to develop arguments. | 5/21/2018 | 4.1 | $630 | $2,583.00 |
| Jones, Jacob | Begin drafting MSJ reply section on objections to Colocation's evidence cited in its MSJ response. | 5/23/2018 | 2.3 | $405 | $931.50 |
| Rogers, David E. | Further review of Colocation Response and Exhibits (3.8); prepare Mitel Response and Reply, including evidentary objections and arguments (2.5). | 5/23/2018 | 6.3 | $630 | $3,969.00 |
| Jones, Jacob | Legal research in furtherance of evidentiary objections to Colocation's MSJ response/cross-motion exhibits. | 5/23/2018 | 0.7 | $405 | $283.50 |
| Jones, Jacob | Additional legal research in support of reply/response regarding MSJ and cross-MSJ, regarding various issues per instructions from D. Rogers. | 5/24/2018 | 4.8 | $405 | $1,944.00 |
| Jones, Jacob | Complete MSJ reply section on objections to Colocation's evidence cited in its MSJ response, and forward to D. Rogers. | 5/24/2018 | 1.8 | $405 | $729.00 |
| Rogers, David E. | Continue review of Colocation motion and exhibits (2.0) and Mitel Motion for Summary Judgment and exhibits (1.5); prepare Response and Reply brief, evidentary objections and Exhibits (3.5). | 5/24/2018 | 7.0 | $630 | $4,410.00 |
| Jones, Jacob | Make final revisions and proof MSJ response/reply brief, and correspondence with D. Rogers concerning same, in preparation for filing. | 5/25/2018 | 2.9 | $405 | $1,174.50 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Jones, Jacob | Analyze and perform final review of exhibits to ensure proper citation and accuracy of included portions and compliance with the rules, in preparation for filing MSJ response/reply brief. | 5/25/2018 | 0.7 | $405 | $283.50 |
| Jones, Jacob | Follow-up on several additional legal research issues in support of MSJ response/reply brief, per instructions from D. Rogers, including judicial notice, grammar rules, contradicting previous admissions on summary judgment, and other issues. | 5/25/2018 | 2.2 | $405 | $891.00 |
| Rogers, David E. | Continue review of Colocation motion and exhibits (2.5) and Mitel Motion for Summary Judgment and exhibits (2.5); prepare Response and Reply brief, evidentary objections and Exhibits (3.5). | 5/25/2018 | 8.5 | $630 | $5,355.00 |
| Jones, Jacob | Additional legal research, showing that a strained interpretation is improper when there is a reasonable interpretation presented to the court, in support of MSJ response/reply brief, and correspondence with D. Rogers concerning same. | 5/25/2018 | 1.3 | $405 | $526.50 |
| Jones, Jacob | Locate additional factual citations to support MSJ response/reply brief, per instructions from D. Rogers. | 5/25/2018 | 1.1 | $405 | $445.50 |
| Barker, David G. | Assess pretrial issues regarding exhibits, depositions, and pretrial order. | 5/29/2018 | 0.3 | $470 | $141.00 |
| Jones, Jacob | Review and analyze Colocation's reply brief re MSJ, filed today, and correspondence with D. Rogers and D. Barker concerning same. | 5/30/2018 | 0.4 | $405 | $162.00 |
| Barker, David G. | Work on deposition designations for C. Kotler deposition per Court's order for pre-trial disclosure (0.8). | 5/31/2018 | 0.8 | $470 | $376.00 |
| Barker, David G. | Assess issues regarding Colocation's reply insupport of summary judgment (0.4); continue working on issues for pretrial order (0.9). | 5/31/2018 | 1.3 | $470 | $611.00 |
| | **Total Attorney Hours and Fees** | | **857.9** | | **$435,005.00** |
| | | | | | |
| | | | | | |
| **Paraprofessional** | **Description of Paraprofessional Services** | **Date** | **Hrs** | **Rate** | **Total** |
| Kowing, Karen R. | Located examples of Notices of Removal and Motions to Stay in Arizona District Court. | 1/26/2017 | 0.7 | $170 | $119.00 |
| Hawkins, Lori A. | Research judgments against Colocation. | 4/10/2017 | 0.4 | $290 | $116.00 |
| Jones, Dana | Research California judgments filed against Colocation America. | 4/11/2017 | 1.0 | $175 | $175.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Nance, Sharon A | Conferences with J. Jones and D. Rogers concerning research to identify Corey Allen or Corey Allen Kotler and affiliation to Colocation entity; conduct additional review of available Internet research databases in effort to identify principles involved with entity dividendadvisors.com. | 6/8/2017 | 1.1 | $265 | $291.50 |
| Zachow, Maureen L | Discussions with IT and vendor re processing, potential database cost, review estimate and follow up with attorney regarding same. | 6/9/2017 | 0.6 | $230 | $138.00 |
| Nance, Sharon A | Conduct reverse phone search for various telephone numbers relating to dividendadvisors website and or Corey Allen; conduct reverse WHOIS domain name search to identify domain names currently registered in name of Corey Allen or Corey Allen Kotler; conduct reverse WHOIS search for owner of dividendadvisors.com domain name; prepare spreadsheet identify various domain names for J. Jacobs review; conduct review of archived web pages relating to dividendadvisors and abandonedproperty.com in effort to identify physical business or residential address for C. Allen; compile research materials and discuss matter with J. Jones and D. Rogers. | 6/12/2017 | 4.3 | $265 | $1,139.50 |
| Smith, Marissa J. | Conduct reverse WHOIS search of domain name dividendadvisors.com. | 6/12/2017 | 0.3 | $240 | $72.00 |
| Nance, Sharon A | Conferences with D. Rogers concerning status of research relating to dividend advisors.com and identification of residence or service address for Corey Allen. | 6/16/2017 | 0.5 | $265 | $132.50 |
| Nance, Sharon A | Conduct additional research relating to Corey Allen (or Kotler) to include reverse phone search for same; identify owner of phone listing as listed via dividend.com website and report to J. Jacobs regarding research. | 6/21/2017 | 1.2 | $265 | $318.00 |
| Zachow, Maureen L | Review documents re Domain Name Assignment Agreement, C. Allen and D. Perlman, prepare binder regarding same. | 6/23/2017 | 1.6 | $230 | $368.00 |
| Zachow, Maureen L | Update database and prepare documents for production, follow up telephone conference with attorney. | 6/26/2017 | 1.2 | $230 | $276.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Nance, Sharon A | Conference with D. Rogers concerning owner of Escrow.com domain name and corporate ownership; conduct research to identify current owner of "escrow.com" domain name; conduct research via California Secretary of State office and Internet resources to identify state of incorporation, business address and status of California corporation status; conduct additional review of public records and obtain additional information via Better Business Bureau and other business rating entities regarding Collocation, Inc. and current corporate status in California; compile research results and forward to D. Rogers and J. Jacobs for review. | 6/29/2017 | 2.3 | $265 | $609.50 |
| Nance, Sharon A | Conduct research to identify Agent for Service of Process for Barrister Executive Suites; identify corporate information and agent for service and report to D. Rogers and J. Jones regarding matter. | 7/5/2017 | 0.4 | $265 | $106.00 |
| Zachow, Maureen L | Prepare documents for attorney review. | 7/17/2017 | 0.4 | $230 | $92.00 |
| Zachow, Maureen L | Prepare documents for production. | 7/17/2017 | 0.4 | $230 | $92.00 |
| Zachow, Maureen L | Prepare and organize documents for production. | 8/7/2017 | 0.4 | $230 | $92.00 |
| Yagade, Stephanie | Bates number and assemble documents for production. | 8/8/2017 | 1.0 | $120 | $120.00 |
| Zachow, Maureen L | Prepare and organize documents for production and draft letter re same. | 8/9/2017 | 1.1 | $230 | $253.00 |
| Yagade, Stephanie | Bates number and assemble documents for production. | 8/9/2017 | 2.1 | $120 | $252.00 |
| Nance, Sharon A | Conduct additional research to identify cell phone information for individual related to Colocation matter and report to D. Rogers regarding results. | 8/16/2017 | 0.5 | $265 | $132.50 |
| Zachow, Maureen L | Review database documents regarding asset transfer agreement and prepare documents for production. | 8/17/2017 | 1.6 | $230 | $368.00 |
| Zachow, Maureen L | Prepare document for production. | 8/18/2017 | 0.2 | $230 | $46.00 |
| Croley, Danielle | Assist in preparation of documents for deposition. | 8/21/2017 | 2.5 | $105 | $262.50 |
| Zachow, Maureen L | Prepare potential deposition exhibits. | 8/21/2017 | 0.8 | $230 | $184.00 |
| Zachow, Maureen L | Review documents regarding Majgan Tibibnia. | 8/21/2017 | 0.4 | $230 | $92.00 |
| Zachow, Maureen L | Telephone conference with court reporter regarding final transcript and exhibit  format . | 8/23/2017 | 0.3 | $230 | $69.00 |
| Zachow, Maureen L | Conference with D. Barker re capture of escrow.com documents and review declaration regarding same. | 9/13/2017 | 0.4 | $230 | $92.00 |
| Zachow, Maureen L | Prepare escrow.com documents for production and finalize declaration regarrding same. | 9/14/2017 | 0.6 | $230 | $138.00 |

| Fees and Costs for Arizona Case | | | | | |
|---|---|---|---|---|---|
| Croley, Danielle | Assist in preparation of documents for production. | 9/14/2017 | 1.5 | $105 | $157.50 |
| Croley, Danielle | Assist in preparation of documents for production. | 9/15/2017 | 0.7 | $105 | $73.50 |
| Weber, Jason M. | Order copies of the entire record regarding Collocation America Corporation from the Nevada Secretary of State's Office. | 9/15/2017 | 0.5 | $170 | $85.00 |
| Jones, Dana | Background research on Colocation America and Michael Trunkett. | 9/15/2017 | 0.4 | $175 | $70.00 |
| Zachow, Maureen L | Draft Notices of deposition and arrange of conference rooms and court reporter. | 9/18/2017 | 1.3 | $230 | $299.00 |
| Weber, Jason M. | Correspond with the Nevada Secretary of State's Office regarding the records request regarding Collocation America Corporation, receive same and provide to D. Barker. | 9/18/2017 | 0.3 | $170 | $51.00 |
| Zachow, Maureen L | Prepare documents for production. | 9/19/2017 | 0.3 | $230 | $69.00 |
| Nance, Sharon A | Conduct reverse WHOIS domain name search for Colocation America; obtain and review report listing data for 476 domain names. | 10/6/2017 | 1.2 | $265 | $318.00 |
| Zachow, Maureen L | Review database re potential deposition exhibits and prepare potential exhibits. | 10/18/2017 | 1.1 | $230 | $253.00 |
| Weber, Jason M. | Conference with D. Barker and the Nevada Secretary of State's Office re use of fictitious names, of people, in corporate documents; Order a copies of the fictitious firm name filings re Colocation America from the Clark County Nevada clerks office; Review the updated Nevada entity record and order a copy of the amended annual list from the Nevada Secretary of State's Office. | 10/19/2017 | 1.1 | $170 | $187.00 |
| Zachow, Maureen L | Prepare deposition subpoenas and potential deposition exhibits. | 10/20/2017 | 1.2 | $230 | $276.00 |
| Weber, Jason M. | Receive and review the fictitious firm name filings re Colocation America from the Clark County Nevada clerks office and the Amended 2017 annual list from the Nevada Secretary of states office and email D. Barker re same. | 10/20/2017 | 0.5 | $170 | $85.00 |
| Smith, Marissa J. | Prepare copies of LinkedIn pages for Michael Trunkett for production, conference with M. Zachow regarding same. | 11/7/2017 | 0.3 | $240 | $72.00 |
| Zachow, Maureen L | Prepare documents for attorney review in preparation for oral argument. | 2/28/2018 | 0.4 | $240 | $96.00 |
| Zachow, Maureen L | Review documents produced and prepare deposition preparation materials and follow up with J. Jones regarding same. | 3/15/2018 | 1.6 | $240 | $384.00 |
| Croley, Danielle | Assist in preparation of documents for use by D. Rogers during upcoming deposition. | 3/19/2018 | 2.3 | $120 | $276.00 |
| Zachow, Maureen L | Review discovery and prepare potential deposition exhibits. | 3/19/2018 | 0.7 | $240 | $168.00 |

| | Fees and Costs for Arizona Case | | | | |
|---|---|---|---|---|---|
| Croley, Danielle | Assist in preparation of supplemental documents for production. | 3/23/2018 | 1.5 | $120 | $180.00 |
| Croley, Danielle | Assist in preparation of documents for production to opposition. | 4/5/2018 | 1.5 | $120 | $180.00 |
| | **Total Paraprofessional Hours and Fees** | | **46.7** | | **$9,426.00** |
| | | | | | |
| | **COSTS** | | | | |
| 9010 | **Filing Fee** | | | | |
| | Jacob Jones; INVOICE#: 020917; DATE: 2/9/2017 | 2/9/2017 | | | $406.70 |
| | One Legal, Inc.; INVOICE#: 10839987; DATE: 2/16/2017 | 2/16/2017 | | | $49.95 |
| | One Legal, Inc.; INVOICE#: 10848438; DATE: 2/27/2017 | 2/27/2017 | | | $49.95 |
| | One Legal, Inc.; INVOICE#: 10877166; DATE: 3/24/2017 | 3/24/2017 | | | $66.15 |
| | **Total Filing Fees** | | | | **$572.75** |
| | | | | | |
| 9013 | **Meals** | | | | |
| | David E. Rogers; INVOICE#: 082217; DATE: 8/22/2017: Meal - Depositioin of A. Ahdoot | 8/24/2017 | | | $30.62 |
| | David E. Rogers; INVOICE#: 091917; DATE: 9/19/2017 -Reimb. Travel - MEALS - From: Phoenix To: LA 9/6/17 re: attending deposition of C.Kotler and continued 30(b)(6) deposition of Colocation | 9/19/2017 | | | $75.70 |
| | David G. Barker; INVOICE#: 102517; DATE: 10/25/2017 -Reimb. Travel - MEALS - From: Phoenix To: LA 10/24/17 re: attending depo of A. Adhoot | 10/25/2017 | | | $33.16 |
| | David E. Rogers INVOICE#: 2383848003281003 DATE: 3/28/2018 David Rogers - Dinner, 03/20/18, Deposition of A. Ahdoot, 03/20/2018 - 03/21/2018, Phoenix - Los Angeles, David Rogers | 3/20/2018 | | | $42.52 |
| | **Total Meals** | | | | **$182.00** |
| | | | | | |
| 9110 | **Transcripts** | | | | |
| | Alliance Reporting Solutions; INVOICE#: 1711139; DATE: 8/28/2017; Depositioin of A. Ahdoot | 8/28/2017 | | | $578.20 |
| | Gillespie's Reporting Services & Arbitration; INVOICE#: 2171094; DATE: 9/5/2017 | 9/5/2017 | | | $39.02 |

| Fees and Costs for Arizona Case | | | | |
|---|---|---|---|---|
| | Depo Technologies, LLC DBA DepoTech; INVOICE#: 2635; DATE: 9/19/2017 - Original transcript deposition with video of A.Ahdoot | 9/19/2017 | | | $2,183.40 |
| | Depo Technologies, LLC DBA DepoTech; INVOICE#: 2649; DATE: 9/21/2017. Transcript of C.Kotler | 9/21/2017 | | | $1,510.12 |
| | Depo Technologies, LLC DBA DepoTech; INVOICE#: 2684; DATE: 11/6/2017 - Deposition transcript of Albert Ahdoot | 11/6/2017 | | | $1,920.45 |
| | Total Transcripts | | | | $6,231.19 |
| | | | | | |
| 9125 | FedEx/UPS | | | | |
| | | 2/15/2017 | | | $10.38 |
| | | 2/15/2017 | | | $10.38 |
| | | 6/14/2017 | | | $15.66 |
| | | 7/17/2017 | | | $15.62 |
| | | 8/9/2017 | | | $10.36 |
| | | 8/17/2017 | | | $10.41 |
| | | 9/8/2017 | | | $22.46 |
| | | 9/28/2017 | | | $56.44 |
| | | 12/12/2017 | | | $23.91 |
| | Total FedEx/UPS | | | | $175.62 |
| | | | | | |
| 9145 | Postage | | | | |
| | | 9/15/2017 | | | $24.45 |
| | Total Postage | | | | $24.45 |
| | | | | | |
| 9151 | Messenger - Outside Service | | | | |
| | Intelliquick Delivery; INVOICE#: 639940; DATE: 2/18/2017 | 2/18/2017 | | | $18.53 |
| | Intelliquick Delivery; INVOICE#: 641585; DATE: 3/11/2017 | 3/11/2017 | | | $18.53 |
| | Intelliquick Delivery; INVOICE#: 649769; DATE: 6/30/2017 | 6/30/2017 | | | $33.35 |
| | Total Outside Messenger | | | | $70.41 |
| | | | | | |
| 9161 | Outside Copy Expense | | | | |
| | Secretary of State, Nevada; INVOICE#: IN000253613; DATE: 9/25/2017 | 9/25/2017 | | | $40.00 |
| | Capitol Services Inc.; INVOICE#: 6047874; DATE: 10/19/2017 | 10/19/2017 | | | $26.50 |

| Fees and Costs for Arizona Case | | | | |
|---|---|---|---|---|
| | Nevada Secretary of State Acct 75085; INVOICE#: INV000253999; DATE: 10/23/2017 | 10/23/2017 | | $2.00 |
| | **Total Outside Copy Expense** | | | **$68.50** |
| | | | | |
| 9180 | **Service of Process** | | | |
| | Transwest Investigations Inc.; INVOICE#: 71125; DATE: 6/21/2017 | | | $825.95 |
| | First Legal Network, LLC; INVOICE#: 10099662; DATE: 7/15/2017 | | | $243.87 |
| | First Legal Network, LLC; INVOICE#: 10099662; DATE: 7/15/2017 7/15/2017 | | | $218.10 |
| | Lasr, LLC - First Records; INVOICE#: 71723-01-01; DATE: 8/3/2017 8/3/2017 | | | $67.50 |
| | **Total Service of Process** | | | **$1,355.42** |
| | | | | |
| 9190 | **Misc Travel** | | | |
| | David E. Rogers INVOICE#: 2383848003281003 DATE: 3/28/2018 David Rogers - Taxi, 03/20/18, Deposition of A. Ahdoot, 03/20/2018 - 03/21/2018, Phoenix - Los Angeles | 3/20/2018 | 1 | $74.82 |
| | David E. Rogers INVOICE#: 2383848003281003 DATE:  3/28/2018 David Rogers - Uber, 03/20/18, Deposition of A. Ahdoot, 03/20/2018 - 03/21/2018, Phoenix - Los Angeles | 3/20/2018 | 1 | $8.95 |
| | David E. Rogers INVOICE#: 2383848003281003 DATE:  3/28/2018 David Rogers - Uber, 03/21/18, Deposition of A. Ahdoot, 03/20/2018 - 03/21/2018, Phoenix - Los Angeles | 3/21/2018 | 1 | $12.01 |
| | David E. Rogers INVOICE#: 2383848003281003 DATE:  3/28/2018 David Rogers - Uber, 03/21/18, Deposition of A. Ahdoot, 03/20/2018 - 03/21/2018, Phoenix - Los Angeles | 3/21/2018 | 1 | $55.65 |
| | **Total Misc Travel** | | 4 | **$151.43** |
| | | | | |
| 9210 | **Witness Fee** | | | |
| | Dividend Advisors, LLC; REQUEST#: 579548; DATE: 6/14/2017.  - 55928.00004 | 6/14/2017 | | $66.00 |
| | Corey Allen; REQUEST#: 579549; DATE: 6/14/2017. -55928.00004 | 6/14/2017 | | $66.00 |
| | Corey A. Kotler; REQUEST#: 581734; DATE: 7/17/2017. - 55928.00004 | 7/17/2017 | | $68.00 |

| | Fees and Costs for Arizona Case | | | | |
|---|---|---|---|---|---|
| | Total Witness Fee | | | | $200.00 |
| | | | | | |
| 9232 | **Hotel Accommodations** | | | | |
| | David E. Rogers; INVOICE#: 101416A; DATE: 10/14/2016 10/14/2016 Hotel accomodations for Travel from San Jose to Los Angeles 10/13-14/2016 | | | | $467.40 |
| | David E. Rogers; INVOICE#: 082417; DATE: 8/24/2017: Hotel | 8/24/2017 | | | $419.11 |
| | David E. Rogers; INVOICE#: 091917; DATE: 9/19/2017 - Reimb. Travel - HOTEL - From: Phoenix To: LA 9/6/17 re: attending deposition of C.Kotler and continued 30(b)(6) deposition of Colocation | 9/19/2017 | | | $363.97 |
| | David E. Rogers INVOICE#: 2383848003281003 DATE: 3/28/2018 David Rogers - Hotel - Lodging, Receipt date: 03/20/18, Check-in Date: 03/20/2018, Check-out Date: 03/21/2018 | 3/20/2018 | | | $311.72 |
| | Total Hotel Accommodations | | | | **$1,562.20** |
| | | | | | |
| | **Business Meal Paid** | | | | |
| | Chase Purchasing Cards INVOICE#: 092517_PHX DATE: 092517 SQU - SQ *CRAVE SANDWICH | 8/21/2017 | | | $31.24 |
| | Total Business Meal Paid | | | | **$31.24** |
| | | | | | |
| 9265 | **Research Services Paid** | | | | |
| | Clarivate Analytics (Compumark) Inc.; INVOICE#: 11/28/2017 2017057211; DATE: 11/28/2017 | | | | $239.00 |
| | David E. Rogers INVOICE#: 2392614304021004 DATE: 3/30/2018 David Rogers - Research, 03/30/18, Publications regarding English grammar rules. | 1 | | | $66.32 |
| | Total Research Services Paid | 1 | | | **$305.32** |
| | | | | | |
| 9268 | **Transcript of Proceedings** | | | | |
| | Linda Schroeder, RDR, CRR; INVOICE#: 00002442; 3/15/2017 DATE: 3/15/2017 | | | | $278.30 |

| | Fees and Costs for Arizona Case | | | | |
|---|---|---|---|---|---|
| | L and D Reporting Inc.; INVOICE#: 20170090; DATE: 11/8/2017 11/8/2017 | | | | $194.00 |
| | Laurie Adams DBA L and D Reporting Inc.; INVOICE#: 4/11/2018 20170147; DATE: 4/11/2018 | | | | $145.50 |
| | **Total Transcript of Proceedings** | | | | **$617.80** |
| | | | | | |
| 9272 | **Deposition Fee Paid** | | | | |
| | Lasr, LLC - First Records; INVOICE#: 71814-01-01; DATE: 7/31/2017 7/31/2017 | | | | $67.50 |
| | **Total Deposition Fee Paid** | | | | **$67.50** |
| | | | | | |
| 9285 | **Litigation Support** | | | | |
| | Brandon W. Abbey; INVOICE#: 092217; DATE: 9/22/2017 9/22/2017 - Consulting regarding escrow.com procedures | | | | $400.00 |
| | **Total Litigation Support** | | | | **$400.00** |
| | | | | | |
| 9294 | **Professional Services Rendered** | | | | |
| | Transwest Investigations Inc.; INVOICE#: 71174; DATE: 7/27/2017 7/27/2017 | | | | $4,023.00 |
| | Transwest Investigations Inc.; INVOICE#: 71329; DATE: 11/6/2017 11/6/2017 | | | | $1,952.25 |
| | **Total Professional Services Rendered** | | | | **$5,975.25** |
| | | | | | |
| 9306 | **Video Deposition Transcript** | | | | |
| | Depo Technologies, LLC DBA DepoTech; INVOICE#: 2813 and 2825; DATE: 4/3/2018  -  Transcript of Albert Ahdoot deposition on 3/21/18. | | | | $888.30 |
| | **Total Video Deposition Transcript** | | | | **$888.30** |
| | | | | | |
| 9313 | **Courier Service** | | | | |
| | First Legal Network, LLC; INVOICE#: 10102034; DATE: 7/31/2017 7/31/2017 | | | | $227.58 |
| | First Legal Network, LLC; INVOICE#: 10102034; DATE: 7/31/2017 7/31/2017 | | | | $259.53 |

