BRIER, IRISH, HUBBARD & ERHART, P.L.C.
2400 East Arizona Biltmore Circle, Suite 1300
Phoenix, Arizona 85016
Telephone (602) 522-3940
Facsimile (602) 522-3945
Teresa H. Foster, Of Counsel (010877)
For Court Filings/Pleadings:
ctfilings@thfosterlaw.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Colocation America Corporation, | Case No. 2:17-cv-00421-NVW |
| Plaintiff, | |
| v. | |
| Mitel Networks Corporation, | **PLAINTIFF COLOCATION'S RESPONSE TO MITEL'S MOTION FOR FEES AND COSTS AND MOTION FOR SANCTIONS** |
| Defendant. | |
| Mitel Networks Corporation, | |
| Counterclaimant, | |
| v. | |
| Colocation America Corporation, and Corey Allen Kotler and Mojgan Tabibnia, husband and wife, | |
| Counter-defendants. | |

Defendant Mitel's Motion for Fees and Costs against Plaintiff under A.R.S. § 12-341.01 should be denied or alternatively any award should be reduced because the request includes fees incurred in connection with the California litigation and claims against the individuals that are not recoverable, and fees that are duplicative, excessive

and/or for services that were unnecessary. Likewise, Defendant's Motion for "Sanctions" against Albert Ahdoot (the owner of Plaintiff) and Paul Sigelman (co-counsel for Plaintiff) should be denied for the same reason that this Court entered its Order on February 28, 2018 denying Defendant's Motion for Leave to File Second Amended Counterclaim. DOC #67. Sanctions under FRCP Rule 37(c) and 28 U.S.C. § 1927 are limited to the actual attorney fees caused by bad conduct. Neither the Rule nor the Statute make the individuals personally liable for all attorney fees and costs incurred by a party.

## I.    THIS WAS A SIMPLE BREACH OF CONTRACT CASE.

Plaintiff sought to enforce an agreement for a quit claim of IPv4 addresses that Defendant contended it did not own. Plaintiff originally filed suit in California but Defendant moved to dismiss that case for lack of personal jurisdiction and instead filed the same case in Canada. Defendant's case in Canada was dismissed and Plaintiff filed this action in Maricopa County Superior Court which Defendant moved to Federal Court.

Instead of litigating the simple breach of contract case, Defendant filed two separate Motions to Amend to add counterclaims against Albert Ahdoot (Plaintiff's owner) and Corey Allen Kotler (Plaintiff's agent) to raise fraud and related tort claims in an effort to seek punitive damages against the individuals. Defendant requested (and received) hundreds of pages of Plaintiff's bank statements, tax returns, financial records and business records. Defendant also spent thousands of dollars on private investigators,

subpoenaed Plaintiff's accountant, Plaintiff's statutory agent and many others hoping to find evidence to support a claim of alter ego or piercing the corporate veil. On February 28, 2018, this Court entered its Order denying Plaintiff's Motion to bring claims against the individual defendants. DOC #67. Defendant filed a Motion to Reconsider, but that was also denied on March 20, 2018. DOC #72. Yet, between summer 2017 and March 20, 2018, significant time and attorney fees were incurred in connection with Defendant's unsuccessful tort claims against the individuals.

Defendant prevailed on the breach of contract claim when the Court granted its Motion for Summary Judgment on June 15, 2018. DOC #95. However, by that time, Defendant had incurred over $560,000 in fees and costs in the Arizona litigation. At the oral argument on the motions, the Court warned counsel that any fee application could not include services rendered in connection with claims against the individual defendants. Although Defendant has deducted $90,000 from its fee request for time incurred exclusively in connection with the individual defendants, a review of Defendant's time entries confirms that a significant amount of the fees incurred are intertwined with Defendant's unsuccessful efforts to bring tort claims against the individual defendants.

