UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

Colocation America Corporation, )
                                )
                Plaintiff,       )        CV-17-0421-PHX-NVW
                                )
        vs.                      )        Phoenix, Arizona
                                )        February 28, 2018
Mitel Networks Corporation,      )           2:03 p.m.
                                )
                Defendant.       )
                                )
_____)
                                )
Mitel Networks Corporation,      )
                                )
                Counterclaimant, )
                                )
        vs.                      )
                                )
Colocation America, Inc.;        )
et al.,                          )
                                )
                Counterdefendants.)
                                )
_____)


        BEFORE:  THE HONORABLE NEIL V. WAKE, JUDGE


        REPORTER'S TRANSCRIPT OF PROCEEDINGS

                MOTION HEARING


Official Court Reporter:
Linda Schroeder, RDR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 32
Phoenix, Arizona  85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription


EXHIBIT A

1    not bound by contract.  You won the contract lawsuit.  I'm

2    having a little trouble seeing --

3              MR. ROGERS:  Okay.  But we still, on the -- Okay.  I'm

4    going to kind of mix some things together that you asked, Your

5    Honor.  The same facts all go into this.  There are no

6    additional facts or parties.  I'm thinking the only additional

7    party that's been brought in is Colocation's agent.

8    Colocation, the individual shareholder, owner, et cetera, he's

9    going to be in the case anyway.  He is Colocation.  All right.

10   So what about the fraud counts?

11             THE COURT:  I'm sorry.  Say that again.

12             MR. ROGERS:  Oh, in terms of expanding the litigation,

13   it's not expanding the litigation, I don't think.  All of the

14   facts necessary for fraud and breach of contract are closely

15   intermingled.  There are only three people really involved in

16   this, one person from Mitel, one person from Colocation, and

17   then the agent.  They have all of the information about

18   everything that went on in this transaction.  And the facts

19   that relate to breach of contract also relate to the fraud.

20             THE COURT:  But I'm asking you for whether there's a

21   claim stated here against these additional counterdefendants.

22   Granted, I've asked you about a lot of things, so it may be

23   easy to slip around, but we have to try to focus.

24             I'm having a hard time seeing any counterclaims

25   against any individuals who are agents of a corporation who

9

1   negotiated and made a contract on behalf of the corporation.

2   The named parties are Colocation and Mitel Networks.  They're

3   the named parties to the contract.

4        So how do you get to sue the agent of the corporation

5   for entering into a contract you don't like or that the

6   contract gets voided?

7        Another way of saying what is functionally a similar

8   thing but is doctrinally distinct, you're just trying to pierce

9   a corporate veil because there's a guy back there who benefits

10  from this corporation.  That's true of every corporation and

11  every closed corporation.

12       MR. ROGERS:  I don't think we're trying to do that.

13  Excuse me.

14       I'm sorry.  I've got a flu bug.

15       THE COURT:  I'm sorry I'm interrupting you more than I

16  should.  Please proceed.

17       MR. ROGERS:  No problem.  Your Honor, first of all,

18  we'd like to show you a document that we just got yesterday,

19  but before I do, this is the gist of the fraud.  And this is

20  why it should be individually against each of the owner of

21  Colocation and the agent.

22       The agent lied about his name.

23       THE COURT:  No, he didn't.  He used his first and his

24  middle name instead of his first, middle, and second name.

25  Does that mean Madonna and Cher can be sued for fraud whenever

1   they sign a contract in their stage names?

2           I know I'm being hostile here, but give me a break.

3   What is the fraud in using your real name but not all of it?

4           MR. ROGERS:  Well, my middle name is Eric.  I don't go

5   around signing contracts and doing business with people as

6   David Eric because that's false.  I'm not using my last name.

7   I'm not giving the person all the information.

8           THE COURT:  But he was an agent.  He was a known agent

9   for a disclosed principal.

10          MR. ROGERS:  No.

11          THE COURT:  If he called himself Abraham Lincoln,

12  what's the difference if he's an agent for a disclosed

13  principal?

14          MR. ROGERS:  There was no disclosed principal.

15          THE COURT:  Am I wrong?  Was the contract not with

16  Colocation?

17          MR. ROGERS:  The contract is, but all of the

18  negotiations up until the execution of the contract were with

19  the agent using a fake name.

20          THE COURT:  But so what?  So what?  You entered into a

21  contract with an entity named Colocation.  I'm just challenged

22  by this.

