David E. Rogers (#019274)
David G. Barker (#024657)
Jacob C. Jones (#029971)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
Telephone:  602.382.6000
Facsimile:  602.382.6070
E-Mail:  drogers@swlaw.com
         dbarker@swlaw.com
         jcjones@swlaw.com

Attorneys for Defendant
Mitel Networks Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Colocation America, Inc., | No. CV-17-00421-PHX-NVW |
| Plaintiff, | **REPLY IN SUPPORT OF MITEL NETWORK CORPORATION'S MOTION FOR FEES AND COSTS** |
| v. | |
| Mitel Networks Corporation, | **Honorable Neil V. Wake** |
| Defendant. | |
| Mitel Networks Corporation, | |
| Counterclaimant, | |
| v. | |
| Colocation America Corporation; and Corey Allen Kotler and Mojgan Tabibnia, husband and wife, | |
| Counterdefendants. | |

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

1

## I.   **Introduction.**

2

"This case is a poster child for the rule of § 201(2) of the Restatement.

3   Colocation's objective from the outset was to acquire the IPv4 addresses.  But it purported

4   to negotiate only for a domain name ***without ever leveling*** with Mitel Networks.

5   Colocation not only had 'reason to know' Mitel Networks attached a 'different meaning'

6   to their agreement, it created and promoted that different meaning on the part of Mitel

7   Networks."  Doc. 95 at 16:9-17:4 (emphasis added).  "Although Ahdoot hired Kotler to

8   acquire the IPv4 . . . addresses, Kotler ***intentionally misled*** Mitel Networks."  *Id*. at 16:14-

9   16 (emphasis added).

10

Colocation manufactured this dispute, this lawsuit, and the California Action.[1]  If

11   Colocation had been honest when it contacted MNC in February 2016, or when it

12   negotiated the Contract,[2] or in March 2016 when MNC noted a misunderstanding, or if

13   Colocation had stopped litigating after its California Action was dismissed in 2016, or had

14   it accepted MNC's settlement offer to pay Colocation $50,000 in March 2018, we would

15   not be here.  Colocation had numerous opportunities to come clean or walk away, but it

16   instead chose to pursue baseless litigation.

17

Colocation's Response (Doc. 104) is replete with misstatements and ignores its

18   "nebulous" email chain and discovery misconduct.  The Court has authority to award all

19   of the fees and costs requested by MNC for this action, the California Action, and this fee

20   Motion and Reply.  Colocation is an egregious actor who should be discouraged from

21   engaging in this behavior.

22

## II.   **Argument.**

23

This Reply is presented with the same headings as in MNC's Motion (Doc. 100).

24

**(1)-(2)Eligibility and Entitlement.**

25

Contrary to Colocation's assertion (Doc. 104 at 7 ¶ 4), MNC explained why it

26   should be awarded fees and costs, including those related to its fee Motion and Reply.

27   ---
[1] *Colocation America, Inc. v. MNC*, Case No. BC 619569, Calif. Sup. Ct, filed May, 2016.
28   [2] The Domain Name Assignment Agreement.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

*See, e.g.*, Doc. 100 at 1:1-9; 2:26-29; 3:11-20.  Colocation is also incorrect when it states that MNC did not negotiate in "good faith."  Doc. 104 at 7 ¶ 5 – 8 ¶ 1.  To the extent relevant and admissible under Fed. R. Evid. 408, MNC's *opening* settlement proposal was $475,000.  Doc. 104, Ex. D.[3]  Discussing contingencies (such as a possible fraud action against Ahdoot) is standard in settlement discussions.  Attached as Exhibit A is the rest of the email string that Colocation did not produce.  Colocation offered *nothing* to settle.  Ex. A.  It prefers to litigate.

      **(3)**    **Reasonableness of the Requested Fee Award.**

     Contrary to Colocation's assertion (Doc. 104 at 8 ¶ 3), MNC addressed the relevant portions of LRCiv 54.2 using the same capital letter designations that are in LRCiv 54.2.  Doc. 100 at 3:21-22.  MNC addresses the same factors here.