| | Fees and Costs for Arizona Case | | | | |
|---|---|---|---|---|---|
| | IntelliQuick Delivery; INVOICE#: 654601; DATE: 9/23/2017 9/23/2017 | | | | $12.35 |
| | Intelliquick Delivery; INVOICE#: 656348; DATE: 10/21/2017 10/21/2017 | | | | $18.53 |
| | Intelliquick Delivery; INVOICE#: 666923; DATE: 3/17/2018 3/17/2018 | | | | $18.53 |
| | **Total Courier Service** | | | | **$536.52** |
| | | | | | |
| 9345 | **Airfare** | | | | |
| | David E. Rogers; INVOICE#: 082417; DATE: 8/24/2017: 8/24/2017 Air fare | | | | $458.05 |
| | David E. Rogers; INVOICE#: 091917; DATE: 9/19/2017 - 9/19/2017 Reimb. Travel - AIRFARE - From: Phoenix To: LA 9/6/17 re: attending deposition of C.Kotler and continued 30(b)(6) deposition of Colocation | | | | $163.20 |
| | David G. Barker; INVOICE#: 102517; DATE: 10/25/2017 - 10/25/2017 Reimb. Travel - AIRFARE - From: Phoenix To: LA 10/24/17 re: attending depo of A. Adhoot | | | | $493.96 |
| | David E. Rogers INVOICE#: 2362985903271000 DATE: 3/16/2018 3/27/2018 David Rogers - Airfare, 03/16/18, Deposition of Albert Ahdoot, 03/20/2018 - 03/21/2018, Phoenix - Los Angeles | | | | $308.60 |
| | **Total Airfare** | | | | **$1,423.81** |
| | | | | | |
| 9352 | **Delivery Charges** | | | | |
| | Intelliquick Delivery; INVOICE#: 670749; DATE: 5/5/2018 5/5/2018 | | | | $13.89 |
| | **Total Delivery Charges** | | | | **$13.89** |
| | | | | | |
| 9354 | **Pacer Service** | | | | |
| | Pacer Service Center Nevada #4398876; INVOICE#: 4398876-Q42016; DATE: 1/9/2017  -  Usage for 10/1/16 - 12/31/16 | 1/9/2017 | | | $0.20 |
| | Pacer Service Center Nevada #4398876; INVOICE#: 4398876-Q12017; DATE: 5/31/2017 | 5/31/2017 | | | $12.60 |

| Fees and Costs for Arizona Case | | | | |
|---|---|---|---|---|
| | Pacer Service Center Arizona #4413927; INVOICE#: 4413927-Q32017; DATE: 10/6/2017  -  QUARTERLY. Pacer usage July 1, 2017-September 30,2017. | 10/6/2017 | | | $0.70 |
| | Pacer Service Center Arizona #4413927; INVOICE#: 4413927-Q32017; DATE: 10/6/2017  -  QUARTERLY. Pacer usage July 1, 2017-September 30,2017. | 10/6/2017 | | | $0.50 |
| | Pacer Service Center Arizona #4413927; INVOICE#: 4413927-Q32017; DATE: 10/6/2017  -  QUARTERLY. Pacer usage July 1, 2017-September 30,2017. | 10/6/2017 | | | $2.50 |
| | Pacer Service Center Nevada #4398876; INVOICE#: 4398876-Q42017; DATE: 1/8/2018 | 1/8/2018 | | | $0.60 |
| | Pacer Service Center Acct #4413927; REQUEST#: 595673; DATE: 1/22/2018. | 1/22/2018 | | | $9.20 |
| | Pacer Service Center Nevada #4398876; INVOICE#: 4398876-Q12018; DATE: 3/31/2018 | 3/31/2018 | | | $2.10 |
| | Total Pacer Service | | | | **$28.40** |
| | | | | | |
| 9400 | **WestLaw Research** | | | | |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 6/27/2016 | | -22.0 | -$110.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 6/27/2016 | | 22.0 | $110.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 6/27/2016 | | 22.0 | $110.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 6/28/2016 | | 20.0 | $100.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 6/28/2016 | | 20.0 | $100.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 6/28/2016 | | -20.0 | -$100.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 6/29/2016 | | 58.0 | $290.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 6/29/2016 | | -58.0 | -$290.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 6/29/2016 | | 58.0 | $290.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 6/30/2016 | | 3.0 | $15.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 6/30/2016 | | 3.0 | $15.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 6/30/2016 | | -3.0 | -$15.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 7/1/2016 | | -50.0 | -$250.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 7/1/2016 | | 50.0 | $250.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 7/1/2016 | | 50.0 | $250.00 |
| | JONES, JACOB Westlaw Legal Research | 7/8/2016 | | -75.0 | -$375.00 |

| Fees and Costs for Arizona Case | | | | |
|---|---|---|---|---|
| | JONES, JACOB Westlaw Legal Research | 7/8/2016 | | 75.0 | $375.00 |
| | JONES, JACOB Westlaw Legal Research | 7/8/2016 | | 75.0 | $375.00 |
| | JONES, JACOB Westlaw Legal Research | 7/11/2016 | | 22.0 | $110.00 |
| | JONES, JACOB Westlaw Legal Research | 7/11/2016 | | 22.0 | $110.00 |
| | JONES, JACOB Westlaw Legal Research | 7/11/2016 | | -22.0 | -$110.00 |
| | JONES, JACOB Westlaw Legal Research | 7/26/2016 | | 41.0 | $205.00 |
| | JONES, JACOB Westlaw Legal Research | 8/24/2016 | | 27.0 | $135.00 |
| | JONES, JACOB Westlaw Legal Research | 8/25/2016 | | 103.0 | $515.00 |
| | JONES, JACOB Westlaw Legal Research | 8/26/2016 | | 23.0 | $115.00 |
| | PALMER, STACY Westlaw Legal Research | 8/30/2016 | | 35.0 | $175.00 |
| | JONES, JACOB Westlaw Legal Research | 8/31/2016 | | 15 | $75.00 |
| | JONES, JACOB Westlaw Legal Research | 9/1/2016 | | 10 | $50.00 |
| | JONES, JACOB Westlaw Legal Research | 9/7/2016 | | 1 | $5.00 |
| | HELWIG, ZHANNA Westlaw Legal Research | 9/14/2016 | | 13 | $65.00 |
| | HELWIG, ZHANNA Westlaw Legal Research | 9/14/2016 | | 4 | $20.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 9/20/2016 | | 43 | $215.00 |
| | JONES, JACOB Westlaw Legal Research | 9/21/2016 | | 240 | $1,200.00 |
| | JONES, JACOB Westlaw Legal Research | 9/22/2016 | | 118 | $590.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 9/27/2016 | | 4 | $20.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 9/28/2016 | | 2 | $10.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 9/28/2016 | | 9 | $45.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 9/29/2016 | | 69 | $345.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 9/29/2016 | | 9 | $45.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 9/30/2016 | | 2 | $10.00 |
| | HUA, JENNY Westlaw Legal Research | 10/8/2016 | | 54 | $270.00 |
| | JONES, JACOB Westlaw Legal Research | 10/11/2016 | | 23 | $115.00 |
| | HUA, JENNY Westlaw Legal Research | 10/13/2016 | | 10 | $50.00 |
| | HUA, JENNY Westlaw Legal Research | 10/27/2016 | | 8 | $40.00 |
| | HUA, JENNY Westlaw Legal Research | 10/28/2016 | | 75 | $375.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 10/31/2016 | | 13 | $65.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 11/1/2016 | | 16 | $80.00 |
| | HUA, JENNY Westlaw Legal Research | 11/7/2016 | | 24 | $120.00 |
| | HUA, JENNY Westlaw Legal Research | 11/10/2016 | | 1 | $5.00 |

| | Fees and Costs for Arizona Case | | | | |
|---|---|---|---|---|---|
| | TADLOCK, LYNDSEY Westlaw Legal Research | 12/7/2016 | | 15 | $75.00 |
| | KOWING, KAREN Westlaw Legal Research | 1/26/2017 | | 5 | $25.00 |
| | JONES, JACOB Westlaw Legal Research | 2/2/2017 | | 27 | $135.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 2/12/2017 | | 72 | $360.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 2/13/2017 | | 1 | $5.00 |
| | JONES, JACOB Westlaw Legal Research | 2/14/2017 | | 64 | $320.00 |
| | JONES, JACOB Westlaw Legal Research | 2/15/2017 | | 20 | $100.00 |
| | TADLOCK, LYNDSEY Westlaw Legal Research | 2/23/2017 | | 6 | $30.00 |
| | JONES, JACOB Westlaw Legal Research | 2/27/2017 | | 65 | $325.00 |
| | JONES, JACOB Westlaw Legal Research | 3/2/2017 | | 85 | $425.00 |
| | JONES, JACOB Westlaw Legal Research | 3/6/2017 | | 4 | $20.00 |
| | HAWKINS, LORI Westlaw Legal Research | 4/11/2017 | | 1 | $5.00 |
| | JONES, JACOB Westlaw Legal Research | 9/6/2017 | | 25 | $125.00 |
| | JONES, JACOB Westlaw Legal Research | 10/13/2017 | | 66 | $330.00 |
| | JONES, JACOB Westlaw Legal Research | 10/17/2017 | | 83 | $415.00 |
| | JONES, JACOB Westlaw Legal Research | 10/20/2017 | | 72 | $360.00 |
| | JONES, JACOB Westlaw Legal Research | 10/23/2017 | | 29 | $145.00 |
| | JONES, JACOB Westlaw Legal Research | 10/31/2017 | | 23 | $115.00 |
| | JONES, JACOB Westlaw Legal Research | 11/3/2017 | | 15 | $75.00 |
| | JONES, JACOB Westlaw Legal Research | 11/9/2017 | | 38 | $190.00 |
| | JONES, JACOB Westlaw Legal Research | 11/27/2017 | | 29 | $145.00 |
| | JONES, JACOB Westlaw Legal Research | 11/29/2017 | | 31 | $155.00 |
| | JONES, JACOB Westlaw Legal Research | 12/1/2017 | | 22 | $110.00 |
| | JONES, JACOB Westlaw Legal Research | 12/6/2017 | | 2 | $10.00 |
| | JONES, JACOB Westlaw Legal Research | 12/7/2017 | | 25 | $125.00 |
| | JONES, JACOB Westlaw Legal Research | 2/28/2018 | | 25 | $125.00 |
| | BARKER, DAVID Westlaw Legal Research | 4/18/2018 | | 9 | $45.00 |
| | JONES, JACOB Westlaw Legal Research | 4/25/2018 | | 25 | $125.00 |
| | JONES, JACOB Westlaw Legal Research | 4/27/2018 | | 26 | $130.00 |
| | JONES, JACOB Westlaw Legal Research | 5/1/2018 | | 20 | $100.00 |
| | JONES, JACOB Westlaw Legal Research | 5/24/2018 | | 157 | $785.00 |
| | **Total WestLaw Research** | | | **2,329** | **$11,645.00** |
| | | | | | |

| Fees and Costs for Arizona Case | | | | |
|---|---|---|---|---|
| 9421 | **Color Copies** | | | |
| | | 8/26/2016 | 2 | $1.00 |
| | | 8/26/2016 | 2 | $1.00 |
| | | 11/1/2017 | 44 | $22.00 |
| | | 11/1/2017 | 1 | $0.50 |
| | Copy Expense | 4/20/2018 | 917 | $456.40 |
| | Jones Jacob Color Copies | 5/30/2018 | 22 | $11.00 |
| | **Total Color Copies** | | **988** | **$491.90** |
| | | | | |
| 9443 | **Courtcall Services Rendered** | | | |
| | VENDOR: Courtcall, LLC; INVOICE#: 072216; DATE: 7/22/2016 7/22/2016 | | | $86.00 |
| | VENDOR: Courtcall, LLC; INVOICE#: 08242016; DATE: 8/24/2016 8/24/2016 | | | $116.00 |
| | VENDOR: Courtcall, LLC; INVOICE#: 012517; DATE: 1/28/2017 1/28/2017 | | | $86.00 |
| | VENDOR: Courtcall, LLC; INVOICE#: 01/26-03/16/17; DATE: 3/22/2017 3/22/2017 | | | $86.00 |
| | **Total Courtcall Services Rendered** | | | **$374.00** |
| | | | | |
| 9500 | **Fax Charges** | | | |
| | | 7/1/2016 | 29 | $43.50 |
| | **Total Fax Charges** | | **29** | **$43.50** |
| | | | | |
| 9663 | **On-Line Research/Services** | | | |
| | Milt Policzer; INVOICE#: 916; DATE: 10/4/2016 10/4/2016 | | | $9.50 |
| | **On-Line Research/Services** | | | **$9.50** |
| | | | | |
| 9670 | **Parking** | | | |
| | Lyndsey Torp; INVOICE#: 102116; DATE: 10/21/2016 - 10/21/2016 Parking for  Travel from Costa Mesa to Los Angeles 10/15/16 | | | $25.00 |

| Fees and Costs for Arizona Case | | | | |
|---|---|---|---|---|
| | David E. Rogers; INVOICE#: 091917; DATE: 9/19/2017 - 9/19/2017 Reimb. Travel - PARKING - From: Phoenix To: LA 9/6/17 re: attending deposition of C.Kotler and continued 30(b)(6) deposition of Colocation | | | $98.00 |
| | VENDOR: David G. Barker; INVOICE#: 102517; DATE: 10/25/2017 - 10/25/2017 Reimb. Travel - PARKING -From: Phoenix To: LA 10/24/17 re: attending depo of A. Adhoot | | | $25.00 |
| | **Total Parking** | | | **$148.00** |
| | | | | |
| 9671 | **Ground Transportation** | | | |
| | David E. Rogers; INVOICE#: 111116; DATE: 11/11/2016 - 11/11/2016 Ground Transportation for Travel to Los Angeles 10/13/16-10/14/16 | | | $65.00 |
| | David E. Rogers; INVOICE#: 082417; DATE: 8/24/2017: 8/24/2017 Ground Transportation | | | $140.69 |
| | David E. Rogers; INVOICE#: 091317A; DATE: 9/13/2017 9/13/2017 - Reimb. Travel - GROUND TRANSPORATION - From: Phoenix To: LA 9/6/17 re: attending deposition of C.Kotler and continues 30(b)(6) deposition of Colocation | | | $12.75 |
| | David E. Rogers; INVOICE#: 091917; DATE: 9/19/2017 - 9/19/2017 Reimb. Travel - GROUND TRANSPORATION - From: Phoenix To: LA 9/6/17 re: attending deposition of C.Kotler and continued 30(b)(6) deposition of Colocation | | | $97.17 |
| | David G. Barker; INVOICE#: 102517; DATE: 10/25/2017 - 10/25/2017 Reimb. Travel - GROUND TRANSPORATION - From: Phoenix To: LA 10/24/17 re: attending depo of A. Adhoot | | | $95.39 |
| | **Total Ground Transportation** | | | **$411.00** |
| | | | | |
| 9701 | **Imaging** | | | |
| | | 6/15/2017 | | $2,447.75 |
| | | 6/21/2017 | | $207.50 |
| | | 6/29/2017 | | $25.15 |
| | | 6/29/2017 | | $33.60 |
| | | 7/17/2017 | | $50.33 |
| | | 9/5/2017 | | $100.98 |

| | Fees and Costs for Arizona Case | | | | |
|---|---|---|---|---|---|
| | NOVITEX DIGITAL SERVICES-PHX Imaging | 4/20/2018 | | | $137.15 |
| | **Total Imaging** | | | | **$3,002.46** |
| | | | | | |
| | **Costs Total** | | | | **$37,007.36** |
| | **Grand Total** | | **904.6** | **3,350** | **$481,438.36** |

# EXHIBIT 2D

| Fees and Costs for California Case | | | | | |
|---|---|---|---|---|---|
| **Attorney** | **Description of Legal Services** | **Date** | **Hrs** | **Rate** | **Total** |
| Rogers, David E. | Conference with M. Whittington and C. Pillote and begin drafting letter concerning improper service and lack of personal jurisdiction. | 6/22/2016 | 1.4 | $605.00 | $847.00 |
| Barker, David G. | Review and assess complaint by Colocation and develop strategy regarding improper service of process. | 6/22/2016 | 1.8 | $435.00 | $783.00 |
| Montecuollo, Peter | Review and analyze California's rules of procedure regarding service and prepare correspondence to D. Rogers regarding same. | 6/22/2016 | 0.5 | $210.00 | $105.00 |
| Barker, David G. | Revise draft letter to Colocation's counsel requesting dismissal of the complaint for lack of jurisdiction and improper service of process (3.7); investigate removal requirements to federal court for Colocation's complaint (.5). | 6/23/2016 | 4.2 | $435.00 | $1,827.00 |
| Rogers, David E. | Research law on service of process and personal jurisdiction in California for a contract dispute (1.8); review Domain Name Assignment Agreement and Complaint as filed (0.6); finalize letter to counsel for Colocation to dismiss Complaint (1.2). | 6/24/2016 | 3.6 | $605.00 | $2,178.00 |
| Barker, David G. | Assess defenses to Colocation's breach of contract allegations in the complaint. | 6/24/2016 | 1.3 | $435.00 | $565.50 |
| Rogers, David E. | Prepare letter concerning Contract rescission and fraud to Colocation attorney (1.4); research mutual mistake, unilateral mistake, and lack of consideration (1.4). | 6/27/2016 | 2.8 | $605.00 | $1,694.00 |
| Torp, Lyndsey Ann | Research regarding timing requirement for filing motion to quash in Los Angeles County Court. | 6/27/2016 | 0.6 | $460.00 | $276.00 |
| Barker, David G. | Assess background facts and emails regarding the Colocation dispute (.5); revise letter to Colocation's counsel regarding defects in contract and complaint, and conduct legal research in support of the same (2.8). | 6/27/2016 | 3.3 | $435.00 | $1,435.50 |
| Rogers, David E. | Begin preparation of Motion to Dismiss for Lack of Personal Jurisdiction and Improper Service. | 6/28/2016 | 4.0 | $605.00 | $2,420.00 |
| Torp, Lyndsey Ann | Research regarding Canada's application of the Hague Convention for service. | 6/28/2016 | 1.8 | $460.00 | $828.00 |
| Rogers, David E. | Continue preparation of Motion to Dismiss for lack of personal jurisdiction (4.2) and Declaration of Michelle Whittington (1.0). | 6/29/2016 | 5.2 | $605.00 | $3,146.00 |
| Torp, Lyndsey Ann | Legal research regarding lack of personal jurisdiction (2.2). | 6/29/2016 | 1.1 | $460.00 | $506.00 |
| Torp, Lyndsey Ann | Revise motion to dismiss for lack of personal jurisdiction and communications with D. Rogers regarding same (1.0). | 6/29/2016 | 2.1 | $460.00 | $966.00 |
| Torp, Lyndsey Ann | Finalize motion to dismiss for lack of personal jurisdiction for filing in Los Angeles County Court. | 6/30/2016 | 1.1 | $460.00 | $506.00 |

| Fees and Costs for California Case | | | | | |
|---|---|---|---|---|---|
| Rogers, David E. | Communications with M. Whittington and prepare and revise Declaration of M. Whittington (2.5) and Motion to Dismiss for Lack of Personal Jurisdiction (2.0), and prepare Exhibits 1A-1C (0.5). | 6/30/2016 | 5.0 | $605.00 | $3,025.00 |
| Torp, Lyndsey Ann | Research removal of action from state court to federal court per instructions from D. Rogers. | 7/1/2016 | 2.8 | $460.00 | $1,288.00 |
| Torp, Lyndsey Ann | Revise motion for admission pro hac vice of D. Rogers. | 7/5/2016 | 0.8 | $460.00 | $368.00 |
| Torp, Lyndsey Ann | Further research regarding removal of case, including burden of proof in meeting federal court jurisdictional requirements. | 7/6/2016 | 2.2 | $460.00 | $1,012.00 |
| Jones, Jacob | Legal research regarding removal to federal court, correspondence with D. Rogers and D. Barker concerning same, and provide summary of same to D. Rogers, in connection with developing strategies to improve likelihood of success in the litigation. | 7/8/2016 | 5.4 | $305.00 | $1,647.00 |
| Jones, Jacob | Follow-up research and correspondence with D. Rogers concerning removal issue. | 7/11/2016 | 0.6 | $305.00 | $183.00 |
| Barker, David G. | Assess Colocation's requests for production and interrogatories to develop arguments that both are untimely; discussion with D. Rogers regarding same. | 7/25/2016 | 0.8 | $435.00 | $348.00 |
| Torp, Lyndsey Ann | Review discovery requests from plaintiff and research regarding service of discovery prior to hearing on personal jurisdiction motion. | 7/25/2016 | 0.5 | $460.00 | $230.00 |
| Jones, Jacob | Legal research in support of motion to quash in anticipation of reply brief, calculate deadlines for opposition and reply briefs, and correspondence with D. Rogers concerning same; legal research regarding sufficiency of service of process, where such service was not done through Hague convention procedures per D. Rogers. | 7/26/2016 | 3.8 | $305.00 | $1,159.00 |
| Barker, David G. | Continue assessing issues relating to discovery served pre-Rule 26 by Colocation (1.3) assess issues regarding service of Complaint in Canada (.7); review pleadings and orders regarding motion to quash (.4). | 7/26/2016 | 2.4 | $435.00 | $1,044.00 |
| Torp, Lyndsey Ann | Finalize pro hac vice motion for filing | 8/1/2016 | 0.3 | $460.00 | $138.00 |
| Torp, Lyndsey Ann | Review shell responses to plaintiff's discovery requests | 8/1/2016 | 0.1 | $460.00 | $46.00 |
| Torp, Lyndsey Ann | Email D. Rogers regarding responses to discovery requests | 8/1/2016 | 0.1 | $460.00 | $46.00 |
| Torp, Lyndsey Ann | Finalize motion for D. Rogers' admission pro hac vice for filing | 8/2/2016 | 0.4 | $460.00 | $184.00 |
| Torp, Lyndsey Ann | Emails with D. Rogers regarding admission pro hac vice | 8/2/2016 | 0.1 | $460.00 | $46.00 |
| Rogers, David E. | Communications with M. Whittington regarding case status and possible settlement. | 8/3/2016 | 0.4 | $605.00 | $242.00 |
| Rogers, David E. | Conference with opposing counsel concerning possible settlement options. | 8/12/2016 | 0.3 | $605.00 | $181.50 |
| Ricks, Ryan Dale | Further assess issues regarding IPv4 addresses; telephone conference with D. Rogers regarding same. | 8/18/2016 | 0.4 | $485.00 | $194.00 |

| Fees and Costs for California Case | | | | | |
|---|---|---|---|---|---|
| Rogers, David E. | Conference call with opposing counsel regarding potential settlement options. | 8/18/2016 | 0.6 | $605.00 | $363.00 |
| Rogers, David E. | Conference with M. Whittington and begin preparation of responses to Interrogatories and Requests for Production of Documents. | 8/19/2016 | 1.0 | $605.00 | $605.00 |
| Jones, Jacob | Review and analyze Colocation's opposition brief to Mitel's motion to quash (dismiss) for lack of personal jurisdiction, and review cases cited therein. | 8/22/2016 | 1.5 | $305.00 | $457.50 |
| Barker, David G. | Revise responses to Colocation's interrogatories. | 8/22/2016 | 1.7 | $435.00 | $739.50 |
| Torp, Lyndsey Ann | Emails with D. Rogers regarding reply deadlines. | 8/22/2016 | 0.2 | $460.00 | $92.00 |
| Rogers, David E. | Prepare objections and draft responses to Colocation interrogatories and Responses to Interrogatories. | 8/22/2016 | 4.0 | $605.00 | $2,420.00 |
| Torp, Lyndsey Ann | Review court docket regarding opposition to motion to quash. | 8/22/2016 | 0.2 | $460.00 | $92.00 |
| Barker, David G. | Further review of responses to Colocation's interrogatories. | 8/23/2016 | 0.4 | $435.00 | $174.00 |
| Jones, Jacob | Legal research to support reply brief in support of moving to quash (dismiss) for lack of personal jurisdiction, and correspondence with D. Rogers concerning same. | 8/23/2016 | 3.8 | $305.00 | $1,159.00 |
| Torp, Lyndsey Ann | Email D. Rogers regarding case management statement served by plaintiff | 8/23/2016 | 0.4 | $460.00 | $184.00 |
| Rogers, David E. | Continue preparation of Responses to Interrogatories and production of Document Request (1.4); prepare Reply Brief in Support of Motion to Dismiss (4.9); review Plaintiff's Pre-Case Management Conference form (0.2). | 8/23/2016 | 6.5 | $605.00 | $3,932.50 |
| Torp, Lyndsey Ann | Draft case management statement. | 8/23/2016 | 0.4 | $460.00 | $184.00 |
| Barker, David G. | Revise responses to requests for production regarding personal jurisdiction. | 8/24/2016 | 1.0 | $435.00 | $435.00 |
| Jones, Jacob | Review and revise draft reply brief in support of motion to quash (dismiss) for lack of personal jurisdiction, and continue legal research in support of same. | 8/24/2016 | 5.8 | $305.00 | $1,769.00 |
| Rogers, David E. | Continue preparation of Reply Brief and review of Opposition and Exhibits. | 8/24/2016 | 5.0 | $605.00 | $3,025.00 |
| Torp, Lyndsey Ann | Email D. Rogers regarding objection regarding confidential documents. | 8/24/2016 | 0.1 | $460.00 | $46.00 |
| Torp, Lyndsey Ann | Draft verifications to responses to plaintiff's written discovery requests. | 8/24/2016 | 0.2 | $460.00 | $92.00 |
| Jones, Jacob | Continue researching additional cases to cite in reply brief, and continue revising same, and correspondence with D. Rogers concerning same. | 8/25/2016 | 5.5 | $305.00 | $1,677.50 |
| Rogers, David E. | Legal research regarding specific personal jurisdiction for contract cases in California; prepare Reply Brief and Second Declaration of M. Whittington. | 8/25/2016 | 4.0 | $605.00 | $2,420.00 |