## II. DEFENDANT'S MOTION FOR SANCTIONS AGAINST PLAINTIFF'S OWNER AND CO-COUNSEL SHOULD BE DENIED.

Neither FRCP Rule 37(c) nor 28 U.S.C. § 1927 make individuals a personal guarantor (or secondarily liable) for all of the attorney fees incurred by a party. Rule

37(c)(1)(a) only authorizes an award of reasonable expenses, including attorney's fees, caused by the failure to disclose. Defendant has failed to itemize any attorney fees "***caused by the failure***" to disclose and instead seeks to recover fees and costs of over $470,000 against Plaintiff's owner and counsel. Likewise, 28 U.S.C. § 1927 only authorizes a fee award against a party's counsel for the "excess costs, expenses and attorneys' fees reasonably incurred ***because of such conduct*** [that unreasonably and vexatiously multiplies the proceedings]."[1]

Furthermore, this Court already denied Defendant's request to bring claims against Albert Ahdoot personally when it denied Defendant's Motion for Leave to Amend and denied Defendant's Motion for Reconsideration. DOC #67 & 72. At the hearing on the Motion to Amend, this Court stated:

> THE COURT: But I'm asking you for whether there's a claim stated here against these additional counterdefendants. . . .
>
> I'm having a hard time seeing any counterclaims against any individuals who are agents of a corporation who negotiated and made a contract on behalf of the corporation. The named parties are Colocation and Mitel Networks. They're the named parties to the contract.
> . . .
> [MR. ROGERS:] The agent lied about his name.
>
> THE COURT: No, he didn't. He used his first and his middle name instead of his first, middle, and second name. Does that mean Madonna and Cher can be sued for fraud whenever they sign a contract in their stage names?

---

[1] Based on Defendant's theory, a claim should be made against Defendant's counsel for unreasonably and vexatiously multiplying these proceedings by seeking to bring punitive damage tort claims against individuals.

. . .
THE COURT: I don't see any damages if you defeat their contract.
Now, like I said, if you get a fee award, they may promise they're
going to pay any fee award promptly, and so it will moot your desire
to have everybody and his cousin secondarily liable for the fee
award.

See February 28, 2018 Transcript at 8:20-25-9:3, 9:22-25-10:1, 22:15-20

(attached as Exhibit A).

Corey Kotler's name in this case was fully explained in the Declaration of Paul

Sigelman filed October 10, 2017 (DOC #37), a copy attached as Exhibit B, and

supplemental declaration attached as Exhibit C. The facts were never controverted.

Although his full name is Corey Allen Kotler, he explained he is a performer in the

entertainment industry that he uses the name Corey Kotler to differentiate from his

business endeavors where he uses the name Corey Allen. Many parties use Sigelman's

conference room as their in-town address for businesses and Mr. Kotler engaged the

same for a meeting place and mail drop for his business dealings.

Mr. Sigelman was never personally served with a Corey Allen Kotler subpoena.

The process server served Corey Allen Kotler at his home residence. When he later

mentioned to Mr. Sigelman that papers had been served at his home, Mr. Sigelman's

office assisted by phone calls to coordinate the Snell & Wilmer law firm with Corey

Allen Kotler.

Subsequently, when Mr. Kotler attended his deposition, Mr. Sigelman did not

represent Mr. Kotler, but appeared at the deposition on behalf of Plaintiff. On behalf of

Plaintiff, Mr. Kotler was told that he should look through his files and bring any of the requested documents under the subpoena. Mr. Kotler personally brought with him additional documents that he had found, which were promptly provided to Defendant's counsel. Defendant's counsel ignored the documents and did not question Mr. Kotler about the email.

The cases cited by Defendant involved parties in serious and deliberate frauds upon the Court. Defendant cites *Intellect Wireless Inc. v. Sharp Corp.,* 87 F.Supp.3d 817 (N.D.Ill. 2015). That case was found to be extraordinary based upon a holding that the attorneys knowingly and repeatedly submitted false declarations to the Court, and mislead the Court about what their clients knew, and when. After Mr. Kotler's production of a redacted version of the email in question came to the attention of both attorneys, Plaintiff produced an unredacted version. See Defendant's Ex. 2, ¶¶15-16.

Similarly, in *Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991), the Court approved sanctions under the Court's "inherent authority" where the District Court found the sanctionable conduct was that Chambers and the other defendants had "(1) attempted to deprive this Court of jurisdiction by acts of fraud, nearly all of which were performed outside the confines of this Court, (2) filed false and frivolous pleadings, and (3) attempted, by other tactics of delay, oppression, harassment and massive expense to reduce plaintiff to exhausted compliance." 501 U.S. at 41. The Supreme Court noted that the District Court was presented with "acts which degrade the judicial system including attempts to deprive the Court of jurisdiction, fraud, misleading and lying to the Court."