23          MR. ROGERS:  Because this is why.  We would never do

24  business with somebody who is using a fake name.  We've already

25  stated that in the papers.

UNITED STATES DISTRICT COURT

1    what they were trying to do.  It's not there.  So -- But I'm

2    also -- I could say I'm challenged by your pleadings, which

3    are -- one is left to guess about you've got 264 paragraphs in

4    a semi-random, not totally randomized, but details here without

5    explanation of what matters for what.

6         And it's like you're trying to paint there's a bad

7    picture, and I get to sue for these torts.  Well, you need more

8    than a bad picture.  You have to allege the elements of each

9    cause of action.

10        MR. ROGERS:  Which -- well, if there's an element that

11   hasn't been pled, that can be cured by an amended pleading.

12        THE COURT:  I'm having trouble seeing what is the

13   fraud when they led you into dealings hoping you would

14   attribute a meaning different from the meaning they had?  And

15   the consequence of that is there is no contract enforceable

16   against you.  I mean, your client must love paying legal fees

17   for the way you're churning this file after it seems, at least

18   from what you say, obvious you're going to win on the contract

19   action.

20        But that's strategy, so I shouldn't remark on that.

21        Listen, what about these other torts, the torts, to be

22   simple about this, you've referenced the foregoing torts, but

23   the foregoing --

24        MR. ROGERS:  They're based on fraud.

25        THE COURT:  So it's basically four ways to say the

1   dispositive fact, I'm going to tell them tell us whether the

2   light was red or green when the vehicle entered the

3   intersection, and I will do that.

4        But I'm not disposed to muck up the jury's task with

5   unintelligible duplication, repetition, just stuff that's

6   unintelligible for no purpose.

7        So if you want this jury to say, hey, they knew what

8   we meant, and they knew we didn't mean that, or they not only

9   hoped that we would have a different meaning, they lied to us,

10  you can have the jury answer both those questions.  But what

11  else is there?  Because if you win either of those, there is no

12  contract.

13       MR. ROGERS:  But there are affirmative fraud damages

14  and punitive damages.

15       THE COURT:  I don't see any damages if you defeat

16  their contract.

17       Now, like I said, if you get a fee award, they may

18  promise they're going to pay any fee award promptly, and so it

19  will moot your desire to have everybody and his cousin

20  secondarily liable for the fee award.

21       If you don't collect a fee award, then you can turn

22  around and take your client's fees, money, for a second lawsuit

23  that's then necessary to collect a fee award.

24       But right now you want to churn your client's fees for

25  something that is highly likely to be completely unnecessary.

UNITED STATES DISTRICT COURT

1    And because this is a motion to amend, I have discretion to

2    determine whether it's dilatory -- well, whether it would cause

3    delay, waste, whatnot, and those are the things that I'm

4    troubled by.  They don't seem to trouble you at all.

5              MR. JONES:  May I?

6              THE COURT:  No.  We'll do one at a time.

7              MR. ROGERS:  Your Honor, all of the counts, it's the

8    same people, the same facts for all the counts.  The lawsuit, I

9    understand that there are 200 --

10             THE COURT:  You need different law to get these other

11   people.  There's different law that the jury would have to be

12   instructed on, I would make decisions on, I'm at risk of error,

13   none of which is necessary if you win your underlying lawsuit

14   and they pay their legal fee award.

15             In fact, you can take a minute and confer, and if you

16   have an answer when you come up for reply, you can.  If you win

17   the contract case and they pay their fee award, I cannot think

18   of any circumstance in which you would ever take a client's

19   money to litigate again against these agents.

20             And if it's very highly likely to turn out that way,

21   why are you taking your client's money now to multiply this

22   litigation for no practical benefit?  It doesn't turn into any

23   green dollars.  It costs green dollars to do this.  So now I

24   don't have to --

25             MR. ROGERS:  You want to know -- want to know the

Paul Sigelman, SBN 45954
SIGELMAN LAW CORP
433 N. Camden Dr., #970
Beverly Hills, CA 90210
Telephone: (310) 278-8011
Facsimile: (310) 278-2254

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

COLOCATION AMERICA, INC.,

        Plaintiff,

v.

MITEL NETWORKS CORPORATION,

        Defendant.

Case No.: 2:17-cv-00421-NVW

DECLARATION OF PAUL SIGELMAN

I, Paul Sigelman, declare as follows:

    1.     I have not represented Corey Allen Kotler.

    2.     I am aware that he is an actor, and producer, and has dealt in numerous media of the entertainment industry of Los Angeles, including motion pictures and television series. He has a great deal of business contacts in that industry. Some time ago he met a friend and one of my clients, Jack Heller, a real estate broker and former actor himself, which led to my acquaintance of him.