      **(A)**    **The Time and Labor Required of Counsel.**

      **(i)**    **Summary of Itemized Fees and**
                 **Non-Taxable Costs for this Arizona Action.**

    **Fees.**  In Doc. 100, MNC requested total fees of $364,280.  Considering comments in Colocation's Response (Doc. 104), MNC further reduces that amount by $9,685.00 (in connection with adding the individual defendants), for a new total of $354,605.  This reduction is shown in Ex. RF1.  Many of the entries Colocation characterizes as relating to adding the individual defendants (Doc. 104, Ex. F1), were actually related to finding, serving, and deposing the non-existent "Corey Allen" and his company "Dividend Advisors."  Ex. RF1.  Those fees were eminently reasonable and necessary because if MNC had not discovered Kotler's true name, located his true address for serving a subpoena, and taken Kotler's deposition, MNC never would have discovered the ***"smoking gun" email*** about Colocation's "nebulous" intent to "slip in" the IPv4 addresses, because Colocation did not produce it.

     Colocation intentionally misled MNC as to the true name and address of "Corey Allen Kotler" (*see* Doc. 100 at 5:15-6:7) and should pay for the fees/costs to locate, serve

---

[3] Colocation added the emphasis in this document, it was not in the original email.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

the subpoena, and depose him.  Other fees Colocation characterizes (in Doc. 104, Ex. F1) as being related to adding the individual defendants include fees for depositions, travel, responding to Colocation's discovery, and other items unrelated to adding the individual defendants, or that would have been incurred anyway.  Colocation provides no reasoning for its blanket assertions, including allegations that entries are vague, excessive or duplicative.  Doc. 104, Ex. F1.  Its unexplained objections are briefly addressed by MNC in Ex. RF1, hereto.  As one example, Colocation's suggestion (Doc. 104 at 14 ¶ 3), that attorneys must always accomplish tasks alone, is incorrect.  *See FiTeq Inc. v. Venture Corp.*, No. 13-CV-01946-BLF, 2016 WL 7888013, at *3 (N.D. Cal. Dec. 15, 2016) (considering as reasonable all of the time from three attorneys, and a portion of a fourth attorney's time, for two depositions, noting, "Gone are the days when one lawyer is responsible for every task without some form of support…"); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1113 (9th Cir. 2008) ("[N]ecessary duplication—based on the vicissitudes of the litigation process—cannot be a legitimate basis for a fee reduction.").

MNC did not deduct fees of $10,590.00 for its Motion for Reconsideration (Doc. 69).  *See* Ex. RF1 (fees related to Doc. 69 are labeled "R").  MNC acknowledges that Doc. 69 is related to adding the individual defendants.  It was filed after oral argument on MNC's Doc. 56 in order to clarify the procedural record.  *See* Doc. 69, *generally* (clarifying the record and attaching transcripts).  Given the circumstances of (1) Colocation misleading about (a) its intent in opening contract negotiations, (b) the true name and location of Kotler, (c) its own company name, and (d) multiple fictitious officers and directors, and (2) the Court initially granting MNC's Motion (Doc. 35) to add Kotler as a party, MNC respectfully requests its $10,590.00 in fees for Doc. 69.

**Non-Taxable Costs.**  Contrary to Colocation's representations, the authority for MNC to receive its non-taxable costs is cited in Doc. 100 at 1:1-9 and 2:26-3:20, and they are not "disguised" as attorneys' fees.  *See* Doc. 100, Ex. 2C.  On further review, MNC's costs that were listed as taxable in Doc. 100 at 14:2-6 are actually *non-taxable*

except for: (1) the $406.70 in filing fees ($400 for the removal and $6.70 for the state court filing, Doc. 100 at 14:3), and (2) $200 in witness fees/mileage, all of which were for Corey Allen/Kotler and Dividend Advisors (respectively $66, $68, and $66). MNC withdraws its taxable costs, the correct total of which is $606.70.

The deposition transcripts are for *non-taxable video* depositions. LRCiv 54(d) (video depositions are non-taxable). MNC apologizes for the initial incorrect characterization. The video depositions add $6,231.19 to the *non-taxable* costs. *See* Doc. 100 Ex. C, p. 36, row 22 to p. 37, row four. Contrary to Colocation's allegation, the Westlaw research costs of $11,645.00 are recoverable – the issue researched is included in the attorney time entries. Thus, the total non-taxable costs sought are $30,776.17 (from Doc. 100 at 4:10-11), plus $6,231.19 in video deposition costs, minus $1,952.25 to serve the amended pleadings on Kotler (discussed below), for a total of $35,055.13.