| Fees and Costs for California Case | | | | | |
|---|---|---|---|---|---|
| Rogers, David E. | Make revisions to Interrogatory Responses (0.2); continue preparation of Reply Brief and add/check factual and legal citations (5.8). | 8/26/2016 | 6.0 | $605.00 | $3,630.00 |
| Torp, Lyndsey Ann | Further conference with J. Jones regarding status of verifications. | 8/26/2016 | 0.1 | $460.00 | $46.00 |
| Jones, Jacob | Confirm factual and legal citations, proof reply brief, and forward to L. Torp for filing. | 8/26/2016 | 1.5 | $305.00 | $457.50 |
| Jones, Jacob | Draft additional section of reply brief, to show why plaintiff's cited case is not applicable to the facts in this case. | 8/26/2016 | 2.2 | $305.00 | $671.00 |
| Torp, Lyndsey Ann | Finalize reply for filing. | 8/26/2016 | 0.5 | $460.00 | $230.00 |
| Torp, Lyndsey Ann | Revise and finalize response to special interrogatory for filing. | 8/26/2016 | 0.7 | $460.00 | $322.00 |
| Torp, Lyndsey Ann | Review and finalize for service response to request for production of documents. | 8/26/2016 | 0.3 | $460.00 | $138.00 |
| Torp, Lyndsey Ann | Emails with D. Rogers regarding discovery responses, verifications, documents. | 8/26/2016 | 0.2 | $460.00 | $92.00 |
| Torp, Lyndsey Ann | Email counsel for plaintiff regarding discovery responses. | 8/26/2016 | 0.1 | $460.00 | $46.00 |
| Torp, Lyndsey Ann | Telephone conference with J. Jones regarding document production. | 8/29/2016 | 0.1 | $460.00 | $46.00 |
| Torp, Lyndsey Ann | Draft amended response to special interrogatories. | 8/29/2016 | 0.4 | $460.00 | $184.00 |
| Rogers, David E. | Review emails and documents exchanged between Mitel and Cory Allen. | 8/29/2016 | 0.8 | $605.00 | $484.00 |
| Jones, Jacob | Review, and mark for appropriate redactions, discovery documents prior to producing them to Colocation's counsel. | 8/29/2016 | 2.1 | $305.00 | $640.50 |
| Torp, Lyndsey Ann | Email counsel for plaintiff regarding verifications to discovery responses. | 8/29/2016 | 0.1 | $460.00 | $46.00 |
| Torp, Lyndsey Ann | Emails with D. Rogers regarding motion to quash hearing, verifications to discovery, and document production. | 8/29/2016 | 0.3 | $460.00 | $138.00 |
| Torp, Lyndsey Ann | Review court's tentative ruling on application for admission pro hac vice and email D. Rogers regarding same. | 8/29/2016 | 0.2 | $460.00 | $92.00 |
| Torp, Lyndsey Ann | Prepare for hearing on motion for admission of D. Rogers pro hac vice. | 8/29/2016 | 0.3 | $460.00 | $138.00 |
| Torp, Lyndsey Ann | Emails with team regarding service of complaint on Mitel. | 8/30/2016 | 0.1 | $460.00 | $46.00 |
| Torp, Lyndsey Ann | Telephone conference with D. Rogers regarding status, motion to quash hearing, case management conference. | 8/30/2016 | 0.3 | $460.00 | $138.00 |
| Torp, Lyndsey Ann | Email D. Rogers regarding amended discovery responses. | 8/30/2016 | 0.1 | $460.00 | $46.00 |
| Torp, Lyndsey Ann | Email D. Rogers summary of hearing on motion pro hac vice, needed items for upcoming motion to quash hearing and case management conference. | 8/30/2016 | 0.4 | $460.00 | $184.00 |
| Rogers, David E. | Begin review of documents and evidence for oral argument. | 8/30/2016 | 0.5 | $605.00 | $302.50 |
| Torp, Lyndsey Ann | Finalize case management conference statement for filing and service. | 8/30/2016 | 0.2 | $460.00 | $92.00 |
| Torp, Lyndsey Ann | Draft notice of ruling regarding motion to admit D. Rogers pro hac vice. | 8/30/2016 | 0.3 | $460.00 | $138.00 |
| Torp, Lyndsey Ann | Attend hearing on motion to admit D. Rogers pro hac vice. | 8/30/2016 | 0.9 | $460.00 | $414.00 |

| Fees and Costs for California Case | | | | | |
|---|---|---|---|---|---|
| Torp, Lyndsey Ann | Review docket regarding entry of order on application to admit D. Rogers pro hac vice. | 8/31/2016 | 0.1 | $460.00 | $46.00 |
| Torp, Lyndsey Ann | Telephone conference with J. Jones regarding prior judge assigned to matter. | 8/31/2016 | 0.1 | $460.00 | $46.00 |
| Torp, Lyndsey Ann | Draft stipulation to continue hearing date on motion to quash and case management conference. | 8/31/2016 | 0.6 | $460.00 | $276.00 |
| Jones, Jacob | Investigate ARIN records to attempt to find any pattern or evidence of wrongdoing by Colocation, investigate Colocation's attorneys, and review prior cases involving Colocation, including case where Colocation (with P. Sigelman as counsel) lost defamation case, and lost on appeal, in Los Angeles county, and internet searches in attempt to uncover further evidence of Colocation misconduct, and correspondence with D. Rogers concerning same. | 8/31/2016 | 3.5 | $305.00 | $1,067.50 |
| Rogers, David E. | Continue preparation for oral argument on September 2, 2016 (review cases and briefing) (1.0); various communications with opposing counsel regarding moving hearing date and discovery responses (0.5); communications with Mitel (0.3). | 8/31/2016 | 1.8 | $605.00 | $1,089.00 |
| Torp, Lyndsey Ann | Telephone conferences with D. Rogers regarding continuance on motion to quash requested by plaintiff. | 8/31/2016 | 0.2 | $460.00 | $92.00 |
| Torp, Lyndsey Ann | Review moving papers in support of motion to quash. | 8/31/2016 | 0.3 | $460.00 | $138.00 |
| Torp, Lyndsey Ann | Telephone conference with counsel for plaintiff regarding continuance. | 8/31/2016 | 0.1 | $460.00 | $46.00 |
| Torp, Lyndsey Ann | Finalize stipulation to continue hearing on motion to quash for filing with court. | 8/31/2016 | 0.2 | $460.00 | $92.00 |
| Torp, Lyndsey Ann | Emails with D. Rogers regarding continuance. | 8/31/2016 | 0.2 | $460.00 | $92.00 |
| Torp, Lyndsey Ann | Email and telephone conference with counsel for Colocation regarding status of motion to quash hearing. | 9/1/2016 | 0.2 | $460.00 | $92.00 |
| Torp, Lyndsey Ann | Emails with D. Rogers regarding continuance on motion to quash; follow-up with attorneys service regarding stipulation and order to continue hearing on motion to quash; review tentative rulings by court on motion to quash; conference with clerk regarding continued hearing date on motion to quash; review plaintiff's sur-reply in opposition to motion to quash; emails with D. Rogers regarding reply to sur-reply and legal research regarding same. | 9/1/2016 | 0.9 | $460.00 | $414.00 |
| Torp, Lyndsey Ann | Emails with D. Rogers regarding reply to sur-reply and research regarding same. | 9/6/2016 | 0.4 | $460.00 | $184.00 |
| Rogers, David E. | Prepare draft declaration of M. Whittington and review Colocation Sur-Reply brief and exhibits. | 9/6/2016 | 1.5 | $605.00 | $907.50 |
| Torp, Lyndsey Ann | Review plaintiff's sur-reply in opposition to motion to quash. | 9/6/2016 | 0.2 | $460.00 | $92.00 |

| Fees and Costs for California Case | | | | | |
|---|---|---|---|---|---|
| Jones, Jacob | Review and revise response to Colocation's sur-reply brief regarding Mitel's Motion to Dismiss (Quash), and the court's order issue today, and legal research in connection with same. | 9/7/2016 | 3.2 | $305.00 | $976.00 |
| Barker, David G. | Review and assess Colocation's surreply and work on response to same. | 9/7/2016 | 1.1 | $435.00 | $478.50 |
| Rogers, David E. | Continue review of Sur-Reply and exhibits produced by Colocation (1.4) and continue the preparation of Response and factual and legal citations (2.6). | 9/7/2016 | 4.0 | $605.00 | $2,420.00 |
| Torp, Lyndsey Ann | Emails regarding service of discovery responses; email counsel for plaintiff regarding meet and confer call pursuant to conference with D. Rogers; emails with D. Rogers regarding meet and confer on discovery responses; telephone conference with counsel for plaintiff regarding discovery responses; review sur-reply and court's tentative ruling on motion to quash in preparation for call with plaintiff's counsel. | 9/7/2016 | 1.0 | $460.00 | $460.00 |
| Torp, Lyndsey Ann | Emails with D. Rogers prior to call with plaintiff's counsel to meet and confer on discovery responses. Email D. Rogers regarding meet and confer with plaintiff's counsel on discovery responses. | 9/13/2016 | 0.6 | $460.00 | $276.00 |
| Rogers, David E. | Revise brief in response to Colocation Sur-reply (1.5) and prepare new declaration of M. Whittington (0.5). | 9/13/2016 | 2.0 | $605.00 | $1,210.00 |
| Jones, Jacob | Research background information regarding D. Perlman, P. Sigelman, C. Allen, A. Ahdoot, and Colocation America, and correspondence with library team for further background research, in connection with finding more information about these parties' litigation history and other relevant information useful in the case. | 9/13/2016 | 4.3 | $305.00 | $1,311.50 |
| Rogers, David E. | Continue preparation of Response to Sur-Reply and preparation of Second Declaration of M. Whittington (1.2); factual research into the background of Colocation (0.3). | 9/14/2016 | 1.5 | $605.00 | $907.50 |
| Jones, Jacob | Legal research concerning attorney fee awards for contract and fraud actions in California, pursuant to request from D. Rogers, in connection with continuing to develop case strategy. | 9/14/2016 | 0.3 | $305.00 | $91.50 |
| Jones, Jacob | Review, analyze, and perform follow-up research regarding background reports for Colocation America and its lawyers and principals. | 9/14/2016 | 1.8 | $305.00 | $549.00 |
| Jones, Jacob | Continue legal research in support of and revising sur-reply in support of motion to dismiss for lack of personal jurisdiction, and correspondence with D. Rogers concerning same. | 9/14/2016 | 4.5 | $305.00 | $1,372.50 |
| Rogers, David E. | Prepare revisions to Response to Sur-Reply and Second Declaration of M. Whittington (0.8); continue factual research into the background of Colocation (0.2). | 9/15/2016 | 1.0 | $605.00 | $605.00 |

| Fees and Costs for California Case | | | | | |
|---|---|---|---|---|---|
| Jones, Jacob | Continue legal research in support of and revising sur-reply in support of motion to dismiss for lack of personal jurisdiction, and correspondence with D. Rogers concerning same. | 9/15/2016 | 1.4 | $305.00 | $427.00 |
| | **Total Attorney Hours and Fees** | | **159.2** | | **$73,851.50** |
| | | | | | |
| | | | | | |
| **Paraprofessional** | **Description of Paraprofessional Services** | **Date** | **Hrs** | **Rate** | **Total** |
| Palmer, Stacy Vela | Compile and organize documents for production. | 8/29/2016 | 0.4 | $225.00 | $90.00 |
| Yagade, Stephanie | Prepare binder re Motion to Quash | 8/30/2016 | 0.8 | $100.00 | $80.00 |
| Palmer, Stacy Vela | Compile all cases cited in Motion, Response and Reply re Quash Service of Pro | 8/30/2016 | 1.6 | $225.00 | $360.00 |
| Zachow, Maureen L | Review websites for Colocation and Mitel, organize and prepare documents for | 9/7/2016 | 1.4 | $225.00 | $315.00 |
| Helwig, Zhanna | Researched and obtained background and litigation information on  Colocation | 9/14/2016 | 2.0 | $160.00 | $320.00 |
| | **Total Paraprofessional Hours and Fees** | | **6.2** | | **$1,165.00** |
| | | | | | |
| | | | | | |
| | **COSTS** | | | | |
| 9010 | **Filing Fee** | | | | |
| | One Legal, Inc.; INVOICE#: 10632972; DATE: 7/1/2016 | 7/1/2016 | | | $605.85 |
| | Chase Purchasing Cards INVOICE#: 071816 DATE: 071816 L A SUPERIOR COURT | 7/4/2016 | | | $60.00 |
| | One Legal, Inc.; INVOICE#: 10638548; DATE: 7/10/2016 | 7/10/2016 | | | $49.95 |
| | State Bar of California; REQUEST#: 556005; DATE: 8/2/2016. - 55928.00004_S. Martinez | 8/2/2016 | | | $50.00 |
| | Chase Purchasing Cards INVOICE#: 081616 DATE: 081616 L A SUPERIOR COURT | 8/4/2016 | | | $500.00 |
| | One Legal, Inc.; INVOICE#: 10663247; DATE: 8/4/2016 | 8/4/2016 | | | $64.70 |
| | One Legal, Inc.; INVOICE#: 10687622; DATE: 8/31/2016 | 8/31/2016 | | | $49.95 |
| | One Legal, Inc.; INVOICE#: 10687621; DATE: 8/31/2016 | 8/31/2016 | | | $49.95 |
| | LA CourtOnline | 9/1/2016 | | | $3.00 |
| | One Legal, Inc.; INVOICE#: 10691665; DATE: 9/5/2016 | 9/5/2016 | | | $137.35 |
| | One Legal, Inc.; INVOICE#: 10691667; DATE: 9/5/2016 | 9/5/2016 | | | $49.95 |
| | One Legal, Inc.; INVOICE#: 10693040; DATE: 9/7/2016 | 9/7/2016 | | | $100.90 |
| | One Legal, Inc.; INVOICE#: 10703762; DATE: 9/19/2016 | 9/19/2016 | | | $49.95 |
| | **Total Filing Fees** | | | | **$1,771.55** |

| | Fees and Costs for California Case | | | | |
|---|---|---|---|---|---|
| 9125 | **FedEx/UPS** | | | | |
| | | 8/26/2016 | | | $10.03 |
| | | 8/30/2016 | | | $39.25 |
| | | 9/16/2016 | | | $9.99 |
| | **Total FedEx/UPS** | | | | **$59.27** |
| | | | | | |
| | | | | | |
| | **Costs Total** | | | | **$1,830.82** |
| | **Grand Total** | | **165.4** | **0** | **$75,016.50** |

# EXHIBIT 2E

**Albert Ahdoot**

**Date: October 24, 2017**

COLOCATION AMERICA

vs

MITEL NETWORKS

 **DEPO** TECH

40 N. Central Ave #1400
Phoenix, AZ 85004
602-358-0225

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


COLOCATION AMERICA, INC.,           )
                                    )
                Plaintiff,          )
                                    )
     vs.                            )   CASE NO.
                                    )   CV-17-00421-PHX-
MITEL NETWORKS CORPORATION,         )   NVW
                                    )
                Defendant.          )
_____    )


DEPOSITION OF ALBERT ARASH AHDOOT

TUESDAY, OCTOBER 24, 2017

LOS ANGELES, CALIFORNIA

Page 126

1      A. It says, "Registrant name:  Mitel
2  Networks."  And that's page -1696.  And it's
3  named, "dns_admin@mitel.com."
4      Q. Yeah, I understand.
5      I'll go back to -- I guess we're just going
6  to be stuck on this.
7      A. Sure.
8      Q. There's nothing on -1695, -1696, or -1697
9  that says MNC agreed to any transfer of IPv4
10  addresses.
11     A. This is what Escrow.com has produced.
12  You can reference that back to the contract that
13  we signed.
14     Q. Uh-huh.
15     And it also includes your email in here.
16     A. Right.
17     So the -- And, also, Michelle's and
18  Escrow.com's.
19     Q. Yeah.
20     A. Every --
21     Q. Also -- All of information that's in here
22  that you're relying on looks like it was attached
23  to your email.
24     A. No.  That's an email, if you look at the
25  header, from Escrow.com.

Page 127

1      Q. "Dear Escrow.com, Thank you so much for
2  following up."  I'm reading it, at the bottom of
3  page -1695.
4      A. Uh-huh.
5      Q. "We are waiting for Mitel to honor the
6  contract terms before we release the funds."  We
7  "Will keep you posted.  Best, Albert Ahdoot."
8      A. Uh-huh.
9      Q. And the rest of it appears to all be in
10  the exact same email.
11     A. Well, if you read emails when it's
12  produced, it's produced from bottom up, basically.
13  So they sent this email saying where are we with
14  the following escrow, referencing it --
15     Q. Uh-huh.
16     A. -- with what was agreed upon with both
17  parties.  And what you read was my reply.  So I am
18  agreeing with you in every sense.
19     Q. And -- But by this time, anyway -- Let's
20  go back to -- Okay.  We're done with that one.
21     A. Okay.
22     Q. Let's mark as Exhibit 22 --
23     THE REPORTER:  23.
24     MR. ROGERS:  23.  What's 22?
25     THE WITNESS:  I gave it to Paul to read.

Page 128

1  Let's switch.  I'll take the sticker.
2      MR. ROGERS:
3      Q. Okay.
4      We've marked as Exhibit 22 Plaintiff's
5  Responses to Defendant's First Set of
6  Interrogatories and First Request for Production.
7      A. Sure.
8      (Whereupon the document referred to is marked by
9  the reporter as Exhibit 22 for identification.)
10     MR. ROGERS:
11     Q. I'm going to read Interrogatory Number 1,
12  "Identify all persons that participated in
13  providing responses to these interrogatories."
14     And do you see the answer?
15     A. Are we looking at number 1?  Sorry, I
16  lost you for a second.
17     Q. That's okay.  It's on page 1.
18     A. Yes.  "Albert Ahdoot, Teresa Foster and
19  Deborah Perlman."
20     Q. Is that an accurate answer?
21     A. Yeah.
22     Q. Is that all people?
23     A. "Identify...persons that participated in
24  providing responses to these" -- that's accurate.
25     Q. Did Paul Sigelman help at all?

Page 129

1      A. No.
2      Q. Did Teri Foster help at all?
3      A. Yes, as stated.
4      Q. Did Samantha "Wathers" participate at
5  all?
6      A. I asked her for the paperwork, so I was
7  the one who provided all the answers for this.
8      Q. Did Corey Allen Kotler provide any
9  information?
10     A. Again, it says Albert, Teresa, and
11  Deborah, so we're the ones who provided the
12  information.
13     Q. Okay.
14     Did you talk to Corey Allen Kotler before you
15  responded to these?
16     A. No.  We haven't talked since he was let
17  go.
18     Q. Okay.
19     Look on Interrogatory Number 2.
20     A. Sure.
21     Q. It states, "Identify each person you
22  anticipate calling at the trial in this lawsuit
23  and the nature of the person's testimony";
24  correct?
25     A. Sure.

Page 130

1    Q. And the third person is Corey Allen;
2  right?
3    A. I see that.
4    Q. Yeah. That's false, though, isn't it?
5    A. You keep saying his name is Corey Allen,
6  but he has a -- Corey Allen -- what was his -- I'm
7  sorry -- last name? I forgot already. Well,
8  that's the name that he provided, so --
9    Q. So he did provide that to you to respond
10  to these?
11    A. No. That's the name that he provided to
12  be on the interrogatory.
13    Q. But you knew that wasn't his real name.
14    A. No. He -- We've been going through this
15  over and over.
16    Q. Right.
17    But you knew his real name was Corey Allen
18  Kotler, you've already said that right back from
19  the very beginning.
20    A. Sure. His name is Corey Allen Kotler.
21    Q. Yeah.
22    A. Here, it's referenced --
23    Q. So why in the document produced -- Why in
24  litigation document, produced according to the
25  court's rules, would you not list the full,

Page 131

1  accurate, truthful legal name of a person that you
2  plan to call at trial as a witness?
3    MR. SIGELMAN: Let me make an objection to
4  that because I'm not sure that he knows the court
5  rules or that you're actually correctly citing the
6  court rules.
7    MR. ROGERS:
8    Q. Why in this document, which is -- Well,
9  I'll tell you -- No, you don't cite the rule in
10  here.
11    Why didn't you list his full legal name?
12    A. That's what it was provided to us, so
13  Corey Allen, Dividend Advisors.
14    Q. But you knew it wasn't his full legal
15  name.
16    Why didn't you give us his full legal name?
17    A. Same reason, I guess, there's no
18  Albert A. Ahdoot. Sometimes you put the A.,
19  sometimes you don't.
20    Q. You gave us your last name.
21    A. Again, I'm not Corey, so you're more than
22  welcome to ask him, so --
23    Q. Did you put that there intentionally so
24  we would be unable to contact Corey Kotler?
25    A. First thing first, I never produced this

Page 132

1  document. My legal has done so. And, again,
2  that's what they put down.
3    Q. So who is responsible for putting the
4  name Corey Allen on this document instead of Corey
5  Allen Kotler?
6    A. I don't know.
7    Q. It wasn't you, though?
8    A. I'm not the one who typed this document,
9  I'm not an attorney.
10    Q. Did you -- Okay. Let me ask you again.
11    Who is responsible for Corey Allen being on
12  this document instead of his full legal name,
13  Corey Allen Kotler? Was that your decision?
14    A. I think that's Corey -- that's a question
15  for Corey Allen. I'm not Corey Allen.
16    Q. You just told me that Corey Allen wasn't
17  involved with answering these.
18    A. Right, and I still say the same thing.
19    Q. So I'm going to ask you again.
20    A. Sure.
21    Q. Three people were involved in this,
22  responding to this.
23    A. Sure.
24    Q. What person made the decision to put down
25  "Corey Allen" instead of "Corey Allen Kotler"?

Page 133

1    MR. SIGELMAN: If you know.
2    THE WITNESS: I don't. I have no idea who
3  put this paper together.
4    MR. ROGERS:
5    Q. So you didn't make that decision?
6    A. I didn't put this paper together.
7    Q. I'm asking you, did you make that
8  decision to list just "Corey Allen" instead of
9  "Corey Allen Kotler"?
10    A. I did not make that decision, to answer
11  your question.
12    And, again, I'm not Corey Allen. That's a
13  question for him, how he presents himself.
14    Q. Well, how you legally represent yourself
15  in legal documents isn't a question for him. That
16  will -- that will be a question for the judge.
17    A. Okay.
18    Q. Did you tell -- Never mind.
19    Let's go to Interrogatory Number 3.
20    A. I'm there.
21    Q. It says, "Explain all factual basis for
22  Your belief that MNC," that's Mitel Networks
23  Corporation --
24    A. Uh-huh.
25    Q. -- "owns any of the IPv4 addresses in the

# EXHIBIT 2F

**Albert Ahdoot**

Date: 03/21/2018

Vol III

COLOCATION AMERICA

vs

MITEL NETWORKS



**DEPO** TECH

2415 East Camelback Road
Suite 700
Phoenix, AZ 85016

602-358-0225

1

2                  IN THE UNITED STATES DISTRICT COURT

3                     FOR THE DISTRICT OF ARIZONA

4

5   COLOCATION AMERICA, INC.,          )
                                       )
6                       Plaintiff,     )
                                       )
7        vs.                           )   No. 2:17-cv-00421-NVW
                                       )
8   MITEL NETWORKS CORPORATION,        )
                                       )
9                       Defendant.     )
    _____)

10

11

12                        VOLUME III

13       DEPOSITION OF ALBERT ARASH AHDOOT, a witness

14       herein, noticed by Snell & Wilmer L.L.P.,

15       taken at 350 South Grand Avenue, Los Angeles,

16       California, at 9:53 a.m., on Wednesday,

17       March 21, 2018, before Diane M. Lytle,

18       CSR 8606.

19

20       Job Number 2726

21

22

23

24

25

Page 46

1      Would they have got it from any place other
2  than Colocation?
3      A.  I'm trying to look at the full header.
4  Give me one second, please.
5      Q.  Sure.
6      A.  The full header is erased on top.  I just
7  see "Corey Allen."  So I really can't say if it
8  was produced by Colo Am or Corey, so --
9      Q.  But this would be -- this email would be
10  in Colocation's server; correct?
11      A.  If we were cc'd, as it seems like we were
12  cc'd, yes.
13      Q.  And, also, there's one that you actually
14  sent?
15      A.  It says, "Dear Paul & Corey," correct,
16  sure.
17      Q.  And it's from
18  Albert@colocationamerica.com; correct?
19      A.  I don't see that.  Oh, actually, I'll
20  take it back.  On Friday, February 19th, correct,
21  you're right.
22      Q.  Do you remember this email exchange?
23      A.  Not specifically, but if you say so.
24  It's an email from me to them and that's what I'm
25  looking at, sure.