6

The Court therefore relied on its inherent power in imposing sanctions, stressing that "[t]he wielding of that inherent power is particularly appropriate when the offending parties have practiced a fraud upon the Court." 501 U.S. at 41-42.

No discovery motions were ever brought or needed. The conduct cited by Defendant does not establish fraud on this Court, or any other basis justifying sanctions. Notably, Mr. Sigelman has been a practicing lawyer in good standing in California, before various district courts in that state, without any allegations of misconduct in 48 years of practice in that state.

### III. DEFENDANT'S MOTION FOR FEES AND NON-TAXABLE COSTS SHOULD BE DENIED OR THE AMOUNT AWARDED SHOULD BE SUBSTANTIALLY REDUCED.

#### A. Defendant Fails to Even Address the Eligibility Requirements.

In its Motion, Defendant does not even bother to address whether the Court should award fees; it simply presumes it will do so. See Motion at Pages 2-3 (DOC #100). However, "there is no presumption that the successful party is entitled to attorney's fees" under A.R.S. § 12.341.01. *Layne v. Transamerica Fin. Servs.,* 146 Ariz. 559, 563, 707 P.2d 963, 967 (Ct. App. 1985). An award of attorney fees under A.R.S. § 12-341.01 is not automatic or mandatory; it is entirely permissive and discretionary with the Court. *Associated Indemnity Corp. v. Warner,* 143 Ariz. 567, 569-70, 694 P.2d 1181, 1183-84 (1985).

Defendant also failed to properly comply with LRCiv Rule 54.2(d)(1). The Motion contains the required "statement of consultation" but there was no good faith

effort to settle. Defendant's counsel did convey a written offer on June 19, 2018 (attached as Exhibit D) and counsel did discuss the potential for settlement. The problems with the offer for settlement is that it indicated Defendant had incurred $650,000 in fees, **offered to settle for $475,000**, but also threatened that if the fees were not settled, Defendant would sue Ahdoot personally for fraud, incorrectly alleged that the defenses to fraud "are foreclosed by collateral estoppel," and that punitive damages would also be requested. See Exhibit D. As it turns out, the $475,000 offer was only $1,303.86 less than the actual Fee Application (less than 1% difference). See attached Exhibit E.

An application for attorney fees under A.R.S. § 12-341.01 is addressed in a two-step process, first, pursuant to A.R.S. § 12-341.01(A), the court determines in its discretion whether the circumstances are appropriate for an award. Second, *if the Court decides to award fees*, it has "broad discretion" to determine the amount of fees. *Id.* This Court's ***discretion*** to award or deny fees based on six factors under A.R.S. § 12-341.01:

(1)    The merits of the unsuccessful party's claims or defenses;
(2)    Whether the successful party could have avoided or settled the litigation;
(3)    Whether assessing fees against the unsuccessful party would cause extreme hardship;
(4)    Whether the successful party prevailed as to all the relief sought;
(5)    The novelty[2] of the legal questions presented, and whether they had been previously adjudicated in Arizona; and
(6)    Whether an award would discourage other parties with tenable claims from litigating legitimate contract issues for fear of incurring liability for substantial fees.

---

[2] This is the same factor considered under LRCiv Rule 54.2(c)(3)(B) in considering the reasonableness of fees. The remaining five factors are separate and, for unknown reasons, are only addressed in a conclusory fashion by Defendant as part of "other factors deemed appropriate" under reasonableness. See Motion at Page 9 (DOC #100).

*Associated Indemnity v. Warner, supra*.

Although Defendant was the successful party, most of these factors actually weigh in Plaintiff's favor:

1.      Merits. As Plaintiff argued in its Response/Cross-Motion (DOC #82), the Contract expressly incorporated the Escrow.com instructions, which are "to be entered concurrent with this Agreement by the parties." The Escrow.com documents confirmed that the IPv4 addresses were being transferred as part of the escrow and set forth the $10,000 consideration. See Plaintiff's Response at Pages 6-7 and Exhibits 1-3 (DOC #82). Defendant disputed the Escrow.com documents, but never produced any contrary evidence. Normally, under FRCP Rule 56(e), Plaintiff's escrow instructions would be considered undisputed. However, this Court suspended LRCiv Rule 56.1 (and ordered that the parties ***not*** file separate statement of facts). DOC #77. As a result, it was not evident that Defendant failed to comply with FRCP Rule 56(e). Under Defendant's version of events, there apparently were not any escrow instructions (and no price under the Contract).