    3.     I understand that Corey Allen Kotler has recommended Mr. Heller for appearances in various commercials and rehearsed him for such engagements, as well as shooting a short film pertaining to Mr. Heller's family background, and has a good business reputation in the entertainment business. Mr. Heller maintains an office within his home, but at various times uses my office suite conference room for meetings, and frequently stops by to say hello during any given week. One day I observed Mr. Heller meeting with Corey Allen Kotler on such occasion at my

**EXHIBIT B**

DECLARATION OF PAUL SIGELMAN

1  office. During one of their meetings, after I became aware that my client Colocation America was

2  looking for someone to assist in soliciting and negotiating certain business, I suggested Corey give

3  Colocation a call. I understand he did so, though I was not involved in their meeting or in their

4  coming to any arrangement

5        4.     Mr. Kotler has told me that because performers in the entertainment industry do not

6  like to mix their business endeavors with their own acting career for various publicity reasons, that

7  he uses the name "Corey Allen" when involved in business. While his office is in his home, he asked

8  if he, like Mr. Heller, could use my Beverly Hills address as a meeting place and mail drop for Corey

9  Allen business dealings. The same use of the office suite is made by others, including four Los

10  Angeles practicing lawyers (Stan Phillips Bar#47063, Bruce Sires #54572, Ira Sigel #78142, Allen

11  Gross #141082) who have their offices at their homes yet use my conference room and mailing

12  address, as do a few business clients. These people, nor Corey Allen Kotler, maintain no regular

13  presence in the suite.

14        5.     On August 4, Corey Allen Kotler again met with Jack Heller at my office. During that

15  time, he told me there had been an attempt to serve papers on him at his home. I asked him what the

16  papers were. That same day, he brought me an envelope of the papers. I saw it was a subpoena for a

17  production of documents the following Monday at Snell and Wilmer, 2 California Plaza, 350 S.

18  Grand Ave., Suite 3100 Los Angeles. My office called Snell and Wilmer, gave them the name of the

19  case, and asked who to speak to in regards to the production of documents. After several minutes

20  and multiple inquiries, we were told that they knew nothing about the production of documents for

21  Monday, and that no such arrangement had been made with them to receive the documents. At their

22  suggestion, I then called the Snell and Wilmer Arizona office, and left a message that I would assist

23  by having any documents in possession produced. I told Corey Allen Kotler to search for the

24  documents.

25        6.     I have also read the declaration of Noe Bermudez in regard to an attempt to service on

26  June 15th at my office. His declaration is wrong in part. I do recall the event and it requires me to set

27  the record straight.

28        7.     When Mr. Bermudez arrived, the door was suite was (as it always is) unlocked and

1  allows anyone to enter. At the time, I was passing through the door headed to the men's' room. Mr.

2  Bermudez stopped me and said he had papers for Corey Allen. I told him that I knew the name, but

3  that he was not, and had not, been present in the office.  I told him he should speak to Rick at the

4  front desk and left for the restroom. I did not speak with him again.

5          8.      Apparently thereafter Mr. Bermudez did speak with Rick Bradford at the front desk.

6  When I returned Mr. Bradford asked that I take a look at the papers left. I informed Rick that the

7  papers were a subpoena, but the service was noncompliant with code as they needed to be personally

8  served. I understand from Mr. Bermudez's declaration that he returned later that afternoon, and Rick

9  Bradford told him that though he had the subpoena, it needed to be personally served.

10         9.      Thereafter I never received an inquiry, or even a call from anyone asking about Corey

11  Allen, his address, his use of "Corey Allen" or of my office suite.

12         I declare under penalty of perjury in the State of California that the foregoing is true and

13  correct, and if called upon as a witness, could and would testify competently thereto

14         Executed this 22nd day of August, 2017, at Beverly Hills, California.

15

16

17

18         ___/S/_____
           Paul Sigelman

19

20

21

22

23

24

25

26

27

28

DECLARATION OF PAUL SIGELMAN

### DECLARATION OF COREY ALLEN KOTLER

1

2  I, COREY ALLEN KOTLER, declare as follows:

3  1.      A few days ago, I was contacted with Paul Sigelman, with who I had not spoken with for

4  some time, he informed me that the question had again been brought up as to my dealing with Mitel

5  Networks. He asked if I would read a portion of an opposition that was being filed on behalf of

6  Colocation wherein it was mentioned how it came about that I was introduced to Colocation, how I

7  use my name, the use of an office address and my appearance at deposition. I read it carefully and

8  found it was completely accurate with what had happened.