Finally, the other matters Colocation asserts are taxable (Doc. 104 at 16) (deposition costs including counsel's time, travel, and subsistence, video deposition fees, and copies which were not used at a trial) *are not* taxable under *this Court's* rules. LRCiv 54.1. They *are*, however, recoverable as "costs" under A.R.S. § 12-341 and 12-332, thus it is appropriate to treat them as "non-taxable" costs in this federal action, even though some may have been considered taxable by the superior court. And the Court may also award the non-taxable costs on other grounds, such as the Court's inherent authority, Rule 37(c), or 28 U.S.C. § 1927, as set forth in MNC's Motion.

Colocation does not dispute that the non-taxable costs were incurred or that they are reasonable. The spread sheet reflecting MNC's non-taxable costs was created by Snell & Wilmer's accounting department from records kept in the ordinary course of business, and it was verified as correct. Doc. 100 Ex. 2 ¶ 10; Ex. 2C. Nonetheless, MNC submits herewith a supplemental declaration attaching the supporting records. Ex. B and Exs. B-1 to B-86 thereto. This Court has previously permitted cost support attached to a reply brief, because there was no prejudice. *Design Trend Int'l Interiors, Ltd. v. Cathay Enterprises, Inc.*, 103 F. Supp. 3d 1051, 1064 (D. Ariz. 2015).

- 4 -

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1    In Doc. 104, Ex. F2, Colocation incorrectly alleges that numerous costs related to

2  adding the individual defendants; it identifies items such as filing fees, meals, deposition

3  transcripts, transcripts from this Court, airfare, and parking.  This is incorrect and

4  Colocation provides no reasoning.  *See* Ex. RF2.  Only the cost ($1,952.25) of serving the

5  summons and amended pleadings on Kotler is associated with adding the defendants, and

6  that is not included in the costs sought here.  *Id.*; *see also* Docs. 51 and 52.

7    Finally, attached as Exhibit D (and Exhibit A thereto) are MNC's fees/costs

8  related to its fee Motion (Doc. 100).  Its fees are $27,502.50 and non-taxable costs are

9  $718.25.  MNC will file a supplemental document with its fees for this Reply.

10    **(ii)    Summary of Itemized Fees and
          Non-Taxable Costs for the California Action.**

11

12    Colocation does not deny that the Court can award fees and costs of $75,016.50 for

13  the California Action.  Colocation does not deny that the California Action (1) was based

14  the same Complaint as this lawsuit, and (2) involved the same Contract (attached as an

15  exhibit to both Complaints) and underlying facts as this lawsuit.  Doc. 100 at 4:14-19; Ex.

16  2P; Doc. 1 (Ex. 1).  The California Action and this lawsuit were both based on Colocation

17  "nebulously" slipping a reference into the Contract about IPv4 addresses to manufacture

18  litigation.  Colocation argues only that the California state court did not reach the merits

19  because MNC was dismissed for lack of personal jurisdiction.  Doc. 104 at 11.  Thus,

20  Colocation believes it should be absolved of liability.  *Id.*  The law says otherwise.

21    This Court has discretion to award MNC's fees and non-taxable costs for the

22  California Action under A.R.S. § 12-341.01 or its inherent authority.  This Court should

23  exercise its discretion and award MNC's fees/costs for the California Action because it is

24  not only substantially intertwined with this lawsuit, it is the *exact same lawsuit* merely

25  filed in a different court, and it also included "pre-suit" investigatory work for the instant

26  lawsuit.  Doc. 100 at 4:14-19; *Design Trend Int'l Interiors, Ltd. v. Cathay Enterprises,*

27  *Inc.*, 103 F. Supp. 3d 1051, 1065 (D. Ariz. 2015) (awarding, under § 12–341.01, attorney

28  fees incurred in a separate, related proceeding (bankruptcy) that was "substantially

1   intertwined with a contract dispute."); *Zeagler v. Buckley*, 223 Ariz. 37, 39 (App. 2009)

2   (same); *City of Cottonwood v. James L. Fann Contracting, Inc.*, 179 Ariz. 185, 195, (App.