Page 47

1      Q.  And also an email back from Corey Allen
2  Kotler on February 19th to you and to
3  Mr. Sigelman; correct?
4      A.  That's what the header says, sure.
5      Q.  And right now you don't know if this came
6  from Colocation's server or not?
7      A.  I don't.
8      Q.  You don't know?
9      A.  I don't -- I mean, the headers are
10  missing, so I really don't know.
11      Q.  Did your attorneys ask you for this email
12  string?
13      MR. SIGELMAN:  Objection.  Confidential.
14      MR. ROGERS:  I'll move on.
15      MR. SIGELMAN:  You need not to respond.
16      MR. ROGERS:  Okay.  That's a good objection.
17      The -- Well, I'm going to take that back
18  because that's not -- that's only asking for fact,
19  that's not asking for attorney-client privileged
20  information.
21      Q.  Let me just ask you this:  Did -- you
22  produced all documents that were requested in this
23  litigation; correct?
24      A.  Correct.
25      Q.  And so this is a document that you

Page 48

1  already just stated would be in Colocation's
2  server; correct?
3      A.  I'm cc'd, so I'm sure we have it, of
4  course.
5      Q.  Okay.  Oh, boy.  I think we're even going
6  to hit your time frame.
7      MR. SIGELMAN:  That's a good thing because I
8  have a writ waiting for me to get out today.
9      MR. ROGERS:  Then let's move along faster.
10      Are we up to 106?
11      THE WITNESS:  Yes.  Last one was 105.
12      MR. ROGERS:  Yes.
13      THE WITNESS:  Can I take a 30-second break?
14      MR. ROGERS:  Sure.
15      Going off the record.
16      THE WITNESS:  Thank you.
17      THE VIDEOGRAPHER:  Going off the record at
18  10:54 a.m.
19      (Whereupon a document is marked by the reporter
20  as Exhibit 106 for identification.)
21      (A recess is taken.)
22      THE VIDEOGRAPHER:  Going on the record at
23  10:56 a.m.
24      MR. ROGERS:
25      Q.  Mr. Ahdoot, we've had marked as Exhibit

Page 49

1  106 a document that's called "Plaintiff's Amended
2  and Restated Initial Disclosure."
3      Do you have that in front of you?
4      A.  I do.
5      Q.  Would you turn to page 5 of 5, please,
6  and go down -- Well, first of all, page 5 of 5 is
7  entitled "Attachment A (Witness list)."
8      And could you go down to number 3 on this
9  page, please?
10      A.  You lost me.  Sorry.  So not the first
11  page.
12      Q.  Fifth page.
13      A.  Fifth page.  Third, fourth, fifth.  I'm
14  there.  Go ahead, please.
15      Q.  And if you could, go down to number 3 on
16  this page, and you see that one of the witnesses
17  listed here is Corey Allen; correct?
18      A.  I see that, sure.
19      Q.  This document is dated May 18th, 2017;
20  correct?  That's on page 4.
21      A.  Correct.
22      Q.  And by May 18th, 2017, you knew that
23  Corey Allen's last name was Kotler; correct?
24      A.  Sure.
25      Q.  Did you assist in preparing this witness



COLOCATION AMERICA vs MITEL NETWORKS                    Deposition of Albert Ahdoot

Page 50

1  list?
2      A. No.
3      Q. Do you know who wrote down the name
4  "Corey Allen" and left out the name Kotler?
5      A. I wouldn't know.
6      Q. Do you also see the address listed for
7  Corey Allen, 4333 North Camden Drive, Suite 970,
8  Beverly Hills, California?
9      Do you see that?
10     A. I do.
11     Q. Are you aware that that's Mr. Sigelman's
12 office address?
13     A. I am.
14     Q. Have you ever been there, to his office?
15     A. Many times.
16     Q. You're aware that Corey Kotler doesn't
17 live there; right?
18     A. I hope not.
19     Q. And you're also -- Well, have you ever
20 seen Corey Kotler with an office there?
21     A. There's a lot of attorneys in that
22 office.
23     Q. But Corey Kotler is not an attorney?
24     A. He's not an attorney, no, as far as I
25 know.

Page 51

1      Q. And you've never seen an office for him
2  there, have you?
3      A. I don't go snooping around to different
4  offices. I just go to Paul's office and that's
5  pretty much it. So I can't contest if he does
6  have an office or doesn't have an office.
7      Q. So did you include this information on
8  this document?
9      A. No. It wasn't prepared by me.
10     Q. And did anyone ask you to double-check
11 this document for accuracy?
12     A. No.
13     Q. The person or persons preparing this
14 document would have included this information;
15 correct?
16     A. Correct.
17     Q. And that would be your attorneys;
18 correct?
19     A. Correct.
20     Q. Done with that one.
21     Have this marked as Exhibit 107. This is a
22 document entitled "Plaintiff's Initial
23 Disclosure," and it has 5 pages.
24     (Whereupon the document referred to is marked by
25 the reporter as Exhibit 107 for identification.)

Page 52

1      MR. ROGERS:
2      Q. And could you please turn, Mr. Ahdoot, to
3  page 4 of this document.
4      And you'll see that this document is dated
5  May 15th, 2017; correct?
6      A. Correct.
7      Q. And could you turn to page 5 of the
8  document.
9      A. Okay.
10     Q. And if you go to numbered item 3, you'll
11 see that it states, "Corey Allen"; correct?
12     A. I do.
13     Q. And by May 15th of 2017, you knew that
14 Corey Allen Kotler's full name was Corey Allen
15 Kotler; correct?
16     A. Correct.
17     Q. And did you prepare this?
18     A. No.
19     Q. Were you asked to review it for accuracy?
20     A. No.
21     Q. So whoever prepared this document would
22 have included "Corey Allen" and not included his
23 last name Kotler; correct?
24     A. Funny enough, they actually don't even
25 have Albert A. Ahdoot, since you're trying to pick

Page 53

1  on the names.
2      Q. But they do have your last name?
3      A. It is, yes.
4      Q. They didn't put down Albert Arash?
5      A. No.
6      Q. I'd like -- We're done.
7      I'd like to have marked as Exhibit 108 a
8  document entitled "Plaintiff's First Supplement to
9  its Amended and Restated Disclosure." This
10 document is dated August 4th, 2017, and that date
11 is on page 4 of the document.
12     (Whereupon the document referred to is marked by
13 the reporter as Exhibit 108 for identification.)
14     MR. ROGERS:
15     Q. And, Mr. Ahdoot, could you please turn to
16 page 5 of this document.
17     A. I'm there.
18     Q. And go down to numbered item 3, and
19 you'll see that it lists the name of "Corey
20 Allen"; correct?
21     A. Correct.
22     Q. And it does not list the name Kotler;
23 correct?
24     A. I see that, sure.
25     Q. And did you prepare this?

Page 54

1    A. No.
2    Q. And so whoever put down the name "Corey
3  Allen" and did not include Kotler would have been
4  the person or persons who prepared this document;
5  correct?
6    A. Sure.
7    Q. And those same persons would have listed
8  the Beverly Hills address under Mr. -- well, under
9  Corey Allen's name; correct?
10   A. Sure.
11   Q. Done with that one.
12   I'd like to have marked as Exhibit 109 a
13  document entitled "Plaintiff's Responses to
14  Defendant's First Set of Interrogatories and First
15  Request for Production."
16   (Whereupon the document referred to is marked by
17  the reporter as Exhibit 109 for identification.)
18   MR. ROGERS:
19   Q. And, Mr. Ahdoot, could you please turn to
20  Interrogatory Number 2, which is on page 2 of this
21  document.
22   A. Okay.
23   Q. And Interrogatory Number 2 asks to
24  "Identify each person you anticipate calling at
25  the trial in this lawsuit and the nature of the

Page 55

1  person's testimony."
2    Do you see that?
3    A. I do.
4    Q. And under the answer, could you please
5  take a look at item number 3. And in item number
6  3, it lists one of the witnesses as Corey Allen;
7  correct?
8    A. Sure.
9    Q. And it does not list his last name,
10  Kotler, does it?
11   A. It does not.
12   Q. Did you prepare this?
13   A. No.
14   Q. Were you asked to review this for
15  accuracy?
16   A. I don't recall.
17   Q. You don't recall?
18   A. No.
19   Q. At the time of this document, which you
20  can see on page 7, at the time of this document
21  which is June 26th, 2017, you knew that Corey
22  Allen's -- Corey Allen Kotler's full name was
23  Corey Allen Kotler; correct?
24   A. Sure.
25   Q. Done with that one.

Page 56

1    Did you ever instruct anyone to leave the
2  name Kotler out of any of the documents we just
3  looked at?
4    A. No.
5    MR. ROGERS: I have no more questions.
6  Counselor?
7    MR. SIGELMAN: No.
8    MR. ROGERS: Okay.
9    We can go off the record.
10   THE VIDEOGRAPHER: Do you want to do the
11  stipulation?
12   MR. SIGELMAN: We're in federal court so that
13  is what we do.
14   THE VIDEOGRAPHER: This concludes the
15  deposition of Albert Ahdoot ending media one of
16  Volume III at 11:06 a.m. If anyone would like a
17  copy of this deposition, please contact Depo Tech
18  at (602) 358-0225. We are now off the record.
19   THE REPORTER: Mr. Sigelman, did you want a
20  copy?
21   MR. SIGELMAN: Yes.
22   (The proceedings concluded at 11:06 a.m.)
23
24
25

Page 57

1    I, Diane M. Lytle, CSR 8606, do hereby
2  declare:
3    That, prior to being examined, the witness
   named in the foregoing deposition was by me duly
   sworn pursuant to Section 30(f)(1) of the Federal
   Rules of Civil Procedure and the deposition is a
   true record of the testimony given by the witness.
4    That said deposition was taken down by me in
5  shorthand at the time and place therein named and
6  thereafter reduced to text under my direction.
7    _____ That the witness was requested to
8  review the transcript and make any changes to
   the transcript as a result of that review
9  pursuant to Section 30(e) of the Federal
   Rules of Civil Procedure.
10
    _____ No changes have been provided by the
11  witness during the period allowed.
12   _____ The changes made by the witness are
   appended to the transcript.
13
    _X__ No request was made that the
14  transcript be reviewed pursuant to Section 30(e)
   of the Federal Rules of Civil Procedure.
15
    I further declare that I have no interest in
16  the event of the action.
17   I declare under penalty of perjury under the
   laws of the United States of America that the
18  foregoing is true and correct.
19   WITNESS my hand this 3rd day of April, 2018.
20
21   Diane M. Lytle
22  Diane M. Lytle, CSR 8606
23
24
25

# EXHIBIT 2G

8/18/2017                                          Sigelman Law Mail - Fwd: Domain

**To:** albert@colocationamerica.com; Paul Sigelman
**Subject:** Fwd: Domain

[Quoted text hidden]

---

**Corey Allen Kotler** <coreyallenkotler@gmail.com>                    Fri, Feb 19, 2016 at 2:44 PM
To: "Albert (Colocation America)" <Albert@colocationamerica.com>, "paul@sigelmanlaw.com" <paul@sigelmanlaw.com>

Is there a way to slip it in nebulously? i.e **"...and  should any potential intellectually properties
or scenarios that may be associated at a future point in time"**
[Quoted text hidden]

---

**Corey Allen Kotler** <coreyallenkotler@gmail.com>                    Thu, Aug 17, 2017 at 12:14 AM
To: "paul@sigelmanlaw.com" <paul@sigelmanlaw.com>

# I FOUND A COPY OF THIS ONE THAT U REQUESTED

[Quoted text hidden]

# EXHIBIT 2H

↩ Reply | ⌄     🗑 Delete    Junk | ⌄     •••                                          ✕

## Re: Domain

Corey Allen Kotler <coreyallenkotler@gmail.com>                    ↩ Reply | ⌄
Fr 2/19/2016 3:16 PM
paul@sigelmanlaw.com; Albert (Colocation America) <Albert@colocationamerica.c ⌄

Is there a way to slip it in nebulously? i.e **"...and should any potential intellectually properties
or scenarios that may be associated at a future point in time"**

On Fri, Feb 19, 2016 at 2:13 PM, Albert (Colocation America) <Albert@colocationamerica.com> wrote:

Dear Paul & Corey,


I would write it up for the domain and somehow slip in the IPV4


Best,

A



**From:** Corey Allen [mailto:Corey.Allen@dividendadvisors.com]
**Sent:** Friday, February 19, 2016 1:38 PM
**To:** albert@colocationamerica.com; Paul Sigelman
**Subject:** Fwd: Domain



From Buckingham Palace

Begin forwarded message:

> **From:** Michelle Whittington <Michelle.Whittington@mitel.com>
> **Date:** February 19, 2016 at 12:56:31 PM PST
> **To:** "Corey.Allen@dividendadvisors.com" <Corey.Allen@dividendadvisors.com>
> **Subject: Domain**

As Intellectual Property Counsel for Mitel,  I have been asked to respond to your email request regarding the  《gandalf.ca》 domain name. Can we set a time to discuss your offer?

I look forward to hearing back from you.

Michelle Whittington

Intellectual Property Counsel

Mitel Networks Corporation

480-961-9000 x21352

NOTE: This e-mail (including any attachments) is for the sole use of the intended recipient(s) and may contain information that is confidential and/or protected by legal privilege. Any unauthorized review, use, copy, disclosure or distribution of this e-mail is strictly prohibited. If you are not the intended recipient, please notify Mitel immediately and destroy all copies of this e-mail. Mitel does not accept any liability for breach of security, error or virus that may result from the transmission of this message.

# EXHIBIT 21

**Rogers, David**

| | |
|---|---|
| From: | Harry Stanford <hstanford@bihlaw.com> |
| Sent: | Tuesday, February 27, 2018 3:03 PM |
| To: | Jones, Jacob; Barker, David; Rogers, David; Dolan, Denise |
| Cc: | Teri Foster; Paul Sigelman |
| Subject: | Fw: Documents that Colocation Has Not Produced  10-26-17 Image |
| Attachments: | 0692_001.pdf |

Jacob:  In response to  your email below, I am attaching a copy of the complete email chain.  It appears this chain started with the Michelle Whittington email of the same date.  This email was previously produced by us on June 26, 2017 as bates number 004. In response to your email which shows that Corey Allen Kotler sent an email 8/17/17 to Paul Sigelman, this was in response to a phone call from Paul to Corey asking if he had any other email correspondence on this matter.

Harry Stanford, Legal Assistant
Brier Irish Hubbard & Erhart PLC
2400 E. Arizona Biltmore Circle
Suite 1300
Phoenix, AZ 85016-2115
Telephone:  602-515-0181
Direct:  602-515-0158
Fax:  602-522-3945
E-Mail:  hstanford@bihlaw.com

-------- Original message --------
From: "Jones, Jacob" <jcjones@swlaw.com>
Date: 2/26/18 6:00 PM (GMT-07:00)
To: "Barker, David" <dbarker@swlaw.com>, Teri Foster <tfoster@bihlaw.com>
Cc: "Dolan, Denise" <ddolan@swlaw.com>, "Rogers, David" <drogers@swlaw.com>, "Paul Sigelman (paul@sigelmanlaw.com)" <paul@sigelmanlaw.com>
Subject: RE: Documents that Colocation Has Not Produced  10-26-17

Dear Teri,

At the end of the last oral argument in November, you told David and me that Colocation would produce all of the complete email chains connected with the attached communication.

To our knowledge, these have not been produced, even though Colocation's interrogatory responses state that all sources have been searched.  Mr. Ahdoot/Colocation has the emails, and Mr. Sigelman also has the emails.

As you will recall, we have already discussed this matter in person (after the last oral argument), thus we have met the requirement to meet and confer.  If you believe the emails have already been produced, please direct us to the production numbers prior to the hearing on Wednesday.

Thanks,
Jacob

**From:** Barker, David
**Sent:** Friday, November 10, 2017 5:11 PM
**To:** Jones, Jacob; Teri Foster
**Cc:** Dolan, Denise; Rogers, David; Paul Sigelman (paul@sigelmanlaw.com)
**Subject:** RE: Documents that Colocation Has Not Produced 10-26-17

Teri and Paul:

By November 14, 2017, please confirm Colocation will produce the documents you agreed to produce (during our October 30 call)  and the documents the Court ordered Colocation to produce (on November 2—see attached), no later than <u>November 21, 2017</u>.  These are the categories of documents:

1.  **[You agreed to produce these documents]** All emails between Kotler and Ahdoot related to: MNC, communications with MNC, Dividend Advisors, L.L.C., Kotler, the IPv4 addresses at issue in this dispute, and including communications on which Paul Sigelman or anyone else was copied.

2.  **[You agreed to produce these documents]** All emails (on which Kotler or anyone else – including Samantha Walters – was copied) between Paul Sigelman and Ahdoot related to: MNC, communications with MNC, this dispute, Kotler, Dividend Advisors, L.L.C., or the IPv4 addresses at issue in this case.

3.  **[You agreed to produce these documents]** All emails between Sigelman and Kotler related to: MNC, communications with MNC, Colocation, Dividend Advisors, L.L.C., this dispute, or the IPv4 addresses at issue in this case.

4.  **[You agreed to produce these documents]** All communications between Colocation or any of its contractors or attorneys, and Pedro Cruz related to: MNC, communications with MNC, this dispute, the IPv4 addresses at issue in this case, Kotler, the value of IPv4 addresses, Colocation's finances from January 1, 2014 to present, filings with the state of Nevada that include fictitious names, or filings with the state of California that include fictitious names.

5.  **[You agreed to produce these documents]** All communications with David Shugarman and either Colocation, a Colocation contractor, Sigelman, Teri Foster, or any other attorney of Colocation related to: MNC, this dispute, Kotler, Dividend Advisors, L.L.C., filings with the state of Nevada that include fictitious names, filings with the state of California that include fictitious names, the filing by Ahdoot in Nevada on October 19, 2017, or Shugarman's declaration produced in this lawsuit.

6.  **The Court ordered Colocation to produce "records of payments from Colocation to Albert Ahdoot,"** but the Court did not address payments from Colocation to Kotler or Cruz. We maintain our request that you produce these payments to Kotler or Cruz, along with the Court-ordered payments to Ahdoot.  If you refuse, please let me know immediately.

7.  **The Court ordered Colocation to produce Colocation's "unredacted bank statements" and "redacted cover sheets of federal and state income tax returns showing that such returns were filed."**

8.  **[You agreed to produce these documents]** All communications between Ahdoot and Samantha Walters or other Colocation contractors or other third parties related to: MNC, this dispute, Kotler, Dividend Advisors, L.L.C., the IPv4 addresses at issue in this case, the value of IPv4 addresses, Colocation's finances from 2014 to present, filings with the state of Nevada that include fictitious names, filings with the state of California that include fictitious names, the filing by Ahdoot in Nevada on October 19, 2017, or Shugarman's declaration produced in this lawsuit.

Thanks,
David

---

**From:** Jones, Jacob
**Sent:** Tuesday, October 31, 2017 2:39 PM
**To:** Teri Foster
**Cc:** Barker, David; Dolan, Denise; Rogers, David; Paul Sigelman (paul@sigelmanlaw.com)
**Subject:** RE: Documents that Colocation Has Not Produced 10-26-17

Dear Teri,

Attached please find a draft one-page dispute summary we plan to file (hopefully jointly) today before COB. We understand Colocation objects to (1) and (2) based on relevance and does not object to producing (3). We propose that you succinctly state Colocation's objection, perhaps starting at line 10 of the second page. We should keep the whole text to 28 lines or less to comply with the one-page rule.

Please advise us of any additions by Colocation and confirm permission to file jointly, by 4:00 PM today.

Best,
Jacob

---

**From:** Teri Foster [mailto:tfoster@bihlaw.com]
**Sent:** Monday, October 30, 2017 1:28 PM
**To:** Rogers, David; Paul Sigelman (paul@sigelmanlaw.com)
**Cc:** Barker, David; Jones, Jacob; Dolan, Denise
**Subject:** Re: Documents that Colocation Has Not Produced 10-26-17

602.515.0154.


Sent from my T-Mobile 4G LTE Device


-------- Original message --------
From: "Rogers, David" <drogers@swlaw.com>
Date: 10/30/17 12:49 PM (GMT-07:00)
To: Teri Foster <tfoster@bihlaw.com>, "Paul Sigelman (paul@sigelmanlaw.com)" <paul@sigelmanlaw.com>
Cc: "Barker, David" <dbarker@swlaw.com>, "Jones, Jacob" <jcjones@swlaw.com>, "Dolan, Denise" <ddolan@swlaw.com>
Subject: RE: Documents that Colocation Has Not Produced  10-26-17

Yes, Teri. At what number can we reach you? Tks, Dave

---

**From:** Teri Foster [mailto:tfoster@bihlaw.com]
**Sent:** Monday, October 30, 2017 12:45 PM
**To:** Rogers, David; Paul Sigelman (paul@sigelmanlaw.com)
**Cc:** Barker, David; Jones, Jacob; Dolan, Denise
**Subject:** Re: Documents that Colocation Has Not Produced 10-26-17

Will 4:00 today work for you?


Sent from my T-Mobile 4G LTE Device


-------- Original message --------
From: "Rogers, David" <drogers@swlaw.com>
Date: 10/30/17 10:24 AM (GMT-07:00)
To: Teri Foster <tfoster@bihlaw.com>, "Paul Sigelman (paul@sigelmanlaw.com)" <paul@sigelmanlaw.com>

Cc: "Barker, David" <dbarker@swlaw.com>, "Jones, Jacob" <jcjones@swlaw.com>, "Dolan, Denise" <ddolan@swlaw.com>
Subject: Re: Documents that Colocation Has Not Produced  10-26-17

Teri. We haven't received a response to this email. The last day for MNC to file an motion to compel is tomorrow. If you'd like to discuss this matter by phone, please let us know if there's a time today that works for you. Thanks, Dave

Sent from my iPhone

> On Oct 26, 2017, at 1:54 PM, Rogers, David <drogers@swlaw.com> wrote:
>
> Dear Teri:
>
> Attached are our RFPs to Colocation. Colocation has not yet produced the documents in the numbered categories below. We ask that they be produced no later than noon on October 30, 2017, or Mitel Networks Corporation (MNC) must file a motion to compel their production. Mr. Ahdoot has already testified that the documents exist and/or that all emails to or from Colocation are never deleted because Colocation is required to keep them:
>
>
> (1) All emails between Kotler and Ahdoot related to: MNC, communications with MNC, Dividend Advisors, L.L.C., Kotler, the IPv4 addresses at issue in this dispute, and including communications on which Paul Sigelman or anyone else was copied. RFPs 1-2, 16.
>
> (2) All emails (on which Kotler or anyone else – including Samantha Walters – was copied) between Paul Sigelman and Ahdoot related to: MNC, communications with MNC, this dispute, Kotler, Dividend Advisors, L.L.C., or the IPv4 addresses at issue in this case. RFPs 1-2, 16.
>
> (3) All emails between Sigelman and Kotler related to: MNC, communications with MNC, Colocation, Dividend Advisors, L.L.C., this dispute, or the IPv4 addresses at issue in this case. RFPs 1-2, 16. Note: As Colocation's attorney, Sigelman's documents are within Colocation's control.
>
> (4) All communications between Colocation or any of its contractors or attorneys, and Pedro Cruz related to: MNC, communications with MNC, this dispute, the IPv4 addresses at issue in this case, Kotler, the value of IPv4 addresses, Colocation's finances from January 1, 2014 to present, filings with the state of Nevada that include fictitious names, or filings with the state of California that include fictitious names. RFPs 8, 12-17.
>
> (5) All communications with David Shugarman and either Colocation, a Colocation contractor, Sigelman, Teri Foster, or any other attorney of Colocation related to: MNC, this dispute, Kotler, Dividend Advisors, L.L.C., filings with the state of Nevada that include fictitious names, filings with the state of California that include fictitious names, the filing by Ahdoot in Nevada on October 19, 2017, or Shugarman's declaration produced in this lawsuit. RFPs 1-2.
>
> (6) Records of payments from Colocation to Kotler, Cruz or Ahdoot. RFPs 18- 19.
>
> (7) Colocation's monthly bank statements from January 1, 2016 to present, and federal and state tax returns for the years 2014-2016. RFPs 1-2.
>
> (8) All communications between Ahdoot and Samantha Walters or other Colocation contractors or other third parties related to: MNC, this dispute, Kotler, Dividend Advisors, L.L.C., the IPv4 addresses at issue in this case,

4

the value of IPv4 addresses, Colocation's finances from 2014 to present, filings with the state of Nevada that include fictitious names, filings with the state of California that include fictitious names, the filing by Ahdoot in Nevada on October 19, 2017, or Shugarman's declaration produced in this lawsuit.

>

> Albert Ahdoot testified Tuesday that he gave his attorneys all the documents that were requested, but that he does not know what his attorneys produced. He testified in the 30(b)(6) deposition of Colocation that Colocation is required to keep all emails, and that none have ever been deleted. He and Kotler have testified that Ahdoot received and reviewed emails from Kotler about the communications with MNC.

>

> Colocation also cannot refuse to produce documents because of any alleged secrecy or confidentiality. We have a protective order in this case, and any confidential documents can be appropriately marked.