2.      Settlement. Defendant could have avoided or settled this litigation by providing information (within its possession only) that it did not own the IPv4 addresses. Defendant's predecessor purchased the unused domain name and unused IPv4 addresses from the Gandalf Bankruptcy. See Defendant's Motion at Footnote 6 (DOC #81). Instead of simply quit claiming addresses that it did not own, or establishing that it did not own the addresses, Defendant incurred over $560,000 in fees and costs to defend this litigation.

3.      <u>Hardship</u>. Assessing over $470,000 (after deducting the $90,000 that Defendant admits pertained to unrecoverable claims against the individuals) against anyone, including this Plaintiff, would cause an extreme hardship.

4.      <u>Success</u>. Defendant did not prevail as to all relief sought. Defendant's unsuccessful efforts to bring punitive damage tort claims against the individuals became "the tail wagging the dog." As explained below in Section III(C) (concerning reasonableness), a majority of time was devoted to Defendant's investigation of potential punitive damage claims against the individuals (and two unsuccessful Motions to Amend and an unsuccessful Motion to Reconsider).

5.      <u>Novel</u>. The true issue in this case (a simple breach of contract) was not novel and was resolved on a simple summary judgment proceeding. All of the unsuccessful tort claims against the individuals cannot convert this simple breach of contract case into a "novel" issue.

6.      <u>Discouragement</u>. An award of over $470,000 in attorney fees against Plaintiff, in connection with a $10,000 contract for a quit claim of assets (that Defendant may or may not own) would discourage other parties with tenable claims from litigating legitimate contract issues for fear of incurring liability for substantial fees (only part of which were even related to legitimate contract issues).

Defendant (the party seeking an award of fees) bears the burden of proving entitlement to fees under all of the above factors (except #3 concerning hardship). *Woerth v. City of Flagstaff,* 167 Ariz. 412, 419, 808 P.2d 297, 304 (App. 1991). Defendant is unable to

meet this burden.

**B.      There is No Basis to Award Fees Incurred in the California Lawsuit.**

Defendant seeks to recover $75,016.50 in fees and non-taxable costs incurred in the California litigation because those fees were unrecoverable in California. Defendant's reliance on *First Nat'l Bank of Ariz. v. Cont'l Bank,* 138 Ariz. 194, 200, 673 P.2d 938, 944 (App. 1983) is misplaced. That case involved a bankruptcy action that was "substantially intertwined" with the contract action. The California litigation was not intertwined with the merits of this case.

A review of Defendant's California attorney fees (Ex. 2D) confirms that less than one percent (1%) of the time incurred related to the merits of the Complaint or any discovery on the merits of the Complaint. DOC #100-4 at Page 57. The California bills (Exhibit 2D) reflects 7.4 hours ($3,694) to research the merits of the case on June 24, 2016 and June 27, 2016. The most telling part about the California bills, however, is that at the same time that Defendant was moving to dismiss the case for lack of jurisdiction, it was already investigating potential fraud claims against Plaintiff's owner and its counsel. On August 31, 2016, Jacob Jones was researching to find any "pattern or evidence of wrongdoing by Colocation…in an attempt to uncover further evidence of Colocation misconduct" and on September 14, 2016, Jacob Jones did follow-up research regarding the background reports for Colocation America "and its lawyers and principals." DOC #100-4 at Pages 61-62.

The bills for the California case confirm that over 90% of the time related to the Motion to Dismiss for lack of personal jurisdiction. None of that work was relevant to the

Arizona litigation. Defendant has been unable to itemize any time on those bills that relate to the merits of this case (and Defendant should not be allowed to do so in its Reply).

       **C.**    **Defendant's Fees are Unreasonable.**

If the court should rule that a fee award should be granted in Plaintiff's favor, the reasonableness of the amount of fees must be determined based on the above six factors under *Associated Indemnity* and LRCiv Rule 54.2(c)(3). See also *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 187-89, 673 P.2d 927, 931-33 (App. 1983); *State Farm Mutual Automobile Ins. Co. v. Janssen*, 154 Ariz. 386, 395, 742 P.2d 1372, 1381 (App. 1987).