9  2.      Specifically, I want to make clear, that my full name is Corey Allen Kotler, that I have

10  appeared over the years in various motion picture and television series where I use the name Corey

11  Kotler, and that I do so to separate that work from my business endeavors where I use the name

12  Corey Allen. I have used the name Corey Allen while engaged by Colocation, as well as in other

13  business transactions in the past.

14  3.      When I was served with a subpoena in this case, I called Mr. Sigelman to ask what I should

15  do. He told me that I would need to appear at a deposition, I'd be paid a witness fee by Mitel, and

16  that I should look through the list of papers they requested and see if I could find any. I brought with

17  me to the deposition one email which I did find and handed it to the lawyer for Mitel, though to the

18  best I can recall, he never questioned me on the paperwork. This was the last I heard from either side

19  in this case.

20

21      I declare under penalty of perjury in the State of California that the foregoing is true and

22  correct, and if called upon as a witness, could and would testify competently thereto

23      Executed this 16th day of July, 2018, at Beverly Hills, California.

24

25      Respectfully submitted,

26

27

28      Corey Allen Kotler

EXHIBIT C

DECLARATION OF COREY ALLEN KOTLER

**From:** Rogers, David <drogers@swlaw.com>
**Sent:** Tuesday, June 19, 2018 3:39 PM
**To:** Teri Foster; paul@sigelmanlaw.com; Harry Stanford
**Cc:** Barker, David; Jones, Jacob; Dolan, Denise
**Subject:** Settlement Communication Pursuant to FRE 408 6/19/18

Dear Teri.    MNC's motion for attorney's fees, which Judge Wake invited us to file, is due on June 29, 2018.    We've begun preparing it and plan to include our fees and costs from the Arizona action, Canadian action, and California action.

MNC's total fees and costs for the three actions are about **$650,000**.   Colocation already paid a sanction of $40,000, which leaves about $610,000. FYI, the Canadian action is less than $10,000 of the total amount.

MNC's offer to  settle this matter is for Colocation to pay **$475,000** by wire transfer, no later than June 27, 2018, to an account designated by MNC.   That amount takes into account Judge Wake's statement that he would not award fees for attempting to add Kotler and Ahdoot to this lawsuit.

We think Judge Wake would award the remainder of the fees and costs given the history of the case, e.g.,

(1) Colocation, and not MNC, pursued litigation;
(2) Numerous false statements and inaccurate case summaries in the California case;
(3) The false names and addresses in Colocation's Rule 26.1 disclosures and interrogatory responses (all of which Ahdoot blamed on his lawyers);
(4) Kotler using a false name (Allen) to communicate with MNC;
(5) Colocation not correcting the record when MNC subpoenaed Allen (Kotler) and Dividend Advisors, nor when MNC subpoenaed numerous building managers searching for Allen (Kotler) and Dividend Advisors;
(6) Sigelman accepting service for Allen and Dividend Advisors;
(7) the "nebulous" email string;
(8) Colocation not producing the "nebulous" email string;
(9) Colocation's non-existent officers and directors, and Colocation not notifying MNC that they were non-existent until the day before their depositions were scheduled;
(10) Colocation contracting and bringing a lawsuit under a false name; and
(11) Colocation's numerous other false positions and misstatements.

Additionally, if this case is settled as set forth above, **MNC will not sue Ahdoot and his wife personally for fraud**.   Those counts are still viable and can now be raised in a separate lawsuit.  Many of the **defenses** that may have been available to Ahdoot for **fraud are foreclosed by collateral estoppel**.  The Arizona court has already found that Ahdoot, Kotler, and Sigelman plotted at the outset to misrepresent to MNC, and that MNC reasonably relied on Colocation's omissions by believing that the Contract was only for the transfer of gandaf.ca<http://gandaf.ca>.  The resulting damages are the fees and costs of this lawsuit.  **Punitive damages would also be available.**

This offer is open until June 22, 2018.   Thanks, Dave



**MNC settlement offer re fees**          **6/19/2018**

**Fee Application**
$ 364,280.00  AZ Fees
$   30,776.17  Non-taxable costs
$   75,016.50  CA fees/costs
$ 470,072.67  Total fees
$     6,231.19  taxable costs
**$ 476,303.86  Total judgment request**