3   1994) (affirming award of fees intertwined with related arbitration; "trial court . . . has

4   significant discretion to award fees in a matter intertwined with another matter for which it

5   may not grant attorney's fees."); *First Nat'l Bank of Ariz. v. Cont'l Bank,* 138 Ariz. 194,

6   200, (App. 1983) (awarding fees under § 12–341.01 because "pre-complaint investigation

7   and evaluation of the potential claim is part of the process and expense of litigation");

8   *Intellect Wireless, Inc. v. Sharp Corp.*, 87 F.Supp.3d 817, 844–45 (N.D. Ill. 2015)

9   (inherent power provides trial court with ability to sanction even pre-suit conduct).

10   **(B)   The Novelty and Difficulty of the Questions Presented.**

11       Colocation rehashes its discredited position that this "was a simple breach of

12   contract case" for $10,000 and that all it wanted was a "quit claim" of over 65,000 IPv4

13   addresses.  Doc. 104 at 2 ¶ 2.  Even if true, Colocation concealed its true intent when

14   slipping "nebulous" language into the Contract to manufacture this dispute and pursue

15   meritless litigation.  Moreover, Colocation's allegations contradict Colocation's actions

16   and the relief it sought here and in the California Action.  Colocation sought a ***transfer***

17   ***and assignment*** of the IPv4 addresses, plus ***compensatory damages***.  Doc. 1, Ex. 1 ¶ 19

18   ("Mitel is under the obligation ***to transfer and assign*** the intellectual property. . .

19   including the . . . IPv4 Block," praying for relief at (b) for "Specific Performance . . . to

20   ***transfer and assign*** the . . . IPv4 Block," and seeking unspecified "***compensatory***

21   ***damages***" at (c)).  When asked about Colocation's alleged damages, Ahdoot testified that

22   "it goes back to us not being able to turn up customers because of the shortage of the IPs .

23   . . [it's] like saying by how much has a law firm been damaged by not getting cases . . .

24   [i]t's a pretty broad question.").  Ex. C at 30:10 – 31:14.  This was a unique case in which

25   Colocation "nebulously" "slipped in" language in an attempt to acquire MNC's assets and

26   potentially millions of dollars in compensatory damages.  *See* Doc. 100 at 7:8-8:2.

27       Colocation does not directly dispute that this case was really about Colocation

28   trying to force MNC into an untenable position, because MNC cannot transfer the IPv4

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

addresses. Then Colocation could have demanded millions or tens of millions of dollars in *compensatory damages*. *See* Ex. C at 30:10 – 31:14. Contrary to Colocation's representation (Doc. 104 at 9 ¶ 4), it has long known that MNC does not have title to the IPv4 addresses. The ARIN registry does *not* show MNC as the owner. MEx. 7, Doc. 81-2 at Page 48. The Joint Report, filed May 30, 2017, explained that MNC did not know who owned the IPv4 addresses, and the history of the IPv4 addresses. Doc. 18 at 4-5. MNC explained this again in its June 26, 2017 discovery response. Ex. E. MNC testified on August 18, 2017 that it did not own them. Ex. F at 109:16-110:17. The related asset transfer documents from Gandalf and Mitel Corp. were produced to Colocation on August 9, 2017. None mention IPv4 addresses. Yet, Colocation was undeterred in pursuing litigation.

### (i)     The "Corey Allen" Fiasco.

Colocation does not deny that it listed a "Corey Allen," at the address of its attorney Sigelman, in its Rule 26(a) disclosure, Supplemental Rule 26(a) disclosure, and in its interrogatory responses. When MNC subpoenaed "Corey Allen" at Sigelman's business address, and then subpoenaed building managers seeking "Corey Allen," Colocation received notices of the subpoenas, yet never corrected the record. Colocation does not deny that. Colocation uses careful language to mislead when it states that Sigelman did not accept service for "*Corey Allen Kotler*." Doc. 104 at 5 ¶ 4. Sigelman accepted, at his office, the subpoena for *Corey Allen*. He even admits in his October 17, 2017 declaration that he encountered the process server looking for *Corey Allen*. Doc. 104, Ex. B ¶¶ 6-7. Yet, he did nothing to correct the record or disclose Kotler's true name or address. Eventually, MNC located *Corey Allen Kotler* and served him.