>

> Categories (6) and (7) are now highly relevant as to whether Mr. Ahdoot should be named as an individual defendant because Colocation may be a sham and merely the alter ego of Mr. Ahdoot. Thank you, Dave

> <Mitel - 2017 0524 Mitel 1st RFP to Plaintiff 4819-4660-3849 v.1.pdf>

> <2017 0915 MNCs 2nd RFPs to Colocation 4841-2006-2031 v.1.pdf>

# EXHIBIT 2L

**Albert Ahdoot**

Date: 03/21/2018

Vol III

COLOCATION AMERICA

vs

MITEL NETWORKS



2415 East Camelback Road
Suite 700
Phoenix, AZ 85016

602-358-0225

1

2                    IN THE UNITED STATES DISTRICT COURT

3                       FOR THE DISTRICT OF ARIZONA

4

5     COLOCATION AMERICA, INC.,          )
                                         )
6                        Plaintiff,      )
                                         )
7        vs.                             )   No. 2:17-cv-00421-NVW
                                         )
8     MITEL NETWORKS CORPORATION,        )
                                         )
9                        Defendant.      )
      _____)

10

11

12                         VOLUME III

13        DEPOSITION OF ALBERT ARASH AHDOOT, a witness

14        herein, noticed by Snell & Wilmer L.L.P.,

15        taken at 350 South Grand Avenue, Los Angeles,

16        California, at 9:53 a.m., on Wednesday,

17        March 21, 2018, before Diane M. Lytle,

18        CSR 8606.

19

20        Job Number 2726

21

22

23

24

25

COLOCATION AMERICA vs MITEL NETWORKS
Deposition of Albert Ahdoot

Page 22

1   in the contract?
2       A.  To who?
3       Q.  What's the market value?  What's the fair
4   market value?
5       A.  To who?  I mean to an ISP or to a --
6       Q.  Sure, sure.  To someone that would use
7   them.
8       A.  Well, depending what kind of customers
9   you have, how many customers you have, how fast
10  you needed to use them.  Just really depends.  It
11  varies.
12      Q.  There -- There's a -- a marketplace for
13  IP4 addresses; correct?
14      A.  I'm sure there's many.
15      Q.  And so if you were to take a block of
16  64,000 contiguous IPv4 addresses and list them for
17  sale, what would be the fair market value?
18      A.  There isn't because there isn't such a
19  block.  It's last 16- -- it's 65,000 and change,
20  not 64,000.
21      So if you're referencing the last 16- in the
22  contract, that's 65,000 and change in IPs, not
23  64,000.
24      And, again, I'll rephrase the question back,
25  depends to who.  So --

Page 23

1       Q.  How about to you?
2       A.  How desperate are we in needing it?  I
3   mean, just -- there's a shortage of IPs and,
4   hence, that's why we hired Mr. Corey Kotler, to
5   jump in and find us IPs.
6       Q.  How about to a telephone service
7   provider?
8       A.  Again, depends how small of a company,
9   how big of a company.  That's a pretty broad
10  question.
11      Q.  Well, if -- if you go on the Internet and
12  you look at the people that are transacting IPv4
13  sales, there are prices listed there.
14      Would you say that -- would you say that the
15  IPv4 block in the contract is worth over
16  $1 million?
17      A.  I'm not a marketplace.  I wouldn't know.
18      Q.  What would they be worth to Colocation?
19      A.  It's worth to pick up customers.  So we
20  need to get customers, we need IPs and an ISP.  So
21  shortage of IP means shortage of customers.
22      Q.  So what would be the dollar value that
23  Colocation would put on a contiguous block of
24  65,000 IPv4 addresses?
25      A.  There wouldn't be.

Page 24

1       Q.  So you would have -- You can't even
2   bracket it for me?
3       A.  I -- I don't want to bracket it because,
4   again, it varies in different industries.
5       Q.  Explain that, please.
6       A.  Sure.
7       It's like turning up a customer as a
8   telephone provider.  As you said, you need to have
9   a phone number to turn up someone and giving a
10  phone number.
11      You also want to have an IP address to make
12  them become an ISP customers, to allocate them an
13  IP address.  So you -- it's like chicken and egg,
14  you do need it to go ahead and get a customer to
15  come in.
16      Q.  How -- how does the -- has -- Would there
17  be a difference between an ISP, such as -- such as
18  Colocation -- Colocation is an ISP; correct?
19      A.  Correct.
20      Q.  Would there be a difference in value of
21  IPv4 addresses for an ISP versus a telephone
22  service provider?
23      A.  It's two different industries.  I mean,
24  I'm sure there's a difference of value of, you
25  know, anything.  I -- It's a pretty broad

Page 25

1   question.
2       Q.  What would an -- What value would an
3   ISP put on the block of IPv4 addresses that are in
4   the contract?
5       A.  The value is either we get customers or
6   we don't get customers.  Either we have the IP to
7   get customers or we don't have the IP to get
8   customers.
9       Q.  You could also resell that block;
10  correct?
11      A.  I'm sure we can resell it, sure.
12      Q.  And if you were to resell it on the open
13  market, how much could you get for it?
14      A.  We're not on the marketplace.  We haven't
15  resold it.
16      Q.  My question is, if you did put it up for
17  sale on the open market, within a range, how much
18  would those addresses be worth?
19      A.  Again, we're not on the marketplace.  So
20  if anything, we need the IPs.  We're not selling
21  them.
22      Q.  And how do you make money from IPv4
23  addresses?
24      A.  You don't because it's something that you
25  have to have to provide to customers in order to



Page 30

1    So there's two models. One, you're leasing a
2    server; or, two, you're leasing space, power, and
3    connectivity to a Colocation customer.
4    Q. In documents that you -- that Colocation
5    has filed in this case, it states that Colocation
6    has been damaged by not being -- by not being
7    assigned the IPv4 addresses; is that correct?
8    A. I'm sorry, one more time.
9    Q. I'll say -- I'll say it again.
10    In documents filed in this case, and I have
11    them here, we can look at them, but they say this,
12    they say that Colocation has been damaged by not
13    being assigned the block of IPv4 addresses in the
14    contract.
15    A. Not being -- not -- you guys, Mitel,
16    a.k.a., transferring the IP to us? Is that what
17    you're saying by "assigned"?
18    Q. Yes. That's what I mean, by not
19    transferring the IPv4 addresses to Colocation.
20    A. Well, again, it goes back to us not being
21    able to turn up customers because of the shortage
22    of the IPs. And, hence, that's why we hired
23    Mr. Corey Kotler, to go find us IPs and represent
24    us.
25    Q. By how much has Colocation been damaged

Page 31

1    by not having that block of IPv4 addresses listed
2    in the contract transferred to it?
3    A. That's like saying by how much has a law
4    firm been damaged by not getting cases? I mean,
5    depends on your rents, depends on everything else.
6    It's a pretty broad question.
7    Q. So have you ever done any estimate about
8    that?
9    A. No.
10    Q. Can you -- can you bracket it for me
11    right now?
12    A. No. I need to go back and look at
13    numbers. We haven't been able to grow just
14    because of the shortage of IPs.
15    Q. But you don't know by how much?
16    A. No. I don't do the accounting. I just
17    overlook the company.
18    Q. So you can't put -- right now sitting
19    here, you can't put any value on the IPv4
20    addresses in the contract?
21    A. No.
22    Q. Is it -- is it your -- I forget where we
23    left off on exhibits. I don't think we're nowhere
24    close to this.
25    We're going to start off by marking this as

Page 32

1    Exhibit 100. Okay.
2    (Whereupon the document referred to is marked by
3    the reporter as Exhibit 100 for identification.)
4    MR. ROGERS:
5    Q. Mr. Ahdoot, could you tell me what
6    Exhibit 100 is?
7    A. Sure. It's a check with -- from
8    Colocation America Corporation on 6-2-16 to
9    Mr. Corey Kotler for 5,000 even.
10    Q. Okay. We're done with that one.
11    This is Exhibit 101.
12    (Whereupon the document referred to is marked by
13    the reporter as Exhibit 101 for identification.)
14    MR. ROGERS:
15    Q. Could you tell me what this is,
16    Mr. Ahdoot?
17    A. Sure. As opposed to the last check being
18    3734, Exhibit 100, this is check number 3756
19    written from Colocation America Corporation on
20    7-5-16 to Mr. Corey Kotler for 5,000 even.
21    Q. And I'd like to have this one marked as
22    Exhibit 102.
23    (Whereupon the document referred to is marked by
24    the reporter as Exhibit 102 for identification.)
25    MR. ROGERS:

Page 33

1    Q. Mr. Ahdoot, can you please tell me what
2    this is?
3    A. Sure. Check number 3707 written on
4    5-4-16 to -- from Colocation America Corporation
5    to Corey Kotler for 5,000 even.
6    Q. And do you see the writing next to
7    "Colocation America Corporation"?
8    A. Sure.
9    Q. Do you know what that's about?
10    A. I have no idea. I can't even read it.
11    Q. We're done with that one.
12    I'd like to have this marked as Exhibit 103.
13    It's Plaintiff's Supplemental Response to
14    Defendant's Request for Supplemental Responses,
15    and it's dated November 21, 2017.
16    (Whereupon the document referred to is marked by
17    the reporter as Exhibit 103 for identification.)
18    MR. ROGERS:
19    Q. I can help you out with this, Mr. Ahdoot.
20    If you turn to page 2, please. And how this
21    document is set up, it lists requests for
22    production of document numbers that we sent to
23    Colocation and the response follows it.
24    And I would like to go to number 1
25    response -- Well, let me first go to number 1



# EXHIBIT 2M

1   David E. Rogers (admitted *pro hac vice*)
    drogers@swlaw.com
2   SNELL & WILMER L.L.P.
    One Arizona Center
3   400 E. Van Buren
    Phoenix, AZ  85004-2202
4   Telephone: (602) 382-6000
    Facsimile: (602) 382-6070
5
    Lyndsey A. Torp (#261734)
6   ltorp@swlaw.com
    SNELL & WILMER L.L.P.
7   600 Anton Boulevard, Suite 1400
    Costa Mesa, California  92626-7689
8   Telephone: (714) 427-7000
    Facsimile: (714) 427-7799
9
    Attorneys for Defendant
10  Mitel Networks Corporation and Third Parties
    Mitel Networks, Inc., and Mitel Technologies, Inc.
11

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 19 2016

Sherri R. Carter, Executive Officer/Clerk
By: Judi Lara, Deputy

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                      COUNTY OF LOS ANGELES

14

15  COLOCATION AMERICA, INC.,              Case No. BC619569

16              Plaintiff,                 Notice of Special Appearance
                                           And Joint Motion of Mitel Networks
17          v.                             Corporation, Mitel Networks, Inc.,
                                           and Mitel Technologies, Inc. for
18  MITEL NETWORKS CORPORATION,            Attorney's Fees and/or Monetary
    and DOES 1-10, inclusive,              Sanctions; Memorandum of Points
19                                         and Authorities
            Defendant.
20                                         Date:  February 23, 2017
                                           Time:  8:30 a.m.
21                                         Dept.:  73
                                           Reservation No.:  161219182067
22
                                           Complaint Filed:  May 5, 2016
23

24          TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

25          Snell & Wilmer, L.L.P. hereby makes a special appearance for Mitel Networks

26  Corporation ("MNC"), Mitel Technologies, Inc. ("MTI"), and Mitel Networks, Inc.

27  "MNI") for the sole purpose of recovering fees from Plaintiff, Colocation America, Inc.

28

Notice of Special Appearance and Joint Motion for Attorney's Fees against Plaintiff

1  ("Plaintiff" or "Colocation") for using and refusing to withdraw four improper subpoenas

2  to third-party MTI. The Court has already ruled that it lacks personal jurisdiction over

3  MNC for the underlying contract dispute, and MTI and MNI were never parties to this

4  lawsuit.

5  PLEASE TAKE NOTICE that on February 23, 2017, at 8:30 a.m., or as soon

6  thereafter as counsel may be heard, in Department 73 of the above-entitled court located

7  at 111 N. Hill Street, Los Angeles, California, defendant MNC and third parties MNI and

8  MTI (MNC, MNI, and MTI, are collectively, the "Mitel Parties") will and hereby do

9  move the Court, pursuant to California Code of Civil Procedure sections 1987.2, 1989,

10  2023.010(a)-(c), 2023.030(a), 2020.210, 2020.220(b), 2020.410(a), 2020.410(c),

11  2023.010(a), 2015.230, 2015.270(a), and 2025.420(d), and *Evilsizor v. Sweeney* (2014)

12  230 Cal. App. 4th 1304, 1309, 1313, for an order awarding attorney's fees and/or

13  monetary sanctions of at least $47,929.00 against plaintiff Colocation America, Inc.

14  ("Plaintiff"), comprised of the following: (1) $32,242.00 for the attorney's fees on the

15  Motion to Quash the subpoenas, filed on September 30, 2016, (2) $870.00 for the first

16  appearance fees of MTI and MNI, and (3) the fees associated with this Motion (currently

17  estimated at about $14,817.00), any Reply, and any oral argument.

18  This Motion is based on the following grounds:

19  **(1)**  On June 30, 2016, defendant MNC moved to quash service of process on

20  MNC for lack of personal jurisdiction. The hearing on that Motion was originally set for

21  October 14, 2016.

22  **(2)**  In July, 2016, Plaintiff served MNC with written discovery regarding

23  jurisdictional issues and information related to MNC's indirect U.S. subsidiaries. MNC

24  responded on August 26, 2016.

25  **(3)**  On September 14 and 27, 2016, Plaintiff delivered a total of four improper

26  subpoenas for MNC's indirect subsidiary, MTI. All were hand delivered to Mr. Craig

27  Myers at his home. Mr. Myers is not even an MTI employee, let alone a person

28  authorized to accept service for MTI. Joint Mot. to Quash Subpoenas ("JMQS," filed

- ii -

SNELL & WILMER
L.L.P.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1    Sept. 30, 2016), Ex. 2 ¶¶ 1, 7, 10-11, 20.  Two of the subpoenas were directed to Mr.

2    Myers as MTI's custodian of records (JMQS, Exs. 5 and 7) – although he is not MTI's

3    custodian of records, is not even an employee of MTI (but is an employee of MNI).  The

4    other two subpoenas were directed to the corporation, MTI.  JMQS, Exs. 6 and 8.

5        (4)    After the first two improper subpoenas were delivered to Mr. Myers on

6    September 14, 2016, the Mitel Parties sent the letter attached as Exhibit A to Colocation.

7    The letter explains that the subpoenas were improper, for among other reasons, because

8    (a) Mr. Myers is not even an employee of MTI, let alone a custodian of records or a

9    person authorized to accept service for MTI, (b) that MTI is an Arizona company with a

10   principal place of business in Arizona, and could not be compelled to comply in

11   California to a subpoena issued from a California court; any subpoena to MTI had to issue

12   from an Arizona court, with MTI complying with the subpoena in Arizona, and (c)

13   because MTI is an Arizona corporation with a principal place of business in Arizona, no

14   alter ego theory could apply and the requested discovery was irrelevant.

15       (5)    Undeterred by the letter attached as Exhibit A, Colocation served two more

16   improper subpoenas for MTI on Mr. Myers at his home.  JMQS, Ex. 2.

17       (6)    The only difference in Plaintiff's second two improper subpoenas was the

18   scope of the requests.  Colocation ignored the fact that Mr. Myers is not an MTI employee

19   or agent for service, and that MTI is an Arizona corporation with a principal place of

20   business in Arizona.  JMQS, Exs. 1 and 2.  The Mitel Parties' counsel attempted to meet

21   and confer with Plaintiff regarding the impropriety of the four subpoenas, but Plaintiff

22   refused to withdraw any of them or to even meet and confer.  JMQS, Ex. 3.  Accordingly,

23   on September 30, 2016, the Mitel Parties filed a Motion to Quash all four subpoenas (the

24   JMQS).

25       (7)    On October 18, 2016, Colocation filed an opposition to the Mitel Parties'

26   JMQS.

27       (8)    On October 18, 2016, the Court entered its order granting MNC's original

28   Motion filed on June 30, 2016 to quash service of process for lack of personal jurisdiction,

SNELL & WILMER
L.L.P.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

- iii -

1   and dismissed MNC without prejudice. Notably, the Court's order stated: "Plaintiff has

2   not adequately shown how the discovery conducted thus far supports any of the

3   jurisdictional grounds over a parent corporation as set forth in the *BBA Aviation* case."

4   This Order mooted the four improper subpoenas to MTI and the JMQS.

5       (9)   Plaintiff prepared and delivered the four subpoenas to MTI in bad faith,

6   causing the Mitel Parties to prepare and file the JMQS. Plaintiff also opposed the Mitel

7   Parties' JMQS in bad faith and without substantial justification. Accordingly, the Mitel

8   Parties request an award of their fees incurred for that Motion - $32,242.00, plus the fees

9   for this Motion (currently estimated at $14,817.00), any Reply and oral argument. The

10  exact amount sought for preparing and filing this Motion will be set forth in the Mitel

11  Parties' Reply.

12      (10)   In addition, third parties MNI and MTI seek recovery of their first

13  appearance fees, totaling $870. MNC also seeks to recover its costs as set forth in the

14  filed Memorandum of Costs (Summary and Worksheet), filed on November 7, 2016, and

15  subject to a motion to tax costs, set for hearing on January 17, 2016.

16      This Motion is based on this notice, the attached memorandum of points and

17  authorities, the supporting declaration of David E. Rogers ("Rogers Decl., attached as

18  Exhibit B"), MNC's Memorandum of Costs (Summary and Worksheet), filed on

19  November 7, 2016, all pleadings and papers on file in this action and on such other and

20  further evidence as the court may allow.

21  Dated: December 19, 2016                  SNELL & WILMER L.L.P.

22

23                                  By: _____

24                                     David E. Rogers
                                        Lyndsey A. Torp
25                                     Attorneys for Plaintiff
                                        Bank of America, N.A.

26

27

28

- iv -

Notice of Special Appearance and Joint Motion for Attorney's Fees against Plaintiff

25133299

SNELL & WILMER
L.L.P.
GATEWAY IN BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   ## I.   INTRODUCTION

3   On October 18, 2016, the Court dismissed MNC from this action because Plaintiff

4   failed to meet its burden of demonstrating that personal jurisdiction existed.  In doing so,

5   the Court held that "Plaintiff has not adequately shown how the discovery conducted thus

6   far supports any of the jurisdictional grounds over a parent corporation as set forth in the

7   *BBA Aviation* case."

8   While MNC's Motion to Quash Service of Process for Lack of Personal

9   Jurisdiction was pending, MNC and third parties MNI and MTI spent significant time

10  addressing, and moving to quash, four improper subpoenas served by Plaintiff on MTI.

11  The subpoenas contained numerous procedural defects, and also sought discovery that

12  was deficient as a matter of law because MTI is an Arizona company with a principal

13  place of business in Arizona.  Consequently, Plaintiff's "alter-ego" theory of jurisdiction

14  could not be established through MTI, because MTI must be a California company or

15  have a principal place of business in California for the alter-ego doctrine to possibly

16  apply.  JMQS at 3-4.  Plaintiff knew this before and after issuing the subpoenas.  JMQS at

17  3.

18  MNC's counsel sent a detailed letter to Colocation's counsel, met and conferred

19  with Plaintiff's counsel, detailed the problems with the subpoenas, and requested that they

20  be withdrawn.  Ex. A.  Plaintiff refused to withdraw any of the four subpoenas, forcing the

21  Mitel Parties to file the JMQS.  Plaintiff filed an opposition to the JMQS.  Prior to hearing

22  on the JMQS, the JMQS was taken off calendar upon the Court's dismissal of MNC for

23  lack of personal jurisdiction.  Order, entered October 18, 2016.

24  Even though the Mitel Parties' JMQS went off calendar, this Court may properly

25  award fees because (1) the four subpoenas to MTI violated the rules, and (2) Plaintiff

26  opposed the JMQS in bad faith, or without substantial justification - Plaintiff's conduct

27  demonstrated both.  Accordingly, it is proper for the Mitel Parties to recover their

28  attorney's fees and related costs for their JMQS and the fees for this Motion.

- 1 -

SNELL & WILMER
L.L.P.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

## II.   STATEMENT OF FACTS

### a.  Motion to Quash Service for Lack of Personal Jurisdiction.

On June 30, 2016, MNC moved to quash service of process for lack of personal jurisdiction over MNC.  MTQ, filed June 30, 2016.  The hearing on the motion was initially set for September 8, 2016, but was continued by the Court to October 14, 2016.

Plaintiff opposed that Motion, arguing that there was personal jurisdiction over MNC.  Opposition, filed August 20, 2016, 7:17-8:21.  In doing so, Plaintiff filed a Sur-Reply arguing an alter-ego theory of general jurisdiction due to the relationship between MNC and its indirect U.S. subsidiary, MTI, *even though* publicly-available records establish that MTI is an Arizona corporation with its principal place of business in Arizona.  *See, e.g.,* MTQS, Ex. 1 ¶¶ 4-17 & Ex. 3 ¶¶ 3-4.  Hence, no alter-ego theory was applicable, which Plaintiff should have readily known -- because for the alter-ego theory to apply, MTI must either be a California corporation or have a principal place of business in California.  *Daimler AG v. Bauman*, 134 S. Ct.746, 762 n.20 (2014).

### b.  Written Discovery to MNC.

On July 22, 2016, Plaintiff served MNC with written discovery requests seeking, among other things, jurisdictional discovery.  Ex. B ¶ 2.  MNC responded to those requests on August 26, 2016.  *Id.*

### c.  Subpoenas to MTI.

Plaintiff served four subpoenas on MNC's indirect subsidiary, MTI, allegedly to support its theory of alter-ego general jurisdiction despite (1) publicly-available records establishing that MTI is an Arizona corporation with its principal place of business in Arizona, and (2) a Declaration from an MTI officer confirming that MTI is an Arizona corporation with a principal place of business in Arizona.  JMQS, Ex. 1 ¶¶ 4-17 and Ex. 3 ¶¶ 3-4.  For the alter-ego theory to possibly apply, MTI must be either incorporated in California or maintain a principal place of business in California.  *Id.* at 3:9-4:14.

On September 17, 2016, at about 6:25 a.m., an unregistered process server arrived at the home of Craig Myers -- an employee of MNI, not MTI, and not a person authorized

- 2 -

SNELL & WILMER
L.L.P.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

25133299

1  to accept service for MTI -- and repeatedly rang the doorbell until Mr. Myers answered.

2  JMQS, Ex. 2 ¶ 13. The process server asked Mr. Myers his name, then crossed out the

3  name "Paolo Palnau" on one subpoena and wrote in "Craig Myers." The process server

4  then handed the two subpoenas to Mr. Myers. *Id.* ¶ 14; JMQS, Exs. 5 and 6. The process

5  server never mentioned the names "Mitel" or "Colocation" and never asked Mr. Myers if

6  he was authorized to accept service on behalf of MTI – which he was not and is not.

7  JMQS, Ex. 2 ¶¶ 10, 18.

8      On September 23, 2016, the Mitel Parties' counsel contacted Colocation's counsel,

9  explained that the subpoenas were defective, asked them to be withdrawn, and requested a

10  meet and confer call for Tuesday, September 27, 2016. Ex. A; JMQS, Ex. 3 ¶ 4.

11  Colocation's counsel did not respond, but on September 27, 2016 filed a notice of

12  association with another attorney, Paul Sigelman. *Id.* Mr. Sigelman did not meet and

13  confer with MNC's attorneys nor withdraw the two September 17, 2016 subpoenas. *Id.*

14  Instead, he issued two new subpoenas for MTI:  (a) another to Mr. Myers as its custodian

15  of records, despite the fact that Colocation knew Mr. Myers was not even an MTI

16  employee, and (b) another to MTI, which Colocation knew was an Arizona company with

17  a principal place of business in Arizona. Ex. A. These subpoenas were again delivered to

18  Mr. Myers at his home. JMQS, Ex. 2 ¶ 19; JMQS, Exs. 7 and 8. Again, the process

19  server did not mention the names "Mitel" or "Colocation," and never asked if Mr. Myers

20  was authorized to accept service on behalf of MTI – which he was not and is not. JMQS,

21  Ex. 2 ¶¶ 19-20.

22      On September 28-29, 2016, the Mitel Parties' counsel sent further communications

23  to Colocation asking it to withdraw all four subpoenas because they were defective for

24  numerous reasons. JMQS, Ex. 3 ¶ 5. There was no substantive response from

25  Colocation, and on September 30, 2016, the Mitel Parties were forced to file the JMQS.

26  The hearing on that Motion was set for November 1, 2016. On October 18, 2016, Plaintiff

27  filed an Opposition to the JMQS Opp., filed October 18, 2016.

28

SNELL & WILMER
L.L.P.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

d. **The Court Dismissed MNC for Lack of Personal Jurisdiction**.