The $470,000 in fees and non-taxable costs (after deduction of the $90,000 in fees that Defendant admits was related to pursuing the individuals) are unreasonable, duplicative, and contain a significant amount of attorney fees that would not have been necessary had Defendant not unsuccessfully pursued the individual defendants.

This Court even referred to Defendant's counsel's action in pursuing individual defendants as "churning this file" during the hearing on the Motion to Amend:

> THE COURT: I'm having trouble seeing what is the fraud when they led you into dealings hoping you would attribute a meaning different from the meaning they had? And the consequence of that is there is no contract enforceable against you. I mean, ***your client must love paying legal fees for the way you're churning this file after it seems, at least from what you say, obvious you're going to win on the contract action***.

See Transcript at 17:12-19 (emphasis added), attached as Exhibit A.

Ignoring all of the time that Defendant spent chasing claims against the individual

defendants, this case really boiled down the following:

- Complaint and Answer/Counterclaim based on breach of Contract.
- Depositions of two agents of Plaintiff and two agents of Defendant.
- Simple discovery requests and responses.
- Cross-motions for summary judgment.

The factors set forth in LRCiv Rule 54.2(c)(3) confirm that the award is unreasonable.

1. <u>Time and Labor</u>. A number of time entries are unreasonable. See Declaration of Teresa H. Foster, attached as <u>Exhibit F</u>. Exhibit F-1 is a copy of Defendant's fees and costs for the Arizona case (DOC #100-4, Ex 2C), which itemizes the total amount in each of the following categories that should be excluded.

| Description |
|---|
| C = California litigation |
| E = Excessive |
| D = Duplicative |
| V = Vague |
| I = Claims against Individuals |

Defendant submitted its bills for the California litigation as Ex. 2D. Yet Defendant's bills for the Arizona litigation (Ex 2C) contain many entries for the California litigation. See Exhibit F-1.

This Court already issued its Order that attorney fees and costs incurred in connection with claims against the individual defendants would not be recoverable. Defendant excluded $89,851 from its fee application but admits that it did not deduct any fees that were "partially related to adding the individual defendants." Yet a review of the billing statements confirm that a significant amount of additional time entries should also have been deducted because

they would not have been necessary had Defendant not sought to add individual defendants. See attached Exhibit F-1.

2.  <u>Novelty</u>. As discussed above, the breach of contract claim actually litigated was not novel at all.

3.  <u>Skill Requisite</u>. All of Defendant's counsel were skilled. The problem is that all tasks were performed by three different attorneys (Rogers, Jones, and Barker). This resulted in a number of duplicative and excessive entries. See Section 1 above and attached Exhibit F.

4.  <u>Preclusion of Other Employment</u>. Defendant does not address this or argue that its counsel were precluded from other employment.

5.  <u>Customary Fee</u>. Defendant does not address this but does not explain why a substantial portion of the work on this simple breach of contract case had to be performed by a patent attorney at $615 per hour.

6.  <u>The Fee was Fixed</u>.

7.  <u>Time Limitations</u>. Defendant does not address this issue but there were no urgencies in this case. Defendant's counsel was involved in the California litigation, the Canadian litigation, and the case was delayed many months pending Defendant's two Motion to Amend.

8.  <u>The Amount of Money Involved</u>. The price of the Contract was $10,000 for a ***quit claim*** of unused IPv4 addressed. Plaintiff offered this price because it was unknown if Defendant owned the addresses. At the same time, Defendant was offered a

range of $150,000-200,000 for this same asset a few days after the Contract was executed (DOC #84-3 at Page 31). That offer presumably was for good title (as opposed to a quit claim deed). Contrary to Defendant's assertions, Plaintiff never argued that it was acquiring any tangible assets. Defendant did prevail on the breach of contract claim but was unsuccessful on the individual tort claims for punitive damages which consumed this case.

9. <u>Defendant's Counsel are All Experienced</u>.

10. <u>There is No Assertion that the Case was Undesirable</u>.