$   89,851.00  Excluded fees (against individuals)
$   10,000.00  Canadian fees (estimated by Rogers)
$ 576,154.86  **Total fees incurred**

**Settlement Offer**
$ 650,000.00  Represented amount of tota fees (in 6/19/18 offer)
$ 475,000.00  Offer
**$     1,303.86  savings over amount of fees requested**



BRIER, IRISH, HUBBARD & ERHART, P.L.C.
2400 East Arizona Biltmore Circle, Suite 1300
Phoenix, Arizona 85016
Telephone (602) 522-3940
Facsimile (602) 522-3945
Teresa H. Foster, Of Counsel (010877)
For Court Filings/Pleadings:
ctfilings@thfosterlaw.com
Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Colocation America Corporation, | Case No. 2:17-cv-00421-NVW |
| Plaintiff, | |
| v. | |
| Mitel Networks Corporation, | |
| Defendant. | **DECLARATION OF TERESA H. FOSTER IN RESPONSE TO DEFENDANT'S MOTION FOR FEES** |
| Mitel Networks Corporation, | |
| Counterclaimant, | |
| v. | |
| Colocation America Corporation, and Corey Allen Kotler and Mojgan Tabibnia, husband and wife, | |
| Counter-defendants. | |

I, Teresa H. Foster, declare under penalty of perjury as follows:

1.    I am local counsel for Plaintiff Colocation America Corporation and I make this declaration based upon my own personal knowledge.

2.    I have been practicing commercial litigation in Maricopa County Arizona

## EXHIBIT F

for over 30 years and I am familiar with attorney fees charged in such matters.

3.     Attached as Exhibit A is a true and correct copy of the relevant pages of the February 28, 2018 Hearing Transcript.

4.     Attached as Exhibit B is a true and correct copy of the Declaration of Paul Sigelman dated August 22, 2017, previously filed in this matter.

5.     Attached as Exhibit C is a true and correct copy of the Declaration of Corey Allen Kotler dated July 16, 2018.

6.     Attached as Exhibit D is a true and correct copy of Defendant's June 19, 2018 Settlement Offer.

7.     Attached as Exhibit E is a true and correct copy of calculations regarding the Settlement Offer. The Settlement Offer of $475,000 was $1,303.86 less than the Fee Application.

8.     Attached as Exhibit F-1 is a marked up copy of Defendant's fees and costs for Arizona case (DOC #100-4) that I prepared after reviewing Defendant's bills and specifying why certain fees are unreasonable:

| Type | Fees |
|---|---|
| C = California Litigation | $ 12,210.00 |
| E = Excessive | $ 68,506.50 |
| D = Duplicative | $ 68,366.00 |
| V = Vague (or missing description) | $ 7,373.50 |
| I = Claims against Individuals | $100,968.40 |
| **TOTAL** | **$257,424.40** |

9.     Attached as Exhibit F-2 is a summary of Defendant's $37,000 + costs that I prepared after reviewing Defendant's bills with specific objections to each item of costs.

10.     Attached as Exhibit F-3 is a copy of Plaintiff's legal bills with a spreadsheet that I prepared summarizing the various bills. The bills are broken down into the following categories:

| General | $66,290 |
|---|---|
| Motion to Amend | $10,620 |
| Motion for Summary Judgment | $25,675 |
| Sigelman Bills | $27,500 |

11.     Plaintiff's counsel separated time that was directly related to the Motion to Amend ($10,620) and time that was directly related to the Motion for Summary Judgment ($25,675). The time billed under the Motion to Amend sub-file included time directly related to the Motion to Amend. In hindsight, the "General" category also included time in connection with the claim against the individuals.

12.     California attorneys Paul Sigelman (co-counsel on this case) and Debra Perlman also assisted Plaintiff. Debra Perlman did not bill for her time. Paul Sigelman did not bill for most of the "conferences" but did bill for his direct time (attending depositions, revising draft pleadings, and related matters).

13.     The summary on Exhibit F-3 also includes the total costs incurred ($1,697.55) separately.

14.     Plaintiff's counsel's bills totaled approximately $120,000 (excluding time incurred in connection with the Motion to Amend), and are being produced to support Plaintiff's position that Defendant's bills, in excess of $470,000, are unreasonable.

DATED: July 16, 2018.

*Teresa Foster*
Teresa H. Foster