Colocation now asserts that "Corey Kotler's name in this case was fully explained in the Declaration of Paul Sigelman *filed October 10, 2017*." Doc. 104 at 5 ¶ 3. But that declaration came months too late. By then, MNC had already, at great expense, located Kotler, served him with deposition subpoenas (July 25, 2017), deposed him (September

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

17, 2017), and filed a Motion four days later (Doc. 35), to add him as a party.[4]

### (ii) Colocation and Sigelman Did Not Produce the "Nebulous" Email Chain.

Colocation does not deny that it withheld the "nebulous" email chain during discovery, even though Sigelman *specifically knew of its existence*.  Doc. 100 at 6:13-15. Nor does it deny that Ahdoot testified and stated in discovery responses that all documents had been produced.  *Id.* at 4:22-24.  It was only after Kotler brought a redacted part of the chain to his deposition, and after months of follow-up by MNC, that Colocation produced the chain on February 27, 2018 (the day before oral argument).  *Id.* at 4:13-24.  Colocation does not dispute that Colocation's intent from the outset was to mislead MNC.  That is sufficient to award MNC's fees/costs requested here.  Doc. 100 at 6:8-24; 11:7-13:8.

### (iii) Colocation's Requested Relief of "Transfer" of IPv4 Addresses and "Compensatory Damages."

As discussed above, Colocation wanted (1) the IPv4 addresses *transferred and assigned,* and (2) *compensatory damages*.  Section II, (B), *supra* at 5-6.  Because Colocation never disclosed the amount of those alleged damages (*see* Ex. C at 30:10 – 31:14.), MNC was justified in litigating in preparation for the worst-case scenario.

### (C) The Skill Requisite to Perform the Legal Service Properly.

Colocation does not deny that it misled MNC about Kotler's name and address, or that it withheld the "nebulous" email chain.  *See* Doc. 100 at 7:1-6.  Contrary to its statement, (Doc. 104 at 7 ¶ 2), a discovery motion *was* brought because of Colocation's misconduct.  *See* Docs. 29 (discussing Colocation's discovery misconduct), 40 (same).[5] MNC had to extend the discovery period (*see* Docs. 29, 35, 40) because Colocation produced documents and written discovery responses late, and waited until the day before the depositions of its officers and directors to tell MNC that they were fictitious.  If

---

[4] Doc. 35 was initially granted (Doc. 48) and later denied (Doc. 67).

[5] Doc. 40, requesting a discovery extension, was denied as moot because Doc. 35 was granted.  But the Court stated it would consider a monetary sanction against Colocation at the end of the case, "regardless of who is adjudicated to be the prevailing party," because of Colocation's discovery misconduct addressed therein. Ex. G at 2:12-16, 28:2-14.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

Colocation had leveled with MNC when it received the deposition notices (served twenty days before the deposition date), and timely provided correct disclosures and discovery responses, Docs. 29 and 40 would have been unnecessary.

**(H)   The Amount of Money, or the Value of the Rights, Involved, and the Results Obtained.**

**(i)   Value of the Rights Involved.**

Colocation does not directly deny that the relief it sought would have been in the millions or tens of millions of dollars.  Doc. 100 at 7:7-8:2; Section II, (B), *supra* at 6-7.  .  Furthermore, losing this lawsuit could have also resulted in harm to MNC's business reputation, and the reputations of MNC's IT and legal personnel who negotiated the Contract.  Moreover, Colocation's actions again belie its words.  Regardless of what it alleges it knew throughout this litigation (Doc. 104 at 9 ¶ 4), Colocation now knows that MNC does not have title to the IPv4 addresses, yet it filed a Notice of Appeal.  Colocation is apparently seeking money, and not IPv4 addresses.

**(ii)   Results Obtained.**

This is explained at Doc. 100 at 8:3-8.  MNC prevailed.

**(I)   The Experience, Reputation and Ability of Counsel.**

This is explained at Doc. 100:8:9-14 and not disputed by Colocation.

**(M)   Any Other Matters Deemed Appropriate Under the Circumstances.**

Colocation does not dispute that MNC offered to settle by paying Colocation $50,000 in March 2018, which Colocation rejected in favor of further litigation.  It now falsely claims that MNC did not comply with Fed. R. Civ. P. 56(e).  Doc. 104 at 9 ¶ 3.  First, Colocation agreed with the briefing procedure suggested by the Court and has waived any procedural objection.  Ex. H (April 4, 2018 Tr. at 27:15-16 ("I like the idea of not doing a separate Statement of Facts").  Second, MNC provided ample controverting evidence, including the records of Escrow.com.  Doc. 88 at 12-14.