On October 14, 2016, the Court heard MNC's Motion to Quash service for lack of personal jurisdiction. On October 18, 2016, the Court entered its order granting MNC's Motion for lack of personal jurisdiction, and dismissed MNC. Order, entered October 18, 2016. Notably, the Court's order stated: "Plaintiff has not adequately shown how the discovery conducted thus far supports any of the jurisdictional grounds over a parent corporation as set forth in the *BBA Aviation* case." *Id.*

### III. THE COURT SHOULD AWARD THE MITEL PARTIES' THEIR ATTORNEY'S FEES

a. **A Fee Award is Proper**.

    (i)    **Plaintiff's Subpoenas Were Improper and Led to the Mitel Parties' JMQS**.

In addition to being legally irrelevant and harassing, the subpoenas were replete with procedural defects, all of which were brought to the attention of Colocation before the JMQS was filed. Exhibit A.

- The subpoenas were served on an individual who is not even an employee of MTI, let alone a person authorized to accept service. JMQS, Ex. 2 ¶¶ 1, 7, 10-11, 20.

- The subpoenas provided insufficient notice. Specifically, Colocation delivered the second set of subpoenas to Mr. Myers in the evening of September 27 (JMQS, Exs. 7, 8), but those subpoenas demanded appearance for deposition and to produce business records while only providing six days' notice, in violation of both Cal. Civ. Proc. Code § 2025.270(a) (oral deposition must be set at least 10 days after service) and § 2020.410(c) (business record deposition must be set at least 20 days after issuance). *See* JMQS at 5. Plaintiff's counsel was notified of these defects on September 29, 2016. JMQS, Ex. 10.

- The subpoenas requested the attendance of an out-of-state party (MTI) in California, in violation of Cal. Proc. Code § 1989. *See* JMQS at 6 (citing

- 4 -

SNELL & WILMER
L.L.P.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

cases).  Moreover, no person that MTI would have hypothetically designated under Cal. Proc. Code § 2025.230 resides in California.  JMQS, Ex. 1.

- One of the subpoenas (JMQS, Ex. 5) was issued by Colocation to a nonexistent person, "Paolo Palnau," but the process server crossed out the name and wrote "Craig Myers" on the subpoena.  JMQS, Ex. 2.  This was a violation of Cal. Proc. Code § 2020.210, which does not permit the signed subpoena to be issued to a fictitious person, only to be later altered by a private process server.

- The document requests and deposition topics, attached to the subpoenas, were not described with reasonable particularity, in violation of Cal. Proc. Code § 2020.410(a).  *See* Ex. 1 at 4-5.

- The document requests were overbroad, and, while Colocation purported to "require production of electronically stored information," Colocation took absolutely no steps to "avoid imposing undue burden or expense," in violation of Cal. Proc. Code 2020.220(k).  Ex. 1 at Attachment 3.

Plaintiff's counsel refused to address these issues, or to meet and confer, thus it was "persisting, over objection and without substantial justification, in an attempt to obtain information or materials that are outside the scope of permissible discovery," in violation of Cal. Proc. Code 2023.010(a).  Ex. A.  Instead, Plaintiff opposed the Mitel Parties' JMQS.  Plaintiff was not substantially justified in opposing the JMQS.

### b.  Plaintiff's Subpoenas and Opposition to the JMQS.

Code Civ. Proc., § 2023.010 provides for sanctions for various types of misuses of the discovery process.  JMQS, 8:7-24.  In addition, Code Civ. Proc., § 1987.2 permits a Court to grant reasonable expenses, including attorney's fees, if it finds that a motion to quash a subpoena was made or opposed "in bad faith or without substantial justification or that one or more of the requirements of the subpoena was oppressive."  Code Civ. Proc. § 2025.410(d) provides that the "court shall impose a monetary sanction…against any party, person, or attorney who unsuccessfully makes or opposes a motion to quash, unless it

- 5 -

SNELL & WILMER
L.L.P.
600 ANTON BLVD, STE. 1400
COSTA MESA, CALIFORNIA 92626-7689

25133299

1    finds that the one subject to the sanction acted with substantial justification or that other

2    circumstances make the imposition of sanctions unjust." *See also* Code Civ. Proc. §

3    2023.030 (monetary sanction to include payment of reasonable expenses, including

4    attorney's fees). Such fees may be granted even if that party later withdraws the motion,

5    *or* the motion is "deemed moot," and the court does not rule on the motion. *Evilsizor v.*

6    *Sweeney* (2014) 230 Cal. App. 4th 1304, 1309, 1313 (court did not abuse its discretion in

7    awarding attorney's fees after finding that party was not substantially justified in

8    withdrawing motion to quash).

9            Here, Plaintiff's conduct was a misuse of the discovery process. In addition,

10   Plaintiff opposed the Mitel Parties' Motion to Quash the four improper subpoenas to MTI

11   in bad faith and without substantial justification.

12           Plaintiff sought substantial, overbroad, and irrelevant discovery from MNC's

13   indirect subsidiary, MTI, but "entirely failed to meet its burden of demonstrating that

14   general jurisdiction exists." Order, entered October 18, 2016. Plaintiff's Opposition and

15   Sur-Reply to MNC's Motion to Quash for lack of personal jurisdiction over MNC did not

16   address any basis for imputed jurisdiction under *BBA Aviation PLC v. Superior Court*

17   (2010) 190 Cal. App. 4th 421, 429. Yet Plaintiff attempted to burden MNC's non-party,

18   indirect subsidiary, MTI, with four improper subpoenas for unnecessary discovery.

19   JMQS, Ex. 1.

20           MTI is an Arizona company with its principal place of business in Arizona – easily

21   verifiable information through public, online records. *See, e.g.,* MTQS, Ex. 1 ¶¶ 4-17 &

22   Ex. 3 ¶¶ 3-4. There is no general jurisdiction over MTI, making the discovery sought by

23   the four subpoenas to MTI irrelevant on its face. This was explained to Plaintiff in the

24   letter attached as Exhibit A, but Plaintiff took no mind, refused to meet and confer with

25   MNC to withdraw the first two subpoenas, and issued two additional improper subpoenas

26   to MTI. JMQS, Exs. 3 and 8. In dismissing the case against MNC, the Court also denied

27   Plaintiff's request for further jurisdictional discovery (included in Plaintiff's Sur-Reply),

28

SNELL & WILMER
L.L.P.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

- 6 -

1   implicitly acknowledging the impropriety of the subpoenas.  Order, entered October 18,

2   2016.

3        Accordingly, the Mitel Parties seek $32,242.00 against Plaintiff, comprised of their

4   attorneys' fees in preparing and filing the JMQS.  Ex. 2 ¶ 5.  In addition, MNI and MTI

5   seek recovery of their first appearance fees, totaling $870 -- a reasonable expense required

6   to be paid in filing the Motion to Quash the subpoenas.  Plus, an estimated $14,817.00 for

7   preparing this Motion, and the fees for any Reply and Oral Argument.[1]

8        **c.  The Mitel Parties' Fees Are Reasonable.**

9        The fees sought are reasonable.  A court has broad authority to determine the

10  amount of a reasonable fee.  *PLCM Grp. v. Drexler* (2000) 22 Cal. 4th 1084, 1095.  A

11  court's determination of a reasonable fee begins with the "lodestar"—the number of hours

12  reasonably spent multiplied by the reasonable hourly rate.  *Id.*  The lodestar figure then

13  may be multiplied, based on consideration of factors specific to the case.  *Id.*; *Serrano v.*

14  *Priest* (1977) 20 Cal. 3d 25, 49 (awarding $800,000.00 in attorney's fees).  These factors

15  include:  (a) the novelty and difficulty of the questions involved; (b) the skill displayed in

16  presenting them; (c) the extent to which the nature of the litigation precluded other

17  employment by the attorneys; and (d) the contingent nature of the fee award.  *Serrano*, 20

18  Cal.3d at 49.

19       Further, to determine the reasonableness of the attorney's fees, the court is to assess

20  "the nature of the litigation, its difficulty, the amount involved, the skill required and the

21  skill employed in handling the litigation, the attention given, the success of the attorney's

22  efforts, his learning, his age, and his experience in the particular type of work demanded . .

23  .; the intricacies and importance of the litigation, the labor and necessity for skilled legal

24  training and ability in trying the cause, and the time consumed."  *Stokus v. Marsh* (1990)

25  217 Cal.App.3d 647, 657 (citations and internal quotation marks omitted).

26       Absent a contrary showing, both the number of hours that the prevailing party's

27

28  [1] The Mitel Parties will include the exact fees sought for this Motion in their Reply.

Notice of Special Appearance and Joint Motion for Attorney's Fees against Plaintiff

25133299

1   attorneys spent litigating the case and their hourly rates are presumed to be reasonable.

2   *Serrano v. Unruh* (1982) 32 Cal. 3d 621, 639 (holding that counsel is entitled to all hours

3   actually spent, absent a showing of "special circumstances" that would render such an

4   award unjust).

5       Here, three attorneys handled the JMQS – David Rogers, Lyndsey Torp, and Jacob

6   Jones. Ex. B ¶¶ 4-12. The Mitel Parties are not seeking a multiplier for the fee award

7   here – just the hours spent multiplied by their hourly rates. These are presumed

8   reasonable under *Serrano*, and the award requested is just given the experience of the

9   attorneys, and the nature of the dispute. *Id.* ¶¶ 4-12.

10           **d.  The Mitel Parties Are Entitled to an Award of**

11               **<u>Attorney's Fees Incurred in Litigating this Motion.</u>**

12      In *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1141, the California Supreme Court held

13   that attorney's fees and costs should include all fees and costs expended, including those

14   spent in an effort to recover attorney's fees and costs. *See also Graham v.*

15   *DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 580 ("It is well established that plaintiffs

16   and their attorneys may recover attorney fees for fee-related matters.").

17       Accordingly, the Mitel Parties are entitled to compensation for the time spent in

18   litigating the issue of recovering their attorney's fees. The Mitel Parties' estimate that

19   effort cost $14,817.00 in fees, and will include the exact fees for this Motion in the Reply.

20   Ex. B ¶ 15. The Mitel Parties will also request fees for reviewing any Opposition brief,

21   drafting the Reply, and appearing for oral argument. These fees will be presented to the

22   Court upon the filing of the Reply.

23                   **IV.   <u>Conclusion</u>.**

24       For the foregoing reasons, the Mitel Parties seek at least $47,929.00 against

25   Plaintiff, comprised of $32,242.00 for the attorney's fees on the Motion to Quash the

26   subpoena; $870.00 for the first appearance fees for MNI and MTI, and an estimated

27   $14,817.00 for preparing and filing this Motion. They also request fees for any Reply and

28   Oral Argument, which will be presented to the Court in any Reply brief.

- 8 -

SNELL & WILMER
L.L.P.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-8588

25133299

Dated: December 19, 2016                    SNELL & WILMER L.L.P.


                                            By: _____
                                                David E. Rogers
                                                Lyndsey A. Torp
                                                Attorneys for Defendant
                                                Mitel Networks Corporation and Third
                                                Parties Mitel Networks, Inc., and Mitel
                                                Technologies, Inc.

Notice of Special Appearance and Joint Motion for Attorney's Fees against Plaintiff

25133299

*COLOCATION AMERICA, INC. v. MITEL NETWORKS CORPORATION, et al.*
*L.A.S.C. Case No. BC619569*

### PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 600 Anton Boulevard, Suite 1400, Costa Mesa, California.

On February 15, 2017, I served, in the manner indicated below, the foregoing document described as **Reply in Support of Joint Motion of Mitel Networks Corporation, Mitel Networks, Inc., and Mitel Technologies, Inc. for Attorney's Fees and/or Monetary Sanctions** the interested parties in this action by placing true copies thereof, enclosed in sealed envelopes, at Costa Mesa, addressed as follows:

### *[SEE THE ATTACHED SERVICE LIST]*

☐    BY REGULAR MAIL:  I caused such envelopes to be deposited in the United States mail at Costa Mesa, California, with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the United States Postal Service each day and that practice was followed in the ordinary course of business for the service herein attested to (C.C.P. § 1013(a)).

☐    BY FACSIMILE: (C.C.P. § 1013(e)(f)).

☒    BY FEDERAL EXPRESS/ OVERNITE EXPRESS:  I caused such envelopes to be delivered by air courier, with next day service, to the offices of the addressees. (C.C.P. § 1013(c)(d)).

☐    BY PERSONAL SERVICE:  I caused such envelopes to be delivered by hand to the offices of the addressees. (C.C.P. § 1011(a)(b)).

☐    BY E-MAIL: I caused such document to be served via e-mail to the below-referenced addressees.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 15, 2017, at Costa Mesa, California

Sandi Martinez

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400,
COSTA MESA, CALIFORNIA 92626-7689
714.427.7000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*COLOCATION AMERICA, INC. v. MITEL NETWORKS CORPORATION, et al.*
*L.A.S.C. Case No. BC619569*

### Service List

| Deborah Perlman<br>PERLMAN LAW, INC.<br>26040 Acero, Suite 215<br>Mission Viejo, CA 92691 | **COUNSEL FOR COLOCATION AMERICA, INC.**<br><br>Phone:      310.551-0155<br>E-mail: Deborah@perlmanlawoffices.com |
|---|---|
| Courtesy copy to:<br><br>Paul Sigelman, Esq.<br>433 N. Camden Drive, Suite 970<br>Beverly Hills, CA 90210 | Phone:      310.278-8011 |

24400588

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689
714-427-7000

PROOF OF SERVICE

Exhibit C

## Attorney Fees re Motion to Quash Subpoenas

| Timekeeper | Description | Date | Time | Hourly Rate | Amount |
|---|---|---|---|---|---|
| Jones, Jacob | Review and analyze subpoenas on C. Myers and MTI, develop strategy for responding with D. Rogers and L. Torp, and legal research in support of same. | 9/20/2016 | 3.80 | 305.00 | 1,159.00 |
| Rogers, David E. | Communications regarding Colocation's subpoena to MTI and review subpoena (1.0); communications with L. Torp and J. Jones concerning proper service of the subpoena, the issuance of a protective order, the overly broad topics and the California state rules to prepare potential Motion to Exclude (0.5). | 9/20/2016 | 1.50 | 605.00 | 907.50 |
| Torp, Lyndsey Ann | Review plaintiff's subpoenas to Mitel Technologies and email D. Rogers regarding same; further emails with D. Rogers regarding protective order, service of subpoena; telephone conferences with D. Rogers, J. Jones regarding response to subpoenas to Mitel Technologies; research regarding objections to subpoenas; emails with D. Rogers regarding response to Colocation's counsel's request for additional documents. | 9/20/2016 | 0.50 | 460.00 | 230.00 |
| Jones, Jacob | Legal research and begin drafting letter to D. Perlman demanding withdrawal of subpoenas, setting for basis, and threatening motion for sanctions, pursuant to instructions from D. Rogers. | 9/21/2016 | 6.90 | 305.00 | 2,104.50 |
| Torp, Lyndsey Ann | Draft separate statement in support of motion to quash | 9/21/2016 | 0.30 | 460.00 | 138.00 |

| Timekeeper | Description | Date | Time | Hourly Rate | Amount |
|---|---|---|---|---|---|
| | subpoenas. | | | | |
| Torp, Lyndsey Ann | Draft shell objections to subpoenas to Mitel Technologies and C. Myers; telephone conferences with J. Jones regarding status. | 9/22/2016 | 1.00 | 460.00 | 460.00 |
| Rogers, David E. | Review subpoenas served on Craig Myers and communications with M. Whittington regarding same. Review information related to Mr. Myers, Mitel Networks, Inc. And Mitel Technologies, Inc. Legal research regarding service of subpoena and prepare letter to Colocation to withdraw subpoenas. | 9/22/2016 | 4.10 | 605.00 | 2,480.50 |
| Jones, Jacob | Draft and revise five+ page letter to D. Perlman demanding withdrawal of subpoenas to MTI and setting for the reasons. | 9/22/2016 | 3.80 | 305.00 | 1,159.00 |
| Jones, Jacob | Review and revise written analysis of all of the legal issues concerning Colocation's subpoenas, and correspondence with D. Rogers concerning same. | 9/22/2016 | 1.10 | 305.00 | 335.50 |
| Jones, Jacob | Finalize five+ page letter to D. Perlman demanding withdrawal of illegal subpoenas and setting for the reasons. | 9/23/2016 | 0.80 | 305.00 | 244.00 |
| Rogers, David E. | Further legal research and preparation of letter to D. Perlman to withdraw subpoenas. | 9/23/2016 | 4.00 | 605.00 | 2,420.00 |
| Rogers, David E. | Preparation of Motion to Quash subpoenas to Mitel Technological, Inc. and Declarations in Support. | 9/26/2016 | 1.40 | 605.00 | 847.00 |
| Jones, Jacob | Additional legal research in support of quashing Colocation's third-party subpoenas. | 9/26/2016 | 0.80 | 305.00 | 244.00 |

| Timekeeper | Description | Date | Time | Hourly Rate | Amount |
|---|---|---|---|---|---|
| Rogers, David E. | Finalize draft declarations for C. Myers and M. Whittington in support of Motion to Quash. | 9/27/2016 | 2.00 | 605.00 | 1,210.00 |
| Jones, Jacob | Revise draft motion to quash subpoenas, and revise declarations of M. Whittington and C. Myers in support of same, and correspondence with D. Rogers concerning same. | 9/27/2016 | 1.80 | 305.00 | 549.00 |
| Jones, Jacob | Evaluate newly received subpoenas on C. Myers and MTI, and discuss strategy for responding to same with D. Rogers. | 9/27/2016 | 0.50 | 305.00 | 152.50 |
| Jones, Jacob | Continue legal research finding additional grounds for quashing subpoenas on C. Myers and MTI, and correspondence with L. Torp and D. Rogers concerning same. | 9/28/2016 | 3.80 | 305.00 | 1,159.00 |
| Rogers, David E. | Communications with Mitel and review second set of subpoenas presented to Craig Myers (1.1); communications with opposing counsel regarding withdrawal of subpoena (0.6); prepare Motions to Quash (2.3). | 9/28/2016 | 4.00 | 605.00 | 2,420.00 |
| Torp, Lyndsey Ann | Draft objections to subpoenas to MNI and MTI subpoenas; emails with D. Rogers regarding email to plaintiff's counsel regarding subpoenas. | 9/28/2016 | 2.50 | 460.00 | 1,150.00 |
| Torp, Lyndsey Ann | Revise separate statement in support of motion to quash; emails with J. Jones regarding costs for compiling information; research regarding attorney of record requirements for issuing subpoena; revise objections to second set of subpoenas; email team regarding motion to quash hearing dates and service. | 9/29/2016 | 1.20 | 460.00 | 552.00 |

| Timekeeper | Description | Date | Time | Hourly Rate | Amount |
|---|---|---|---|---|---|
| Rogers, David E. | Continue preparation of Motion to Quash and exhibits, and review subpoenas and factual information related thereto (6.1); review and modify declarations of M. Whittington and C. Myers (0.5). | 9/29/2016 | 6.60 | 605.00 | 3,993.00 |
| Jones, Jacob | Additional legal research in support of motion to quash, including analyzing recent California Supreme Court case analyzing Daimler, and correspondence with D. Rogers and L. Torp concerning same. | 9/29/2016 | 5.40 | 305.00 | 1,647.00 |
| Jones, Jacob | Continue revising Motion to Quash multiple subpoenas, and correspondence with D. Rogers concerning same. | 9/29/2016 | 4.30 | 305.00 | 1,311.50 |
| Torp, Lyndsey Ann | Finalize motion to quash for filing and service. | 9/30/2016 | 2.20 | 460.00 | 1,012.00 |
| Rogers, David E. | Continue review to Motion to Quash, review case law and exhibits (2.8); prepare separate statement for motion with reasons for quashing subpoena (1.0). | 9/30/2016 | 3.80 | 605.00 | 2,299.00 |
| Jones, Jacob | Continue revising Motion to Quash multiple subpoenas, and correspondence with D. Rogers and L. Torp concerning same, draft notice of motion, and draft declaration of D. Rogers in connection with same, in preparation for filing. | 9/30/2016 | 3.90 | 305.00 | 1,189.50 |
| Torp, Lyndsey Ann | Email D. Rogers regarding depositions, motion to quash. | 10/3/2016 | 0.10 | 460.00 | 46.00 |
| Rogers, David E. | Prepare communication to opposing counsel about depositions being postponed and review declarations in support of motion for supporting evidence. | 10/3/2016 | 0.50 | 605.00 | 302.50 |

| Timekeeper | Description | Date | Time | Hourly Rate | Amount |
|---|---|---|---|---|---|
| Torp, Lyndsey Ann | Draft amendment regarding motion to quash subpoena. | 10/10/2016 | 0.30 | 460.00 | 138.00 |
| Jones, Jacob | Legal research regarding assigning cost for burdensome discovery to Colocation, per request from D. Rogers. | 10/11/2016 | 0.80 | 305.00 | 244.00 |
| Torp, Lyndsey Ann | Emails with team regarding reply to motion to quash third party subpoenas to MTI. | 10/19/2016 | 0.30 | 460.00 | 138.00 |
| | **Attorney Services** | | **74.0** | | **$32,242.00** |

25383259.2

David E. Rogers (admitted *pro hac vice*)
dorgers@swlaw.com
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070

RECEIVED
MAR 0 6 2017
DEPT. 73

FILED
Superior Court of California
County of Los Angeles

APR 08 2017

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
M.Y. Carino

Lyndsey A. Torp (#261734)
ltorp@swlaw.com
SNELL & WILMER L.L.P.
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
Telephone: (714) 427-7000
Facsimile: (714) 427-7799

Attorneys for Mitel Networks Corporation and
Third Parties Mitel Technologies, Inc. and Mitel
Networks, Inc.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| COLOCATION AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> MITEL NETWORKS CORPORATION, and DOES 1-10, inclusive, <br><br> Defendant. | Case No. BC619569 <br><br> [Proposed] Order: <br><br> (1) Denying Plaintiff's Motion to Tax Costs; and <br><br> (2) Granting in Part and Denying in Part the Joint Motion of Mitel Networks Corporation, Mitel Networks, Inc., and Mitel Technologies, Inc. for Attorneys' Fees and/or Monetary Sanctions <br><br> Date: February 23, 2017 <br> Time: 8:30 a.m. <br> Dept.: 73 <br> Reservation Nos.: 161118175381 and 161219192067 <br><br> Complaint Filed: May 5, 2016 |

25838611

1    On February 23, 2017, the following motions were heard by the Court:

2        1.    Plaintiff Colocation America, Inc.'s Motion to Tax Costs, filed on or about

3    November 18, 2016 (the "Motion to Tax"); and

4        2.    The joint motion of Mitel Networks Corporation, Mitel Networks, Inc., and

5    Mitel Technologies, Inc. for Attorneys' Fees and/or Monetary Sanctions, filed on or about

6    December 19, 2016 (the "Motion for Attorneys' Fees").

7        Deborah Perlman and Paul Sigelman appeared on behalf of plaintiff Colocation

8    America, Inc.

9        David Rogers and Lyndsey Torp appeared via court call on behalf of Mitel

10   Networks Corporation, Mitel Networks, Inc., and Mitel Technologies, Inc.

11       After considering the supporting and opposing papers filed by the parties in

12   connection with the Motion to Tax and the Motion for Attorneys' Fees, the pleadings on

13   file in this action, and the arguments of counsel at the hearing on the Motion to Tax and

14   the Motion for Attorneys' Fees, it is HEREBY ORDERED that:

15                          **MOTION TO TAX**

16       1.    The Motion to Tax is DENIED.

17       2.    Plaintiff Colocation America, Inc. shall pay Mitel Networks Corporation

18   $1,555.00 for Mitel Networks Corporations' costs incurred in this lawsuit, as requested in

19   the Memorandum of Costs (Summary), filed November 7, 2016.

20                     **MOTION FOR ATTORNEYS' FEES**

21       3.    The Motion for Attorneys' Fees is GRANTED IN PART, and DENIED IN

22   PART.

23       4.    Plaintiff Colocation America, Inc. shall pay Mitel Networks Corporation,

24   Mitel Networks, Inc., and Mitel Technologies, Inc. $32,242.00 for fees incurred in

25   challenging the various subpoenas issued and served in bad faith and without substantial

26   justification.

27       5.    Plaintiff Colocation America, Inc. shall pay Mitel Networks, Inc. and Mitel

28   Technologies, Inc. $870.00 for their first appearance fees incurred in this action.

- 2 -

SNELL & WILMER
L.L.P.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1        6.    Plaintiff Colocation America, Inc. shall pay Mitel Networks Corporation,

2    Mitel Networks, Inc., and Mitel Technologies, Inc. $5,980.00 for fees incurred in relation

3    to preparing the Motion for Attorneys' Fees.