11. <u>Defendant has been Represented by the Same Counsel for Over a Decade</u>. The Representation Agreement attached to its Motion is from 2008 (DOC #100). Furthermore, Defendant's in-house counsel was previously an associate at Snell & Wilmer.

12. <u>Defendant did Not Address Awards in any Similar Actions</u>.

13. <u>Other Matters</u>. The only "other matters" addressed by Defendant is the *Associated Indemnity* factors (discussed above).

## IV.   DEFENDANT'S REQUEST FOR TAXABLE COSTS FAILS TO COMPLY WITH LRCiv RULE 54.1(a).

Defendant's Statement of Taxable Costs set forth in Section IV of its Motion (Page 14 of DOC #100) fails to comply with LRCiv Rule 54.1(a), which requires:

- The party file a Bill of Costs on the form provided by the Clerk.
- Attach documentation of all requested costs.
- Be verified by a person acquainted by a person therewith.

Defendant has failed to do so and its request for taxable costs should be denied.

## V.    DEFENDANT'S NON-TAXABLE COSTS OF $30,776.17 ARE NOT RECOVERABLE.

LRCiv Rule 54.2(c)(1) required that Defendant cite the applicable statutory or contractual authority for non-taxable expenses. Defendant failed to do so because there is no such authority, except for the WestLaw research related to the breach of contract claim. The Contract does not contain any provision regarding attorney fees and costs. The Arizona Supreme Court has held that a successful party in a contract action may not recover its non-taxable costs as part of an award of attorney fees. See *Ahwatukee Custom Estates Management Assoc. v. Bach,* 191 Ariz. 87, 952 P.2d 325 (App. 1997). There, the Court noted that allowing a party to recover non-taxable costs under the guise of attorney fees would undermine the legislative intent expressed in A.R.S. § 12-332. *Id.* at ¶7. The limited exception is computerized legal research (to reduce the time spent by an attorney and thereby provide legal services more efficiently). *Id.* at ¶10.

A number of the "non-taxable" costs that Defendant requested under LRCiv Rule 52.2 were actually "taxable" that should have been included in a Bill of Costs under LRCiv Rule 54.1. See Exhibit F-2 (copy of Defendant's non-taxable costs with objections). These include filing fees, transcript fees, deposition costs (including travel and subsistence), witness fees and copies. Because these were not included in a proper bill of costs, they should be denied.

The only non-taxable costs that may have been properly recoverable as a non-

16

taxable expense would be the WestLaw charges that total $11,645. However, those charges fail to comply with LRCiv Rule 54.2(e)(2) because Defendant fails to explain the specific legal issues researched. See Exhibit F-2. Furthermore, over a dozen of the entries were incurred during the timeframe that Defendant was filing its two Motions to Amend and Motions to Reconsider (concerning the individual defendants). *Id.*

Finally, Defendant's Motion for Non-Taxable Costs fails to comply with LRCiv Rule 54.2(e)(3) which requires that "copies of applicable invoices, receipts and/or disbursement instruments" be attached and that "[f]ailure to itemize and verify costs may result in their disallowance by the Court."

For the above reasons, Defendant's request for taxable and non-taxable costs should be denied.

## VI.    CONCLUSION.

Defendant's Motion fails to address the relevant requirements for a fee award against Plaintiff. The relevant factors, set forth in *Associated Indemnity*, do not weigh in Defendant's favor, the fees requested are unreasonable, duplicative and unnecessary, and this Court should exercise discretion to deny Defendant's Motion for Fees, or at least limit the amount of fees awarded. Furthermore, Defendant has failed to set forth any legal basis for sanctions against the individuals and also has failed to itemize specific attorney fees that were caused by any alleged improper conduct by the individuals.

DATED: July 16, 2018.

BRIER, IRISH, HUBBARD & ERHART, P.L.C.


    /s/ Teresa H. Foster
Teresa H. Foster, Of Counsel
2400 E. Arizona Biltmore Circle, Ste 1300
Phoenix, AZ 85016
Attorneys for Plaintiff


CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of July, 2018, I electronically transmitted the

attached document to the Clerk's Office using the ECF System for filing and notification

thereof to:


David E. Rogers
David G. Barker
Jacob C. Jones
SNELL & WILMER, LLP
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004-2202
drogers@swlaw.com
dbarker@swlaw.com
jcjones@swlaw.com


 /s/ Harry Stanford