Colocation produced alleged bills from two of its lawyers as Ex. F3 to Doc. 104.  No fee agreements are attached and Colocation admits that one lawyer did not bill at all

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

and one only billed part of his time.  Doc. 104, Ex. F ¶ 12.  Thus, Colocation's two California lawyers may be working on contingency.

### III.   Colocation's Owner, Albert Ahdoot, and Lawyer, Sigelman Should Be Found Personally Liable.

All of MNC's fees and costs were incurred because of Colocation's, Ahdoot's and Sigelman's conduct.  Colocation does not deny that Ahdoot (1) is Colocation's sole owner, officer, and employee, (2) expressly directed his broker, Kotler, to "write it [the Contract] up for the domain and somehow slip in the IPv4," (3) failed to produce the "nebulous" email chain during discovery, (4) misrepresented in discovery responses that all documents were produced, and (5) directed his attorneys to pursue litigation in California and Arizona.  Doc. 100 at 9:20-10:7; Doc. 81-3 at 28; Doc. 95 at 3:28-4:5.  There is no dispute that Ahdoot personally directed all aspects of Colocation's behavior.[6]

Colocation does not deny any of the facts related to Sigelman's liability.  Sigelman, an officer of this Court and member of the California bar, was on the "nebulous" email chain.  He knew there was no legitimate basis for this lawsuit or the California Action, but pursued both for Colocation.  Thus, he is responsible for *all* of the fees and costs incurred by MNC.  28 U.S.C. § 1927.  Sigelman did not produce the "nebulous" email chain, although he knew it existed, and he asked Kotler about the chain before Kotler's deposition.  Doc. 100 at Ex. 2G.  Colocation does not deny that Sigelman misrepresented "Corey Allen's" name and address in disclosures and discovery responses, never corrected the record while MNC searched for Kotler, and sat silently for weeks while MNC wasted time preparing to depose Colocation's fictitious officers.

The relevant case law for finding Ahdoot and Sigelman personally liable is at Doc. 100 at 11:5-13:28.  Colocation now claims that Sigelman has never been the subject of an allegation of misconduct.  Doc. 104 at 7 ¶ 2.  First, his conduct in this Court is egregious enough by itself to award fees.  Second, Colocation (represented by Sigelman and

---

[6] Contrary to Colocation's statement at Doc. 104 at 4 ¶ 2 – 5 ¶ 1, Ahdoot can be personally liable without being a party.  Alter ego theory and piercing the corporate veil are irrelevant to this analysis.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

another lawyer) was sanctioned $40,000 for bad faith in the California Action.  Doc. 100 at 1:17-18.  Third, there are public records of Colocation and Ahdoot (represented by Sigelman) being subject to awards in the past.  *Colocation Am., Corp. v. Garga*, No. BC 448509, 2013 WL 3368509, at *1 (Cal. Super. Ct. 2013) (awarding attorney fees against Colocation and Ahdoot in the amount of $30,955.00, where Sigelman was the lawyer).

### IV.    MNC's Taxable Costs.

MNC is no longer seeking taxable costs, which totaled $606.70.

### V.    Conclusion.

After manufacturing this dispute, Colocation pursued litigation for over two years in two forums, obstructing discovery to conceal evidence and increase costs.  Colocation, its owner, and attorney, should pay MNC's requested fees and non-taxable costs.

DATED this 26th day of July, 2018.

SNELL & WILMER L.L.P.


By: *s/ Jacob C. Jones*
David E. Rogers
David G. Barker
Jacob C. Jones
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202

Attorneys for Mitel Networks Corporation

- 11 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Teresa H. Foster, Esq.
Brier, Irish, Hubbard & Erhart, P.L.C.
2400 East Arizona Biltmore Circle
Suite 1300
Phoenix, AZ 85016
ctfilings@thfosterlaw.com

Paul Stephen Sigelman
Sigelman Law Corporation
433 N Camden Dr., Suite 970
Beverly Hills, CA 90210
paul@sigelmanlaw.com

Attorneys for Colocation

s/ *Jacob C. Jones*

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000