4        IT IS SO ORDERED

5          APR 0.3 2017

6    Dated: _____

7        Honorable Rafael Ongkeko
    Superior Court Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

Order on Motion to Tax Costs and Joint Motion for Attorneys' Fees and/or Monetary Sanctions

25838611

# EXHIBIT 2N

*This e-mail message contains confidential, privileged information intended solely for the addressee. Please do not read, copy, or disseminate it unless you are the addressee. If you have received it in error, please call us (collect) at (602) 515-0181 and ask to speak with the message sender.*
*Also, we would appreciate your forwarding the message back to us and deleting it from your system. Thank you.*

*TREASURY DEPARTMENT CIRCULAR 230 DISCLAIMER: To ensure compliance with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including any attachments, is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Service. (The foregoing statement is made in accordance with Circular 230, 31 C.F.R. Part 10.)*

**From:** Rogers, David <drogers@swlaw.com>
**Sent:** Monday, March 19, 2018 5:45 PM
**To:** Teri Foster; Harry Stanford; paul@sigelmanlaw.com
**Cc:** Dolan, Denise; Barker, David; Jones, Jacob
**Subject:** Colocation/MNC Settlement Communication Pursuant to FRE 408

Teri.  MNC offers to settle this matter by a one-time payment from MNC to Colocation of $50,000.  The Contract between the parties would be voided, and there would be mutual releases of all pending or possible counts and claims.

There are no IPv4 addresses to transfer, so no rights in IPv4 addresses would be conveyed, and the issue is moot anyway.  Colocation could still purchase the domain name for $10,000 if it chooses.  The District Court of Arizona would retain jurisdiction to resolve any dispute.  The final and complete settlement terms would be set forth in a written document executed by the parties.

This offer is open until the start of Albert Ahdoot's deposition on Wed.  Let us know.

Thanks,  Dave

## Dolan, Denise

| | |
|---|---|
| **From:** | Rogers, David |
| **Sent:** | Thursday, November 09, 2017 8:57 AM |
| **To:** | Teri Foster; Paul Sigelman (paul@sigelmanlaw.com) |
| **Cc:** | Dolan, Denise; Barker, David |
| **Subject:** | Settlement Proposal Nov. 9, 2017 |

Dear Teri:

The Court's last Order rejected Colocation's arguments and granted MNC's motion to amend to amend the pleadings. Corey Kotler has now been added as a defendant, and the affirmative counts of fraud, common-law conspiracy, and aiding and abetting have been added against Kotler and Colocation.

Corey Kotler and his wife are now named counter-defendants and both have been served.

The Court also agreed that Mr. Ahdoot should be added as a personal defendant and requested that Colocation stipulate to adding him. We will send you the proposed amended counterclaim today or tomorrow, and we request your stipulation by 5 pm on Monday, November 13, 2017. Otherwise we will file a motion to enter the amended counterclaim.

The Court will also amend the scheduling order to permit additional discovery, and recognized that MNC has a right to seek sanctions for Colocation's discovery tactics. MNC will pursue those sanctions as it did in the California case.

MNC proposes the following settlement to Colocation: (1) Colocation will pay MNC $185,000, which will satisfy the sanction levied against it in the California lawsuit, the interest since the sanction was entered, MNC's fees related to collecting the sanction, and pay part of MNC's fees in this lawsuit, (2) MNC will quit claim its rights (to the extent there are any) to 1,000 IPv4 addresses in the range IPv4134.22.0.0/16 to Colocation, and (3) both parties would dismiss all counts in this lawsuit with prejudice and mutually release one another.

Assuming that the check received from Deborah Perlman on Tuesday clears, the $185,000 would be reduced by $50,046.97 now paid for sanctions in the California case. The total for Colocation to settle would then be $134,953.03.

That would put an end to the liability of Colocation, Corey Kotler, and Albert Adhoot related to this dispute. A finding of fraud against Colocation, Ahdoot and Kotler is likely, as is an award of discovery sanctions.

This proposal is open until 5 pm Pacific time November 10, 2017.

Thank you, Dave



Snell & Wilmer
———— L.L.P. ————
LAW OFFICES

One Arizona Center
400 East Van Buren Street
Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000
602.382.6070 (Fax)
www.swlaw.com

DENVER
LAS VEGAS
LOS ANGELES
LOS CABOS
ORANGE COUNTY
PHOENIX
RENO
SALT LAKE CITY
TUCSON

**David E. Rogers**
**602.382.6225**
**drogers@swlaw.com**

October 11, 2017

**VIA EMAIL (tfoster@bihlaw.com)**

Teri Foster, Esq.
Brier Irish Hubbard & Erhart PLC
2400 E. Arizona Biltmore Circle, Suite 1300
Phoenix, AZ 85016-2115

Re:   <u>Settlement Proposal October 11, 2017</u>

Dear Teri:

MNC proposes the following settlement to Colocation:  (1) Colocation will pay MNC $150,000, which will satisfy the $40,000 plus sanction levied against it in the California lawsuit, MNC's fees related to collecting the sanction, and pay part of MNC's fees in this lawsuit, (2) MNC will quit claim its rights (to the extent there are any) to 6,500 IPv4 addresses in the range IPv4134.22.0.0/16 to Colocation, and (3) both parties would dismiss all counts in this lawsuit with prejudice and mutually release one another.

That would put an end to the liability of Colocation, Corey Kotler, and Albert Adhoot related to this dispute.  A finding of fraud against Colocation and Kotler is likely.  And, if what we suspect is true, Colocation America, Inc. was fraudulently formed and maintained.  The corporate structure would then be a nullity and Albert Adhoot would be personally liable for:  (1) any judgment in this lawsuit, (2) the $40,000 plus sanction in the California lawsuit, (3) any other judgments by anyone against Colocation, and (4) all business debts of Colocation.

We look forward to receiving Colocation's responses to MNC's outstanding discovery requests.

Sincerely yours,

David E. Rogers

DER/dhd

cc:   Michelle R. Whittington, Esq.
David G. Barker, Esq.

4848-0842-9649

Snell & Wilmer is a member of LEX MUNDI, the Leading Association of Independent Law Firms

# EXHIBIT 2O

BRIER, IRISH, HUBBARD & ERHART, P.L.C.
2400 East Arizona Biltmore Circle, Suite 1300
Phoenix, Arizona 85016
Telephone (602) 522-3940
Facsimile (602) 522-3945
Teresa H. Foster, Of Counsel (010877)
For Court Filings/Pleadings:
ctfilings@thfosterlaw.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| COLOCATION AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MITEL NETWORKS CORPORATION,<br><br>Defendant. | Case No. 2:17-cv-00421-NVW<br><br>(Honorable Neil V. Wake)<br><br>**PLAINTIFF'S ANSWERS TO DEFENDANT MITEL NETWORKS CORPORATION'S SECOND SET OF INTERROGATORIES TO COLOCATION AMERICA, INC. (Nos. 6–13)** |

Plaintiff Colocation America, Inc. responds to Defendant Mitel Networks Corporation's ("MNC") Second Set of Interrogatories as follows:

**Interrogatory No. 6 Answer:**

Plaintiff intends to offer the testimony of Albert Ahdoot to support its contention that IPv4 addresses are "intellectual property." Plaintiff's contention is based on its experience in this industry for over a decade. These addresses are property rights that can be transferred. Like other forms of intellectual property, these addresses are valuable because they represent ownership of an exclusive right to use this intangible property.

**Interrogatory No. 7 Answer:**

Plaintiff does not contend that IPv4 addresses are "goodwill."

**Interrogatory No. 8 Answer:**

Plaintiff intends to introduce testimony from Albert Ahdoot concerning both the express language of the Contract and the express language in the escrow.com instructions, both of which provide for the transfer of the IPv4 addresses.

**Interrogatory No. 9 Answer:**

67.219.16.0 through 67.219.31.254

**Interrogatory No. 10 Answer:**

74.117.116.0 through 74.117.119.254

**Interrogatory No. 11 Answer:**

Objection. The financial information is not likely to lead to the discovery of admissible evidence and is irrelevant to all issues in this case.

**Interrogatory No. 12 Answer:**

Pedro Cruz, CAA, SRTP
Cruz Financial Services Inc.
15451 Superior Street
North Hills, CA 91343
818-895-7671

The other individuals identified as "Colocation Individuals" do not exist.

**Interrogatory No. 13 Answer:**

RFA #5.    When Plaintiff was originally introduced to Corey Allen Kotler, Plaintiff believed his name was Corey Allen. It was not until after the MNC transaction (at about the time that Plaintiff entered into the subsequent agreement with Dividend Advisors) that Plaintiff learned that Corey Allen also used the name Corey Kotler. Plaintiff does not have any personal knowledge concerning his true legal name, although Plaintiff does admit that he testified that his full legal name is Corey Allen Kotler.

RFA #6.     See response to RFA #5 above.

RFA #7.     Plaintiff knew, before the Contract was signed, that Corey Allen was communicating with MNC. At this time, Plaintiff did not know that Corey Allen also used the name Corey Kotler.

RFA #8.     Plaintiff knew, before Corey Allen contacted MNC, that he was an actor. At this time, Plaintiff was not aware that Corey Allen also used the name Corey Kotler.

RFA #9.     Plaintiff admits this allegation but it did not know that Corey Allen went by another name before the Contract was signed and Plaintiff never had any communications with MNC before the Contract was signed. Furthermore, Plaintiff does not have personal knowledge concerning what Corey Allen aka Corey Kotler's full legal name is,

RFA #10.    Plaintiff admits this allegation, but Plaintiff never had any communications with MNC before the Contract was signed. Furthermore, Plaintiff did not know that Corey Allen also used the name Corey Kotler before the Contract was signed.

RFA #11.    Plaintiff admits this allegation. Plaintiff knew about the IPv4 addresses before Corey Allen contacted MNC. Prior to the initial contact with MNC, Plaintiff did not know that Corey Allen also used the name Corey Kotler.

RFA #12.    Plaintiff admits that it agreed with Corey Allen that Allen would contact MNC and attempt to negotiate a transfer to Plaintiff of the IPv4 addresses. At the time, Plaintiff did not know that Corey Allen also used the name Corey Kotler.

RFA #13.    Plaintiff admits that it was also a party to email communications between Corey Allen and MNC during the negotiation of the Contract. During that timeframe, Plaintiff did not know that Corey Allen also used the name Corey Kotler. Furthermore, Plaintiff has been unable to locate any email exchanges between Plaintiff and Corey Allen (aka Corey Kotler) that



did not also include a representative of MNC. 

RFA #14.   The Contract itself expressly mentioned the IPv4 addresses. Furthermore, the escrow.com instructions agreed to by all parties also expressly references the transfer of the IPv4 addresses. Plaintiff never had direct communications with MNC while the Contract was being negotiated.

RFA #15-31.  Plaintiff admits these RFAs, but the individuals identified in these requests are the fictitious names used to identify the officers and directors for Plaintiff. See attached Declaration.

RFA #32.   Plaintiff admits this allegation but has provided the current address for Pedro Cruz in response to Interrogatory No. 12.

RFA #35.   Plaintiff admits this RFA, but the address identified is both the mailing address for Plaintiff and the address for its statutory agent.

DATED: October 16, 2017.

BRIER, IRISH, HUBBARD & ERHART, P.L.C.

Teresa H. Foster, Of Counsel
2400 E. Arizona Biltmore Circle, Ste 1300
Phoenix, AZ 85016
Attorneys for Plaintiff

CERTIFICATE OF SERVICE

ORIGINAL mailed this 16 day of October, 2017, to: 

David E. Rogers
David G. Barker
Jacob C. Jones
SNELL & WILMER, LLP
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2202

## VERIFICATION

Albert Ahdoot, upon oath states:

I am the President of Plaintiff in this matter and have reviewed Plaintiff's Responses to Second Request for Production of Documents, First Set of Request for Admissions, and Second Set of Interrogatories. I declare under penalty of perjury that the information contained therein is true and correct to the best of my knowledge, information and belief.

DATED: October _16_, 2017.

Albert Ahdoot

BRIER, IRISH, HUBBARD & ERHART, P.L.C.
2400 East Arizona Biltmore Circle, Suite 1300
Phoenix, Arizona 85016
Telephone (602) 522-3940
Facsimile (602) 522-3945
Teresa H. Foster, Of Counsel (010877)
For Court Filings/Pleadings:
ctfilings@thfosterlaw.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| COLOCATION AMERICA, INC., | Case No. 2:17-cv-00421-NVW |
| Plaintiff, | (Honorable Neil V. Wake) |
| v. | **PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND FIRST REQUEST FOR PRODUCTION** |
| MITEL NETWORKS CORPORATION, | |
| Defendant. | |

Plaintiff Colocation America, Inc. ("Colocation") responds to Defendant's

discovery requests as follows:

## FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify all persons that participated in providing responses to these

Interrogatories.

**ANSWER:**

Albert Ahdoot, Teresa Foster and Deborah Perlman.

**INTERROGATORY NO. 2:**

Identify each person you anticipate calling at the trial in this lawsuit and the nature of the person's testimony.

**ANSWER:**

1. Samantha Walthers
   *Subject of testimony:* Terms and negotiation of the Contract and Mitel's breach of same.
2. Albert Ahdoot
   *Subject of testimony:* Terms and execution of Contract and Mitel's breach of same.
3. Corey Allen (Dividend Advisors, LLC)
   *Subject of testimony:* Negotiation of Contract and Mitel's breach of same.
4. Michelle Whittington
   *Subject of testimony:* Terms and negotiations of the Contract; preparation of Contract; execution of Contract and Mitel's breach of same.
5. Greg Hiscook
   *Subject of testimony:* Terms and negotiation of the Contract and Mitel's breach of same.

**INTERROGATORY NO. 3:**

Explain all factual basis for Your belief that MNC owns any of the IPv4 addresses in the range 134.22.0.0 to 134.22.255.255.

**ANSWER:**

Plaintiff discovered through research at the American Registry for Internet Numbers ("ARIN") that these IPv4 addresses were owned by Gandalf. Upon further research, Plaintiff discovered that Gandalf filed bankruptcy in 1997 and that Mitel purchased a number of its assets.

**INTERROGATORY NO. 4:**

Identify all factual basis for Your belief that the Contract requires MNC to assign

to You the IPv4 addresses in the range 134.22.0.0 to 134.22.255.255.

**ANSWER:**

See Joint Report.

On February 24, 2016, Corey Allen emailed Michelle Whittington and stated: "As a follow up to my request, our company would like to purchase the domain gandalf.ca *as well as any potential intellectual properties or scenarios* that may be associated at a future point in time with the name gandalf.ca. My company is in a position to offer Mitel the sum of ten thousand dollars ($10,000) for *all rights*." (emphasis added)

On that same day, Michelle Whittington responded with an acceptance of the offer and a form domain name assignment agreement (the "Contract").

On February 26, 2016, Corey Allen responded to Michelle Whittington with a revised draft of the Contract and the following acknowledgement: "The company recognizes that you may or may not have rights as a result of the old bankruptcy proceedings but is willing to go forward on quit claim basis." The revised draft included the language: "The associated IPv4 134.22.0.0/16."

On March 3, 2016, Michelle Whittington responded with a "few edits and questions." One of the questions stated: "What is this?" pertaining to the IPv4 addresses. This comment from Ms. Whittington confirms that she was aware that the IPv4 addresses were included in the Contract.

The express language of the Contract clearly provides for the sale and assignment of the IPv4 addresses.

## INTERROGATORY NO. 5:

Identify all IPv4 addresses owned by Colocation.

## ANSWER:

208.70.248.0/21
208.76.248.0/21
67.207.160.0/19
67.203.0.0/18
67.227.0.0/17
174.140.192.0/18
173.211.0.0/17
184.174.0.0/17
104.143.96.0/20
104.224.64.0/19
45.73.160.0/19
216.10.0.0/19
216.74.64.0/18
66.78.0.0/18
67.219.16.0/20
74.114.116.0/22

## REQUEST TO PRODUCE

## REQUEST FOR PRODUCTION NO. 1:

All communications falling with the scope of Rule 26 of the Federal Rules of Civil

Procedure.

## ANSWER:

See attached documents bate-stamped no. 001-067.

## REQUEST FOR PRODUCTION NO. 2:

All communications between Corey Allen and/or Dividend Advisors and

Colocation America, Inc. ("Colocation") regarding the Contract or the subject matter of

the Contract.

**ANSWER:**

See documents produced in response to No. 1.

**REQUEST FOR PRODUCTION NO. 3:**

All communications showing any legal connection between: (a) Corey Allen and Colocation, or (b) Dividend Advisors and Colocation.

**ANSWER:**

There is no "legal connection" between Corey Allen and Colocation or Dividend Advisors and Colocation.

**REQUEST FOR PRODUCTION NO. 4:**

All documents showing any ownership interest by Dividend Advisors or Corey Allen in Colocation, or any ownership interest in Dividend Advisors by Colocation.

**ANSWER:**

There is no ownership interest by Dividend Advisors or Corey Allen in Colocation.

**REQUEST FOR PRODUCTION NO. 5:**

All documents showing any ownership interest by Paul Siegelman in Colocation.

**ANSWER:**

There is no ownership interest by Paul Sigelman in Colocation.

**REQUEST FOR PRODUCTION NO. 6:**

All documents related to any IPv4 addresses owned by Colocation.

**ANSWER:**

Information concerning the IPv4 addresses identified in Response to Interrogatory No. 5 can be obtained at www.ARIN.net.

**REQUEST FOR PRODUCTION NO. 7:**

All documents related to MNC or this lawsuit.

**ANSWER:**

See documents produced in response to No. 1. In addition, see documents bate-stamped Nos. 068-069.

**REQUEST FOR PRODUCTION NO. 8:**

All documents related to the value of the IPv4 addresses in the range 134.22.0.0 to 134.22.255.255.

**ANSWER:**

See Contract, IPv4 addresses included within $10,000 purchase price. Current value uncertain. At the time that the offer was made in 2016, it was unknown whether Defendant actually owned the domain name, the IPv4 addresses, or the other properties previously owned by Gandalf. These properties had not been used for almost 20 years. Plaintiff was willing to pay $10,000 for the possibility that Defendant owned the properties and that Plaintiff would be able to utilize them. Defendant, on the other hand, was willing to sell properties that it may (or may not) own and that it had not used for almost 20 years in return for $10,000.

**REQUEST FOR PRODUCTION NO. 9:**

All documents related to the valuation of the domain name gandolf.ca.

**ANSWER:**

See response to No. 8 above.

**REQUEST FOR PRODUCTION NO. 10:**

All documents identified or referred to by you in responding to MNC's First Set of

Interrogatories to Colocation.

**ANSWER:**

See documents produced in response to No. 1 and No. 7.

**REQUEST FOR PRODUCTION NO. 11:**

All documents related to any IPv4 addresses owned by MNC.

**ANSWER:**

www.ARIN.net identifies Mitel as the owner of the following addresses:

134.199.0.0/16
134.22.0.0/16

DATED: June 26, 2017.

BRIER, IRISH, HUBBARD & ERHART, P.L.C.


/s/ Teresa H. Foster
Teresa H. Foster, Of Counsel
2400 E. Arizona Biltmore Circle, Ste 1300
Phoenix, AZ 85016
Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

ORIGINAL emailed this 26th day of June, 2017, to:

David E. Rogers
David G. Barker
Jacob C. Jones
SNELL & WILMER, LLP
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2202
drogers@swlaw.com
dbarker@swlaw.com
jcjones@swlaw.com


     /s/ Harry Stanford

BRIER, IRISH, HUBBARD & ERHART, P.L.C.
2400 East Arizona Biltmore Circle, Suite 1300
Phoenix, Arizona 85016
Telephone (602) 522-3940
Facsimile (602) 522-3945
Teresa H. Foster, Of Counsel (010877)
For Court Filings/Pleadings:
ctfilings@thfosterlaw.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| COLOCATION AMERICA, INC., | Case No. 2:17-cv-00421-NVW |
| Plaintiff, | **PLAINTIFF'S SUPPLEMENTAL RESPONSE TO DEFENDANT'S REQUEST FOR SUPPLEMENTAL RESPONSES** |
| v. | |
| MITEL NETWORKS CORPORATION, | |
| Defendant. | |

Plaintiff hereby responds to Defendant's Request for Supplemental Responses as follows:

**GENERAL OBJECTION**:  Colocation objects to producing any communications between Ahdoot and Walters and Colocation counsel (Sigelman, Perlman, or Foster) subsequent to the election to file the California litigation (April 18, 2016), because Walters has been acting as the "functional equivalent" of a Colocation employee in responding to counsel's multiple emails seeking information in connection with the litigation, and therefore are privileged. The parties discussed privileged documents and agreed not to prepare and exchange privileged logs in this matter.

**#1:** All emails between Kotler and Ahdoot related to: MNC, communications with MNC, Dividend Advisors, L.L.C., Kotler, the IPv4 addresses at issue in this dispute, and including communications on which Paul Sigelman or anyone else was copied. RFPs 1-2, 16.

**#1 Response:** See original disclosure statement and **bates nos. 80-88** attached hereto. In preparing this response Albert Ahdoot searched the following emails:

1. All emails to Allen (Corey.Allen@dividendadvisors.com); 

2. All emails from Allen; 

3. All emails to Kotler (coreyallenkotler@gmail.com); and 

4. All emails from Kotler. 

**#2:** All emails (on which Kotler or anyone else – including Samantha Walters -- was copied) between Paul Sigelman and Ahdoot related to: MNC, communications with MNC, this dispute, Kotler, Dividend Advisors, L.L.C., or the IPv4 addresses at issue in this case. RFPs 1-2, 16.

**#2 Response:** See General Objection, initial disclosure and response to #1 above, and attached **bates nos. 89-96**.

Notwithstanding the objection, all emails have been produced. In preparing this response Albert Ahdoot searched the following emails:

1. All emails to Paul Sigelman (that include third parties) (paul@sigelmanlaw.com), and

2. All emails from Paul Sigelman (that include third parties).

**#3:** All emails between Sigelman and Kotler related to: MNC, communications with MNC, Colocation, Dividend Advisors, L.L.C., this dispute, or the IPv4 addresses at issue in this

case. RFPs 1-2, 16. Note: As Colocation's attorney, Sigelman's documents are within Colocation's control.

**#3 Response:** See response to #2 above, and **bates nos. 272-275**.

**#4:** All communications between Colocation or any of its contractors or attorneys, and Pedro Cruz related to: MNC, communications with MNC, this dispute, the IPv4 addresses at issue in this case, Kotler, the value of IPv4 addresses, Colocation's finances from January 1, 2014 to present, filings with the state of Nevada that include fictitious names, or filings with the state of California that include fictitious names. RFPs 8, 12-17.

**#4 Response:** No communications exist relative to MNC, communications with MNC, this dispute, the IPv4 addresses at issue in this case, Kotler, or the value of IPv4 addresses and Cruz. There only communications that exist concern financial matters (preparation of quarterly reports and tax returns) and/or filings with the State of California.  See **bates nos. 97-101**.

**#5:** All communications with David Shugarman and either Colocation, a Colocation contractor, Sigelman, Teri Foster, or any other attorney of Colocation related to: MNC, this dispute, Kotler, Dividend Advisors, L.L.C., filings with the state of Nevada that include fictitious names, filings with the state of California that include fictitious names, the filing by Ahdoot in Nevada on October 19, 2017, or Shugarman's declaration produced in this lawsuit. RFPs 1-2.

**#5 Response:** See **bates nos. 102-119, 276**.  In preparing this response Albert Ahdoot searched the following emails:

1.    All emails to David Shugarman (lvdave@att.net); and

2.    All emails from David Shugarman.

Each year Mr. Shugarman would submit an annual report to Colocation who would then review and sign the report and return it. This was all done by mail (not email) and Colocation is

searching its files to see if there were any cover letters associated with the annual filings. If so, they will be produced.

     **#6:** Records of payments from Colocation to Kotler, Cruz or Ahdoot. RFPs 18- 19.

     **#6 Response:** Attached are redacted copies of two checks to Corey Allen Kotler: Check No. 3707 (5/4/16) and Check No. 3756 (7/5/17). In addition there was another check, No. 3734 (6/12/16) that was requested from the bank, but could not be found.  A copy from Plaintiff's check book is attached.

     Payments to Cruz were made by charge card and Colocation will be producing a record of payments. Colocation objects to producing any record of payments to Ahdoot because that was not the subject of RFP Nos. 18 or 19.  Attached are copies of invoices for 2015-2017. See **bates nos. 120-128.**

     **#7:** Colocation's monthly bank statements from January 1, 2016 to present, and federal and state tax returns for the years 2014-2016. RFPs 1-2.

     **#7 Response:** Colocation repeats its prior objection. Without waiving this objection, attached are copies of the cover page for federal tax returns for years 2014-2016 (with EIN redacted) to confirm filing. See **bates nos. 129-131**.  Nevada does not require state tax returns. Copies of the 2014 to 2016 WFB monthly statements (with account # redacted) are attached.  See **bates nos. 132-271**. These documents are being submitted pursuant to the Protective Order in this matter and as such are considered confidential information, designated as "CONFIDENTIAL – FOR COUNSEL ONLY" and must not be disclosed by the receiving party to anyone other than those persons designated within the Order and must be handled in the manner set forth therein, and in any event, must not be used for any purpose other than in connection with this litigation,

unless and until such designation is removed either by agreement of the parties, or by order of the Court.

**#8:** All communications between Ahdoot and Samantha Walters or other Colocation contractors or other third parties related to: MNC, this dispute, Kotler, Dividend Advisors, L.L.C., the IPv4 addresses at issue in this case, the value of IPv4 addresses, Colocation's finances from 2014 to present, filings with the state of Nevada that include fictitious names, filings with the state of California that include fictitious names, the filing by Ahdoot in Nevada on October 19, 2017, or Shugarman's declaration produced in this lawsuit.

**#8 Response:** See General Objection.  Notwithstanding said objection, see Response to #1, 2 and 5 above.

DATED: November 21, 2017.

BRIER, IRISH, HUBBARD & ERHART, P.L.C.


/s/ Teresa H. Foster
Teresa H. Foster, Of Counsel
2400 E. Arizona Biltmore Circle, Ste 1300
Phoenix, AZ 85016
Attorneys for Plaintiff

CERTIFICATE OF SERVICE

ORIGINAL emailed this 21st day of November 2017, to:

David E. Rogers
David G. Barker
Jacob C. Jones
SNELL & WILMER, LLP
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2202
drogers@swlaw.com
dbarker@swlaw.com
jcjones@swlaw.com

/s/ Harry Stanford

# EXHIBIT 2P

1  Deborah Perlman (SBN 177991)
   Perlman Law, Inc.
2  26040 Acero Suite 215
   Mission Viejo, CA 92691
3  Telephone: (310) 551-0155
   Deborah@perlmanlawoffices.com
4
   Attorney for Plaintiff
5
              STATE OF CALIFORNIA
6         LOS ANGELES SUPERIOR COURT
7
   COLOCATION AMERICA, INC.          CASE NO: **BC 6 1 9 5 6 9**
8
             Plaintiff,
9                                    **COMPLAINT FOR EQUITABLE**
        vs.                          **RELIEF AND DAMAGES**
10
   MITEL NETWORKS CORPORATION, and   **UNLIMITED JURISDICTION**
11 DOES 1-10, inclusive
12
13           Defendants.
14
15      Plaintiff Colocation America, Inc. ("Colocation") brings this complaint
16 against Defendant Mitel Networks Corporation ("Mitel") and alleges as follows:
17                          THE PARTIES
18      1.     Colocation provides computer server co-location to companies
19 operating on the internet.  The company is a private enterprise not publicly traded
20 nor publicly held.
21      2.     This action is brought against Mitel, a Canadian corporation
22 maintaining principal California offices in Irvine, California, and the State to
23 which the Defendant directed the executed subject contract from the offices of its
24 Arizona attorneys, and the State in which escrow was opened, and performance
25 was breached..
26                       GENERAL ALLEGATIONS
27      3.     Action is commenced against Defendant Does 1 -10, herein, pursuant to the
28

                                    1
         Complaint For Damages, Specific Performance an Equitable Relief

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAY 0 5 2016

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

1  provision of §474 of the California Code of Civil Procedure. Each of the Defendant

2  Does participated in, or is responsible in some manner, for the events, acts, omissions,

3  and conduct, referred to herein, and as a proximate result caused damages as herein

4

5  alleged, and/or is subject to the remedies of this Court.

6      4.    At all times, each Defendant was the agent and, was

7  acting in the capacity of principal for himself and of agent and co-conspirator of the

8  other Defendants, and has ratified and approved the acts of the remaining Defendants.

9

10  <u>THE AGREEMENT</u>

11      5.    On information and belief, Mitel acquired Gandalf Technologies Inc

12  in 1997 and thereby acquired certain rights held by that company. Those rights

13  included a domain name and the associated IPv4 internet protocol addresses.

14      6.    On March 4, 2016, an agreement was entered and signed between the

15  parties, a copy of which is attached hereto as **Exhibit 1**.

16      7.    Section A of the agreement provides,

17

18  "For good and valuable consideration, payable as more particularly
described herein, Mitel hereby agrees to quit claim to INTELLECTUAL

19  PROPERTY PURCHASER any of Mitel's right, title and interest in and to
the Domain Name <gandalf.ca> and the registration thereof, together with

20  the goodwill of the business connected with and symbolized by such
Domain Name and the associated IPv4 134.22.0.0/16 and any associated

21  trade dress, or other intellectual property intellectual property rights relating

22  thereto, to the extent any such rights exist. The quit claim transfer and
assignment shall take effect as set forth herein upon INTELLECTUAL

23  PROPERTY PURCHASER'S making the payment as provided for herein"

24

25

26      8.    The agreement further provided that payment would be made for the

27  above acquisition through an escrow agent "escrow.com" and that Mitel would

28  perform the change the ownership of the domain name and execute such

instrument of transfer as would be required to effectuate purchase of the
intellectual property rights, as well as to cooperate with all transactions needed to
do so.

## BREACH OF AGREEMENT

9.     Mitel has refused to perform its obligations under the agreement or to
cooperate with Colocation to complete the transfer obligations, and has instead
announced intent to renege on its required performance under the contract.

## LITIGATION HOLD

10.     Demand is hereby made that Defendants preserve all electronically
stored information ("ESI"), as well as documents and tangible things, potentially
relevant to the facts and issues plead in this complaint, including by the way of
example, correspondence, memoranda, journal entries, pertaining to acquisition of
intellectual rights identified herein, all investigations and evaluations made in
regard to such rights prior to and at the time the subject agreement was entered, all
inter-company memoranda, email, and messages since the agreement was entered
pertaining to the subject rights, investigation, and evaluation thereof.  ESI includes
by the way of example information electronically, magnetically or optically stored,
such as digital communications, word processed documents, calendar and diary
entry data, backup and archival files, all as stored on Defendants' computer
systems and employee systems, or other media and devices, such as their personal
is digital assistants, voice-messaging systems, on-line repositories and cell phones.
It is further demanded that Defendants' management and counsel pursue
immediate intervention to prevent loss due to routine operations, to initiate a
litigation hold for potentially relevant ESI, and to prevent degradation of the ability
to search ESI by electronic means.  Such litigation hold is to secure ESI on office
work stations and servers, home and portable systems, to anticipate that employees

may seek to delete or destroy information that they regard as confidential or embarrassing, and to secure documents which are required to access, interpret or search relevant ESI, including logs, control sheets, specifications, naming protocols, diagrams, and user ID and password rosters.

### FIRST CAUSE OF ACTION

[Breach of Contract against Mitel and DOES 1-10]

11.     Plaintiff incorporates paragraphs 1-10, hereinabove.

12.     By the agreement of March 4, 2016, Defendant and Does 1-10 are under the obligation to transfer and assign the intellectual property identified by the agreement, including domain name and associated IPv4 134.22.0.0/16.

13.     Plaintiff performed all conditions and promises under the agreement on his part to be performed, or was discharged from obligation or performance by the breach of the Defendant, or its performance is not called upon because of the failure of Defendant to meet conditions precedent, concurrent, or subsequent.

14.     Defendant has failed to transfer or assign, and has announced anticipatory breach of its obligation.

15.     Plaintiff has been damaged in the sum not less than the unlimited jurisdiction of this court, all in an amount according to proof which will be offered at trial, together with legal interest thereon

16.     Without the intellectual property subject of this suit, Colocation will be jeopardized in the business for which Colocation is engaged, and it will be extremely difficult to ascertain compensation which will afford the Company adequate relief and multiplicity of separate actions may be required as damages accrue. Equitable relief is thereby requested by the way of Temporary Restraining Order, Preliminary, and Permanent Injunction, enjoining and restraining the Defendants, and those acting in concert with them, from themselves exercising, or effecting the exercise or control of the intellectual property. Equitable relief is also

4

Complaint For Damages, Specific Performance an Equitable Relief

thereby requested by the way of injunction compelling Defendants to transfer and assign the intellectual property subject of suit to Colocation and to perform such other acts as to complete the transfer of those rights as may be required within the internet business.

17.   By reason of the Defendants' conduct, Plaintiff is entitled to have Defendants declared the constructive trustee of any and all benefits and proceeds traceable from the violations by the Defendants alleged herein, and the benefits and proceeds are to be executed for the benefit of Colocation America.

<u>SECOND CAUSE OF ACTION</u>

[Specific Performance against Mitel and DOES 1-10]

18.   Plaintiff incorporates paragraphs 1-10, hereinabove.

19.   By the agreement of March 4, 2016, Defendant and DOES 1-10 is under the obligation to transfer and assign the intellectual property identified by the agreement set forth in Exhibit 1 hereto, including domain name and associated IPv4 134.22.0.0/16.

20.   Plaintiff's remedy in damages or in an action at law for this breach of Defendants' duties under the Agreement set forth in Exhibit 1 hereto will be inadequate to protect Plaintiff's right in and to the Domain Name and IP addresses to be transferred pursuant thereto.

21.   Defendant's continued and wrongful retention of said property will produce great or irreparable injury to Plaintiff and also tends to make any purely monetary judgment in this action ineffectual.

22.   By reason of Defendant's conduct, Plaintiff is entitled to an order of specific performance of the Agreement subject of this action.

WHEREFORE, Plaintiff prays for:

(a)   A Temporary Restraining Order, Preliminary and Permanent

Injunction issue, enjoining and restraining the named Defendants, and all persons acting in concert and participation with them as follow from exercising, or effecting exercise or control of the intellectual property subject of this suit;

(b)     A permanent injunction enjoining Defendants and enjoining and restraining the named Defendants, and all persons acting in concert and participation with them, to transfer, assign, and to perform such other acts as to complete the transfer of those rights as may be required within the internet business;

(c) Specific Performance of the Agreement subject of this Action by way of Defendant transferring and assigning the intellectual property identified by the agreement, including domain name and associated IPv4 134.22.0.0/16.

(d)     Order the Defendants and to serve and file a report of the Defendant in writing and under oath, within 30 days of the Court's Order, setting further in detail the manner and form in which the Defendant has complied with the above decrees     ;

(e)     Constructive trust of any and all property and proceeds due to be returned to Plaintiff, and such be executed to the benefit of Plaintiff;

(f)     Compensatory damages in an amount which is not yet ascertained but proof of which shall be offered at trial and within the jurisdiction of this Court with Legal interest according to law;

(g)     Award of costs of suit; and

(h)     For such other and further relief as the Court deems just and proper.

Complaint For Damages, Specific Performance an Equitable Relief

1

2

3    Date:  May 2, 2016

4

Respectfully submitted,

Deborah Perlman

5

6    Attorney for Plaintiff
     Colocation America, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

## DOMAIN NAME ASSIGNMENT AGREEMENT

THIS AGREEMENT is made this 7th day of March, 2016 ("the Agreement"), by and between MITEL NETWORKS CORPORATION, on behalf of itself and its subsidiaries, a Canadian corporation with offices at 350 Legget Drive, Ottawa, Ontario, Canada K2K2W7 ("Mitel") and Colocation America, Inc., a Nevada Corporation with offices at 9360 W Flamingo Rd, Suite 110-178, Las Vegas, NV 89147 ("INTELLECTUAL PROPERTY PURCHASER").

WHEREAS, Dividend Advisors, LLC has introduced the INTELLECTUAL PROPERTY PURCHASER to intangible rights which may be claimed as a result of a prior bankruptcy proceeding, including domain name and related intellectual property.

WHEREAS, Mitel hereby agrees to quit claim, transfer and assign, and INTELLECTUAL PROPERTY PURCHASER hereby agrees to purchase the domain name <gandalf.ca> (the "Domain Name") and related rights, subject to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the promises and agreements set forth herein, the parties, each intending to be legally bound hereby, do promise and agree as follows:

A. **Quit Claim.** For good and valuable consideration, payable as more particularly described herein, Mitel hereby agrees to quit claim to INTELLECTUAL PROPERTY PURCHASER any of Mitel's right, title and interest in and to the Domain Name <gandalf.ca> and the registration thereof, together with the goodwill of the business connected with and symbolized by such Domain Name and the associated IPv4 134.22.0.0/16 and any associated trade dress, or other intellectual property intellectual property rights relating thereto, to the extent any such rights exist. The quit claim transfer and assignment shall take effect as set forth herein, upon INTELLECTUAL PROPERTY PURCHASER'S making the payment as provided for herein.

1



**B. Payment.** The consideration (the "Consideration") to be paid by INTELLECTUAL PROPERTY PURCHASER shall be in the amount and through escrow as set forth in the standard Escrow.com Instructions, to be entered concurrent with this Agreement by the parties and for the amount therein to be deposited by purchaser upon opening the escrow along with the escrow fees. Within 1 business day after notification from Escrow.com that the purchase funds have been received from the INTELLECTUAL PROPERTY PURCHASER, Mitel shall change the registered ownership of the Domain Name with a third-party registrar so that the "WHOIS" information will be registered to   the INTELLECTUAL PROPERTY PURCHASER, or agent of its choosing, and transfer the Domain Name to a hosting service designated by the INTELLECTUAL PROPERTY PURCHASER and further execute any instrument of transfer may be required to effectuate the purchase of any of the quit intellectual property rights.   Upon notice to Escrow.com of visible "Whois" registration and all related intellectual property transfer, the CONSIDERATION funds are to be released to Mitel by wire transfer as Mitel provides in the escrow instruction.

**C. Mitel's Obligations.** Mitel agrees to cooperate with INTELLECTUAL PROPERTY PURCHASER and to follow INTELLECTUAL PROPERTY PURCHASER'S reasonable instructions in order to effectuate any transfer of the Domain Name or any intellectual property in a timely manner. Specifically, upon receipt of the consideration, Mitel further agrees to prepare and transmit any necessary registration agreement or correspondence to authorize the transfers.

**D. Warranty.** Mitel warrants and represents that: (i) it has the full power and lawful authority to enter into this quit claim assignment and transfer the Domain Name, and (ii) it is the lawful owner of the Domain Name and any associated intellectual property rights.

**E. INTELLECTUAL PROPERY PURCHASER Obligations:** INTELLECTUAL PROPERTY PURCHASER agrees not to: use the Domain Name or any resulting website: (i) to disparage Mitel in any way; (ii) and disclose the material terms of

2



this Agreement, such as the Consideration, however either party may disclose the existence of the Agreement.

F. Entire Agreement. This Agreement embodies the entire understanding of the parties with respect to the subject matter hereof, and merges all prior discussions between them, and neither of the parties shall be bound by any conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof other than as expressly provided herein.   No oral explanation or oral information by either party hereto shall alter the meaning or interpretation of this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be made and executed on the date signed by Mitel below ("Effective Date").

MITEL NETWORKS CORPORATION

Name: _Greg Hiscock_

Position: _General Counsel. Corporate Secretary_

Date: _March 15/16_

COLOCATION AMERICA, INC.

Name: _Albert A Ahdoot / Business_

Date: _3/10/16_

3

## SCHEDULE A TO
## DOMAIN NAME ASSIGNMENT AGREEMENT

## INCOMING WIRE TRANSFER

Please ensure all funds in are paid in favor of Mitel Networks Corporation as per instructions below:

RECEIVING BANK / INSTITUTION
Name:                                    BANK OF NOVA SCOTIA
Branch:                                  Toronto BSC (Servicing Transit)
Address:                                 20 Queen St W 4th Floor
                                         Toronto, Ontario
                                         M5H 3R3
                                         CANADA

SWIFT BIC:                               NOSCCATT

ABA Routing #:                           26002532

BENEFICIARY
Name:                                    MITEL NETWORKS CORPORATION
Address:                                 350 Legget Drive
                                         Ottawa, Ontario
                                         K2K 2W7
                                         CANADA

Branch Transit:                          47886
Inst. number:                            002
Account number                           01295 18
Currency code:                           CAD

Global Treasury & Risk Management Operations
Tel:              (613) 592-2122         x: 71823 or 74433

Fax:                                     (613) 592-4784
@                                        treasury@mitel.com

4

# EXHIBIT 2Q

1    Why don't we just have that first trial?

2         It's very hard for me to see how you would ever be

3    proceeding against any individuals, but if someone -- if it

4    came up and if you got some, you know -- This is a commercial

5    contract case.  There aren't very many commercial contract

6    cases in which I decline to assess attorney's fees under 341.01

7    against the losing party.  But they say they're good for it,

8    and they'll pay it.  If they're not good for it, then maybe you

9    worry about whether you have some secondary liability.  But

10   we'll know in a couple months after that verdict comes in and

11   after whatever rulings I have to make.

12        The premise that suggests it is highly unlikely you

13   will ever need any secondary liability against these

14   individuals, what's wrong with that analysis?

15        MR. ROGERS:  I think it's more you're looking at an

16   efficiency issue, and I'm -- I think I'm more focused on the

17   pleading standards.  And I'll just say this, and then maybe

18   Your Honor will tell me to sit down.

19        THE COURT:  Sure.

20        MR. ROGERS:  That Corey Allen, we still believe,

21   misrepresented who he was.  He did it intentionally.  He

22   testified he did it intentionally.

23        THE COURT:  But I apologize again I'm interrupting far

24   too much.  That misrepresentation has nothing to do with this

25   textual ambiguity that the contract dispute is based.  It has

# EXHIBIT 2R

**Albert Ahdoot**

**Date: October 24, 2017**

COLOCATION AMERICA

vs

MITEL NETWORKS



**DEPO** TECH

40 N. Central Ave #1400
Phoenix, AZ 85004
602-358-0225

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

COLOCATION AMERICA, INC.,   )
             )
      Plaintiff,  )
             )
  vs.         ) CASE NO.
             ) CV-17-00421-PHX-
MITEL NETWORKS CORPORATION,  ) NVW
             )
      Defendant.  )
_____)

DEPOSITION OF ALBERT ARASH AHDOOT

TUESDAY, OCTOBER 24, 2017

LOS ANGELES, CALIFORNIA

Page 54

1    Q.  You don't remember if you were the CEO three
2  months -- two months ago?
3    A.  I've always been the CEO.
4    Q.  So in August of 2017, you were the CEO?
5    A.  Yes.
6    Q.  Even though in your -- Colocation's
7  deposition you said you weren't?
8    A.  I said I'm business development.  That's
9  been my title since we started the company.
10    Q.  And you said you were not the CEO.
11    A.  I said I didn't want to be bothered as the
12  CEO.
13    Q.  You are sure --
14    A.  I'm 100 percent positive.
15    Q.  -- that that was your testimony?
16    A.  Yeah.
17    Q.  You didn't say that you didn't want to take
18  the title of president or CEO?
19    A.  I did.
20    Q.  Even though you were the CEO?
21    A.  As I said, I didn't want to take the title.
22  I was, but I didn't want to take the title.
23    Q.  What are your duties -- I'm sorry.  I
24  thought I heard the phone.
25       What are your duties as the CEO of

Page 55

1  Colocation?
2    A.  As a sole shareholder, I overlook every
3  aspect of the company.
4    Q.  No, excuse me, sir.  I want to ask
5  specifically about your duties as CEO.  Please limit
6  your answer to that question.
7    A.  Sure.  I overlook the entire company's
8  infrastructure.
9    Q.  What are your duties as the president of
10  Colocation?
11    A.  The same answer.
12    Q.  What was that?
13    A.  I look over the entire company's
14  infrastructure.
15    Q.  What are your duties as the treasurer of
16  Colocation?
17    A.  I look at the entire company's
18  infrastructure.
19    Q.  What are your duties as the secretary of
20  Colocation?
21    A.  I entirely overlook the company's
22  infrastructure.
23    Q.  And you don't know whether you are currently
24  a director of Colocation; is that right?
25    A.  I am -- currently as of today I am.

Page 56

1    Q.  As of today?
2    A.  Well, as of today meaning if you ask me
3  today at deposition, I am.
4    Q.  When did you become a director of
5  Colocation?
6    A.  Again, I've always been the director.
7    Q.  So why did you say "as of today"?
8    A.  You are asking me a today question and I'm
9  answering you a today answer.
10    Q.  No.  I asked you when you became the
11  director of Colocation.
12    A.  I've always been.
13    Q.  Since it was formed?
14    A.  Yes.
15    Q.  There's never been another director other
16  than you?
17    A.  There has.
18    Q.  There has or has not?
19    A.  Has.
20    Q.  Who has been the other director?
21    A.  Whoever we had as the Nevada Secretary of
22  State.
23    Q.  Who was that?
24    A.  I don't recall.
25    Q.  You don't know who has been a director of

Page 57

1  Colocation?
2    A.  No.
3    Q.  Was it a real person?
4    A.  It was fictitious as we specified.
5    Q.  So there was a name, but not a real person?
6    A.  Correct.  As I testified earlier today, it
7  was a name that we put so I wouldn't be -- have to be
8  bothered by being named the CEO or the secretary.
9    Q.  But there was not person who was actually a
10  former CEO or secretary of Colocation?
11    A.  No.
12    Q.  So was there a period of time when
13  Colocation had no CEO?
14    A.  I have always officially been the CEO as I
15  testified earlier today.
16    Q.  Has there ever been a director of Colocation
17  other than you, Mr. Ahdoot?
18    A.  On paper or officially?
19    Q.  Has there ever been a real person who was
20  the director of Colocation that wasn't you?
21    A.  No.  There were fictitious names on Nevada
22  Secretary of State, but again, I have always been the
23  sole owner of Colocation America.
24    Q.  And I'm trying to confirm that these fake
25  names did not represent any other real person other

COLOCATION AMERICA vs MITEL NETWORKS

Page 58

1 than you; is that right?

2    A.  Fictitious, that's correct.

3    Q.  So as far as a living, breathing human, you

4 were the only one who has ever been a director of

5 Colocation; is that right?

6    A.  Correct.

7    Q.  Do you hold any other positions for

8 Colocation other than president, treasurer,

9 secretary, CEO, director and business development?

10    A.  Besides the sole shareholder, no.

11    Q.  And when you say "sole shareholder," do you

12 mean you are the only person or entity who owns any

13 interest whatsoever in Colocation?

14    A.  Correct.

15    Q.  And that's the same answer whether I say

16 Colocation America Corporation or Colocation America,

17 Inc.?

18    A.  Colocation America Corporation.

19    Q.  Are there other people who own interests in

20 Colocation America, Inc.?

21    A.  No.

22    Q.  So why did you specify Colocation America

23 Corporation in response to my answer?

24    A.  Because that's the actual name of the

25 company.

Page 59

1    Q.  And Colocation America, Inc. is the name

2 that Colocation America Corporation operates under?

3    A.  One more time.

4    Q.  Colocation America, Inc. is a name under

5 which Colocation America Corporation operates; right?

6    A.  No.  We filed it as a fictitious firm name

7 as per Exhibit 6.

8    Q.  So you don't use Colocation America, Inc. as

9 a fictitious firm name?

10    A.  No.  Not on documents.

11    Q.  Then why would you file a document with the

12 Nevada Secretary of State saying you are using

13 Colocation America, Inc. as a fictitious name?

14    A.  We filed it just to have a fictitious name

15 on file with them.

16    Q.  But you never use it anywhere?

17    A.  Not on legal documents, no.

18    Q.  Except in the complaints you filed against

19 my client; correct?

20    A.  My attorney did make a mistake and it was

21 corrected.

22    Q.  It's been corrected in this case?

23    A.  I believe so.

24    Q.  Who told you that?

25    A.  Terry.

Page 60

1        MR. BARKER:  Paul, I'd like you to produce

2 that filing.  I haven't seen it.

3        MR. SIGELMAN:  Attorney-client privilege.

4        MR. BARKER:  Filing with the court is not

5 attorney-client privilege.  He says it's been

6 corrected.

7        MR. SIGELMAN:  What did you ask to have

8 produced?

9        MR. BARKER:  He says that the wrong name

10 that you filed the complaint under, Colocation

11 America Incorporated, has been fixed and I don't see

12 that it has.

13        THE WITNESS:  Ms. Foster went ahead and

14 filed it with the court saying that she made a

15 mistake.

16        MR. SIGELMAN:  Okay.  I thought you were

17 asking for a file of some correspondence between the

18 two of them.  If it's filed with the court, it's

19 filed with the court.  You are entitled to see it.

20 BY MR. BARKER:

21    Q.  Well, Mr. Ahdoot, I need to figure out, are

22 you going to claim at trial that wherever Colocation

23 America, Inc. shows up is not you, not your company?

24    A.  I'm claiming at trial of Mitel not going

25 through with the contract they signed.

Page 61

1    Q.  Would you please answer my question.

2    A.  I did.

3        MR. BARKER:  Will you read my question back.

4        THE REPORTER:  I'm sorry.

5 BY MR. BARKER:

6    Q.  Are you going to claim at any point in this

7 case that your company -- Colocation -- is not

8 Colocation America, Inc.?

9    A.  You have a fictitious registered name with

10 Nevada saying it's Colocation America, Inc., and our

11 actual corporation name is Colocation America

12 Corporation as per the state document, both the

13 Nevada and California.

14    Q.  Just so the record is clear, you don't ever

15 do business as Colocation America, Inc.?

16    A.  Correct.

17    Q.  It's kind of hard to ask you questions when

18 that's the plaintiff in this case, Mr. Ahdoot, so I'd

19 ask for your cooperation in helping me ask the right

20 questions.  If I ask a question and you are going to

21 answer it differently because I say Colocation

22 America, Inc., I need you to tell me, please.

23    A.  Sure.

24    Q.  Does Colocation America Corporation have a

25 parent company?